EXHIBIT B

# *RESUME OF*

# *GARWIN GERSTEIN & FISHER LLP*

Garwin Gerstein & Fisher LLP and its predecessor firms have successfully championed the rights of investors, consumers, businesses and the public for over fifty years in complex class action litigation involving such issues as:

- *Antitrust violations, such as price-fixing and other anti-competitive practices;*

- *The violation of investors' rights as a result of securities fraud or breaches of fiduciary duty;*

- *Unfair and deceptive trade practices;*

- *Deceptive insurance practices;*

- *Employment discrimination practices.*

Set forth below is a sampling of cases in which Garwin Gerstein & Fisher has acted as lead or co-lead counsel over the past few years alone:

- *In re K-Dur Antitrust Litigation,* Civil Action No. 2:01-cv-1652 (D.N.J.). Co-lead counsel for direct purchasers; after almost 16 years of complex, intense and hard fought litigation, the case settled in 2017 for $60.2 million in cash consideration. Garwin Gerstein & Fisher was recognized by the American Antitrust Institute for Outstanding Antitrust Litigation Achievement in Private Law Practice for its ground-breaking work on this case challenging a "reverse payment" agreement between brand-name and generic pharmaceutical companies to delay generic competition for the drug K-Dur 20. Significant decisions include *in re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) (denying motion to dismiss); *In re K-Dur Antitrust Litig*., 2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008) (certifying direct purchaser class); *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012) (rejecting scope of the patent test for adjudging reverse payment settlement agreements and applying a quick look rule of reason analysis) (overruled by *Upsher-Smith Labs., Inc. v. La. Wholesale Drug Co.*, 2013 U.S. LEXIS 4861, 133 S. Ct. 2849 (2013) in light of *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013)).

- *King Drug Company of Florence, Inc. et al v. Cephalon, Inc., et al*., Civil Action

1

No. 2:06-cv-1797 (E.D. Pa.). Lead Counsel on behalf of class of direct purchasers of the narcolepsy drug, Provigil. A partial settlement was obtained in 2015 for $512 million in cash consideration following extensive fact and expert discovery, and favorable decisions on summary judgment. The American Antitrust Institute recognized Garwin Gerstein & Fisher for Outstanding Antitrust Litigation Achievement in Private Law Practice for its work in this case in 2019.

- *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-07488 (S.D.N.Y.). Co-Lead Counsel on behalf of a class of direct purchasers; case settled in 2019 for $750 million.

- *In re Prograf Antitrust Litig.,* Civil Action No. 1:11-md-02422-RWZ (D. Mass). Co-Lead Counsel on behalf of a class of direct purchasers; case resolved in 2015 on the eve of trial for $98 million in cash consideration.

- *In re Neurontin Antitrust Litig.*, MDL Docket No. 1479 (D.N.J.) (FSH). Co-Lead Counsel on behalf of a class of direct purchasers of Neurontin; case resolved in 2014 for $190 million in cash consideration after extensive fact and expert discovery, successful certification of a class, and defeating motions to dismiss and for summary judgment.

- *In re Asacol Antitrust Litigation*, No. 16-cv-11740 ((D. Mass.). Co-lead counsel on behalf of direct purchasers; case settled in December 2017 for $16 million.

- *In re Mushrooms Direct Purchaser Antitrust Litigation,* No. 06-0620 (E.D. Pa.). Lead counsel on behalf of direct purchasers; case settled in January, 2020 for over $ 45 million.

- *In re Aggrenox Antitrust Litigation,* No. 3:14-md-02516-SRU (D. Conn.).  Lead counsel on behalf of direct purchasers; case settled in August 2017 for $146 million.

- *In re Lidoderm Antitrust Litigation*, No. 14-md-02521 (N.D. Cal.) Co-lead counsel on behalf of direct purchasers; case settled in 2018 for $166 million.

- *In re Nexium Antitrust Litig*ation, No. 12-md-2049-WGY (D. Mass.). Co-lead counsel for direct purchasers; case partially settled for $24 million.

- *In Re Hypodermic Products Direct Purchaser Antitrust Litigation*, Master Docket No. 2:05-cv-01602-JLL-MAH (D.N.J.).  Lead Counsel on behalf of a class of direct purchasers of hypodermic needle products; confirming important Third Circuit law on the issue of standing to pursue direct damages under federal antitrust laws (2012 U.S. App. Lexis 11293 (3d Cir. 2012)); case resolved in 2012 for $45 million in cash.

- *Meijer, Inc. et al. v. Abbott Laboratories*, Case No. 07-5985 (CW) (N.D. Cal.)  Co-Lead Counsel for a class of direct purchasers of Norvir; after successfully certifying

2

a class of direct purchasers, defeating motions to dismiss and summary judgment and preparing for and opening at trial, the case was resolved during trial for $52 million in cash.

- *In re Remeron Antitrust Litigation*, Case No. 2:02-cv-02007-FSH-PS (D.N.J.) (Co-Lead Counsel), recovered $75 million for a class of direct purchasers of mirtazapine who were overcharged because Organon USA, Inc. and Akzo Nobel, N.V. engaged in a scheme involving various illegal and deceptive acts to improperly extend Remeron's patent protection and market exclusivity, in violation of §2 of the Sherman Act.

- *Courtney Davis, et al. v. Eastman Kodak Company*, 04-cv-0098; 07-cv-6512 (CJS)(F) (W.D.N.Y.).   Co-Lead Counsel in employment discrimination class action brought on behalf of Kodak employees; resolved for $21.4 million in cash consideration and substantial enhancements in corporate procedures and policies to protect all employees.   In its opinion awarding attorneys' fees, the Court commended class counsel, specifically complementing Co-Lead Counsels' efforts "for the outstanding job they did in representing the interests of their clients." The Court went on to state that Co-Lead Counsel's:

  > "…legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach."

  2010 U.S. Dist. LEXIS 133751 (at *35) (N.D.N.Y. 2010).

- *Natchitoches Parish Hospital Service District v. Tyco International, Ltd., et al.* 05-12024 (PBS) (D. Mass.).   Lead Counsel for a class of purchasers of sharps containers; settled for $32.5 million after thirteen (13) days of trial following successful certification of a class, defeating motions to dismiss and summary judgment, extensive fact and expert discovery, and *Daubert* and *in limine* briefing and arguments.

- *In re Buspirone Antitrust Litigation,* MDL Docket No. 1413 (S.D.N.Y.) (Co-Lead Counsel).   Case resolved for $220 million on behalf of a class of direct purchasers of Buspirone after successful pretrial motion practice. *See, e.g.*, *In re Buspirone Antitrust Litigation*, 185 F.Supp. 2d 340 (S.D.N.Y. 2002) (granting summary judgment against Bristol Myers with respect to certain patent infringement claims); *In re Buspirone Antitrust Litigation*, 208 F.R.D. 516 (S.D.N.Y. 2002) (discussing issues of waiver of attorney client privilege with respect to matters placed at issue in the litigation.).

- *In re Tricor Direct Purchaser Antitrust Litigation* (D.Del.), (Lead Counsel) settled during trial for $250 million for a class of branded Tricor direct purchasers.

- *In re Relafen Antitrust Litigation,* Master File No. 01-12239-WGY (D. Mass.) (Co-Lead Counsel).   Case was resolved on the eve of trial for $175 million on behalf

of a class of direct purchasers of Relafen.   District Court certified class of direct
purchasers (218 F.R.D. 337 (D. Mass 2003)) and denied defendants' motion for
summary judgment

- *Butler et al. v. Provident Mutual Life Insurance Company*, January Term, 1999,
No. 007801 (Court of Common Pleas-Philadelphia County), (Co-Lead Counsel)
After expedited efforts led by Garwin Gerstein & Fisher LLP, successfully
preliminarily and permanently enjoined a transaction that would have denied
Provident's policyholders any compensation for their ownership interests in
Provident as part of a conversion of Provident to a Mutual Holding Company.   As
a result, Provident successfully sought a partner for a sponsored demutualization
(Nationwide Financial Services) which delivered over $1 billion in compensation
to Provident's eligible members.

- *Sanders v. Wang, etc.*, Del. Ch., CA No. 16640, Steele, V.C. (November 8, 1999);
(Co-Lead Counsel) The Court of Chancery concluded that a Compensation
Committee of the Board "exceeded their authority" under a stock option plan in
awarding shares to inside directors/officers in granting judgment on the pleading
for plaintiffs on behalf of nominal defendant Computer Associates - settled for the
return of over $250 million in value of common stock for the Company.   *See e.g.*,
1999 WL 1044880, 25 Del. J.Corp.L. 1036.

- *In re M&F Worldwide Corp. Shareholder Litigation*, Consolidated Civil Action
No. 18502, V.C. Strine, (Co-Trial Counsel).   After complete discovery and a two-
week trial, defendants agreed in 2002 to the complete relief sought by the plaintiffs
- rescission of a complex series of transactions valued at over $130 million.

- *In re Nifedipine Antitrust Litigation*, 03-MC-223 (RJL), MDL No. 1515, (District
of Columbia).   Co-Lead Counsel on behalf of a class of direct purchasers of
nifedipine; case resolved in 2010 for $35 million in cash consideration after
defeating motions to dismiss, obtaining and sustaining a favorable ruling on class
certification (246 F.R.D. 365 (D. C. 2007)) and extensive fact and expert discovery;

- *In re Cardizem CD Antitrust Litigation* 200 F.R.D. 326 (E.D. Mich. 2001), (Co-
Lead Counsel) Certifying class of direct purchasers of diltiazem. *See also*, *In re
Cardizem CD Antitrust Litigation,* 105 F. Supp.2d 618 (E.D.Mich. 2000) found
*Noerr-Pennington* doctrine inapplicable and finding antitrust claim stated under
both *per se* rule and rule of reason; granting partial summary judgment for violation
of antitrust law.   Settled for $110 million.

- *In re Terazosin Hydrochloride Antitrust Litigation* 99-MDL-1317 (S.D.Fl.) (Co-
Lead Counsel), recovered $75 million for a class of direct purchasers of Terazosin
Hydrochloride ("Hytrin") who were overcharged as a result of an illegal agreement
between Abbott Laboratories, Zenith Pharms. Inc. (now known as Ivax Pharms.,
Inc.) and Geneva Pharms. Inc., which improperly delayed competition from generic
versions of Hytrin; *see, e.g.,* 335 F.Supp 2d 1336 (S.D. Fla. 2004); 352 F. Supp. 2d

1279 (S.D. Fla. 2005); 344 F.3d 1294 (11th Cir. 2003); 164 F. Supp. 1240 (S.D. Fla. 2001).

- *Gutter v. E.I. DuPont de Nemours, et al.*, Case No. 95-2152 (S.D.Fl.), (Lead Counsel), After over seven years of intensive litigation, after complete fact and expert discovery, this securities case was settled in 2003 for $77.5 million in cash. *See e.g.*, 124 F.Supp.2d 1291 (S.D.Fl. 2000).

- *In re Cendant Corporation Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999), 232 F.Supp.2d 327 (D.N.J. 2002), (Lead Counsel), Court found, *inter alia,* demand excused where board implicated in failing to detect alleged financial fraud by management, and Certificate of Incorporation liability exclusion for breach of fiduciary duty did not insulate directors – recovery of $54 million for Cendant and its shareholders.

- *In re Nuveen Fund Litigation*, 1996 WL 347012, 1996 WL 328001, 1996 WL 328003, 1996 WL 328006, 1994 WL 505293, 1994 WL 505294 (N.D. Ill. 1996), (Lead Counsel), (a case addressing novel issues arising under the Investment Company Act and Minnesota Corporate law); *see also* 555 N.W. 2d 301 (MN App. 1996).   – recovery of $24 million in cash for shareholders of certain Nuveen Funds.

- *In re Northwest Airlines Corp. Antitrust Litigation*, 49 F.Supp.2d 553 (E.D. Mich. 1999), 197 F.Supp.2d 908 (E.D. Mich. 2002), 208 F.R.D. 174 (E.D.Mich. 2002), 310 F.3d 953 (6th Cir. 2002), (Lead Counsel), Successfully withstood motion to dismiss a novel antitrust claim lodged against, *inter alia*, Northwest Airlines for "hidden cities" price ticketing practices and then successfully persuaded the district court to certify a class of those impacted by "hidden cities" fares.

- *In re USACafes, L.P. Litigation*, 600 A.2d. 43 (Del. Ch. 1991), (Lead Counsel), a case recognizing - for the first time under Delaware law - a fiduciary duty owed by directors of a Delaware corporate general partnership to its Delaware limited partners.

- *Zapata v. Maldonado*, 430 A.2d 779 (Del.1981), (Lead Counsel), unquestionably one of the most important decisions in stockholder derivative litigation.   The Delaware Supreme Court's decision halted a tidal wave of decisions that threatened to eliminate the derivative action as an effective barrier to corporate waste and mismanagement.

- *Michelson v. Duncan*, 407 A.2d 211 (Del. Sup. 1979), (Lead Counsel), a reversal in part of a dismissal of a derivative action predicated upon a shareholder ratification.   The Delaware Supreme Court defined and reinstated plaintiff's waste cause of action.

- *Stein v. Orloff*, Del. Ch., CA No. 7276, 11 Del. J. Corp. L. 312, 1985 WL 11561 Hartnett, V.C. (May 30, 1985), (Lead Counsel), finding demand excused where plaintiffs stated a claim for waste of corporate assets by alleging properly "the

5

consideration received by corporation was so inadequate that no person of ordinary sound business judgment would deem it worth what corporation paid."

- *Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980), (Lead Counsel), almost as important a decision as *Maldonado*, wherein Second Circuit reversed and remanded a business judgment dismissal of a derivative action. The Second Circuit's decision strongly intimated that business judgment could not be used to dismiss a well pleaded proxy claim, regardless of state law.

- *Halpern v. Armstrong*, 491 F. Supp. 365 (S.D.N.Y. 1980), (Lead Counsel), an important Section 14(a) decision by Judge Milton Pollack wherein he found material proxy violations and thereby voided a number of transactions undertaken by Revlon, Inc., the corporation in question.

- *Jacobs v. Adams*, 601 F.2d 176 (5th Cir. 1979), (Lead Counsel), an important and total reversal of a district court's holding (1) that a New York executor may not prosecute a derivative action in Florida; and (2) that Florida law requires a plaintiff in a derivative action to make a demand on a corporation's shareholders before instituting suit.

Other pending cases include:

- *In re: Niaspan Antitrust Litigation,* Master File No. 13-md-2460 (pending in the Eastern District of Pennsylvania).

- *In re Lipitor Antitrust Litigation*, MDL No. 2332 (DNJ) No. 12-cv-2389 (PGS/DEA) (pending in the District of New Jersey).

- *In re Lamictal Direct Purchaser Antitrust Litigation*, No. 12-995 (WHW) (pending in the District of New Jersey).

- *In re Opana ER Antitrust Litigation, MDL No. 2580* (pending in the Northern District of Illinois, Eastern Division).

- *In re: Suboxone (Buprenorphine Hydrochloride and Nalaxone)* Antitrust Litigation, MDL No. 2445 (MSG) (pending in the Eastern District of Pennsylvania).

- *In re Novartis and Par Antitrust Litigation,* No. 1:18-cv-04361 (AKH) (pending in the Southern District of New York)

- *J M Smith Corporation d/b/a Smith Drug Company v. AstraZeneca Pharmaceuticals L.P. et al.,* No. 19-cv-07233 (CM/SLC) (pending in the Southern District of New York).

- *Rochester Drug Co-Operative, Inc. v. Eli Lilly and Company et al.,* No. 20-cv-03426 (BRM/LHG)(pending in the District of New Jersey) and Value Drug

Company v. Eli Lilly and Company et al., No. 20-cv-05129 (BRM/LHG) (pending in the District of New Jersey).

• *Rochester Drug Co-Operative, Inc. v. Mylan Inc. et al.,* No. 20-cv-00827 (ECT/TNL) (pending in the District of Minnesota).


## FIRM PARTNERS

**BRUCE E. GERSTEIN** graduated from Bernard M. Baruch College of The City University of New York in 1972 with a Bachelor of Business Administration with a major in public accounting, and is a Certified Public Accountant licensed in the State of New York (inactive). He graduated from Brooklyn Law School with honors in 1977. For the six years prior to joining the firm then known as Garwin & Bronzaft in January 1978, Mr. Gerstein was an investigatory accountant specializing in the area of stockholder's derivative and class actions. Mr. Gerstein is recognized as a leading attorney in complex litigation around the country resolving successfully antitrust, securities and consumer related class actions resulting in hundreds of millions of dollars for class members. Most recently, he was principally responsible for the negotiation of settlements of $512 million (Provigil/Cephalon); $190 million (Neurontin/Pfizer); $110 million (Cardizem/Andrx); $220 million (Buspar/Bristol Myers); and $175 million (Relafen/Glaxo Smith Kline); representing direct purchasers of pharmaceutical products.

He has been named lead counsel in federal and state courts across the United States. He has lectured recently at conferences discussing important cutting edge antitrust issues in Florida and California, appearing at a University of San Francisco symposium as a panelist with Herbert Hovenkamp, a leading authority and author of the seminal treatise on Antitrust law, discussing *inter alia*, issues arising out of the interplay between antitrust law, patent law and the Hatch Waxman Act.

Mr. Gerstein is admitted to practice in all of the Courts of the State of New York, The United States Supreme Court, and the Court of Appeals for the First, Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits. He is a member of The Association of The Bar of the City of New York and the New York State Bar Association and New York County Lawyers Association (NYCLA).

**SCOTT W. FISHER** graduated from Rensselaer Polytechnic Institute in 1971 with a Bachelor of Science degree in Aeronautical Engineering. He received a Master of Arts in Mathematics Education in 1974 from Brooklyn College. Following his graduation from Rensselaer Polytechnic Institute, Mr. Fisher was an educator employed by the New York City Board of Education in a wide variety of pedagogical areas including curriculum development in mathematics.

Mr. Fisher graduated from Brooklyn Law School in 1982. Following his graduation from law school, he joined the firm then known as Garwin, Bronzaft & Gerstein, where he has worked on many major consumer class actions, stockholder class and derivative litigations. Mr. Fisher

has been appointed lead or co-lead counsel in various securities litigations.    Among other major cases, Mr. Fisher served as co-trial counsel in Delaware Chancery Court in the *M&F Worldwide Corp. Shareholder Litigation*, Del. Ch. Consolidated C.A. No. 18502 NC (V.C. Strine) a case which resulted in a complete victory for M&F shareholders.    He also had a prominent role in the pre-trial and trial proceedings of the fen/phen diet drug product liability class action tried before the Hon. Marina Corodemus in New Jersey Superior Court, which was resolved as part of a global resolution of diet drug cases for in excess of $4 billion.

Mr. Fisher has lectured at a Lorman sponsored conference on issues raised in connection with the settlement of class actions, including the use of mediation to facilitate settlement; and has appeared as a panel member at a New York State Bar Association conference discussing *inter alia*, class action practice from the plaintiff's perspective.

Mr. Fisher is admitted to the Bars of the State of New York and of the United States District Courts for the Southern and Eastern Districts of New York, the District of Arizona, the Eastern District of Michigan, the Courts of Appeal for the Second, Third, Seventh and Eleventh Circuits and the Supreme Court of the United States.    Mr. Fisher is also a member of The Association of The Bar of The City of New York, and The New York State Bar Association.

***JOSEPH OPPER*** graduated from Tufts University in 1970 with a Bachelor of Arts in Political Science.    He graduated from Hofstra University School of Law in 1975.    From 1985 to 1996 Mr. Opper was a member of the Antitrust Bureau of the New York State Department of Law and served as the Acting Bureau Chief from 1994-96.    Immediately, prior to joining the firm in 2000, he was employed by Milberg Weiss Bershad Hynes & Lerach LLP, where he specialized in Antitrust and Human Rights litigation.    From 1975-85 Mr. Opper practiced law at the Legal Aid Society in Brooklyn, New York.

Mr. Opper is a member of the New York Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second Circuit and United States Supreme Court.

***NOAH H. SILVERMAN*** graduated from Grinnell College in 1986 with a Bachelor of Arts degree in Political Science.

Mr. Silverman graduated from Northwestern University School of Law in 1990 and has been with the firm since May 1991.

Mr. Silverman is admitted to the Bar of the State of New York and the United States District Court for the Southern and Eastern Districts of New York.    He is a member of the Association of the Bar of the City of New York.

***KIMBERLY HENNINGS*** graduated *cum laude* from the University of Tampa in 2000 with a Bachelor of Science degree in Criminology.

Ms. Hennings graduated *cum laude* from Brooklyn Law School in 2003, and joined Garwin Gerstein & Fisher in October 2003.

Ms. Hennings is admitted to the Bars of the States of New York and New Jersey, the United States Supreme Court, the United States Courts of Appeal for the Second and Third Circuits, and the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

***ELENA K. CHAN*** graduated *cum laude* from Barnard College of Columbia University with a Bachelor of Arts in Political Science and East Asian Languages and Cultures.

Ms. Chan graduated *cum laude* from American University's Washington College of Law in 2004, and joined Garwin Gerstein & Fisher in March 2005.

Ms. Chan is admitted to the Bars of the States of New York and New Jersey, the United States Supreme Court, the United States Courts of Appeal for the First, Second, Third, and Eleventh Circuits, and the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

***JONATHAN M. GERSTEIN*** graduated from the University of Michigan in 2002 with a Bachelor of Arts degree in English.

Mr. Gerstein graduated from Brooklyn Law School in the summer of 2007. Mr. Gerstein clerked at Garwin Gerstein & Fisher throughout his time at Brooklyn Law and joined Garwin as an associate following his graduation. Prior to entering law school, Mr. Gerstein worked in an advertising agency in New York City as an Account Executive.

Mr. Gerstein is admitted to the Bar of the State of New York.

***DAN LITVIN*** graduated from New York University in 2002 with a Bachelor of Science degree in Marketing, and appearing on several occasions on the Dean's List.

Mr. Litvin graduated from Brooklyn Law School in 2006.   While in law school, Mr. Litvin served as a clerk for an Administrative Law Judge at the Equal Employment Opportunity Commission, and drafted a number of employment discrimination decisions.

Mr. Litvin joined Garwin Gerstein & Fisher in October 2006.

Mr. Litvin is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

## ASSOCIATES

***ANNA L. TYDNIOUK*** graduated *cum laude* from Odessa State University of Odessa, Ukraine in 1987 with a Master of Art degree in Linguistics.

Ms. Tydniouk graduated *cum laude* from Brooklyn Law School in 2005, and has been employed by Garwin Gerstein & Fisher since October 2005.

Ms. Tydniouk is admitted to the Bar of the State of New York and the United States District

Courts for the Southern and Eastern Districts of New York.

**AAKRUTI G. VAKHARIA** graduated magna cum laude from Rutgers University with a double-major in Political Science and French.

Ms. Vakharia then attended Fordham University School of Law.   She was a nationalist at the 2016 Thomas Tang Moot Court Competition, and a semi-finalist at the 2018 William M. Tendy Trial Advocacy Competition.   During her time at Fordham, she also served as a Notes and Articles Editor on the International Law Journal, as Secretary of the Asian Pacific American Law Students Association and as Communications Director of the South Asian Law Students Association.

Ms. Vakharia graduated from Fordham University School of Law in 2018.

Ms. Vakharia is admitted to the bars of the States of New York, New Jersey and District of Columbia.   She is also admitted to the Southern District of New York and the District of New Jersey.



1818 Market Street | Suite 3600 | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger Montague

Berger Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal* selected Berger Montague in 12 out of 14 years (2003-2005, 2007-2013, 2015-2016) for its "Hot List" of top plaintiffs-oriented litigation firms in the United States. The select group of law firms recognized each year had done "exemplary, cutting-edge work on the plaintiffs' side." The *National Law Journal* ended its "Hot List" award in 2017 and replaced it with "Elite Trial Lawyers," which Berger Montague has won from 2018-2020. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell* and was ranked as a 2020 "Best Law Firm" by *U.S. News - Best Lawyers.*

Currently, the firm consists of 65 lawyers; 25 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## History of the Firm

Berger Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 50 years of civil litigation. For example, the firm was one of the principal counsel for

plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $200 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Practice Areas and Case Profiles

### Antitrust

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 50 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price-fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million).

Once again, Berger Montague has been selected by *Chambers and Partners* for its 2020 *Chambers USA* Guide as one of Pennsylvania's top antitrust firms. *Chambers USA 2020* states that Berger Montague's antitrust practice group is "a preeminent force in the Pennsylvania antitrust market, offering expert counsel to clients from a broad range of industries."

The *Legal 500*, a guide to worldwide legal services providers, ranked Berger Montague as a Top Tier Law Firm for Antitrust: Civil Litigation/Class Actions: Plaintiff in the United States in its 2020 guide and states that Berger Montague's antitrust department is "well-known for its heavy involvement in numerous matters pertaining to manipulation in the financial space."

- ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation:*** Berger Montague served as co-lead counsel for a national class including millions of merchants in the *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* against Visa, MasterCard, and several of the largest banks in the U.S. (*e.g.*, Chase, Bank of America, and Citi). The lawsuit alleged that merchants paid excessive fees to accept Visa and MasterCard cards because the payment cards, individually and together with their respective member banks, violated the antitrust laws. The challenged conduct included, *inter alia*, the collective fixing of interchange fees and adoption of rules that hindered any competitive pressure by merchants to reduce those fees. The lawsuit further alleged that defendants maintained their conspiracy even after both Visa and MasterCard changed their corporate forms from joint ventures owned by member banks to publicly-owned corporations following commencement of this litigation. On September 18, 2018, after thirteen years of hard-fought litigation, Visa and MasterCard agreed to pay as much as approximately $6.26 billion, but no less than approximately $5.56 billion, to settle the case. This result is the largest-ever class action settlement of an antitrust case. The settlement received preliminary approval on January 24, 2019. The settlement received final approval on December 16, 2019, for approximately $5.6 billion.

- ***In re Dental Supplies Antitrust Litigation:*** Berger Montague served as co-lead counsel for a class of dental practices and dental laboratories in *In re Dental Supplies Antitrust Litigation*, a suit brought against Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company, the three largest distributors of dental supplies in the United States. On September 7, 2018, co-lead counsel announced that they agreed with defendants to settle on a classwide basis for $80 million. The settlement received final approval on June 24, 2019. The suit alleged that the defendants, who collectively control close to 90 percent of the dental supplies and equipment distribution market, conspired to restrain trade and fix prices at anticompetitive levels, in violation of the Sherman Act. In furtherance of the alleged conspiracy, plaintiffs claimed that the defendants colluded to boycott and pressure dental manufacturers, dental distributors, and state dental associations that did business with or considered doing business with the defendants' lower-priced rivals. The suit claimed that, because of the defendants' anticompetitive conduct, members of the class were overcharged on dental supplies and equipment. In the 2019 Fairness Hearing, Judge Brian M. Cogan of the U.S. District Court for the Eastern District of New York said: "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

- ***In re Domestic Drywall Antitrust Litigation:*** Berger Montague served as co-lead counsel on behalf of a class of direct purchasers of drywall, in a case alleging that the dominant manufacturers of drywall engaged in a conspiracy to fix drywall prices in the U.S. and to abolish the industry's long-standing practice of limiting price increases for the duration of a construction project through "job quotes." Berger Montague represented a class of direct purchasers of drywall from defendants for the period from January 1, 2012 to January 31, 2013. USG Corporation and United States Gypsum Company (collectively,

"USG"), New NGC, Inc., Lafarge North America Inc., Eagle Materials, Inc., American Gypsum Company LLC, TIN Inc. d/b/a Temple-Inland Inc., and PABCO Building Products, LLC were named as defendants in this action. On August 20, 2015, the district court granted final approval of two settlements—one with USG and the other with TIN Inc.—totaling $44.5 million. On December 8, 2016, the district court granted final approval of a $21.2 million settlement with Lafarge North America, Inc. On February 18, 2016, the district court denied the motions for summary judgment filed by American Gypsum Company, New NGC, Inc., Lafarge North America, Inc., and PABCO Building Products. On August 23, 2017, the district court granted direct purchaser plaintiffs' motion for class certification. On January 29, 2018, the district court granted preliminary approval of a joint settlement with the remaining defendants, New NGC, Inc., Eagle Materials, Inc., American Gypsum Company LLC, and PABCO Building Products, LLC, for $125 million. The settlement received final approval on July 17, 2018, bringing the total amount of settlements for the class to $190.7 million.

- ▪ ***In re Currency Conversion Fee Antitrust Litigation:*** Berger Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October 2009, with a Final Judgment entered in November 2009. Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action. A subsequent settlement with American Express increased the settlement amount to $386 million.  (MDL No. 1409 (S.D.N.Y)).

- ▪ ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:*** Berger Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops. The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long-haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment. These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from taking various competitive steps that could have been used to steer fleets to rival payment cards. The settlement for $130 million and valuable prospective relief was preliminary approved on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

- ▪ ***Ross, et al. v. Bank of America (USA) N.A., et al.:*** Berger Montague, as lead counsel for the cardholder classes, obtained final approval of settlements reached with Chase, Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully

acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions. The case was brought for injunctive relief only. The settlements remove arbitration clauses nationwide for 3.5 years from the so-called "cardholder agreements" for over 100 million credit card holders. This victory for consumers and small businesses came after nearly five years of hard-fought litigation, including obtaining a decision by the Court of Appeals reversing the order dismissing the case, and will aid consumers and small businesses in their ability to resist unfair and abusive credit card practices.  In June 2009, the National Arbitration Forum (or "NAF") was added as a defendant. Berger Montague also reached a settlement with NAF. Under that agreement, NAF ceased administering arbitration proceedings involving business cards for a period of three and one-half (3.5) years, which relief is in addition to the requirements of a Consent Judgment with the State of Minnesota, entered into by the NAF on July 24, 2009.

▪ **In re High Fructose Corn Syrup Antitrust Litigation:** Berger Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

▪ **In re Linerboard Antitrust Litigation:** Berger Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

▪ **Johnson, et al. v AzHHA, et al.:** Berger Montague was co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid. The court approved $24 million in settlements on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

▪ **In re Graphite Electrodes Antitrust Litigation:** Berger Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case settled for in excess of $134 million and over 100% of claimed damages. (02 Civ. 99-482 (E.D. Pa.)).

▪ **In re Catfish Antitrust Litig. Action**: The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

- ▪ ***In re Carbon Dioxide Antitrust Litigation:*** The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial, for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla.)).

- ▪ ***In re Infant Formula Antitrust Litigation:*** The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla.)).

- ▪ ***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:*** The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex.)).

- ▪ ***In re Corrugated Container Antitrust Litigation:*** The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

- ▪ ***Bogosian v. Gulf Oil Corp.:*** With Berger Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa.)).

- ▪ ***In re Master Key Antitrust Litigation:*** The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn.)).

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic competition, having achieved over $2 billion in settlements in such cases over the past decade, including:

- ▪ ***In re: Namenda Direct Purchaser Antitrust Litigation:*** Berger Montague is co-lead counsel for the class in this antitrust action brought on behalf of a class of direct purchasers of branded and/or generic Namenda IR and/or branded Namenda XR. It settled for $750 million on the very eve of trial. The $750 million settlement received final approval on May 27, 2020, and is the largest single-defendant settlement ever for a case alleging delayed generic competition. (Case No. 15-cv-7488 (S.D.N.Y.)).

- ▪ ***King Drug Co. v. Cephalon, Inc.:*** Berger Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of the prescription drug Provigil (modafinil). After nine years of hard-fought litigation, the court approved a $512 million partial settlement, then the largest settlement ever for a case alleging delayed generic competition. (Case No. 2:06-cv-01797 (E.D. Pa.)). Subsequent non-class settlements pushed the total settlement figure even higher.

- ▪ ***In re Aggrenox Antitrust Litigation:*** Berger Montague represented a class of direct purchasers of Aggrenox in in an action alleging that defendants delayed the availability of

less expensive generic Aggrenox through, *inter alia*, unlawful reverse payment agreements. The case settled for $146 million. (Case No. 14-02516 (D. Conn.)).

▪ ***In re Asacol Antitrust Litigation:*** The firm served as class counsel for direct purchasers of Asacol HS and Delzicol in a case alleging that defendants participated in a scheme to block generic competition for the ulcerative colitis drug Asacol. The case settled for $15 million. (Case No. 15-cv-12730-DJC (D. Mass.)).

▪ ***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. The case settled for $220 million**.**  (MDL No. 1410 (S.D.N.Y.)).

▪ ***In re Cardizem CD Antitrust Litigation:*** Berger Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. The case settled for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

▪ ***In re Celebrex (Celecoxib) Antitrust Litigation***: The firm represented a class of direct purchasers of brand and generic Celebrex (celecoxib) in an action alleging that Pfizer, in violation of the Sherman Act, improperly obtained a patent for Celebrex from the U.S. Patent and Trademark Office in a scheme to unlawfully extend patent protection and delay market entry of generic versions of Celebrex. The case settled for $94 million. (Case No. 14-cv-00361 (E.D. VA.)).

▪ ***In re DDAVP Direct Purchaser Antitrust Litigation:*** Berger Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP. Berger Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent. (Case No. 05-2237 (S.D.N.Y.)).

▪ ***In re K-Dur Antitrust Litigation:*** Berger Montague served as co-lead counsel for the class in this long-running antitrust litigation. Berger Montague litigated the case before the Court of Appeals and won a precedent-setting victory and continued the fight before the Supreme Court. On remand, the case settled for $60.2 million. (Case No. 01-1652 (D.N.J.)).

- ▪ ***In re Loestrin 24 Fe Antitrust Litigation:*** Berger Montague served as co-lead counsel for the class of direct purchasers of brand Loestrin, generic Loestrin, and/or brand Minastrin. The direct purchaser class alleged that defendants violated federal antitrust laws by unlawfully impairing the introduction of generic versions of the prescription drug Loestrin 24 Fe. The case settled shortly before trial for $120 million. (Case No. 13-md-2472) (D.R.I.)).

- ▪ ***Meijer, Inc., et al. v. Abbott Laboratories:*** Berger Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws. Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra. This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California. (Case No. 07-5985 (N.D. Cal.)).

- ▪ ***Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.:*** Berger Montague served as co-lead counsel in a case challenging Warner Chilcott's alleged anticompetitive practices with respect to the branded drug Doryx. The case settled for $15 million. (Case No. 2:12-cv-03824 (E.D. Pa.)).

- ▪ ***In re Neurontin Antitrust Litigation:*** Berger Montague served as part of a small group of firms challenging the maintenance of a monopoly relating to the pain medication Neurontin. The case settled for $190 million. (Case No. 02-1830 (D.N.J.)).

- ▪ ***In re Nifedipine Antitrust Litigation:*** Berger Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the anti-hypertension drug Adalat (nifedipine). After eight years of hard-fought litigation, the court approved a total of $35 million in settlements. (Case No. 1:03-223 (D.D.C.)).

- ▪ ***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

- ▪ ***In re Oxycontin Antitrust Litigation:*** Berger Montague served as co-lead counsel on behalf of direct purchasers of the prescription drug Oxycontin. The case settled in 2011 for $16 million. (Case No. 1:04-md-01603 (S.D.N.Y)).

- *In re Prandin Direct Purchaser Antitrust Litigation:* Berger Montague served as co-lead counsel and recovered $19 million on behalf of direct purchasers of the diabetes medication Prandin. (Case No. 2:10-cv-12141 (E.D. Mich.)).

- *In re Relafen Antitrust Litigation:* Berger Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY (D. Mass.)).

- *In re Remeron Antitrust Litigation:* Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron. The case settled for $75 million. (2:02-CV-02007-FSH (D. N.J.)).

- *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.:* Berger Montague served as co-lead counsel on behalf of direct purchasers alleging sham litigation led to the delay of generic forms of the brand drug Miralax. The case settled for $17.25 million. (Case No. 07-142 (D. Del.)).

- *In re Skelaxin Antitrust Litigation:* Berger Montague was among a small group of firms litigating on behalf of direct purchasers of the drug Skelaxin. The case settled for $73 million. (Case No. 2:12-cv-83 / 1:12-md-02343) (E.D. Tenn.)).

- *In re Solodyn Antitrust Litigation:* Berger Montague served as co-lead counsel representing a class of direct purchasers of brand and generic Solodyn (extended-release minocycline hydrochloride tablets) alleging that defendants entered into agreements not to compete in the market for extended-release minocycline hydrochloride tablets in violation of the Sherman Act. With a final settlement on the eve of trial, the case settled for a total of more than $76 million. (Case No. 14-MD-2503-DJC (D. Mass.)).

- *In re Terazosin Antitrust Litigation:* Berger Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin. The case settled for $74.5 million. (Case No. 99-MDL-1317 (S.D. Fla.)).

- *In re Tricor Antitrust Litigation:* Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor. The case settled for $250 million. (No. 05-340 (D. Del.)).

- *In re Wellbutrin XL Antitrust Litigation:* Berger Montague served as co-lead counsel for a class of direct purchasers of the antidepressant Wellbutrin XL. A settlement of $37.5

million was reached with Valeant Pharmaceuticals (formerly Biovail), one of two defendants in the case. (Case No. 08-cv-2431 (E.D. Pa.)).

**Commercial Litigation**

Berger Montague helps business clients achieve extraordinary successes in a wide variety of complex commercial litigation matters. Our attorneys appear regularly on behalf of clients in high stakes federal and state court commercial litigation across the United States. We work with our clients to develop a comprehensive and detailed litigation plan, and then organize, allocate and deploy whatever resources are necessary to successfully prosecute or defend the case.

- ▪ ***Erie Power Technologies, Inc. v. Aalborg Industries A/S, et al.:*** Berger Montague represented a trustee in bankruptcy against officers and directors and the former corporate parent and obtained a very favorable confidential settlement. (No. 04-282E (W.D. Pa.)).

- ▪ ***Moglia v. Harris et al.:*** Berger Montague represented a liquidating trustee against the officers of U.S. Aggregates, Inc. and obtained a settlement of $4 million. (No. C 04 2663 (CW) (N.D. Cal.)).

- ▪ ***Gray v. Gessow et al.:*** The firm represented a litigation trust and brought two actions, one against the officers and directors of Sunterra Inc. an insolvent company, and the second against Sunterra's accountants, Arthur Andersen and obtained an aggregate settlement of $4.5 million. (Case No. MJG 02-CV-1853 (D. Md.) and No. 6:02-CV-633-ORL-28JGG (M.D. Fla.)).

- ▪ ***Fitz, Inc. v. Ralph Wilson Plastics Co.***: The firm served as sole lead counsel and obtained, after 7 years of litigation, in 2000 a settlement whereby fabricator class members could obtain full recoveries for their losses resulting from defendants' defective contact adhesives. (No. 1-94-CV-06017 (D.N.J.)).

- ▪ ***Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.:*** Berger Montague settled this individual claim, alleging a 10-year oral contract (despite six subsequent writings attempting to reduce terms to writing, each with materially different terms added, all of which were not signed), for a combined payment in cash and stock of the defendant, of $30 million. (No. 92-1964 (E.D. Pa.)).

- ▪ ***Marilou Whitney (Estate of Cornelius Vanderbilt Whitney) v. Turner/Time Warner:*** Berger Montague settled this individual claim for a confidential amount, seeking interpretation of the distribution agreement for the movie, *Gone with the Wind* and undistributed profits for the years 1993-1997, with forward changes in accounting and distribution.

- ▪ ***American Hotel Holdings Co., et. al v. Ocean Hospitalities, Inc., et. al.:*** Berger Montague defended against a claim for approximately $16 million and imposition of a

constructive trust, arising out of the purchase of the Latham Hotel in Philadelphia. Berger Montague settled the case for less than the cost of the trial that was avoided. (June Term, 1997, No. 2144 (Pa. Ct. Com. Pl., Phila. Cty.))

▪ **_Creative Dimensions and Management, Inc. v. Thomas Group, Inc.:_** Berger Montague defended this case against a claim for $30 million for breach of contract. The jury rendered a verdict in favor of Berger Montague's client on the claim (i.e., $0), and a verdict for the full amount of Berger Montague's client on the counterclaim against the plaintiff. (No. 96-6318 (E.D. Pa.)).

▪ **_Robert S. Spencer, et al. v. The Arden Group, Inc., et al._:** Berger Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner. The terms of the settlement are subject to a confidentiality agreement. (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

▪ **_Forbes v. GMH:_** Berger Montague represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities. The case which claimed securities fraud in connection with the transaction settled for a confidential sum which represented a significant portion of the losses experienced. (No. 07-cv-00979 (E.D. Pa.)).

**Commodities & Financial Instruments**

Berger Montague ranks among the country's preeminent firms for managing and trying complex Commodities & Financial Instruments related cases on behalf of individuals and as class actions. The firm's commodities clients include individual hedge and speculation traders, hedge funds, energy firms, investment funds, and precious metals clients.

● **_In re Peregrine Financial Group Customer Litigation:_** Berger Montague served as co-lead counsel in a class action which helped deliver settlements worth more than $75 million on behalf of former customers of Peregrine Financial Group, Inc., in litigation against U.S. Bank, N.A., and JPMorgan Chase Bank, N.A., arising from Peregrine's collapse in July 2012. The lawsuit alleges that both banks breached legal duties by allowing Peregrine's owner to withdraw and put millions of dollars in customer funds to non-customer use. (No. 1:12-cv-5546)

▪ **_In re MF Global Holdings Ltd. Investment Litigation_:** Berger Montague is one of two co-lead counsel that represented thousands of commodities account holders who fell victim to the alleged massive theft and misappropriation of client funds at the former major global commodities brokerage firm MF Global. Berger Montague reached a variety of settlements, including with JPMorgan Chase Bank, the MF Global SIPA Trustee, and the CME Group, that collectively helped to return approximately $1.6 billion to the class. Ultimately, class members received more than 100% of the funds allegedly misappropriated by MF Global even after all fees and expenses. (No. 11-cv-07866

(S.D.N.Y.).

▪ ***In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation***: Berger Montague is one of two co-lead counsel representing traders of traders of gold-based derivative contracts, physical gold, and gold-based securities against The Bank of Nova Scotia, Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, Société Générale and the London Gold Market Fixing Limited. Plaintiffs allege that the defendants, members of the London Gold Market Fixing Limited, which sets an important benchmark price for gold, conspired to manipulate this benchmark for their collective benefit. (1:14-md-02548 (S.D.N.Y.)).

▪ ***In re Libor-Based Financial Instruments Antitrust Litigation***: Berger Montague represents exchange-based investors in this sprawling litigation alleging a conspiracy among many of the world's largest banks to manipulate the key LIBOR benchmark rate. LIBOR plays an important role in valuing trillions of dollars of financial instruments worldwide. The case, filed in 2011, alleges that the banks colluded to misreport and manipulate LIBOR rates for their own benefit. The banks' conduct damaged, among others, exchange-based investors who transacted in Eurodollar futures and options on the CME between 2005 and 2010. Eurodollar futures and options are keyed to LIBOR and are the world's most heavily traded short-term interest rate contracts. Following years of hotly contested litigation on behalf of these exchange-based investors, Berger Montague and its co-counsel achieved settlements with seven banks totaling more than $180 million. In September 2019, the Court granted preliminary approval of a plan of distribution for these settlement funds. A final approval hearing on the settlement is scheduled in September 2020. (No. 1:11-md-02262-NRB (S.D.N.Y.)).

▪ ***Brown, et al. v. Kinross Gold, U.S.A., et al.***: Berger Montague was one of two co-lead counsel in this action alleging that a leading gold mining company illegally forced out preferred shareholders. The action resulted in a settlement of $29.25 million in cash and $6.5 million in other consideration (approximately 100% of damages and accrued dividends after fees and costs). (No. 02-cv-00605 (D.N.V.)).

**Consumer Protection**

Berger Montague's Consumer Protection Group protects consumers when they are injured by false or misleading advertising, defective products, data privacy breaches, and various other unfair trade practices. Consumers too often suffer the brunt of corporate wrongdoing, particularly in the area of false or misleading advertising, defective products, and data or privacy breaches.

● ***In re Public Records Fair Credit Reporting Act Litigation***: Berger Montague is class counsel in three class action settlements involving how the big three credit bureaus, Experian, TransUnion, and Equifax, report public records, including tax liens and civil judgments. The settlements provide groundbreaking injunctive relief valued at over $100 billion and provide streamlined a streamlined process for consumers to receive uncapped monetary payments for claims related to inaccurate reporting of public records.

▪ ***In re: CertainTeed Fiber Cement Siding Litigation***: The firm, as one of two Co-Lead Counsel firms obtained a settlement of more than $103 million in this multidistrict products liability litigation concerning CertainTeed Corporation's fiber cement siding, on behalf of a nationwide class. (MDL No. 2270 (E.D. Pa.)).

▪ ***Countrywide Predatory Lending Enforcement Action:*** Berger Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

● ***In re Experian Data Breach Litigation:*** Berger Montague served on the Executive Committee of this class action lawsuit that arose from a 2015 data breach at Experian in which computer hackers stole personal information including Social Security numbers and other sensitive personal information for approximately 15 million consumers. The settlement is valued at over $170 million. It consisted of $22 million for a non-reversionary cash Settlement Fund; $11.7 million for Experian's remedial measures implemented in connection with the lawsuit; and two years of free credit monitoring and identity theft insurance. The aggregate value of credit monitoring claimed by class members during the claims submission process exceeded $138 million, based on a $19.99 per month retail value of the service.

▪ ***In re Pet Foods Product Liability Litigation***: The firm served as one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food. The case settled for $24 million. Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover. (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

▪ ***In re TJX Companies Retail Security Breach Litigation***: The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history. The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers. The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs. Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60. (No. 1:07-cv-10162-WGY, (D. Mass.)).

▪ ***In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*** The firm served on the Executive Committee of this multidistrict litigation and obtained a

settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers. The breach was the largest known theft of credit card information in history. (No. 4:09-MD-2046 (S.D. Tex. 2009)).

▪ ***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***: The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rogue employee sold their information to unauthorized third parties. Settlement benefits included: (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief.  The settlement was approved by the court in 2010. (3:08-md-01998-TBR (W.D. Ky. 2008)).

▪ ***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation***: The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La.)).

▪ ***Vadino, et al. v. American Home Products Corporation, et al.:*** The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified. It was the only case anywhere in the country to include a claim for medical monitoring. In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion. (Case Code No. 240 (N.J. Super. Ct.)).

▪ ***Parker v. American Isuzu Motors, Inc.***: The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes. (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

▪ ***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system. After extensive discovery, a settlement was reached. (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

▪ ***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***: The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges. Counsel completed extensive discovery and class certification briefing. A settlement was reached while the decision on class certification was pending. The settlement consisted of remedies

including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects. (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

▪ ***Crawford v. Philadelphia Hotel Operating Co.:*** The firm served as co-lead counsel and obtained a settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each. (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

▪ ***Block v. McDonald's Corporation:*** The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its French fries. (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

## Corporate Governance and Shareholder Rights

Berger Montague protects the interests of individual and institutional investors in shareholder derivative actions in state and federal courts across the United States. Our attorneys help individual and institutional investors reform poor corporate governance, as well as represent them in litigation against directors of a company for violating their fiduciary duty or provide guidance on shareholder rights.

● ***Emil Rossdeutscher and Dennis Kelly v. Viacom:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class. (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

● ***Fox v. Riverview Realty Partners, f/k/a Prime Group Realty Trust, et al.:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $8.25 million for the class.

## Employee Benefits & ERISA

Berger Montague represents employees who have claims under the federal Employee Retirement Income Security Act. We litigate cases on behalf of employees whose 401(k) and pension investments have suffered losses as a result of the breach of fiduciary duties by plan administrators and the companies they represent. Berger Montague has recovered hundreds of millions of dollars in lost retirement benefits for American workers and retirees, and also gained favorable changes to their retirement plans.

▪ ***In re Unisys Corp. Retiree Medical Benefits:*** The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

▪ ***Local 56 U.F.C.W. v. Campbell Soup Co.:*** The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree

medical benefits.  A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D.N.J.)).

▪  **Rose v. Cooney**: The firm, acting as lead counsel, obtained more than $29 million in cash and payment guarantees from Xerox Corporation to resolve claims of breach of fiduciary duty for plan investments in interest contracts issued by Executive Life Insurance Company. (No. 5:92-CV-208 (D. Conn.)).

▪  **In re Masters, Mates & Pilots Pension Plan and IRAP Litig.:** The firm, as co-lead counsel, participated in lengthy litigation with the U.S. Department of Labor to recover losses to retirement plans resulting from imprudent and prohibited investments; settlements in excess of $20 million, which fully recovered lost principal, were obtained to resolve claims of fiduciary breaches in selecting and monitoring investment managers and investments. (No. 85 Civ. 9545 (VLB) (S.D.N.Y)).

▪  **In re Lucent Technologies, Inc. ERISA Litigation**: The firm served as co-lead counsel in this class action on behalf of participants and beneficiaries of the Lucent defined contribution plans who invested in Lucent stock, and secured a settlement providing injunctive relief and for the payment of $69 million. (No. 01-CV-3491 (D.N.J.)).

▪  **Diebold v. Northern Trust Investments, N.A.**: As co-lead counsel in this ERISA breach of fiduciary duty case, the firm secured a $36 million settlement on behalf of participants in retirement plans who participated in Northern Trust's securities lending program. Plaintiffs alleged that defendants breached their ERISA fiduciary duties by failing to manage properly two collateral pools that held cash collateral received from the securities lending program. The settlement represented a recovery of more than 25% of alleged class member losses. (No. 1:09-cv-01934 (N.D. Ill.)).

▪  **In re SPX Corporation ERISA Litigation**: The firm recovered 90% of the estimated losses 401(k) plan participants who invested in the SPX stock fund claimed they suffered as a result of defendants' breaches of their ERISA fiduciary duties caused them. (No. 3:04-cv-192 (W.D.N.C.)).

▪  **In re Nortel Networks ERISA Litigation**: The firm represented a class of former workers of the bankrupt telecommunications company of mismanaging their employee stock fund in violation of their fiduciary duties. The case settled for $21.5 million. (Civil Action No. 01-cv-1855 (MD Tenn.)).

▪  **Glass Dimensions, Inc. v. State Street Bank & Trust Co.**: The firm served as co-lead counsel in this ERISA case that alleged that defendants breached their fiduciary duties to the retirement plans it managed by taking unreasonable compensation for managing the securities lending program in which the plans participated. After the court certified a class of the plans that participated in the securities lending program at issue, the case settled

for $10 million on behalf of 1,500 retirement plans that invested in defendants' collective investment funds. (No. 1:10-cv-10588-DPW (D. Mass)).

- ▪ ***In re Eastman Kodak ERISA Litigation***: The firm served as class counsel in this ERISA breach of fiduciary duty class action which alleged that defendants breached their fiduciary duties to Kodak retirement plan participants by allowing plan investments in Kodak common stock. The case settled for $9.7 million. (Master File No. 6:12-cv-06051-DGL (W.D.N.Y.)).

- ▪ ***Lequita Dennard v. Transamerica Corp. et al.***: The firm served as counsel to plan participants who alleged that they suffered losses when plan fiduciaries failed to act solely in participants' interests, as ERISA requires, when they selected, removed and monitored plan investment options. The case settled for structural changes to the plan and $3.8 million monetary payment to the class. (Civil Action No. 1:15-cv-00030-EJM (N.D. Iowa)).

## Employment & Unpaid Wages

The Berger Montague Employment & Unpaid Wages Department works tirelessly to safeguard the rights of employees and devotes all of their energies to helping the firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

Berger Montague is at the forefront of class action litigation, seeking remedies for employees under the Fair Labor Standards Act, state wage and hour law, breach of contract, unjust enrichment, and other state common law causes of action.

Berger Montague's Employment & Unpaid Wages Group, which is co-chaired by Managing Shareholder Shanon Carson and Shareholder Sarah Schalman-Bergen, is repeatedly recognized for outstanding success in effectively representing its clients. In 2015, *The National Law Journal* selected Berger Montague as the top plaintiffs' law firm in the Employment Law category at the Elite Trial Lawyers awards ceremony. Portfolio Media, which publishes *Law360*, also recognized Berger Montague as one of the eight Top Employment Plaintiffs' Firms in 2009.

Representative cases include the following:

- ▪ ***Fenley v. Wood Group Mustang, Inc***: The firm served as lead counsel and obtained a settlement of $6.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-326 (S.D. Ohio)).

- ▪ ***Sanders v. The CJS Solutions Group, LLC***: The firm served as co-lead counsel and obtained a settlement of $3.24 million on behalf of a class of IT healthcare consultants

who allegedly did not receive overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 17-3809 (S.D.N.Y.)).

▪ **Gundrum v. Cleveland Integrity Services, Inc.:** The firm served as lead counsel and obtained a settlement of $4.5 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 4:17-cv-55 (N.D. Okl.)).

▪ **Fenley v. Applied Consultants, Inc.:** The firm served as lead counsel and obtained a settlement of $9.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-259 (W.D. Pa.)).

▪ **Acevedo v. Brightview Landscapes, LLC:** The firm served as co-lead counsel and obtained a settlement of $6.95 million on behalf of a class of landscaping crew members who allegedly did not receive proper overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 3:13-cv-02529 (M.D. Pa.)).

▪ **Jantz v. Social Security Administration:** The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities.  The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions.  The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. (EEOC No. 531-2006-00276X (2015)).

▪ **Ciamillo v. Baker Hughes, Incorporated:** The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who allegedly did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

▪ **Employees Committed for Justice v. Eastman Kodak Company:** The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval). A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss). No. 6:04-cv-06098 (W.D.N.Y.)).

▪ **Salcido v. Cargill Meat Solutions Corp.:** The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks. This is one of the largest settlements of this type of case involving a single

plant in U.S. history. (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

▪ ***Miller v. Hygrade Food Products, Inc.:*** The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant. (No. 99-1087 (E.D. Pa.)).

▪ ***Chabrier v. Wilmington Finance, Inc.:*** The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class). (No. 06-4176 (E.D. Pa.)).

▪ ***Bonnette v. Rochester Gas & Electric Co.:*** The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment. (No. 07-6635 (W.D.N.Y.)).

▪ ***Confidential***: The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Environment & Public Health

Berger Montague lawyers are trailblazers in the fields of environmental class action litigation and mass torts. Our attorneys have earned their reputation in the fields of environmental litigation and mass torts by successfully prosecuting some of the largest, most well-known cases of our time. Our Environment & Public Health Group also prosecutes significant claims for personal injury, commercial losses, property damage, and environmental response costs. In 2016, Berger Montague was named an Elite Trial Lawyer Finalist in special litigation (environmental) by *The National Law Journal*.

▪ ***Cook v. Rockwell International Corporation:*** In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium from the former Rocky Flats nuclear weapons site northwest of Denver, Colorado. Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million. Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Merrill G. Davidoff, David F. Sorensen, and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants." (No. 90-cv-00181-JLK (D. Colo.)). The jury verdict in that case was vacated on appeal in 2010, but

on a second trip to the Tenth Circuit, Plaintiffs secured a victory in 2015, with the case then being sent back to the district court. A $375 million settlement was reached in May 2016, and final approval by the district court was obtained in April 2017.

▪ ***In re Exxon Valdez Oil Spill Litigation***: On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. The award was reduced to $507.5 million pursuant to a Supreme Court decision.  David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts). Harold Berger served as a member of the organizing case management committee. H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Alaska)).

▪ ***In re Ashland Oil Spill Litigation***: The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa.)).

▪ ***State of Connecticut Tobacco Litigation:*** Berger Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

▪ ***In re School Asbestos Litigation***: As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.)).

▪ ***Drayton v. Pilgrim's Pride Corp.:*** The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time. A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp. 2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine). All of the cases settled on confidential terms in 2006. (No. 03-2334 (E.D. Pa.)).

▪ ***In re SEPTA 30th Street Subway/Elevated Crash Class Action:*** Berger Montague represented a class of 220 persons asserting injury in a subway crash. Despite a statutory

cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the public carrier in the investigation by the National Highway Transit Safety Administration, Berger Montague was able to recover an aggregate of $3.03 million for the class. (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

- **In re Three Mile Island Litigation:**  As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved. (C.A. No. 79-0432 (M.D. Pa.)).

- **In re Louisville Explosions Litigation:** This case was one of the earliest examples of a class action trial of an environmental class action. It redressed damage to private property owners and employees resulting from a February 13, 1981 sewer explosion which was one of the largest explosion mishaps in U.S. history. In February, 1984 the matter went to trial, and after the plaintiffs' case and the denial of motions for direct verdict the litigation settled for net payments to the class members of 100% to 300% or more of direct monetary damages, depending on their zone's distance from the streets that exploded. Claimants lined up near the claims office for blocks to file claims. Mr. Davidoff was lead counsel and lead trial counsel. (No. CV 81-0080, W.D. Ky.).

## Insurance Fraud

When insurance companies and affiliated financial services entities engage in fraudulent, deceptive or unfair practices, Berger Montague helps injured parties recover their losses. We focus on fraudulent, deceptive and unfair business practices across all lines of insurance and financial products and services sold by insurers and their affiliates, which include annuities, securities and other investment vehicles.

- **Spencer v. Hartford Financial Services Group, Inc.:**  The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims. To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life. By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants. On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)). On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f). On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

- ▪ ***Nationwide Mutual Insurance Company v. O'Dell:*** The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West Virginia Circuit Court, Roane County (*Nationwide Mutual Insurance Company v. O'Dell*, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31. The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act. On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

**Predatory Lending and Borrowers' Rights**

Berger Montague's attorneys fight vigorously to protect the rights of borrowers when they are injured by the practices of banks and other financial institutions that lend money or service borrowers' loans. Berger Montague has successfully obtained multi-million-dollar class action settlements for nationwide classes of borrowers against banks and financial institutions and works tirelessly to protect the rights of borrowers suffering from these and other deceptive and unfair lending practices.

- ▪ ***Coonan v. Citibank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Citibank and its affiliates in the United States District Court for the Northern District of New York concerning alleged kickbacks Citibank received in connection with its force-placed insurance programs. The firm obtained a settlement of $122 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Arnett v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the District of Oregon concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $31 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Clements v. JPMorgan Chase Bank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against JPMorgan Chase and its affiliates in the United States District Court for the Northern District of California concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $22,125,000 on behalf of a class of thousands of borrowers.

- ▪ ***Holmes v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the Western District of North Carolina concerning alleged kickbacks received in

connection with its force-placed wind insurance program. The firm obtained a settlement of $5.05 million on behalf of a class of thousands of borrowers.

**Securities & Investor Protection**

In the area of securities litigation, the firm has represented public institutional investors – such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which jury verdicts of $88.2 million and a RICO judgment of $239 million were obtained. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors.

▪ *In re Merrill Lynch Securities Litigation:* Berger Montague, as co-lead counsel, obtained a recovery of $475 million for the benefit of the class in one of the largest recoveries among the recent financial crisis cases. (No. 07-cv-09633 (S.D.N.Y.)).

▪ *In re Sotheby's Holding, Inc. Securities Litigation*: The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant. (No. 00-cv-1041 (DLC) (S.D.N.Y.)).

▪ *In re: Oppenheimer Rochester Funds Group Securities Litigation:* The firm, as co-lead counsel, obtained a $89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc. (No. 09-md-02063-JLK (D. Col.)).

▪ *In re KLA Tencor Securities Litigation:* The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.)).

▪ *Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:* The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and obtained a settlement valued in excess of $99 million settlement. (C.A. No. 2202-CC (Del. Ch.)).

▪ *In re Sepracor Inc. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes. (No. 02-cv-12235-MEL (D. Mass.)).

▪ *In re CIGNA Corp. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-cv-8088 (E.D. Pa.)).

23

- ▪ ***In re Fleming Companies, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

- ▪ ***In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*** The firm, as co-lead counsel in the ***securities*** actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

- ▪ ***In re NetBank, Inc. Securities Litigation:*** The firm served as lead counsel in this certified class action on behalf of the former common shareholders of NetBank, Inc. The $12.5 million settlement, which occurred after class certification proceedings and substantial discovery, is particularly noteworthy because it is one of the few successful securities fraud class actions litigated against a subprime lender and bank in the wake of the financial crisis. (No. 07-cv-2298-TCB (N.D. Ga.)).

- ▪ ***Brown v. Kinross Gold U.S.A. Inc.:*** The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371. (No. 02-cv-0605 (D. Nev.)) All class members recovered 100% of their damages <u>after</u> fees and expenses.

- ▪ ***In re Campbell Soup Co. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (No. 00-cv-152 (JEI) (D.N.J.)).

- ▪ ***In re Premiere Technologies, Inc. Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (No.1:98-cv-1804-JOF (N.D. Ga.)).

- ▪ ***In re PSINet, Inc., Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (No. 00-cv-1850-A (E.D. Va.)).

- ▪ ***In re Safety-Kleen Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained a class  settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (No. 3:00-cv-736-17 (D.S.C.)).

- ▪ ***The City Of Hialeah Employees' Retirement System v. Toll Brothers, Inc.:*** The firm, as co-lead counsel, obtained a class settlement of $25 million against Home Builder Toll Brothers, Inc. (No. 07-cv-1513 (E.D. Pa.)).

- ▪ ***In re Rite Aid Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (No. 99-cv-1349 (E.D. Pa.)).

▪   ***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel and designated lead trial counsel (by Mr. Davidoff), the firm obtained a settlement on behalf of investors of $142 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (No. 98-cv-8258 (S.D. Fla.)).

▪   ***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (No. 97-cv-7709 (N.D. Ill.)).

▪   ***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers. (MDL Dkt. No. 1318 (E.D. Pa.)).

▪   ***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-lead trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $57.5 million. (No. 87-cv-1426 FR (D. Ore.)).

▪   ***Aldridge v. A.T. Cross Corp.:*** The firm represented a class of investors in a securities fraud class action against A.T. Cross, and won a significant victory in the U.S. Court of Appeals for the First Circuit when that Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case ultimately settled for $1.5 million. (C.A. No. 00-203 ML (D.R.I.)).

▪   ***Silver v. UICI:*** The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99-cv-2860-L (N.D. Tex.)).

▪   ***In re Alcatel Alsthom Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

▪   ***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. Reported at:  881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

▪   ***In re The Drexel Burnham Lambert Group, Inc.:*** The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on

April 30, 1992. (No. 90-cv-6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

▪ ***In re Michael Milken and Associates Securities Litigation:*** As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.)).

▪ ***RJR Nabisco Securities Litigation:*** The firm represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million.  (No. 88-cv-7905 MBM (S.D.N.Y.)).

▪ ***Qwest Securities Action:*** The firm represented New Jersey in an opt-out case against Qwest and certain officers, which was settled for $45 million. (C.A. No. L-3838-02 (Superior Court New Jersey, Law Division)).

**Whistleblower, *Qui Tam*, and False Claims Act**

Berger Montague has represented whistleblowers in matters involving healthcare fraud, defense contracting fraud, IRS fraud, securities fraud, and commodities fraud, helping to return more than $3 billion to federal and state governments. In return, whistleblower clients retaining Berger Montague to represent them in state and federal courts have received more than $500 million in rewards. Berger Montague's time-tested approach in whistleblower/*qui tam* representation involves cultivating close, productive attorney-client relationships with the maximum degree of confidentiality for our clients.

**Judicial Praise for Berger Montague Attorneys**

Berger Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks in the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

**Antitrust**

From **Judge William E. Smith**, of the U.S. District Court for the District of Rhode Island:

"The degree to which you all litigated the case is – you know, I can't imagine attorneys litigating a case more rigorously than you all did in this case. It seems like every conceivable, legitimate, substantive dispute that could have been fought over was fought over to the max. So you, both sides, I think litigated the case as vigorously as any group of attorneys could. The level of representation of all parties in terms of the sophistication of counsel was, in my view, of the highest levels. I can't imagine a case in which there was really a higher quality of representation across the board than this one."

Transcript of the August 27, 2020 Hearing in *In re Loestrin 24 Fe Antitrust Litigation*, No. 13-md-02472 (D.R.I.).

From **Judge Margo K. Brodie,** of the U.S. District Court for the Eastern District of New York:

> "Class counsel has without question done a tremendous job in litigating this case. They represent some of the best plaintiff-side antitrust groups in the country, and the size and skill of the defense they litigated against cannot be overstated. They have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required…"

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-01720 (E.D.N.Y. 2019) (Mem. & Order).

From **Judge Brian M. Cogan**, of the U.S. District Court of the Eastern District of New York:

> "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

Transcript of the June 24, 2019 Fairness Hearing in *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696 (E.D.N.Y.).

From **Judge Michael M. Baylson**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[C]ounsel…for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of the very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."

Transcript of the June 28, 2018 Hearing in *In re Domestic Drywall Antitrust Litigation*, No. MD-13-2437 at 11:6-11.

From **Judge Madeline Cox Arleo,** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> "I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should

be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express."

Transcript of the September 9 to 11, 2015 Daubert Hearing in ***Castro v. Sanofi Pasteur***, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

"Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

\* \* \*

"Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues …. The law firms of Berger Montague and Coughlin Stoia were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

***In re Currency Conversion Fee Antitrust Litigation***, 263 F.R.D. 110, 129 (2009).

From **Judge Faith S. Hochberg,** of the United States District court for the District of New Jersey:

"[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

***In re Remeron Antitrust Litig.***, Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

"[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).

From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

"[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).

From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . .There is no question that the results achieved by class counsel were extraordinary [.]"

Regarding the work of Berger Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte,** of the U.S. District Court for the District of Maryland:

"The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen,** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

***Bogosian v. Gulf Oil Corp.***, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> "Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result."

***In re Art Materials Antitrust Litigation***, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld,** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

***In re Master Key Antitrust Litigation***, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

**Securities & Investor Protection**

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

> Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply  has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett… [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

*In re U.S. Bioscience Secs. Litig.*, No. 92-0678 (E.D. Pa. April 4, 1994).

From **Judge Wayne Andersen** of the U.S. District Court for the Northern District of Illinois:

> "[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases…in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here…I would say this has been the best representation that I have seen."

*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999).

From **Chancellor William Chandler, III** of the Delaware Chancery Court:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case. And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do. I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes."

> "Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. In short, it would be hard to equal the skill class counsel demonstrated here."

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).

From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

> "In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

> \* \* \*

> "Throughout the course of their representation, the attorneys at Berger Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

> "[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines

and the pressure of handling thousands of documents in a large multi-district action... These counsel have also acted vigorously in their clients' interests...."

\* \* \*

"The management of the case was also of extremely high quality....  [C]lass counsel is of high caliber and has extensive experience in similar class action litigation....   The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

"In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger Montague...."

\* \* \*

"Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

**Civil/Human Rights Cases**

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

"We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them.... For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

**Insurance Litigation**

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

> Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case….[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent….  [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense….  [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny….  [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

Regarding the work of Berger Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

**Customer/Broker Arbitrations**

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

**Employment & Unpaid Wages**

From **Judge Timothy R. Rice**, United States Magistrate Judge for the U.S. District Court for the Eastern District of Pennsylvania:

> Describing Berger Montague as "some of the finest legal representation in the nation," who are "ethical, talented, and motivated to help hard working men and women."

Regarding the work of Berger Montague attorneys Sarah R. Schalman-Bergen and Camille F. Rodriguez in *Gonzalez v. Veritas Consultant Group, LLC, d/b/a Moravia Health Network*, No. 2:17-cv-1319-TR (E.D. Pa. March 13, 2019).

From **Judge Malachy E. Mannion**, United States District Judge for the U.S. District Court for the Middle District of Pennsylvania:

> "At the final approval hearing, class counsel reiterated in detail the arguments set forth in the named plaintiffs' briefing. … The court lauded the parties for their extensive work in reaching a settlement the court deemed fair and reasonable.
>
> *    *    *
>
> "The court is confident that [class counsel] are highly skilled in FLSA collective and hybrid actions, as seen by their dealings with the court and the results achieved in both negotiating and handling the settlement to date."

*Acevedo v. Brightview Landscapes, LLC*, No. 3:13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017).

From **Judge Joseph F. Bataillon**, United States District Judge for the U.S. District Court for the District of Nebraska:

> [P]laintiffs' counsel succeeded in vindicating important rights. … The court is familiar with "donning and doffing" cases and based on the court's experience, defendant meat packing companies' litigation conduct generally reflects "what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA." (citation omitted). Plaintiffs' counsel perform a recognized public service in prosecuting these actions as a 'private Attorney General' to protect the rights of underrepresented workers.
>
> The plaintiffs have demonstrated that counsel's services have benefitted the class. … The fundamental policies of the FLSA were vindicated and the rights of the workers were protected.

Regarding the work of Berger Montague among other co-counsel in *Morales v. Farmland Foods, Inc.*, No. 8:08-cv-504, 2013 WL 1704722 (D. Neb. Apr. 18, 2013).

From **Judge Jonathan W. Feldman**, United States Magistrate Judge for the U.S. District Court for the Western District of New York:

> "The nature of the instant application obliges the Court to make this point clear: In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms."

> and

> "…the Court would be remiss if it did not commend class counsel and all those who worked for firms representing the thousands of current and former employees of Kodak for the outstanding job they did in representing the interests of their clients. For the last several years, lead counsel responsibilities were shared by Shanon Carson …. Their legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach."

**Employees Committed For Justice v. Eastman Kodak,** (W.D.N.Y. 2010) ($21.4 million settlement).

**Other**

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia. We appreciate the considerable time you spent preparing and delivering this important course across the state. It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

**Our Founding Partner and Attorneys**

**Founding Partner**

**David Berger – *1912-2007***
David Berger was the founder and the Chairman of Berger Montague. He received his A.B. *cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania. He was a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*. He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts. He also served as a Special Assistant Dean of the University of Pennsylvania Law School. He was a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania. In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court. He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II. He was a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942. After the sinking of the Hornet, Admiral Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander. He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals. The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger was a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he was a former Dean. He was a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

A former Chancellor (President) of the Philadelphia Bar Association, he served on numerous committees of the American Bar Association and was a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's committee which designed high speed rail lines between Washington and Boston. He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States. When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization. Through this work, Mr. Berger ensured the survival of the major railroads in

the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice included clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States. David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm were lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases. He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s. The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident. As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low-level radiation.

In addition, as lead counsel in *In re Asbestos School Litigation*, he brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $200 million.

David Berger was active in Democratic politics. President Clinton appointed David Berger a member of the United States Holocaust Memorial Council, in which capacity he served from 1994-2004. In addition to his having served for seven years as the chief legal officer of Philadelphia, he was a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger was prominent in a great many philanthropic and charitable enterprises some of which are as follows: He was the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He was on the Board of the Jewish Federation of Philadelphia and, at his last place of residence, Palm Beach, as Honorary Chairman of the American Heart Association, Trustee of the American Cancer Society, a member of the Board of Directors of the American Red Cross, and active in the Jewish Federation of Palm Beach County.

David Berger's principal hobby was tennis, a sport in which he competed for over 60 years. He was a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world-wide basis.

**Firm Chair**

**Eric L. Cramer – Chairman**

Mr. Cramer is Chairman of the Firm and Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in the area of antitrust class actions. He is currently co-lead counsel in multiple significant antitrust class actions across the country in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $3 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters, luxury retail workers, and chicken growers.

In 2020, *Law360* named Mr. Cramer a Titan of the Plaintiffs Bar, and *Who's Who Legal* identified him as a Global Elite Thought Leader, stating that he "comes recommended by peers as a top name for antitrust class action proceedings." In 2019, *The National Law Journal* awarded Mr. Cramer the 2019 Keith Givens Visionary Award, which was developed to honor an outstanding trial lawyer who has moved the industry forward through his or her work within the legal industry ecosystem, demonstrating excellence in all aspects of work from client advocacy to peer education and mentoring. In 2018, he was named Philadelphia antitrust "Lawyer of the Year" by *Best Lawyers*, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). In that case, Mr. Cramer represented a national class of physicians challenging Sanofi Pasteur with anticompetitive conduct in the market for meningitis vaccines, resulting in a settlement of more than $60 million for the class. He has also been identified as a top tier antitrust lawyer by *Chambers & Partners* in Pennsylvania and nationally. In 2020, *Chambers & Partners* observed that Mr. Cramer is "a fantastic lawyer…He has real trial experience and is very capable and super smart."  He has been highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation and repeatedly deemed one of the "Best Lawyers in America," including for 2021. In 2014 and 2018, Mr. Cramer was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia.

Mr. Cramer is also a frequent speaker at antitrust and litigation related conferences and a leader of multiple non-profit advocacy groups. He is President of the Board of Directors of Public Justice, a national public interest advocacy group and law firm; a Senior Fellow and Vice President of the Board of Directors of the American Antitrust Institute; a past President of COSAL (Committee to Support the Antitrust Laws), a leading industry group; and a member of the Advisory Board of the Institute of Consumer Antitrust Studies of the Loyola University Chicago School of Law. He was the only Plaintiffs' lawyer selected to serve on the American Bar Association's Antitrust Section Transition Report Task Force delivered to the incoming Obama Administration in 2012.

He has written widely in the fields of class certification and antitrust law. Among other writings, Mr. Cramer has co-authored *Antitrust, Class Certification, and the Politics of Procedure*, 17 George Mason Law Review 4 (2010), which was cited by both the First Circuit in *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015), *quoting* Davis & Cramer, 17 Geo. Mason L. Rev. 969, 984-85 (2010), and the Third Circuit in *Behrend v. Comcast Corp.*, 655 F.3d 182, 200, n.10 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1426 (2013). He has also co-written a number of other pieces, including: *Of Vulnerable Monopolists?: Questionable Innovation in the Standard*

*for Class Certification in Antitrust Cases*, 41 Rutgers Law Journal 355 (2009-2010); *A Questionable New Standard for Class Certification in Antitrust Cases*, published in the ABA's Antitrust Magazine, Vol. 26, No. 1 (Fall 2011); a Chapter of American Antitrust Institute's Private International Enforcement Handbook (2010), entitled "*Who May Pursue a Private Claim*?"; and a chapter of the American Bar Association's Pharmaceutical Industry Handbook (July 2009), entitled "Assessing Market Power in the Prescription Pharmaceutical Industry."

Mr. Cramer is a *summa cum laude* graduate of Princeton University (1989), where he earned membership in *Phi Beta Kappa.* He graduated *cum laude* from Harvard Law School with a J.D. in 1993.

### Managing Shareholders

**Sherrie R. Savett – Chair *Emeritus* & Managing Shareholder**
Sherrie R. Savett, Chair *Emeritus* of the Firm, Co-Chair of the Securities Litigation Department and *Qui Tam*/False Claims Act Department, and member of the Firm's Management Committee, has practiced in the areas of securities litigation, class actions, and commercial litigation since 1975.

Ms. Savett serves or has served as lead or co-lead counsel or as a member of the executive committee in a large number of important securities and consumer class actions in federal and state courts across the country, including:

- ***In re Alcatel Alsthom Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.));
- ***In re CIGNA Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-cv-8088 (E.D. Pa.));
- ***In re Fleming Companies, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (No. 5-03-MD-1530 (TJW) (E.D. Tex.));
- ***In re KLA Tencor Securities Litigation***: The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.));
- ***Medaphis/Deloitte & Touche*** (class settlement of $96.5 million) (No. 1:96-CV-2088-FMH (N.D. GA));
- ***In re Rite Aid Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (No. 99-cv-1349) (E.D. Pa.));
- ***In re Sotheby's Holding, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00-cv-1041 (DLC) (S.D.N.Y.));

- ***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash, which included a settlement against Waste Management's outside accountants. (No. 97-cv-7709 (N.D. Ill.)); and

- ***In re Xcel Inc. Securities, Derivative & "ERISA" Litigation***: The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

Ms. Savett has helped establish several significant precedents. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the anti-fraud provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that municipalities that issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir. 1996).

In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993).

In the *CIGNA Corp. Securities Litigation*, the Court denied defendants' motion for summary judgment, holding that a plaintiff has a right to recover for losses on shares held at the time of a corrective disclosure and his gains on a stock should not offset his losses in determining legally recoverable damages. *In re CIGNA Corp. Securities Litigation*, 459 F. Supp. 2d 338 (E.D. Pa. 2006).

Additionally, Ms. Savett has become increasingly well-known in the area of consumer litigation, achieving a groundbreaking $24 million settlement in 2008 in the *Menu Foods* case brought by pet owners against manufacturers of allegedly contaminated pet food. *(In re Pet Food Products Liability Litigation*, MDL Docket No. 1850 (D.N.J. 2007).

In the data breach area, she was co-lead counsel in *In re TJX Retail Securities Breach Litigation*, MDL Docket No. 1838 (D. Mass.), the first very large data breach case where hackers stole personal information from 45 million consumers. The settlement, which became the template for future data breach cases, consisted of providing identity theft insurance to those whose social security or driver's license numbers were stolen, a cash fund for actual damages and time spent mitigating the situation, and injunctive relief.

Ms. Savett also litigated a case on behalf of the City of Philadelphia titled *City of Philadelphia v. Wells Fargo & Co.*, No. 17-cv-02203 (E.D. Pa.), involving alleged violations of the Fair Housing Act. The case was resolved in 2019 with a settlement providing $10 million to go to citizens of

41

Philadelphia for down payment assistance, to local agencies to assist homeowners in foreclosure, and for greening and cleaning foreclosed properties in Philadelphia which blight neighborhoods.

In the past decade, she has also actively worked in the False Claims Act arena. She was part of the team that litigated over more than a decade and settled the Average Wholesale Price *qui tam* cases, which collectively settled for more than $1 billion.

Ms. Savett speaks and writes frequently on securities litigation, consumer class actions and False Claims Act litigation. She is a lecturer and panelist at the University of Pennsylvania Law School on the subjects of Securities Law and the False Claims Act/*Qui Tam* practice from the whistleblower's perspective. She has also lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions and on False Claims Act Litigation. She is frequently invited to present and serve as a panelist in American Bar Association, American Law Institute/American Bar Association and Practicing Law Institute (PLI) conferences on securities class action litigation and the use of class actions in consumer litigation. She has been a presenter and panelist at PLI's Securities Litigation and Enforcement Institute annually from 1995 to 2010. She has also spoken at major institutional investor and insurance industry conferences, and DRI – the Voice of the Defense Bar. In February 2009, she was a member of a six-person panel who presented an analysis of the current state of securities litigation before more than 1,000 underwriters and insurance executives at the PLUS (Professional Liability Underwriting Society) Conference in New York City. She has presented at the Cyber-Risk Conference in 2009, as well as the PLUS Conference in Chicago on November 16, 2009 on the subject of litigation involving security breaches and theft of personal information.

Most recently, in April 2019, she spoke as a panelist at PLI's Securities Litigation 2019: From Investigation to Trial program. Her panel was titled "Commencement of a Civil Action: Filing the Complaint, Preparing the Motion to Dismiss, Coordinating Multiple Securities Litigation Actions." Ms. Savett also co-authored an article for the program that was published in PLI's *Corporate Law and Practice Court Handbook Series*. The article is titled "After the Fall—A Plaintiff's Perspective."

In 2015 and 2016, she served as a panelist in American Law Institute programs held in New York City called "Securities and Shareholder Litigation: Cutting-Edge Developments, Planning and Strategy." Ms. Savett also spoke at the 2013 ABA Litigation Section Annual Conference in Chicago on two panels. One program on securities litigation was entitled "The Good, The Bad, and The Ugly: Ethical Issues in Class Action Settlements and Opt Outs." The other program focused on consumer class actions in the real estate area and was entitled "The Foreclosure Crisis Puzzle: Navigating the Changing Landscape of Foreclosure."

In May 2007, Ms. Savett spoke in Rome, Italy at the conference presented by the Litigation Committee of the Dispute Resolution Section of the International Bar Association and the Section of International Law of the American Bar Association on class certification. Ms. Savett participated in a mock hearing before a United States Court on whether to certify a worldwide class action that includes large numbers of European class members.

Ms. Savett has written numerous articles on securities and complex litigation issues in professional publications, including:

- "After the Fall – A Plaintiff's Perspective," with Phyllis M. Parker, *PLI Corporate Law and Practice Course Handbook Series No. B-2475*, pg. 73-105, April 2019
- "Plaintiffs' Vision of Securities Litigation: Current Trends and Strategies," 1762 *PLL* October 2009
- "Primary Liability of 'Secondary' Actors Under the PSLRA," I *Securities Litigation Report*, (Glasser) November 2004
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," 1442 *PLI! Corp.13*, September – October 2004
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SJ084 ALI-ABA 399, May 13-14, 2004
- "The 'Indispensable Tool' of Shareholder Suits," *Directors & Boards*, Vol. 28, February 18, 2004
- "Plaintiffs Perspective on How to Obtain Class Certification in Federal Court in a Non-Federal Question Case," 679 *PLI*, August 2002
- "Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley From a Plaintiffs Perspective," 9 *Securities Litigation and Regulation Reporter* (Andrews), December 23, 2003
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SG091 ALI-ABA, May 2-3, 2002
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SF86 ALI-ABA 1023, May 10, 2001
- "Greetings From the Plaintiffs' Class Action Bar: We'll be Watching," SE082 ALI-ABA739, May 11, 2000
- "Preventing Financial Fraud," B0-00E3 *PLJB0-00E3* April – May 1999
- "Shareholders Class Actions in the Post Reform Act Era," SD79 ALI-ABA 893, April 30, 1999
- "What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action," with Arthur Stock, *PLI*, ALI/ABA 7239, November 1998
- "The Merits Matter Most: Observations on a Changing Landscape Under the Private Securities Litigation Reform Act of 1995," 39 *Arizona Law Review* 525, 1997
- "Everything David Needs to Know to Battle Goliath," ABA Tort & Insurance Practice Section, The Brief, Vol. 20, No.3, Spring 1991
- "The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy," *PLIH4-0528*, September 1, 1987
- "Prosecution of Derivative Actions: A Plaintiffs Perspective," *PLIH4-5003*, September 1, 1986

Ms. Savett is widely recognized as a leading litigator and a top female leader in the profession by local and national legal rating organizations.

In 2019, *The Legal Intelligencer* named Ms. Savett a "Distinguished Leader," and in 2018 she was named to the *Philadelphia Business Journal's* 2018 Best of the Bar: Philadelphia's Top Lawyers.

*The Legal Intelligencer* and *Pennsylvania Law Weekly* named her one of the "56 Women Leaders in the Profession" in 2004.

In 2003-2005, 2007-2013, and 2015-2016, Berger Montague was named to the *National Law Journal's* "Hot List" of 12-20 law firms nationally "who specialize in plaintiffs' side litigation and have excelled in their achievements." The firm is on the *National Law Journal's* "Hall of Fame," and Ms. Savett's achievements were mentioned in many of these awards.

Ms. Savett was named a "Pennsylvania Top 50 Female Super Lawyer" and/or a "Pennsylvania Super Lawyer" from 2004 through 2018 by *Philadelphia Magazine* after an extensive nomination and polling process among Pennsylvania lawyers.

In 2006 and 2007, she was named one of the "500 Leading Litigators" and "500 Leading Plaintiffs' Litigators" in the United States by *Lawdragon*. In 2008, Ms. Savett was named as one of the "500 Leading Lawyers in America." Also in 2008, she was named one of 25 "Women of the Year" in Pennsylvania by *The Legal Intelligencer* and *Pennsylvania Law Weekly*, which stated on May 19, 2008 in the *Women in the Profession* in *The Legal Intelligencer* that she "has been a prominent figure nationally in securities class actions for years, and some of her recent cases have only raised her stature." In June 2008, Ms. Savett was named by *Lawdragon* as one of the "100 Lawyers You Need to Know in Securities Litigation."

Unquestionably, it is because of Ms. Savett, who for decades has been in the top leadership of the firm, that the firm has a remarkably high proportion of women lawyers and shareholders.

Ms. Savett has aggressively sought to hire women, without regard to age or whether they are "right out of law school." Several of the women who have children are able to continue working at the firm because Ms. Savett has instituted a policy of flexible work time and fosters an atmosphere of cooperation, teamwork and mutual respect. As a result, the women attorneys stay on and have long and productive careers while still maintaining a balanced life. Ms. Savett has a personal understanding of the challenges and satisfactions that women experience in practicing law while raising a family. Ms. Savett has three children and five grandchildren. One of her daughters and her daughter-in-law are lawyers.

Ms. Savett has taught those around her more than good lawyering. She places great emphasis in her own life on devotion to family, community service and involvement in charitable organizations. She teaches others by her example and her obvious interest in their efforts and achievements.

Ms. Savett is a well-known leader of the Philadelphia legal, business, cultural and Jewish community. She is an exemplary citizen who spends endless hours of her after-work time helping others in the community.

From 2011 – 2014, Ms. Savett served as President and Board Chair of the Jewish Federation of Greater Philadelphia (JFGP), a community of over 215,000 Jewish people. She is only the third woman to serve as the President, the top lay leader of the Federation, in the 117 years of its existence.

Ms. Savett also serves on the Board of the National Liberty Museum, The National Museum of American Jewish History, and the local and national boards of American Associates of Ben Gurion University of the Negev. She had previously served as Chairperson of the Southeastern Pennsylvania State of Israel Bonds Campaign and has served as a member of the National Cabinet of State of Israel Bonds. In 2005, Ms. Savett received The Spirit of Jerusalem Medallion, the State of Israel Bonds' highest honor.

Ms. Savett has used her positions of leadership in the community to identify and help promote women as volunteer leaders. Ms. Savett has selected a few worthy causes to which she tirelessly dedicates herself. According to leaders of The Jewish Federation of Greater Philadelphia, Ms. Savett is viewed by many women in the philanthropic world as a role model.

Ms. Savett earned her J.D. from the University of Pennsylvania Law School and a B.A. *summa cum laude* from the University of Pennsylvania. She is a member of Phi Beta Kappa.

Ms. Savett has three married children, four grandsons, and two granddaughters. She enjoys tennis, biking, physical training, travel, and collecting art, especially glass and sculpture.

**Merrill G. Davidoff – Chair *Emeritus* & Managing Shareholder**
Merrill G. Davidoff is Chairman *Emeritus* and a Managing Shareholder, in addition to his continuing work as Co-Chairman of the Antitrust Department with Mr. Montague and Chairman of the Environmental Group. Mr. Davidoff has litigated and tried a wide range of antitrust, commodities, securities and environmental class actions.

In *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409, Mr. Davidoff was co-lead counsel in class actions that resulted in settlements of $386 million.

In a long-running environmental class action on behalf of property owners whose land was contaminated by plutonium from a neighboring nuclear weapons facility (Rocky Flats near Denver, Colorado), Mr. Davidoff served as lead counsel and lead trial counsel in a 2005-2006 trial that resulted in a $554 million jury verdict, third largest of 2006. In 2009 the Rocky Flats trial team, led by Mr. Davidoff, received the prestigious Public Justice Award for "Trial Lawyer of the Year." A 2010 decision by the 10th Circuit Court of Appeals reversed the judgment that had been won in the district court, but Berger Montague persevered and sought entry of judgment under alternative state law grounds. After losing this battle in the district court, plaintiffs appealed to the 10th Circuit

again, and, after an appeal argued by Mr. Davidoff, the Court of Appeals (by then-judge, now Justice, Neil Gorsuch) reversed and held that plaintiffs could proceed on state law nuisance grounds. Just before competing petitions for certiorari were to be decided by the Supreme Court, a settlement of $375 million was announced in May 2016. The settlement received final approval on April 28, 2017.

Mr. Davidoff also concentrates his practice in representation for commodities futures and options traders as well as derivatives matters. He was co-lead counsel for the customer class in *In re MF Global Holdings Limited Investment Litigation*, which settled for well over a billion dollars and resulted in the recovery and return of 100% of lost customer funds after MF Global's October 31, 2011 collapse.

Mr. Davidoff has represented diverse clients, including many companies, sports organizations, trading firms and governmental entities. In the *Qwest* securities litigation, Mr. Davidoff represented New Jersey, securing a $45 million "opt-out" settlement, and also represented New Jersey in "opt-out" litigation against the former public accounting firm for Lehman Brothers Inc.

Mr. Davidoff served as co-lead and trial counsel for a plaintiff class in the first mass tort class action trial in a federal court which resulted in a precedent-setting settlement for class members, *In re Louisville Explosions Litigation*. In the Canadian Radio-Television and Telecommunications Commission ("CRTC") Decisions (Challenge Communications, Ltd. v. Bell Canada), Mr. Davidoff was lead counsel for Applicant (plaintiff) in three evidentiary hearings before the CRTC. The hearings resulted in the first precedent-breaking Bell Canada's monopoly over the telecommunications equipment which was connected to its telephone network. He was lead counsel in the *Revco Securities Litigation*, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead plaintiffs' counsel and lead trial counsel in *In re Melridge Securities Litigation* tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He was co-lead counsel for the class in *In re Graphite Electrodes Antitrust Litigation*, an international price-fixing case which yielded settlements ranging from 18% to 32% of the plaintiffs' and class' purchases from the defendants (aggregate settlements totaled $134 million). He was one of co-lead counsel in the *Ikon Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *In Re Sunbeam Securities Litigation*, where settlements of $142 million were reached. One of his areas of concentration is representation in commodities futures and options matters, and expertise in derivatives. He has represented market-makers on the Philadelphia Stock Exchange, where he owned a member firm in the 1990s, as well as broker-dealers and market-makers on other exchanges.

### H. Laddie Montague Jr. – Chair *Emeritus* & Managing Shareholder

H. Laddie Montague Jr. is a member of the Firm's Executive Committee, having joined the firm's predecessor David Berger, P.A., at its inception in 1970. Mr. Montague was Chairman of the firm from 2003 to 2016. Mr. Montague is now Chairman *Emeritus* and a Managing Shareholder, in addition to his continuing work as Co-Chairman of the firm's Antitrust Department.

In addition to being one of the courtroom trial counsel for plaintiffs in the mandatory punitive damage class action in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague has served as lead or co-lead counsel in many class actions, including, among others, *High Fructose Corn Syrup Antitrust Litigation* (2006), *In re Infant Formula Antitrust Litigation* (1993) and *Bogosian v. Gulf Oil Corp.* (1984), a nationwide class action against thirteen major oil companies. Mr. Montague was co-lead counsel for the State of Connecticut in its litigation against the tobacco industry. He is currently co-lead counsel in several pending class actions. In addition to the *Exxon Valdez Oil Spill Litigation*, he has tried several complex and protracted cases to the jury, including three class actions:  *In re Master Key Antitrust Litigation* (1977), *In re Corrugated Container Antitrust Litigation* (1980) and *In re Brand Name Prescription Drugs Antitrust Litigation*, M.D.L. (1997-1998). For his work as trial counsel in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

Mr. Montague has been repeatedly singled out by *Chambers USA: America's Leading Lawyers for Business* as one of the top antitrust attorneys in the Commonwealth of Pennsylvania. He is lauded for his stewardship of the firm's antitrust department, referred to as "the dean of the Bar," stating that his peers in the legal profession hold him in the "highest regard," and explicitly praised for, among other things, his "fair minded[ness]." He also is or has been listed in *Lawdragon, An International Who's Who of Competition Lawyers*, and *The Legal 500: United States (Litigation)*. He has repeatedly been selected by *Philadelphia Magazine* as one of the top 100 lawyers in Pennsylvania. Mr. Montague has also been one of the only two inductees in the American Antitrust Institute's inaugural Private Antitrust Enforcement Hall of Fame.

He has been invited and made a presentation at the Organization for Economic Cooperation and Development (Paris, 2006); the European Commission and International Bar Association Seminar (Brussels, 2007); the Canadian Bar Association, Competition Section (Ottawa, 2008); and the 2010 Competition Law & Policy Forum (Ontario).

Mr. Montague is a graduate of the University of Pennsylvania (B.A. 1960) and the Dickinson School of Law (L.L.B. 1963), where he was a member of the Board of Editors of the Dickinson Law Review. He is the former Chairman of the Board of Trustees of the Dickinson School of Law of Penn State University and current Chairman of the Dickinson Law Association.

### Daniel Berger – Managing Shareholder

Daniel Berger graduated with honors from Princeton University and Columbia Law School, where he was a Harlan Fiske Stone academic scholar. He is a senior member and Managing Shareholder. Over the last two decades, he has been involved in complicated commercial litigation including class action securities, antitrust, consumer protection and bankruptcy cases. In addition, he has prosecuted important environmental, mass tort and civil rights cases during this period. He has led the Firm's practice involving improprieties in the marketing of prescription drugs and the abuse of marketing exclusivities in the pharmaceutical industry, including handling landmark cases involving the suppression of generic competition in the pharmaceutical industry. For this work, he has been recognized by the *Law360* publication as a "titan" of the plaintiffs' Bar ("Titan of the Plaintiffs Bar: Daniel Berger" *Law360*, September 23, 2014).

In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities. He also leads the firm's representation of states and other public bodies and agencies.

Mr. Berger has frequently represented public institutional investors in securities litigation, including representing the state pension funds of Pennsylvania, Ohio and New Jersey in both individual and class action litigation. He also represents Pennsylvania and New Jersey on important environmental litigation involving contamination of groundwater by gasoline manufacturers and marketers.

Mr. Berger has a background in the study of economics, having done graduate level work in applied microeconomics and macroeconomic theory, the business cycle, and economic history. He has published law review articles in the *Yale Law Journal*, the *Duke University Journal of Law and Contemporary Problems*, the *University of San Francisco Law Review* and the *New York Law School Law Review*. Mr. Berger is also an author and journalist who has been published in *The Nation* magazine, reviewed books for *The Philadelphia Inquirer* and authored a number of political blogs, including in *The Huffington Post* and the Roosevelt Institute's *New Deal 2.0*. He has also appeared on MSNBC as a political commentator.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy, and the Philadelphia Cultural Fund, which was responsible for all City grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the NEA makes grants. Mr. Berger also serves on the board of the Wilma Theater, Philadelphia's pre-eminent theater for new plays and playwrights.

**Shanon J. Carson – Managing Shareholder**
Shanon J. Carson is a Managing Shareholder of the firm. He Co-Chairs the Employment & Unpaid Wages, Consumer Protection, Defective Products, and Defective Drugs and Medical Devices Departments and is a member of the Firm's Commercial Litigation, Employee Benefits & ERISA, Environment & Public Health, Insurance Fraud, Predatory Lending and Borrowers' Rights, and Technology, Privacy & Data Breach Departments.

Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale-Hubbell, and has received honors and awards from numerous publications. In 2009, Mr. Carson was selected as one of 30 "Lawyers on the Fast Track" in Pennsylvania under the age of 40. In both 2015 and 2016, Mr. Carson was selected as one of the top 100 lawyers in Pennsylvania, as reported by Thomson Reuters. In 2018, Mr. Carson was named to the *Philadelphia Business Journal*'s "2018 Best of the Bar: Philadelphia's Top Lawyers."

Mr. Carson is often retained to represent plaintiffs in employment cases, wage and hour cases for minimum wage violations and unpaid overtime, ERISA cases, consumer cases, insurance cases, construction cases, automobile defect cases, defective drug and medical device cases, product liability cases, breach of contract cases, invasion of privacy cases, false advertising

cases, excessive fee cases, and cases involving the violation of state and federal statutes. Mr. Carson represents plaintiffs in all types of litigation including class actions, collective actions, multiple plaintiff litigations, and single plaintiff litigation. Mr. Carson is regularly appointed by federal courts to serve as lead counsel and on executive committees in class actions and mass torts.

Mr. Carson is frequently asked to speak at continuing legal education seminars and other engagements and is active in nonprofit and professional organizations. Mr. Carson currently serves on the Board of Directors of the Philadelphia Trial Lawyers Association (PTLA) and as a Co-Chair of the PTLA Class Action/Mass Tort Committee. Mr. Carson is also a member of the American Association for Justice, the American Bar Foundation, Litigation Counsel of America, the National Trial Lawyers - Top 100, and the Pennsylvania Association for Justice.

While attending the Dickinson School of Law of the Pennsylvania State University, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge. Mr. Carson currently serves on the Board of Trustees of the Dickinson School of Law of the Pennsylvania State University.

### Todd S. Collins – Managing Shareholder

Todd S. Collins has led scores of securities and ERISA litigations over his 38 years at the firm, winning recoveries in the hundreds of millions of dollars on behalf of plaintiffs and the classes they represent. He chairs the firm's ERISA practice, and he serves on the firm's Executive Committee and as the firm's Chief Counsel. Mr. Collins, a graduate of the University of Pennsylvania Law School, won the 1978 Henry C. Laughlin Prize for Legal Ethics.

Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation* (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that Class suffered no damages); *In re Aero Systems, Inc. Securities Litigation* (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); *Price v. Wilmington Trust Co.* (Del. Ch.) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); *In re Telematics International, Inc. Securities Litigation* (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); *In re Ex-Cell-O Securities Litigation* (E.D. Mich.); *In re Sequoia Systems, Inc.* (D. Mass.); *In re Sapiens International, Inc. Securities Litigation* (S.D.N.Y.); *In re Datastream Securities Litigation* (D.S.C.); *Copland v. Tolson* (Pa. Common Pleas) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants' personal funds); and *In re IKON Office Solutions, Inc. Securities Litigation* (E.D. Pa.). In *IKON*, where Mr. Collins was co-lead counsel as well as the chief spokesman for plaintiffs and the Class before the Court, plaintiffs' counsel created a fund of $111 million for the benefit of the Class.

In addition, Mr. Collins has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants. Mr. Collins has served as co-lead counsel in *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.); *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.); *In re SPX Corporation ERISA Litigation* (W.D. N.C.); and *King v. Wal-Mart Stores, Inc.* (D. Nev). In *Lucent*, Mr. Collins and his team achieved a settlement consisting of $69 million for the benefit of plan participants, as well as substantial injunctive relief with respect to the operation of the 401(k) plans.

Mr. Collins is at the forefront of litigation designed to achieve meaningful corporate governance reform. Recently, he brought to a successful conclusion two landmark cases in which corporate therapeutics are at the core of the relief obtained. In *Oorbeek v. FPL Group, Inc.* (S.D. Fla.), a corporate derivative action brought on behalf of the shareholders of FPL Group, plaintiffs challenged excessive "change of control" payments made to top executives. In the settlement, plaintiffs recovered not only a substantial cash amount but also a range of improvements in FPL's corporate governance structure intended to promote the independence of the outside directors.

Similarly, in *Ashworth Securities Litigation* (S.D. Cal.), a Section 10(b) fraud case, in which Mr. Collins was co-lead counsel, plaintiffs again have been successful in recovering millions of dollars and also securing important governance changes. In this case, the changes focused on strengthening the accounting function and improving revenue recognition practices.

In corporate acquisition cases, Mr. Collins has served as co-lead counsel in cases such as *In re Portec Rail Products, Inc. Shareholders Litig.* (C.P. Allegheny County, Pennsylvania) (tender offer enjoined), *Silberman v. USANA Health Sciences, Inc. et, al.* (D. Utah) (offer enjoined on plaintiffs' motion).

**Michael C. Dell'Angelo – Managing Shareholder**
Michael Dell'Angelo is a Managing Shareholder in the Antitrust, Commercial Litigation, Commodities & Financial Instruments practice groups and Co-Chair of the Securities department. He serves as co-lead counsel in a variety of complex antitrust cases, including *Le, et al. v. Zuffa, LLC*, No. 15-1045 (D. Nev.) (alleging the Ultimate Fighting Championship ("UFC") obtained illegal monopoly power of the market for Mixed Martial Arts promotions and suppressed the compensation of MMA fighters).

Mr. Dell'Angelo is responsible for winning numerous significant settlements for his clients and class members. Most recently, as co-lead counsel, Mr. Dell'Angelo recently helped to reach settlements totaling more than $190 million in the multidistrict litigation *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa.). There, in granting final approval to the last settlement, the court observed about Mr. Dell'Angelo and his colleagues that "Plaintiffs' counsel are experienced antitrust lawyers who have been working in this field of law for many years and have brought with them a sophisticated and highly professional approach to gathering persuasive evidence on the topic of price-fixing." *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437, 2018 WL 3439454, at *18 (E.D. Pa. July 17, 2018). "[I]t bears repeating," the court emphasized,

"that the result attained is directly attributable to having highly skilled and experienced lawyers represent the class in these cases." Id.

Mr. Dell'Angelo also serves as co-lead counsel or class counsel in numerous cases alleging price-fixing or other wrongdoing affecting a variety of financial instruments, including *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, 1:14-MD-2548-VEC (S.D.N.Y); *In re Platinum and Palladium Antitrust Litig.*, No. 14-cv-09391-GHW (S.D.N.Y.); *Contant, et al. v. Bank of America Corp., et al.*, 1:17-cv-03139-LGS (S.D.N.Y.); *In re Libor-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.); *Alaska Elec. Pension Fund, et al. v. Bank of Am. Corp., et al.*, No. 14 Civ. 7126-JMF (S.D.N.Y.); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y.); and *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573 (S.D.N.Y.).

*The National Law Journal* recently featured Mr. Dell'Angelo in its profile of Berger Montague for a special annual report entitled "Plaintiffs' Hot List." *The National Law Journal*'s Hot List identifies the top plaintiff practices in the country. The Hot List profile focused on Mr. Dell'Angelo's role in the MF Global litigation (*In re MF Global Holding Ltd. Inv. Litig.*, No. 12-MD-2338-VM (S.D.N.Y.)). In *MF Global*, Mr. Dell'Angelo represented former commodity account holders seeking to recover approximately $1.6 billion of secured customer funds after the highly publicized collapse of MF Global, a major commodities brokerage. At the outset of this high-risk litigation, the odds appeared grim: MF Global had declared bankruptcy, leaving the corporate officers, a bank, and a commodity exchange as the only prospect for the recovery of class's misappropriated funds. Nonetheless, four years later, a result few would have believed possible was achieved. Through a series of settlements, the former commodity account holders recovered more than 100 percent of their missing funds, totaling over $1.6 billion.

Mr. Dell'Angelo has been recognized consistently as a Pennsylvania Super Lawyer, a distinction conferred upon him annually since 2007. He is regularly invited to speak at Continuing Legal Education (CLE) and other seminars and conferences, both locally and abroad. In response to his recent CLE, "How to Deal with the Rambo Litigator," Mr. Dell'Angelo was singled out as "One of the best CLE speakers [attendees] have had the pleasure to see."

**David F. Sorensen – Managing Shareholder**
David Sorensen is a Managing Shareholder and Co-Chair of the Firm's antitrust department. He graduated from Duke University (A.B. 1983) and Yale Law School (J.D. 1989), and clerked for the Hon. Norma L. Shapiro (E.D. Pa.). He concentrates his practice on antitrust and environmental class actions.

Mr. Sorensen co-tried *Cook v. Rockwell Int'l Corp.*, No. 90-181 (D. Colo.) and received, along with the entire trial team, the "Trial Lawyer of the Year" award in 2009 from the Public Justice Foundation for their work on the case, which resulted in a jury verdict of $554 million in February 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. The jury verdict was then the largest in Colorado history, and was the first time a jury has awarded damages to property owners

living near one of the nation's nuclear weapons sites. In 2008, after extensive post-trial motions, the District Court entered a $926 million judgment for the plaintiffs. The jury verdict in the case was vacated on appeal in 2010. In 2015, on a second trip to the Tenth Circuit Court of Appeals, Plaintiffs secured a victory with the case being sent back to the district court. In 2016, the parties reached a $375 million settlement, which received final approval in 2017.

Mr. Sorensen played a major role in the Firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion (excluding interest) from certain manufacturers of tobacco products. And he served as co-lead class counsel in *Johnson v. AzHHA, et al.*, No. 07-1292 (D. Ariz.), representing a class of temporary nursing personnel who had been underpaid because of an alleged conspiracy among Arizona hospitals. The case settled for $24 million.

Mr. Sorensen also has played a leading role in numerous antitrust cases representing direct purchasers of prescription drugs. Many of these cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Many of these cases have resulted in substantial cash settlements, including *In re: Namenda Direct Purchaser Antitrust Litigation*, (S.D.N.Y.) ($750 million settlement – largest single-defendant settlement ever for a case alleging delayed generic competition); King *Drug Co. v. Cephalon, Inc.*, (E.D. Pa.) ($512 million partial settlement); *In re: Aggrenox Antitrust Litigation* ($146 million settlement); *In re Loestrin 24 Fe Antitrust Litigation* ($120 million); *In re: K-Dur Antitrust Litigation* ($60.2 million); *In re: Prandin Direct Purchaser Antitrust Litigation* ($19 million); *In re: Doryx Antitrust Litigation* ($15 million); *In re: Skelaxin Antitrust Litigation* ($73 million); *In re: Wellbutrin XL Antitrust Litigation* ($37.50 million); *In re: Oxycontin Antitrust Litigation* ($16 million); *In re: DDAVP Direct Purchaser Antitrust Litigation* ($20.25 million settlement following precedent-setting victory in the Second Circuit, which Mr. Sorensen argued, see 585 F.3d 677 (2d Cir. 2009)); *In re: Nifedipine Antitrust Litigation* ($35 million); *In re: Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D. Fla.) ($74.5 million); and *In re: Remeron Antitrust Litigation* ($75 million). Mr. Sorensen is serving as co-lead counsel or on the executive committee of numerous similar, pending cases.

In 2017, the American Antitrust Institute presented its Antitrust Enforcement Award to Mr. Sorensen and others for their work on the *K-Dur* case. In 2019, Mr. Sorensen and others were recognized again by the AAI for their work on the *King Drug* case, being awarded the Outstanding Antitrust Litigation Achievement in Private Law Practice.

### Shareholders

### Glen L. Abramson – Shareholder
Glen L. Abramson is a Shareholder in the Philadelphia office. He concentrates his practice on complex consumer protection, product defects, and financial services litigation, and representing public and private institutional investors in securities fraud class actions and commercial litigation.

Mr. Abramson has served as co-lead counsel in numerous successful consumer protection and securities fraud class actions, including:

*Casey v. Citibank, N.A.*, No. 5:12-cv-00820 (N.D.N.Y.). As Co-Lead Counsel, Mr. Abramson obtained a settlement valued at $110 million in this consolidated class action on behalf of nationwide classes of borrowers whose mortgage loans were serviced by Citibank or CitiMortgage and who were force-placed with hazard, flood or wind insurance.

*In re Oppenheimer Rochester Funds Group Securities Litigation,* No. 09-md-02063-JLK-KMT (D. Colo.). As Co-Lead Counsel, Mr. Abramson represented shareholders in Oppenheimer municipal bond funds in connection with losses suffered during the financial crisis of 2008. The case settled in 2014 for $89.5 million.

*In re Tremont, Securities Law, State Law, and Insurance Litig.*, No. 1:08-cv-11117-TPG. Mr. Abramson represented insurance policyholders who lost money in connection with the Madoff Ponzi scheme. The combined cases were settled for more than $100 million.

*In re Mutual Fund Investment Litig.*, No. 04-md-15861-CCB. As Co-Lead Counsel, Mr. Abramson represented shareholders of various mutual fund families who lost money as the result of market timing in mutual funds. Mr. Abramson was lead counsel for Scudder/Deutsche Bank mutual fund shareholders and helped orchestrate combined settlements of more than $14 million.

*In re Fleming Companies, Inc. Sec. Litig.*, No. 03-md-1530 (E.D. Tex.). As Co-Lead Counsel, Mr. Abramson represented shareholders of Fleming Companies, Inc. in connection with losses suffered as a result of securities fraud by Fleming and its auditors and underwriters. The case resulted in a $93.5 million settlement.

Prior to joining Berger Montague, Mr. Abramson practiced at Dechert LLP in Philadelphia, where he handled complex commercial litigation, product liability, intellectual property, and civil rights disputes. While at Dechert, Mr. Abramson co-chaired a civil rights trial in federal court that led to a six-figure verdict. Mr. Abramson also spent three years as a professional equities trader.

Mr. Abramson is a graduate of Cornell University (B.A. *with distinction* 1993) and Harvard Law School (*cum laude* 1996).  He is a past member of the Harvard Legal Aid Bureau and is a member of Cornell University's Phi Beta Kappa honors society.

### Joy P. Clairmont – Shareholder

Joy Clairmont is a Shareholder in the Whistleblower, *Qui Tam* & False Claims Act Group, which has recovered more than $3 billion for federal and state governments, as well as over $500 million for the firm's whistleblower clients. Ms. Clairmont also has experience practicing in the area of securities fraud litigation.

Ms. Clairmont has been investigating and litigating whistleblower cases for over fifteen years and has successfully represented whistleblower clients in federal and state courts throughout the

United States. On behalf of her whistleblower clients, Ms. Clairmont has pursued fraud cases involving a diverse array of companies: behavioral health facilities, a national retail pharmacy chain, a research institution, pharmaceutical manufacturers, skilled nursing facilities, a national dental chain, mortgage lenders, hospitals and medical device manufacturers.

Most notably, Ms. Clairmont has participated in several significant and groundbreaking cases involving fraudulent drug pricing:

> *United States ex rel. Streck v. AstraZeneca, LP, et al.*, **C.A. No. 08-5135 (E.D. Pa.):** a Medicaid rebate fraud case which settled in 2015 for a total of $55.5 million against three pharmaceutical manufacturers, AstraZeneca, Cephalon, and Biogen. The case alleged that the defendants did not properly account for millions of dollars of payments to wholesalers for drug distribution and other services. As a result, the defendants underpaid the government in rebates owed under the Medicaid Drug Rebate Program.

> *United States ex rel. Kieff and LaCorte v. Wyeth and Pfizer, Inc.*, **Nos. 03-12366 and 06-11724-DPW (D. Mass.):** a Medicaid rebate fraud case involving Wyeth's acid-reflux drug, Protonix, which settled for $784.6 million in April 2016.

> *"AWP"* **Cases:** a series of cases in federal and state courts against many of the largest pharmaceutical manufacturers, including Bristol-Myers Squibb, Boehringer Ingelheim, and GlaxoSmithKline, for defrauding the government through false and inflated price reports for their drugs, which resulted in more than $2 billion in recoveries for the government.

Earlier in her career, Ms. Clairmont gained experience litigating securities fraud class actions including, most notably, *In Re Sunbeam Securities Litigation*, a class action which led to the recovery of over $142 million for the class of plaintiffs in 2002.

Ms. Clairmont graduated in 1995 with a B.A. *cum laude* from George Washington University and in 1998 with a J.D. from George Washington University Law School.

**Caitlin G. Coslett – Shareholder**
Caitlin G. Coslett is a Shareholder at the firm, where she concentrates her practice on complex litigation, including antitrust and mass tort litigation.

Ms. Coslett represents classes of direct purchasers of pharmaceutical drugs who allege that drug manufacturers have violated federal antitrust law by wrongfully keeping less-expensive generic drugs off the market and/or by wrongfully impeding generic competition. Her work on generic suppression cases has contributed to several significant settlements, including in the cases of *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation* (for which Ms. Coslett served as Co-Lead Counsel), *In re Lidoderm Antitrust Litigation*, and *In re Skelaxin (Metaxalone) Antitrust Litigation*. Ms. Coslett is currently litigating several similar antitrust pharmaceutical cases, such as *In re Effexor XR Antitrust Litigation*, *In re Lamictal Antitrust Litigation*, and *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*.

Ms. Coslett played a significant role in the post-trial litigation in *Cook v. Rockwell International Corporation*, a mass tort class action brought on behalf of thousands of property owners near the Rocky Flats nuclear plant in Colorado. The case settled for $375 million following a successful appeal to the Tenth Circuit and, in ruling for the plaintiffs on appeal, then-Judge Neil Gorsuch (who is now a Supreme Court Justice) praised Class Counsel's successful "judicial jiu jitsu" in litigating the case through the second appeal. Ms. Coslett's experience litigating antitrust class actions also includes *In re CRT Antitrust Litigation*, *In re Domestic Drywall Antitrust Litigation*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, *In re Steel Antitrust Litigation*, and *In re Urethane [Polyether Polyols] Antitrust Litigation*. Ms. Coslett has served as pro bono counsel for clients referred by the AIDS Law Project of Pennsylvania and Philly VIP.

Ms. Coslett was selected as a Rising Star by Super Lawyers from 2014 – 2020. In 2018, Ms. Coslett was honored for "Outstanding Antitrust Litigation Achievement by a Young Lawyer" for her work in *In re Lidoderm Antitrust Litigation*, and she was named a "Next Generation Lawyer" by *The Legal 500 United States 2019* in the Civil Litigation/Class Actions: Plaintiff category.

A Philadelphia native, Ms. Coslett graduated *magna cum laude* from Haverford College with a B.S. in mathematics and economics and graduated *cum laude* from New York University School of Law. At NYU School of Law, Ms. Coslett was a Lederman/Milbank Fellow in Law and Economics and an articles selection editor for the NYU Review of Law and Social Change. Prior to law school, she was an economics research assistant at the Federal Reserve Board in Washington, D.C. Ms. Coslett was formerly one of the top 75 rated female chess players in the U.S.

**Andrew C. Curley – Shareholder**
Andrew C. Curley is a Shareholder in the Antitrust practice group. He concentrates his practice in the area of complex antitrust litigation.

Mr. Curley served as Co-Lead Class Counsel on behalf of a class of independent truck stops and other retail merchants in *Marchbanks Truck Service, Inc. v. Comdata Network, Inc.*, Case No. 07-1078 (E.D. Pa.). The *Marchbanks* litigation settled in January 2014 for $130 million and significant prospective relief in the form of, among other things, meaningful and enforceable commitments by the largest over-the-road trucker fleet card issuer in the United States to modify or not to enforce those portions of its merchant services agreements that plaintiffs challenged as anticompetitive, and that an expert economist has determined to be worth an additional $260 million to $491 million (bringing the total value of the settlement to between $390 and $621 million).

Mr. Curley is also involved in a number of antitrust cases representing direct purchasers of prescription drugs. These cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Those cases include: *In re Solodyn Antitrust Litig.*, 14 MD 2503 (D. Mass.) ($76 million settlements); and *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (D. Conn.) ($146 million settlement); *In re Skelaxin*

*(Metaxalone) Antitrust Litig.*, No. 12-MD-2343 (E.D. Tenn.) ($73 million settlement); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) ($37.5 million settlement with one of two defendants); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.) and *In re Niaspan Antitrust Litig.*, No. 12-MD-2460 (E.D. Pa.).

Prior to joining the firm, Mr. Curley practiced in the litigation department of a large Philadelphia law firm where he represented clients in a variety of industries in complex commercial litigation in both state and federal court.

**Lawrence Deutsch – Shareholder**

Mr. Deutsch has been involved in numerous major shareholder class action cases. He served as lead counsel in the Delaware Chancery Court on behalf of shareholders in a corporate governance litigation concerning the rights and valuation of their shareholdings. Defendants in the case were the Philadelphia Stock Exchange, the Exchange's Board of Trustees, and six major Wall Street investment firms. The case settled for $99 million and also included significant corporate governance provisions. Chancellor Chandler, when approving the settlement allocation and fee awards on July 2, 2008, complimented counsel's effort and results, stating, "Counsel, again, I want to thank you for your extraordinary efforts in obtaining this result for the class." The Chancellor had previously described the intensity of the litigation when he had approved the settlement, "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong like they have gone at it in this case."

Mr. Deutsch was one of principal trial counsel for plaintiffs in *Fred Potok v. Floorgraphics, Inc., et al.* (Phila Co. CCP 080200944 and Phila Co. CCP 090303768) resulting in an $8 million judgment against the directors and officers of the company for breach of fiduciary duty.

Over his 25 years working in securities litigation, Mr. Deutsch has been a lead attorney on many substantial matters. Mr. Deutsch served as one of lead counsel in the *In Re Sunbeam Securities Litigation* class action concerning "Chainsaw" Al Dunlap (recovery of over $142 million for the class in 2002). As counsel on behalf of the City of Philadelphia he served on the Executive Committee for the securities litigation regarding *Frank A. Dusek, et al. v. Mattel Inc., et al.* (recovery of $122 million for the class in 2006).

Mr. Deutsch served as lead counsel for a class of investors in Scudder/Deutsche Bank mutual funds in the nationwide *Mutual Funds Market Timing* cases. Mr. Deutsch served on the Plaintiffs' Omnibus Steering Committee for the consortium of all cases. These cases recovered over $300 million in 2010 for mutual fund purchasers and holders against various participants in widespread schemes to "market time" and late trade mutual funds, including $14 million recovered for Scudder/Deutsche Bank mutual fund shareholders.

Mr. Deutsch has been court-appointed Lead or a primary attorney in numerous complex litigation cases: *NECA-IBEW Pension Trust Fund, et al. v. Precision Castparts Corp., et al.* (Civil Case No. 3:16-cv-01756-YY); *Fox et al. v. Prime Group Realty Trust, et al.* United States District Court

Northern District of Illinois (Civil Case No. 1:12-cv-09350) ($8.25 million settlement pending); served as court-appointed lead counsel in *In Re Inergy LP Unitholder Litigation* (Del. Ch. No. 5816-VCP ) ($8 million settlement).

Mr. Deutsch served on a team of lead counsel in *In Re: CertainTeed Fiber Cement Siding Litigation*, E.D.Pa. MDL NO. 11-2270 ($103.9 million settlement); *Tim George v. Uponor, Inc., et al.*, United States District Court, District of Minnesota, Case No. 12-CV-249 (ADM/JJK) ($21 million settlement); *Batista, et al. v. Nissan North America, Inc.*, United States District Court, Southern District of Florida, Miami Division, Case No 1;14-cv-24728 (settlement valued at $65,335,970.00).

In addition to his litigation work, Mr. Deutsch has been a member of the firm's Executive Committee and also manages the firm's paralegals. He has also regularly represented indigent parties through the Bar Association's VIP Program, including the Bar's highly acclaimed representation of homeowners facing mortgage foreclosure.

Prior to joining the firm, Mr. Deutsch served in the Peace Corps from 1973-1976, serving in Costa Rica, the Dominican Republic, and Belize. He then worked for ten years at the United States General Services Administration.

Mr. Deutsch is a graduate of Boston University (B.A. 1973), George Washington University's School of Government and Business Administration (M.S.A. 1979), and Temple University's School of Law (J.D. 1985). He became a member of the Pennsylvania Bar in 1986 and the New Jersey Bar in 1987. He has also been admitted to practice in Eastern District of Pennsylvania, the First Circuit Court of Appeals, the Second Circuit Court of Appeals, the Third Circuit Court of Appeals, the Fourth Circuit Court of Appeals, Eleventh Circuit Court of Appeals and the U.S. Court of Federal Claims as well as various jurisdictions across the country for specific cases.

### E. Michelle Drake – Shareholder
E. Michelle Drake is a Shareholder in the Firm's Minneapolis office. With career settlements and verdicts valued at more than $150 million, Michelle has had great success in a wide variety of cases.

Michelle focuses her practice primarily on consumer protection, improper credit reporting, and financial services class actions. Michelle is empathetic towards her clients and unyielding in her desire to win. Possessing a rare combination of an elite academic pedigree and real-world trial skills, Michelle has successfully gone toe-to-toe with some of the world's most powerful companies.

Michelle helped achieve one of the largest class action settlements in a case involving improper mortgage servicing practices associated with force-placed insurance, resulting in a settlement valued at $110 million for a nationwide class of borrowers who were improperly force-placed with overpriced insurance. Michelle also served as liaison counsel and part of the Plaintiffs' Steering Committee on behalf of consumers harmed in the Target data breach, a case she helped

successfully resolve on behalf of over ninety million consumers whose data was affected by the breach. In 2015, Michelle resolved a federal class action on behalf of a group of adult entertainers in New York for $15 million. Most recently, Michelle has been successful in litigating numerous cases protecting consumers' federal privacy rights under the Fair Credit Reporting Act, securing settlements valued at over $10 million on behalf of tens of thousands of consumers harmed by improper background checks and inaccurate credit reports in the last two years alone.

Michelle was admitted to the bar in 2001 and has since served as lead class counsel in over fifty class and collective actions alleging violations of the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Fair Labor Standards Act, various states' unfair and deceptive trade practices acts, breach of contract and numerous other pro-consumer and pro-employee causes of action.

Michelle serves on the Board of the National Association of Consumer Advocates, is a member of the Partner's Council of the National Consumer Law Center, and is an At-Large Council Member for the Consumer Litigation Section for the Minnesota State Bar Association. She was named as a Super Lawyer in 2013-2018 and was named as a Rising Star prior to that. Michelle was also appointed to the Federal Practice Committee in 2010 by the United States District Court for the District of Minnesota. She has been quoted in the New York Times and the National Law Journal, and her cases were named as "Lawsuits of the Year" by Minnesota Law & Politics in both 2008 and 2009.

Michelle began her practice of law by defending high stakes criminal cases as a public defender in Atlanta. Michelle has never lost her desire to litigate on the side of the "little guy."

### Candice J. Enders – Shareholder

Candice J. Enders is a Shareholder in the Antitrust practice group. She concentrates her practice in complex antitrust litigation.

Her significant involvements include *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.) ($50 million settlement achieved shortly before trial); *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.) ($15.1 million settlement); *In re Chocolate Confectionary Antitrust Litigation*; *In re TFT LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.); and *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.).

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

### Michael T. Fantini – Shareholder

Michael T. Fantini is a Shareholder in the Consumer Protection and Commercial Litigation practice groups. Mr. Fantini concentrates his practice on consumer class action litigation.

Mr. Fantini has considerable experience in notable consumer cases such as: *In re TJX Companies Retail Security Breach Litigation*, Master Docket No. 07-10162 (D. Mass) (class action brought on behalf of persons whose personal and financial data were compromised in the largest computer theft of personal data in history - settled for various benefits valued at over $200 million); *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grade 7-12 Litigation*, MDL No. 1643 (E.D. La. 2006) (settlement of $11.1 million on behalf of persons who were incorrectly scored on a teachers' licensing exam); *Block v. McDonald's Corporation*, No: 01CH9137 (Cir. Ct. Of Cook County, Ill.) (settlement of $12.5 million where McDonald's failed to disclose beef fat in french fries); *Fitz, Inc. v. Ralph Wilson Plastics Co.*, No. 1-94-CV-06017 (D. N.J.) (claims-made settlement whereby fabricators fully recovered their losses resulting from defective contact adhesives); *Parker v. American Isuzu Motors, Inc.*; No: 3476 (CCP, Philadelphia County) (claims-made settlement whereby class members recovered $500 each for their economic damages caused by faulty brakes); *Crawford v. Philadelphia Hotel Operating Co.*, No: 04030070 (CCP Phila. Cty. 2005) (claims-made settlement whereby persons with food poisoning recovered $1,500 each); *Melfi v. The Coca-Cola Company* (settlement reached in case involving alleged misleading advertising of Enviga drink); *Vaughn v. L.A. Fitness International LLC*, No. 10-cv-2326 (E.D. Pa.) (claims made settlement in class action relating to failure to cancel gym memberships and improper billing); *In re Chickie's & Pete's Wage and Hour Litigation*, Master File No. 12-cv-6820 (E.D. Pa.) (settled class action relating to failure to pay proper wage and overtime under FLSA).

Notable security fraud cases in which Mr. Fantini was principally involved include: *In re PSINet Securities Litigation*, No: 00-1850-A (E.D. Va.) (settlement in excess of $17 million); *Ahearn v. Credit Suisse First Boston, LLC*, No: 03-10956 (D. Mass.) (settlement of $8 million); and *In re Nesco Securities Litigation*, 4:0l-CV-0827 (N.D. Okla.).

Mr. Fantini has represented the City of Chicago in an action against certain online travel companies, such as Expedia, Hotels.com, and others, for their alleged failure to pay hotel taxes. He also represented the City of Philadelphia in a similar matter.

Prior to joining the firm, Mr. Fantini was a litigation associate with Dechert LLP. At George Washington University Law School, he was a member of the Moot Court Board. From 2017 - 2020, Mr. Fantini was named a Pennsylvania Super Lawyer by Thomson Reuters.

**Benjamin Galdston – Shareholder**
Benjamin Galdston is a Shareholder in the Antitrust, Commercial Litigation, Commodities & Financial Instruments practice groups and Co-Chair of the Securities department. He manages the firm's San Diego office and has specialized in complex securities fraud and other class actions, corporate governance matters, opt-out litigation and consumer cases for more than 18 years.

Among the nation's top litigators, Mr. Galdston has represented prominent public pension funds, municipalities, Taft Hartley funds, and asset managers and secured billions of dollars and extensive corporate reforms for injured investors. He has presented arguments in federal district

and appellate courts and state courts across the country. Formerly a partner with another national plaintiffs' firm, Mr. Galdston recently secured a landmark pro-investor ruling from the Ninth Circuit in *In re Quality Systems, Inc. Securities Litigation* limiting PSLRA safe harbor protections for mixed statements involving forward-looking projections and current factual assertions. He has served as lead or co-lead counsel in numerous historic securities fraud class actions, including *In re McKesson HBOC Securities Litigation*, the largest securities fraud class action in the Ninth Circuit; *In re Lehman Brothers Holdings, Inc.*, which recovered more than $735 million for shareholders of the defunct brokerage firm; *In re Citigroup Bond Litigation*, a $730 million recovery; *In re Wachovia Corp. Securities Litigation*, a $627 million recovery; *In re Washington Mutual Securities Litigation*, the largest securities class action recovery in the Western District of Washington; *In re Maxim Integrated Products, Inc. Securities Litigation*, the largest stock option backdating recovery in the Ninth Circuit; and *In re New Century*, a $125 million recovery. Mr. Galdston has been at the forefront in successfully pursuing novel legal claims on behalf of institutional investors in individual direct actions, as well, including *In re EMAC Securities Litigation*, a direct action arising from a private offering of asset-backed securities and *In re AXA Rosenberg Investor Litigation*, which asserted claims under the Investment Advisers Act of 1940 and resulted in a $65 million recovery.

Mr. Galdston frequently speaks and publishes on topics relating to securities regulation, class actions, corporate governance, investor advocacy and consumer protection. Most recently, he was a guest speaker at the American Bar Association winter conference and published an article titled "Shareholder Litigation for Waste of Corporate Assets in Internal FCPA Investigations" in *The Review of Securities & Commodities Regulation*.

### Peter R. Kahana – Shareholder

Peter R. Kahana is a Shareholder in the Insurance and Antitrust practice groups. He concentrates his practice in complex civil and class action litigation involving relief for insurance policyholders and consumers of other types of products or services who have been victimized by fraudulent conduct and unfair business practices.

Significant class cases vindicating the rights of insurance policyholders or consumers in which Mr. Kahana was appointed as co-class counsel have included: settlement in 2012 for $90 million of breach of fiduciary duty and negligence claims (certified for trial in 2009) on behalf of a class of former policyholder-members of Anthem Insurance Companies, Inc. ("Anthem") alleging the class was paid insufficient cash compensation in connection with Anthem's conversion from a mutual insurance company to a publicly-owned stock insurance company (a process known as "demutualization") (*Ormond v. Anthem, Inc., et al.*, USDC, S.D. Ind., Case No. 1:05-cv-01908 (S.D. Ind. 2012)); settlement in 2010 for $72.5 million of a nationwide civil RICO and fraud class action (certified for trial in 2009) against The Hartford and its affiliates on behalf of a class of personal injury and workers compensation claimants for the Hartford's alleged deceptive business practices in settling these injury claims for Hartford insureds with the use of structured settlements (*Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.*, 256 F.R.D. 284 (D. Conn. 2009)); settlement in 2009 for $75 million of breach of contract, Unfair Trade Practices Act and insurance bad faith tort claims on behalf of a class of West Virginia automobile policyholders

(certified for trial in 2007) alleging that Nationwide Mutual Insurance Company failed to properly offer and provide them with state-required optional levels of uninsured and underinsured motorist coverage (*Nationwide Mutual Insurance Company v. O'Dell, et al.*, Circuit Court of Roane County, W. Va., Civ. Action No. 00-C-37); and, settlement in 2004 for $20 million on behalf of a class of cancer victims alleging that their insurer refused to pay for health insurance benefits for chemotherapy and radiation treatment (*Bergonzi v. CSO, USDC, D.S.D.*, Case No. C2-4096). For his efforts in regard to the Bergonzi matter, Mr. Kahana was named as the recipient of the American Association for Justice's Steven J. Sharp Public Service Award, which is presented annually to those attorneys whose cases tell the story of American civil justice and help educate state and national policymakers and the public about the importance of consumers' rights.

Mr. Kahana has also played a leading role in major antitrust and environmental litigation, including cases such as *In re Brand Name Prescription Drugs Antitrust Litigation* ($723 million settlement), *In re Ashland Oil Spill Litigation* ($30 million settlement), and *In re Exxon Valdez* ($287 million compensatory damage award and $507.5 million punitive damage award). In connection with his work as a member of the trial team that prosecuted *In re The Exxon Valdez*, Mr. Kahana was selected in 1995 to share the Trial Lawyer of the Year Award by the Public Justice Foundation.

### Michael J. Kane – Shareholder
Michael J. Kane, a Shareholder of the firm, is a graduate of Rutgers University and Ohio Northern University School of Law, with distinction, where he was a member of the Law Review. Mr. Kane is admitted to practice in Pennsylvania and various federal courts.

Mr. Kane joined the antitrust practice in 2005. Prior to joining the firm, Mr. Kane was affiliated with Mager, White & Goldstein, LLP where he represented clients in complex commercial litigation involving alleged unlawful business practices including: violations of federal and state antitrust and securities laws, breach of contract and other unfair and deceptive trade practices. Mr. Kane has extensive experience working with experts on economic issues in antitrust cases, including impact and damages. Mr. Kane has served in prominent roles in high profile antitrust, securities, and unfair trade practice cases filed in courts around the country.

Currently, Mr. Kane is one the lead attorneys actively litigating and participating in all aspects of the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) alleging, *inter alia*, that certain of Visa and MasterCard rules, including anti-steering restraints and default interchange fees, working in tandem have caused artificially inflated interchange fees paid by Merchants on credit and debit card transactions. After over a decade of litigation, a settlement of as much as $6.24 billion and no less than $5.54 billion was preliminary approved in January 2019. He is also one of the lead counsel in *Contant, et al. v. Bank of America Corp., et al.*, 1:17-cv-03139-LGS (S.D.N.Y.) alleging a conspiracy among horizontal competitors to fix the prices of foreign currencies and certain foreign currency instruments to recover damages caused by defendants on behalf of plaintiffs and members of a proposed class of indirect purchasers of FX instruments from defendants.

Mr. Kane was also one of the lead lawyers in *Castro v. Sanofi Pasteur, Inc.*, No. 2:11-cv-07178-JMV-MAH (D.N.J.), a certified class action of over 26,000 physician practices, other healthcare providers, and vaccine distributors direct purchasers, alleging that defendant Sanofi engaged in anticompetitive conduct to maintain its monopoly in the market for MCV4 vaccines resulting in artificially inflated prices for Sanofi's MCV4 vaccine Menactra and the MCV4 vaccine Menveo. In October 2017 the court granted final approval the $61.5 million settlement.

Mr. Kane also had a leading role in *Ross v. American Express Company* (S.D.N.Y.) ($49.5 million settlement achieved after more than 7 years of litigation and after summary judgment was denied).  In the related matter *Ross v. Bank of America* (S.D.N.Y.) involving claims that the defendant banks and American Express unlawfully acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions, Mr. Kane was one of the primary trial counsel in the five week bench trial.  Mr. Kane also has had a prominent role in several antitrust cases against pharmaceutical companies challenging so-called pay for delay agreements wherein the brand drug company allegedly seeks to delay competition from generic equivalents to the brand drug through payments by the brand drug company to the generic drug company.  Mr. Kane served as co-lead counsel in *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct., Middlesex Cty.), in which plaintiffs alleged that as a result of Microsoft Corporation's anticompetitive practices, Massachusetts consumers paid more than they should have for Microsoft's operating systems and software.  The case was settled for $34 million. Other cases in which Mr. Kane has had a prominent role include:  *In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.) (settlement for $336 million and injunctive relief); *In re Nasdaq Market Makers Antitrust Litig.* (S.D.N.Y); *In re Compact Disc Antitrust Litig.* (C.D. Cal.); *In re WorldCom, Inc. Securities Litig.* (S.D.N.Y); *In re Lucent Technologies, Inc. Securities Litig.* (D.N.J.); *City Closets LLC v. Self Storage Assoc., Inc.* (S.D.N.Y.); *Rolite, Inc. v. Wheelabrator Environmental Sys. Inc.*, (E.D. Pa.); and *Amin v. Warren Hospital* (N.J. Super.).

### Jon J. Lambiras – Shareholder

Jon J. Lambiras, Esq., CPA, CFE is a Shareholder in the Securities and Consumer Protection practice groups. Since joining the firm in 2003, he has practiced primarily in the areas of securities fraud, consumer fraud, and data breach class actions.

In the Securities group, he concentrates on class action and opt-out litigation involving accounting fraud and financial misrepresentations made to investors. In the Consumer Protection group, he concentrates on unfair business practices and data breach litigation involving the theft of personal information by computer hackers. He has also litigated Antitrust pay-for-delay matters involving drug manufacturers wrongly keeping generic drugs off the market.

Jon's clients are plaintiffs such as individual investors, institutional investors, and consumers. He strives to provide a smooth, comfortable litigation experience for his clients. He welcomes inquiries from potential clients and referring counsel regarding new matters. Fees in his cases are generally earned on a contingent basis, meaning clients do not pay out-of-pocket attorneys' fees.

Jon is an attorney, Certified Public Accountant, and Certified Fraud Examiner. Prior to law school, he practiced accounting for four years as a financial statement auditor, including with a Big-Four accounting firm.

Jon has obtained the highest peer review rating, "AV Preeminent," in Martindale-Hubbell for his legal abilities and ethical standards. Also, for several years from 2012 to the present, he was selected for inclusion in "Pennsylvania Super Lawyers" or "Rising Stars," an honor conferred on less than 5% of attorneys in Pennsylvania.

Jon has published numerous articles and lectured on various class action topics, as summarized below. He has also commented on class action issues for publications such as The Washington Post and The Legal Intelligencer, among others. The cases on which he worked have collectively settled for hundreds of millions of dollars.

While in law school, Jon was a Lead Articles Editor for the Pepperdine Law Review.

Jon's speaking engagements include the following:

- "Securities Fraud Class Actions: A Primer for Certified Fraud Examiners," 2018, presented to the Association of Certified Fraud Examiners
- "Securities Fraud Class Actions: A Bird's Eye View," 2017, presented to the Delaware County Bar Association
- "Securities Fraud Class Actions: A Bird's Eye View for Attorney-CPAs," 2017, presented to the Philadelphia Chapter of the American Association of Attorney-CPAs
- "How the CFO Landed in Prison: The Nuts & Bolts of His Fraud," 2012, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "State of the Cyber Nation Address," 2011, presented at HB Litigation/NetDiligence Cyber Risk & Privacy Forum
- "Data Breach Class Actions Involving Theft of Personal Information," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Class Actions Involving Estate Planning, Financial Planning, Trusts, and Income Tax," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Securities Fraud Class Actions: Comparing and Contrasting the Plaintiffs' and Defendants' View," 2007, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Securities Fraud Class Actions: A Primer for the Attorney-CPA," 2006-08, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs

**Lawrence J. Lederer – Shareholder**

Lawrence J. Lederer is a Shareholder in the firm's Securities and Commercial Litigation practice groups. He has extensive experience representing and advising institutional investors in securities litigation. He has led the prosecution of many securities class action cases that have resulted in substantial recoveries for investors.

For example, he was co-lead counsel for the State Teachers Retirement System of Ohio which, in August 2009, obtained $475 million in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, Master File No. 07-cv-9633 (JSR) (DFE) (S.D.N.Y.). This securities class action involved Merrill Lynch's financial exposures to collateralized debt obligations and other financial instruments linked to subprime mortgages. It represents one of the largest recoveries ever under the Private Securities Litigation Reform Act. During a hearing on July 27, 2009, Judge Jed S. Rakoff stated that the lead plaintiff had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that the attorney fees requested were "eminently reasonable" and "appropriately modest."

Mr. Lederer presently is, or recently was, also involved in many individual "opt-out" securities cases such as *Commonwealth of Pennsylvania Public School Employees' Ret. Sys. v. Citigroup, Inc.*, No. 11-2583, 2011 U.S. Dist. LEXIS 55829 (E.D. Pa. May 20, 2011); *State of New Jersey, Department of Treasury, Division of Investment v. Fuld*, 604 F.3d 816 (3d Cir. 2010); *Commonwealth of Pennsylvania Public School Employees' Ret. Sys. v. Time Warner Inc.*, Case No. 002103, July Term 2003 (Pa. Common Pleas Ct., Phila. Cty.); *In re Waste Management, Inc. Securities Litigation*, 194 F. Supp. 2d 590 (S.D. Tex. 2002); and *Kelly v. McKesson HBOC, Inc.*, C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Jan. 17, 2002). The investor plaintiffs in each of these cases obtained recoveries significantly larger than what they would have obtained from the related class actions.

Mr. Lederer also advises and represents government entities in commercial and other matters. For example, he was part of a team of outside counsel for one state Attorney General's office in multi-state civil enforcement proceedings that resulted in landmark mortgage modifications and related relief for hundreds of thousands of borrowers nationwide against Countrywide Financial Corp. (and its parent, Bank of America Corp.) in December 2008 valued at approximately $8.6 billion; has advised public pension funds on a wide array of corporate governance and shareholder rights issues; and has advised state government entities concerning financial practices in the structured finance sector, among other areas.

Earlier in his career, Mr. Lederer played a major role in the historic Drexel/Milken/Boesky complex of cases. See, e.g., *In re Michael R. Milken and Associates Securities Litigation*, MDL Dkt. No. 924, Master File No. M21-62 (MP), 1993 U.S. Dist. LEXIS 14242, 1993 WL 413673 (S.D.N.Y. Oct. 7, 1993) (approving approximately $1.3 billion overall settlement with Michael R. Milken and some 500 other persons and entities); *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138 (2d Cir. 1993) (affirming $1.3 billion settlement); *Presidential Life Insurance Co. v. Milken, et al.*, 946 F. Supp. 267 (S.D.N.Y. 1996) (approving $50 million settlement against some 500 defendants); *In re Ivan F. Boesky Securities Litigation*, 948 F.2d 1358 (2d Cir. 1991) (affirming approval of settlements totaling approximately $29 million; subsequent class, derivative, and other settlements approved totaling in excess of $200 million).

Also experienced on the defense side, Mr. Lederer helped obtain a pre-trial dismissal of a securities class action against DRDGold, a gold mining company based in South Africa. See *In re DRDGold Ltd. Securities Litigation*, 05-cv-5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y.

Jan. 31, 2007). He also helped defend an individual charged with "insider trading" in a criminal jury trial in federal court, and in parallel civil enforcement proceedings brought by the SEC. *United States v. Pileggi*, No. 97-cr-612-2, 1998 U.S. Dist. LEXIS 8068 (E.D. Pa. June 3, 1998), aff'd, No. 98-1811, 1999 U.S. App. LEXIS 18592 (3d Cir. July 22, 1999).

In bankruptcy litigation, Mr. Lederer helped obtain hundreds of millions of dollars for investors in the complex Chapter 11 proceedings involving Drexel Burnham Lambert, including through appeals before the United States Court of Appeals for the Second Circuit and the United States Supreme Court. See, e.g., *In re The Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (Bankr. & S.D.N.Y. Aug. 20, 1991), aff'd, 960 F.2d 285 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993).  See also *Sapir, et al. v. Delphi Ventures, et al.*, No. 99-cv-8086-JORDAN (S.D. Fla.) (recovery of $3.8 million following extensive bankruptcy and related proceedings).

Mr. Lederer has achieved the highest peer-review rating, "AV," in Martindale-Hubbell for legal abilities and ethical standards; has repeatedly been selected as one of Pennsylvania's "Super Lawyers" in the category of securities litigation, and has served on the editorial advisory board of Securities *Law360*. Mr. Lederer is admitted to practice law in Pennsylvania, the District of Columbia, and several federal courts. Mr. Lederer graduated from Georgetown University Law Center (LL.M. 1988), Western New England College School of Law (J.D. 1987), where he was a member of Western New England Law Review, and the University of Pittsburgh (B.A. 1984), where he was managing editor of *The Pitt News*, and co-captain (1983) and captain (1984) of the men's varsity tennis team.

### Patrick F. Madden – Shareholder
Patrick F. Madden is a Shareholder in the Antitrust, Consumer Protection, Insurance Fraud, and Predatory Lending and Borrowers' Rights practice groups. His practice principally focuses on class actions concerning antitrust violations, financial practices, and insurance products.

Mr. Madden has served in key roles in multiple nationwide consumer class actions. For example, he represented homeowners whose mortgage loan servicers force-placed extraordinarily high-priced insurance on them and allegedly received a kickback from the insurer in exchange. Collectively, Mr. Madden's force-placed insurance settlements have made more than $175 million in recoveries available to class members.

He has also represented plaintiffs in antitrust class actions. For example, Mr. Madden represents a proposed class of elite mixed martial arts fighters in an antitrust lawsuit against the Ultimate Fighting Championship. *Le, et al. v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.). Mr. Madden also represents a proposed class of broiler chicken farmers in an antitrust suit against the major chicken processing companies for colluding to suppress compensation to the farmers.

Prior to attending law school, Mr. Madden worked at the United States Department of Labor, Office of Labor-Management Standards as an investigator during which time he investigated allegations of officer election fraud and financial crimes by union officers and employees.

While at Temple Law School, Mr. Madden was the Executive Editor of Publications for the Temple Journal of Science, Technology & Environmental Law.

**Ellen T. Noteware – Shareholder**

Ms. Noteware has successfully represented investors, retirement plan participants, employees, consumers, and direct purchasers of prescription drug products in a variety of class action cases. She currently chairs the firm's Pro Bono Committee.

Ms. Noteware served on the trial team for *Cook v. Rockwell Int'l Corp.* No. 90-181 (D. Colo.) and received, along with the entire trial team, the "Trial Lawyer of the Year" award in 2009 from the Public Justice Foundation for their work on the case, which resulted in a jury verdict of $554 million in February 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. The jury verdict was then the largest in Colorado history, and was the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. In 2008, after extensive post-trial motions, the District Court entered a $926 million judgment for the plaintiffs. The jury verdict in the case was vacated on appeal in 2010. In 2015, on a second trip to the Tenth Circuit Court of Appeals, Plaintiffs secured a victory with the case being sent back to the district court. In 2016, the parties reached a $375 million settlement, which received final approval in 2017.

Ms. Noteware also has played a leading role in numerous antitrust cases representing direct purchasers of prescription drugs. Many of these cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Many of these cases have resulted in substantial cash settlements, including *In re: Namenda Direct Purchaser Antitrust Litigation*, (S.D.N.Y.) ($750 million settlement – largest single-defendant settlement ever for a case alleging delayed generic competition); *In re Loestrin 24 Fe Antitrust Litigation*, (D.R.I.) ($120 million settlement 3 weeks before trial was set to begin); *In re Ovcon Antitrust Litigation*, (D.D.C.) ($22 million settlement); *In re Tricor Direct Purchaser Antitrust Litigation*, (D. Del.) ($250 million settlement); *Meijer, Inc. v. Abbott Laboratories*, (N.D. Cal.) (Norvir) ($52 million); and *In re Celebrex*, No. 14-cv-00361 (E.D. Va.) ($95 million).

Ms. Noteware is also extensively involved in litigating breach of fiduciary duty class action cases under the Employee Retirement Income Securities Act ("ERISA"). Her ERISA settlements include: *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.) ($21 million settlement); *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.) ($69 million settlement); *In re SPX Corporation ERISA Litigation* (W.D.N.C.) ($3.6 million settlement); *Short v. Brown University*, (D.R.I.) ($3.5M settlement plus requirement that independent adviser for ERISA plans be retained); *Dougherty v. The University of Chicago*, No. 1:17-cv-03736 (N.D. Ill.) ($6.5M settlement); and *Nicolas v. The Trustees of Princeton University*, No. 3:17-cv-03695 (D.N.J.) (settlement announced).

Ms. Noteware is a graduate of Cornell University (B.S. 1989) and the University of Wisconsin-Madison Law School (J.D. *cum laude* 1993) where she won the Daniel H. Grady Prize for the highest grade point average in her class, served as Managing Editor of the Law Review, and

earned Order of the Coif honors.  She is currently a member of the Pennsylvania, New York, and District of Columbia bars.

**Phyllis Maza Parker – Shareholder**
Phyllis Maza Parker, a Shareholder, concentrates her practice primarily on complex securities class action litigation, representing both individual and institutional investors. Her practice also includes commercial litigation.

Ms. Parker served on the team as co-lead counsel for the Class in *In re Xcel Energy, Inc. Securities Litigation* (D. Minn.). The case, which settled for $80 million, was listed among the 100 largest securities class action settlements in the United States since the enactment of the 1933-1934 Securities Acts. Among other cases, she has also served as co-lead counsel in *In re Reliance Group Holdings, Inc. Securities Litigation* ($15 million settlement); *In re The Loewen Group, Inc. Securities Litigation* ($6 million settlement); as lead counsel in *In re Veeco Instruments Inc. Securities Litigation* ($5.5 million settlement on the eve of trial); as co-lead counsel in *In re Nuvelo, Inc. Securities Litigation* ($8.9 million settlement); and, most recently, as co-lead counsel in *Coady v. Perry, et al.* (IndyMac Bancorp, Inc.) ($6.5 million settlement).

While studying for her J.D. at Temple, Ms. Parker was a member of the Temple Law Review. She published a Note on the subject of the Federal Sentencing Guidelines in the Temple Law Review, Vol. 67, No. 4, 1994, which has been cited by a court and in a law review article. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit.

Ms. Parker is fluent in Hebrew and French.

**Russell D. Paul – Shareholder**
Russell Paul is a Shareholder in the Securities, Consumer Protection, *Qui Tam*/Whistleblower, Corporate Governance/Shareholder Rights and Commercial Litigation practice groups. He concentrates his practice on securities class actions and derivative suits, complex securities, and commercial litigation matters, False Claims Act suits and consumer class actions.

Mr. Paul has litigated securities class actions against Tyco International Ltd., Baxter Healthcare Corp., ALSTOM S.A., Able Laboratories, Inc., Refco Inc., Toll Brothers and the Federal National Mortgage Association (Fannie Mae). He has also litigated derivative actions in various state courts around the country, including in the Delaware Court of Chancery. He has litigated consumer protection and product defect actions in the automotive, pet food, soft drink, and home products industries. Mr. Paul has also briefed and argued several federal appeals.

In addition to securities litigation, Mr. Paul has broad corporate law experience, including mergers and acquisitions, venture capital financing, proxy contests, and general corporate matters. He began his legal career in the New York office of Skadden, Arps, Slate, Meagher & Flom.

Mr. Paul has been designated a "Pennsylvania Super Lawyer" and a "Top Attorney in Pennsylvania."

Mr. Paul graduated from the Columbia University School of Law (J.D. 1989) where he was a Harlan Fiske Stone Scholar, served on the Moot Court Review Board, was an editor of Pegasus (the law school's catalog) and interned at the United States Attorneys' Office for the Southern District of New York. He completed his undergraduate studies at the University of Pennsylvania, earning a B.S. in Economics from the Wharton School (1986) and a B.A. in History from the College of Arts and Sciences (1986). He was elected to the Beta Gamma Sigma Honors Society.

### Barbara A. Podell – Shareholder
Barbara A. Podell is a Shareholder in the Securities practice group at the firm. She concentrates her practice on securities class action litigation.

Ms. Podell graduated from the University of Pennsylvania (*cum laude*) and the Temple University School of Law (*magna cum laude*), where she was Editor-in-Chief of the Temple Law Quarterly.

Ms. Podell was one of the firm's senior attorneys representing the Pennsylvania State Employees' Retirement System ("SERS") as the lead plaintiff in the *In re CIGNA Corp. Sec. Litig.*, No. 02-CV-8088 (E.D. Pa.), a federal securities fraud class action in which SERS moved for, and was appointed, lead plaintiff. CIGNA allegedly concealed crucial operational problems, which, once revealed, caused the company's stock price to fall precipitously. The firm obtained a $93 million settlement. This was a remarkable recovery because there were no accounting restatements, government investigations, typical indicators of financial fraud, or insider trading. Moreover, the case was settled on the eve of trial (22.7% of losses recovered).

Before joining the firm, Ms. Podell was a founding member of Savett Frutkin Podell & Ryan, P.C., and before that, a shareholder at Kohn, Savett, Klein & Graf and an associate at Dechert LLP, all in Philadelphia.

### Sarah R. Schalman-Bergen – Shareholder
Sarah R. Schalman-Bergen is a Shareholder at the firm. She Co-Chairs the Firm's Employment Law Department and is a member of the Firm's Antitrust, Insurance Products & Financial Services, and Lending Practices & Borrowers' Rights Departments.

Ms. Schalman-Bergen represents employees who are not being paid properly in class and collective action wage and hour employment cases as well as in class action discrimination cases across the country. Specifically, Ms. Schalman-Bergen has served as lead counsel in dozens of wage theft lawsuits, representing employees in a variety of industries, including at meat and poultry plants, at fast food restaurants, in the oil and gas industry, in white collar jobs and in the government.

Ms. Schalman-Bergen also serves as counsel to employees, consumers and businesses in antitrust cases, including representing the employees of several high tech companies who alleged

that the companies entered into "do not poach" agreements that illegally suppressed employees' wages. Ms. Schalman-Bergen has represented homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them. She currently represents several cities in lawsuits against major banks for allegedly discriminatory practices in violation of the Fair Housing Act.

Ms. Schalman-Bergen is frequently asked to speak on continuing legal education seminars that relate to employment issues.  In 2015, Ms. Schalman-Bergen was honored as a "Lawyer on the Fast Track" by *The Legal Intelligencer*. Ms. Schalman-Bergen was 1 of 40 attorneys selected by a six-member judging panel composed of evaluators from all corners of the legal profession and Pennsylvania. In 2020, Ms. Schalman-Bergen was named a Pennsylvania Super Lawyer. From 2010 through 2019, Ms. Schalman-Bergen was named a Pennsylvania Super Lawyer- Rising Star. In 2010, Ms. Schalman-Bergen was honored as an "Unsung Hero" by *The Legal Intelligencer*, Pennsylvania's daily law journal, for her pro bono work with the AIDS Law Project of Pennsylvania. From 2007-2009 Ms. Schalman-Bergen served as the Jerome J. Shestack Public Interest Fellow at WolfBlock LLP.

Ms. Schalman-Bergen maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination and confidentiality cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining the firm, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation.

Ms. Schalman-Bergen is a 2007 *cum laude* graduate of Harvard Law School and a 2001 *summa cum laude* graduate of Tufts University.  During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review, and worked at the ACLU Drug Law Reform Project.

**Martin I. Twersky – Shareholder**
Martin I. Twersky is a Shareholder in the Antitrust Department. He has considerable experience in litigation involving a wide range of industries including oil and gas, banking, airline, waste hauling, agricultural chemicals and other regulated industries. For more than 30 years, Mr. Twersky has successfully represented numerous plaintiffs and defendants in both individual and class actions pending in state and federal courts.

Mr. Twersky has played a leading role in the following class action cases among others: *In re Linerboard Antitrust Litigation* (E.D. Pa.) (as a member of the Executive Committee, he helped obtain settlements of more than $200 million dollars and he received specific praise from the court for co-managing the major discovery effort; see 2004 WL 1221350 at *10); *In re Graphite Antitrust Litigation* (E.D. Pa.) (settlements of more than $120 million dollars); *In re Catfish Antitrust Litigation* (N.D. Miss.) (as a member of the trial team he helped obtained settlements of more than

$27 million dollars); *In re Revco Securities Litigation* (N.D. Ohio) ("Junk Bond" class action where settlements of $36 million were reached and where he received judicial praise from Senior District Court Judge William K. Thomas for the "specialized, highly competent and effective quality of the legal services."  See 1993 CCH Fed Sec. L. Rep. at Para. 97,809); *Bogosian v. Gulf Oil* (E.D. Pa.) (landmark litigation with settlements and injunctive relief on behalf of a nationwide class of gasoline dealers); and *Lease Oil Antitrust* (S.D. Tex.), where in a significant class action decision, the Fifth Circuit affirmed the granting of an injunction prohibiting settlements in related state court actions  (see 200 F.3d 317 (5th Cir. 2000), cert. denied, 530 U.S. 1263). Mr. Twersky was appointed one of the co-lead counsel in *In re Abrasive Grains Antitrust Litig.* (95-cv-7574) (W.D.N.Y.).

Mr. Twersky has also played a key role in various non-class action cases, such as *Kutner Buick v. America Motors*, 848 F.2d 614 (3rd Circuit 1989) (breach of contract) (cited in the Advisory Committee Notes to the 1991 Amendment to Rule 50, Fed. R. Civ. P.), Florham Park v. Chevron (D.N.J. 1988) (Petroleum Marketing Act case), and *Frigitemp v. IDT Corp.*, 638 F. Supp. 916 (S.D. N.Y. 1986) and 76 B.R. 275, 1987 LEXIS 6547 (S.D. N.Y. 1987) (RICO case brought by the Trustee of Frigitemp Corp. against General Dynamics and others involving extortion of kickbacks from Frigitemp officers). Mr. Twersky also served prominently in savings-and-loan related securities and fraud litigation in federal and state courts in Florida, where the firm represented the Resolution Trust Corporation and officers of a failed bank in complex litigation involving securities, RICO and breach of fiduciary duty claims. E.g., *Royal Palm v. Rapaport*, Civ. No. 88-8510 (S.D. Fla.) and *Rapaport v. Burgoon*, CL-89-3748 (Palm Beach County).

**Daniel J. Walker – Shareholder**
Dan Walker is a Shareholder of the firm, which he rejoined in July 2017 after serving three years in the Health Care Division at the Federal Trade Commission. Mr. Walker practices in the firm's Washington, D.C. office.

While at the Federal Trade Commission, Mr. Walker investigated and litigated antitrust matters in the health care industry. In addition to leading various nonpublic investigations in the pharmaceutical and health information technology sectors, Mr. Walker litigated *Federal Trade Commission v. AbbVie Inc., et al.*, a case alleging that a brand pharmaceutical manufacturer engaged in sham patent litigation to delay generic competition, and *Federal Trade Commission v. Cephalon Inc.*, a "pay-for-delay" lawsuit over a brand pharmaceutical manufacturer's payment to four generic competitors in return for the generics' agreement to delay entry into the market. The Cephalon case settled shortly before trial for $1.2 billion-the largest equitable monetary relief ever secured by the Federal Trade Commission-as well as significant injunctive relief.

During his time in private practice, Mr. Walker has litigated cases on behalf of plaintiffs and defendants in many areas of law, including antitrust, financial fraud, breach of contract, bankruptcy, and intellectual property. Mr. Walker has helped recover hundreds of millions of dollars on behalf of plaintiffs, including in *In re Titanium Dioxide Antitrust Litigation* (with settlements totaling $163.5 million for purchasers of titanium dioxide), *In re High Tech Employee Antitrust Litigation* (with settlements totaling $435 million for workers in the high tech industry),

and *Adriana Castro, M.D., P.A., et al. v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.) (with a $61.5 million settlement pending court approval for purchasers of pediatric vaccines). Mr. Walker was also a member of the team that recovered the funds lost by account holders during MF Global's collapse and a member of the trial team that successfully represented the Washington Mutual stockholders seeking to recover investments lost in the bankruptcy.

In addition, Mr. Walker has spoken frequently on antitrust issues, including on the intersection of antitrust and intellectual property in the health care industry.

Mr. Walker is a *magna cum laude* graduate of Amherst College and Cornell University Law School, where he was an Articles Editor for the Cornell Law Review. Before entering private practice, Mr. Walker clerked for the Honorable Richard C. Wesley of the United States Court of Appeals for the Second Circuit.

### Senior Counsel

### Andrew Abramowitz – Senior Counsel
Andrew Abramowitz, Senior Counsel in the Securities Department, concentrates his practice in shareholder litigation, representing investors in matters under the federal securities laws and state law governing breach of fiduciary duty. Prior to joining the firm, Mr. Abramowitz was a partner with a prominent Philadelphia law firm where he practiced for more than twenty years.

Mr. Abramowitz has served as one of the lead counsel in numerous cases, including, of note, *In re Parmalat Securities Litigation* (S.D.N.Y.), often referred to as "the Enron of Europe," which was a worldwide securities fraud involving an international dairy conglomerate; *In re SCOR Holding (Switzerland) AG Litigation* (S.D.N.Y.), the first case ever to secure recovery for investors in both a U.S. jurisdiction and a foreign forum; and *In re Abbott Depakote Shareholder Derivative Litigation* (N.D. Ill.), involving the off-label marketing of an anti-seizure drug.

Other notable cases in which Mr. Abramowitz played a significant role include: *Howard v. Liquidity Services, Inc.* (D.D.C.); *In re The Bancorp, Inc. Securities Litigation* (D. Del.); *In re Life Partners Holdings, Inc. Derivative Litigation* (W.D. Tex.); *In re Synthes Inc. Shareholder Litigation* (Del. Ch.); *In re Atheros Communications, Inc. Shareholder Litigation* (Del. Ch.); *Utah Retirement Systems v. Strauss* (American Home Mortgage) (E.D.N.Y.); *In re PSINet, Inc. Securities Litigation* (E.D. Va.); *Penn Federation BMWE v. Norfolk Southern Corp.* (E.D. Pa.); *Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters v. Cybersource Corp.* (Del. Ch.).

He previously served as Legal Counsel to Tradeoffs, a popular health policy podcast launched by a prominent Philadelphia journalist.

Mr. Abramowitz graduated *cum laude* from Franklin & Marshall College (1993) where he earned membership in Phi Beta Kappa. He earned a J.D. from the University of Maryland School of Law

(1996), where he was Assistant Editor for *The Business Lawyer*, published jointly with the American Bar Association.

He was a long-standing member of the Corporate Advisory Board of the Pennsylvania Association of Public Employee Retirement Systems (PAPERS), an organization dedicated to educating trustees and fiduciaries of public pension funds throughout Pennsylvania. He has also participated for more than fifteen years in the University of Pennsylvania School of Law's Mentoring Program, in which he mentors international students in the L.L.M. program about the practice of law in the U.S. He has written and spoken extensively on matters relating to securities litigation and corporate governance.

Mr. Abramowitz is also the author of two novels, *A Beginner's Guide to Free Fall* (Lake Union Publishing, 2019), and *Thank You, Goodnight* (Touchstone/Simon & Schuster, 2015).

**Jennifer Elwell – Senior Counsel**
Jennifer Elwell is Senior Counsel in the firm's Consumer Protection group. She concentrates her practice in complex civil litigation involving actions brought on behalf of consumers for corporate wrongdoing and consumer fraud.

**J. Quinn Kerrigan – Senior Counsel**
J. Quinn Kerrigan is Senior Counsel in the firm's Consumer Protection practice group. He concentrates his practice in the area of complex consumer litigation, prosecuting actions against corporate defendants and other institutions for violations of state and federal law, including state causes of action challenging unfair and deceptive practices.

Before joining the firm, Mr. Kerrigan gained notable experience litigating antitrust and consumer class actions, corporate mergers, derivative claims, and insurance coverage disputes.

Mr. Kerrigan is admitted to practice in state courts in Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, and the District of New Jersey.

Mr. Kerrigan is a graduate of Temple University's Beasley School of Law and John Hopkins University.

**David A. Langer – Senior Counsel**
David A. Langer is Senior Counsel in the Antitrust practice group. He concentrates his practice in complex antitrust litigation.

Mr. Langer has had a primary role in the prosecution of the following antitrust class actions: *In re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y.) (after 5½ years of litigation, through the close of fact and expert discovery, achieved a settlement consisting of $336 million and injunctive relief for a class of U.S. Visa and MasterCard cardholders; extraordinary settlement participation from class members drawing more than 10 million claimants in one of the largest consumer

antitrust class actions); *Ross and Wachsmuth v. American Express Co., et al.* (S.D.N.Y.) ($49.5 million settlement achieved after more than 7 years of litigation and after summary judgment was denied); *Ross, et al. v. Bank of America, N.A. (USA), et al.* (S.D.N.Y.) (obtained settlements with four of the nations' largest card issuers (Bank of America, Capital One, Chase and HSBC) to drop their arbitration clauses for their credit cards for 3.5 years, and a settlement with the non-bank defendant arbitration provider (NAF), who agreed to cease administering arbitration proceedings involving business cards for 3.5 years); and *In re Linerboard Antitrust Litigation* (E.D. Pa.) (helped obtain settlements of more than $200 million dollars).

Mr. Langer was one of the trial team chairs in the 5-week consolidated bench trial of arbitration antitrust claims in *Ross v. American Express* and *Ross v. Bank of America*, where the Honorable William H. Pauley, III of the United States District Court for the Southern District of New York, commended the "extraordinary talents of Plaintiffs' counsel."

Mr. Langer has also had a primary role in appellate proceedings, obtaining relief for his clients in a number of matters, including *Ross, et al. v. American Express Co., et al.*, 547 F.3d 137 (S.D.N.Y. 2008) (precluding an alleged co-conspirator from relying on the doctrine of equitable estoppel to invoke arbitration clauses imposed by its competitor co-conspirators); *Ross, et al. v. Bank of America, N.A. (USA), et al.*, 524 F.3d 217 (S.D.N.Y. 2008) (holding that antitrust plaintiffs possess Article III standing to challenge the defendants' collusive imposition of arbitration clauses barring participation in class actions); *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109 (3d Cir. 2012) (finding opposing party waived the right to compel arbitration and reversing district court).

While at Vermont Law School, Mr. Langer was Managing Editor and a member of the Vermont Law Review.

### Hans Lodge – Senior Counsel

Hans Lodge is a zealous advocate and is dedicated to protecting the rights of consumers in and out of court. Hans assists consumers who have been denied jobs or housing due to inaccurate criminal history information reporting in their employment/tenant background check reports. Hans also assists consumers who have been denied credit due to inaccurate information reporting in their credit reports and have suffered harm due to unlawful debt collection behavior.

Hans is an aggressive and strategic litigator who has a reputation of working tirelessly to get favorable outcomes for his clients. Hans understands how frustrating it can be trying to deal with background check companies, credit reporting agencies, credit bureaus, and debt collectors, and has a passion for helping clients navigate these areas of the law during their times of need.

Prior to joining the firm, Hans combined his passions for fighting for the little guy and oral advocacy by representing consumers in individual and class action litigation where he held businesses, banks, background check companies, credit bureaus, and debt collectors accountable for illegal practices. As an Associate Attorney at a consumer rights law firm, Hans represented consumers who had trouble paying their bills and were abused and harassed by debt collection agencies,

some of whom had their motor vehicles wrongfully repossessed, bringing numerous individual and class action claims under the Fair Debt Collection Practices Act (FDCPA).

Hans also represented consumers who had trouble obtaining credit, employment, and housing due to inaccuracies in their credit reports and background check reports, bringing numerous individual and class action claims under the Fair Credit Reporting Act (FCRA). As an Associate Attorney at a national employment and consumer protection law firm, Hans represented consumers who purchased defective products and employees misclassified as independent contractors, bringing class action claims under consumer protection statues and the Fair Labor Standards Act (FLSA).

Hans grew up in the Twin Cities and received his Bachelor's Degree from Gustavus Adolphus College in St. Peter, Minnesota, where he double-majored in Political Science and Communication Studies and graduated with honors. His first experience resolving quasi-legal disputes began as a Student Representative on the Campus Judicial Board, where he served for three years and resolved numerous complex disputes between students and the College. His interests in sports and ethics took him to New Zealand, Australia, and Fiji, where he studied Sports Ethics.

During his time at Marquette University Law School, Hans concentrated his legal studies on civil litigation and sports law. As a second-year law student, Hans gained valuable experience working as a law clerk for the Honorable Joan F. Kessler at the Wisconsin Court of Appeals. He also served as a member of the Marquette Sports Law Review where he wrote and edited articles about legal issues impacting the sports industry.

As a member of Marquette Law's moot court team, his brief writing and oral advocacy skills earned him a regional championship and an appearance in the national competition at the New York City Bar Association. Hans was also a member of Marquette's mock trial team, finishing in third place at the regional competition at the Daley Center in Chicago, Illinois.

Mr. Lodge is admitted to practice law in the United States District Court, District of Minnesota; United States District Court, Western District of Wisconsin; and both Minnesota and Wisconsin state courts.

In addition to practicing law, Hans is an Adjunct Professor at Concordia University, St. Paul, where he teaches a sports law course in the Master of Arts in Sports Management program. He is also a professionally-trained umpire and umpires Little League, high school, college, legion, and amateur baseball throughout Minnesota. In his free time, Hans enjoys working out, long distance running, road biking, bowling, going to concerts, playing ping pong and softball, and kayaking on Lake Minnetonka.

**Jeffrey L. Osterwise – Senior Counsel**
Mr. Osterwise pursues relief for consumers and businesses in a broad array of matters.

Mr. Osterwise litigates class actions on behalf of consumers who have been damaged by automobile manufacturers that conceal known defects in their vehicles and refuse to fulfill their warranty obligations. His experience includes actions against General Motors, Nissan North America, American Honda Motor Company, among others.

Mr. Osterwise also has substantial experience advising consumers and businesses of their rights with respect to a variety of other defective products. He has helped injured parties pursue their claims arising from defects in pharmaceuticals, solar panels, riding lawn tractors, and HVAC and plumbing products.

In addition to defective product claims, Mr. Osterwise has fought to protect consumers from unfair business practices. For example, he has represented clients deceived by their auto insurance carriers and consumers improperly billed by a national health club chain.

Mr. Osterwise also has significant experience representing the interests of shareholders in securities fraud and corporate governance matters. And, he represented the City of Philadelphia and the City of Chicago in separate actions against certain online travel companies for their failure to pay hotel taxes.

**Jacob M. Polakoff – Senior Counsel**
Since joining the firm in 2006, Mr. Polakoff has concentrated his practice on the prosecution of class actions and other complex litigation, including the representation of plaintiffs in consumer protection, securities, and commercial cases.

Mr. Polakoff currently represents homeowners throughout the country in various product liability actions concerning defective construction products, including roofing, siding, and plumbing. He served on the team of co-lead counsel in *George v. Uponor, Inc., et al.*, a class action about Uponor's high zinc yellow brass PEX plumbing fittings ($21 million settlement).

He represented the shareholders of the Philadelphia Stock Exchange in *Ginsburg v. Philadelphia Stock Exchange, Inc., et al.*, in the Delaware Court of Chancery, which settled for in excess of $99 million in addition to significant corporate governance provisions. Mr. Polakoff's experience also includes representing entrepreneurs and small businesses in actions against Fortune 500 companies.

Mr. Polakoff was selected as a Pennsylvania Super Lawyer - Rising Star in 2010 and 2013-2018, an honor conferred upon only the top 2.5% of attorneys in Pennsylvania who are 40 or younger.

Mr. Polakoff is a 2006 graduate of the joint J.D./M.B.A. program at the University of Miami, where he was the recipient of the Dean's Certificate of Achievement in Legal Research & Writing, was awarded a Graduate Assistantship and was honored with the Award for Academic Excellence in Graduate Studies.

He holds a 2002 B.S.B.A. from Boston University's School of Management, where he concentrated in finance.

Mr. Polakoff is the Judge of Election for Philadelphia's 30th Ward, 1st Division. He was also a member of the planning committee and the sponsorship sub-committee for the Justice for All 5K from its inception. The event benefited Community Legal Services of Philadelphia, which provides free legal services, in civil matters, to low-income Philadelphians.

**Shoshana Savett – Senior Counsel**
Shoshana Savett is in the Securities, Consumer Protection and Commercial Litigation practice groups. She concentrates her practice primarily in the area of securities class action litigation.

Since joining the firm in 2003, Ms. Savett has been involved in securities class action including: *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, relating to the Securities Action, 07-cv-9633; *Ginsburg v. Philadelphia Stock Exchange* (settlement valued at over $99 million in action brought on behalf of a class A shareholders of the Philadelphia Stock Exchange which included breach of fiduciary allegations against the Exchange's Board of Governors in connection with strategic transactions that the Exchange announced in June and August 2005); *In re Sepracor Inc. Securities Litigation*, Civil Action no. 02-12235-MEL (D. Mass.) ($52.5 million settlement approved September 6, 2007).

**Richard Schwartz – Senior Counsel**
Richard Schwartz is Senior Counsel in the Antitrust practice group. Mr. Schwartz concentrates his practice in the area of complex antitrust litigation with a focus on representation of direct purchasers of prescription drugs.

Prior to joining the firm, Mr. Schwartz was an attorney in the New York and Philadelphia offices of a firm where he represented plaintiffs in a variety of matters before trial and appellate courts with a focus on antitrust and shareholder class actions.

Mr. Schwartz is a member of the teams prosecuting a number of antitrust class actions on behalf of direct purchasers of prescription drugs in which the purchasers allege that generic drugs have been illegally kept off the market. Those cases include *In re Opana ER Antitrust Litigation*, No. 14-cv-10151 (N.D. Ill.); *In re Suboxone*, No. 13-MD-2445 (E.D. Pa.); *In re Solodyn*, No. 14-MD-2503 (D. Mass.) and *In re Celebrex*, No. 14-cv-00361 (E.D. Va.).

Mr. Schwartz is admitted to practice in New York, Pennsylvania, and Illinois.

**Daniel C. Simons – Senior Counsel**
Daniel C. Simons is Senior Counsel in the Antitrust and Consumer Protection Groups. He concentrates a significant percentage of his practice on complex antitrust litigation, with a focus on anticompetitive arrangements in the pharmaceutical industry. Mr. Simons has been at the forefront of the efforts to curb "pay-for-delay" agreements, whereby brand companies compensate generic rivals to forestall the entry of lower priced generic equivalents. His practice has led to appearances in district and appellate courts across the country.

Mr. Simons's significant representations have included:

- *In re Modafinil Antitrust Litigation*, No. 06-1797 (E.D. Pa.), in which Mr. Simons represented direct purchasers of the drug Provigil, suing the brand company for fraudulently obtaining its patents on the drug and entering into agreements with its four generic rivals to delay competition.

- *In re AndroGel Antitrust Litigation*, (No. II), MDL No. 2084 (N.D. Ga.). This private antitrust suit parallels the precedent-setting *FTC v. Actavis* case, which held that pay-for-delay agreements are not immune from the antitrust laws and must be examined under the antitrust "rule of reason."  133 S. Ct. 2223 (2013). Mr. Simons was heavily involved in all aspects of appellate litigation, including the United States Supreme Court.

- *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), where the Third Circuit held that pay-for-delay agreements are subject to antitrust scrutiny, which helped to trigger the eventual review of the issue by the Supreme Court.  The Court of Appeals also made notable holdings concerning class certification in delayed generic entry cases.  The case has since settled for $60.2 million.

- *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677 (2d Cir. 2009), the first appellate decision directly addressing the issue of antitrust standing for claims relating to fraudulently obtained patents. The case later settled on terms favorable to the direct purchaser class.

- *In re Nifedipine Antitrust Litigation*, MDL No. 1515 (D.D.C.), in which Mr. Simons was one of the principal attorneys responsible for winning certification of a class of direct purchasers of generic versions of the antihypertensive drug Adalat CC, and for successfully defending that certification before the United States Court of Appeals. *In re Nifedipine Antitrust Litigation*, 246 F.R.D. 365 (D.D.C. 2007), Rule 23(f) appeal denied, 2009 U.S. App. LEXIS 3643 (D.C. Cir. Feb. 23, 2009). The case was resolved with settlements on behalf of the class worth $35 million.

- *In re Relafen Antitrust Litigation*, Civ. A. No. 01-12239-WGY (D. Mass.), in which Mr. Simons was a member of the team of attorneys representing a class of direct purchasers of the prescription anti-inflammatory drug Relafen. A $175 million settlement was obtained on behalf of the class.

- *Congregation Kol Ami v. Abington Township*, Civ. A. No. 01-1919 (E.D. Pa.), in which Mr. Simons represented a non-profit in a civil rights challenge. The case presented several questions of first impression under the Federal and Pennsylvania Constitutions, the Pennsylvania Religious Freedom Restoration Act, and the Religious Land Use and Institutionalized Persons Act.

**Amanda R. Trask – Senior Counsel**

Amanda R. Trask is Senior Counsel in the Consumer Protection and Insurance Fraud practice groups. She concentrates her practice in the area of complex consumer litigation, prosecuting actions on behalf of consumers asserting claims against banks, insurance companies and other institutions for violations of both state and federal law, including claims under RESPA, RICO, FHA and state causes of action challenging unfair and deceptive practices.

Ms. Trask has successfully participated in litigation which resulted in multi-million-dollar settlements that helped put an end to major banks' reinsurance of borrowers' private mortgage insurance in violation of RESPA, providing relief to hundreds of thousands of borrowers. Ms. Trask also contributed to litigation against major banks that helped change their force-placed insurance practices. Ms. Trask has extensive experience working with experts in the fields of economics, insurance, mortgage lending and regulatory matters.

Ms. Trask is a graduate of Bryn Mawr College and Harvard Law School.

### Lane L. Vines – Senior Counsel

Lane L. Vines's practice is concentrated in the areas of securities/investor fraud, consumer and *qui tam* litigation. For more than 17 years, Mr. Vines has prosecuted both class action and individual opt-out securities cases for state government entities, public pension funds, and other large investors. Mr. Vines also represents consumers in class actions involving unlawful and deceptive practices, as well as relators in *qui tam*, whistleblower and False Claims Act litigations. Mr. Vines is admitted to practice law in Pennsylvania, New Jersey and numerous federal courts.

Mr. Vines also has experience in the defense of securities and commercial cases. For example, he was one of the firm's principal attorneys defending a public company which obtained a pre-trial dismissal in full of a proposed securities fraud class action against a gold mining company based in South Africa. See *In re DRDGold Ltd. Securities Litigation*, 05-cv-5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y. Jan. 31, 2007).

During law school, Mr. Vines was a member of the Villanova Law Review and served as a Managing Editor of Outside Works. In that role, he selected outside academic articles for publication and oversaw the editorial process through publication.

Prior to law school, Mr. Vines worked as an auditor for a Big 4 public accounting firm and a property controller for a commercial real estate development firm, and served as the Legislative Assistant to the Minority Leader of the Philadelphia City Council.

Mr. Vines has achieved the highest peer rating, "AV Preeminent" in Martindale-Hubbell for legal abilities and ethical standards. Mr. Vines is admitted to practice law in Pennsylvania, New Jersey and several federal courts.

### Associates

### John G. Albanese – Associate

John Albanese is an Associate in the Minneapolis office. Mr. Albanese concentrates his practice on consumer protection with a focus on Fair Credit Reporting Act violations related to criminal background checks. Mr. Albanese has also prosecuted class actions related to illegal online lending, unfair debt collection, privacy breaches, and other consumer law issues. Mr. Albanese is regularly invited to speak on consumer law and litigation issues. Mr. Albanese has obtained

favorable decisions for consumers in state and federal courts all over the country. He also frequently represents consumer advocacy groups as *amici curiae* at the appellate level.

Mr. Albanese is a graduate of Columbia Law School and Georgetown University. At Columbia, he was a managing editor of the Columbia Law Review and was elected to speak at graduation by his classmates. Mr. Albanese clerked for Magistrate Judge Geraldine Brown in the Northern District of Illinois.

**Christina M. Black – Associate**
Christina M. Black is an Associate in the Philadelphia office. Prior joining Berger Montague, Ms. Black clerked for the Honorable Anne E. Thompson on the United States District Court for the District of New Jersey. She also completed a one-year legal fellowship at the National Center for Lesbian Rights, where she supported nationwide impact litigation for LGBT rights. While in law school, Ms. Black was a lead articles editor at the Stanford Law and Policy Review, participated in the Williams Institute Moot Court Competition, and interned at the San Francisco City Attorney's Office.

**Zachary D. Caplan – Associate**
Zach Caplan concentrates his practice on complex litigation, including antitrust, commodities, and e-discovery.

Zach serves as a member of leadership teams that have recovered hundreds of millions of dollars for the Firm's clients. For example, he plays a significant role in litigating antitrust cases brought on behalf of physicians and other purchasers targeting the high prices of prescription drugs. In this space, he has litigated reverse payment, patent fraud, monopolization, and price-fixing matters in federal courts around the country. Zach is also involved in a number of commodities cases alleging years-long manipulation of global financial benchmarks by some of the world's largest banks.

Zach is particularly adept and experienced in managing e-discovery, the process of discovering and producing electronically stored information (ESI). Zach counsels Berger's litigation teams in negotiations relating to the search, production, and preservation of ESI, ESI search terms/technology assisted review (predictive coding) methodology, and ESI-related disputes.

Zach is a frequent public speaker on antitrust and e-discovery related topics. He also regularly contributes to publications from the American Bar Association, The Sedona Conference, and Law360.

**Aurelia Chaudhury – Associate**
As an Associate in the Antitrust Department, Ms. Chaudhury works primarily on pharmaceutical antitrust cases. Her work has contributed to successful challenges of anticompetitive practices by pharmaceutical manufacturers, including a recent $120 million settlement reached on behalf of the direct purchaser class three weeks before trial was scheduled to start in *In re Loestrin 24 Fe Antitrust Litigation*, related to claims that Allergan wrongfully delayed entry of lower-cost generic

versions of Loestrin 24 Fe, a birth control pill. She was an integral part of the trial team in *Loestrin*, authoring pretrial motions related to market power and damages, and preparing examination and cross-examination outlines for fact and expert witnesses.

Ms. Chaudhury is also a member of the trial team in *In re Intuniv Antitrust Litigation*, a case regarding impaired generic entry of an ADHD medication, where she contributed to class certification and summary judgment briefing on market power. Ms. Chaudhury also contributed to the class certification briefing in *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, where the district court certified the direct purchaser class, and she is participating in the pending appeal of that certification. She is currently working on several other pharmaceutical antitrust cases, including *In re Novartis and Par (Exforge) Antitrust Litigation*, *In re Zetia (Ezetimibe) Antitrust Litigation*, and *JM Smith Corp. v. AstraZeneca Pharm. (Seroquel XR)*.

In 2020, Ms. Chaudhury was honored as one of 24 "Lawyers on the Fast Track" by *The Legal Intelligencer*.

Prior to starting work at the firm, Ms. Chaudhury clerked for the Honorable Judge David J. Barron on the United States Court of Appeals for the First Circuit and the Honorable Judge Denise J. Casper on the United States District Court for the District of Massachusetts.

Ms. Chaudhury received her J.D. from Yale Law School, where she as an editor of the Yale Law Journal, a student director of the Mortgage Foreclosure Litigation Clinic, and a Coker Fellow. Ms. Chaudhury received a B.A. in Mathematical Economic Analysis from Rice University.

Ms. Chaudhury is admitted to practice in Pennsylvania and Massachusetts.

**Krysten Connon – Associate**

Ms. Connon is an Associate in the firm's Employment & Unpaid Wages practice group. She represents employees who are not being paid properly in class and collective actions arising under the Fair Labor Standards Act and state laws.

Prior to joining the firm, Ms. Connon practiced as a litigation associate at a large Philadelphia firm, where she represented corporate and individual clients in complex commercial litigation and arbitration matters. Ms. Connon also worked as a Staff Attorney at Women Against Abuse, where she litigated cases originating as domestic violence matters.

Ms. Connon graduated *summa cum laude* from the Drexel University School of Law, and is a Phi Beta Kappa graduate of the University of Maryland. Following law school, Ms. Connon served as a federal judicial law clerk in the United States District Court for the District of New Jersey and the United States District Court for the District of Columbia. She co-authored the 2015 Oxford University Press book, *Living in the Crosshairs: The Untold Stories of Anti-Abortion Terrorism*, which presents the results of extensive interviews with abortion providers around the intersections

of law, policy, and anti-abortion violence. Ms. Connon currently serves on the Board of Directors of Planned Parenthood Southeastern Pennsylvania.

**William H. Ellerbe – Associate**
William H. Ellerbe is an Associate in the Philadelphia office and practices in the firm's Whistleblower, *Qui Tam* & False Claims Act group, which has collectively recovered more than $3 billion for federal and state governments, as well as over $500 million for the firm's whistleblower clients. Mr. Ellerbe represents whistleblowers in litigation across the country and also actively assists in investigating and evaluating potential whistleblower claims before a lawsuit is filed.

Mr. Ellerbe received an A.B. in English from Princeton University. He graduated *magna cum laude* from the University of Michigan Law School and also received a certificate in Science, Technology, and Public Policy from the Ford School of Public Policy. During law school, Mr. Ellerbe was an Associate Editor of the *Michigan Telecommunications and Technology Law Review* and an active member of both the Environmental Law Society and the Native American Law Students Association.

Prior to joining the firm, Mr. Ellerbe clerked for the Honorable Anne E. Thompson of the United States District Court for the District of New Jersey. He also worked as a white collar and commercial litigation associate at two large corporate defense firms.

Mr. Ellerbe is admitted to practice in the state courts of Pennsylvania, New Jersey, and New York, as well as the Third and Fourth Circuit Courts of Appeals and the United State District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey, the Southern District of New York, and the Eastern District of New York.

**Joseph C. Hashmall – Associate**
Joe Hashmall, an Associate, is a member of the firm's Consumer Protection practice group. In that practice group, Mr. Hashmall primarily focuses on consumer class actions concerning financial and credit reporting practices.

Mr. Hashmall is a graduate of the Grinnell College and the Cornell University School of Law. During law school, Mr. Hashmall served as the Executive Editor of the Cornell Legal Information Institute's Supreme Court Bulletin and as an Editor for the Cornell International Law Journal. Mr. Hashmall has also worked as law clerk for President Judge Bonnie B. Leadbetter of the Pennsylvania Commonwealth Court and for the Honorable David J. Ten Eyck of the Minnesota District Court.

**Donnell C. Much – Associate**
Donnell is an Associate in the firm's Securities Litigation Department, where he focuses his practice on complex securities litigation, class action securities "loss" calculations, securities arbitration litigation, and state and federal securities litigation.

Before joining the firm, Don worked as a Litigation Associate for six years at a highly reputable, full-service law firm in Devon, Pennsylvania, where he handled general and complex commercial litigation; securities arbitration cases filing suit against stock brokers, broker-dealers, and investment advisers in several different arbitration forums (FINRA Dispute Resolution, AAA, and JAMS); and Plaintiffs' side Ponzi scheme litigation cases. Don has been named a 2019 Pennsylvania "Rising Star" attorney in the area of securities litigation by Super Lawyers/Rising Stars, an attorney-rating service of Thomson Reuters.

Don is a 2014 graduate with Distinction of the Georgetown University Law Center's LLM program, where he concentrated in Securities Regulation. While at Georgetown, Don worked as an intern at the U.S. Securities & Exchange Commission ("SEC") in the Division of Enforcement – Market Abuse Unit and in the Division of Trading & Markets. While at the Georgetown, Don also interned at the Commodities Futures Trading Commission ("CFTC") in the Office of the General Counsel. Don is also a 2008 graduate of Loyola New Orleans College of Law in New Orleans, Louisiana. Prior to attending law school, Don received his MBA from Saint Joseph's University in Philadelphia, Pennsylvania, where he concentrated in financial statement analysis. Prior to attending law school, Don worked as a Senior Consultant for a "big-four" accounting firm focusing his consulting practice in the areas of alternative funds (hedge funds) and mutual funds. Don is a 2003 graduate of the University of Vermont, where he received his Bachelor of Arts degree.

Don is a member of the Delaware County Bar Association, the Delaware County Inn of Court, and the Public Investors Advocate Bar Association ("PIABA"), a group dedicated to the representation of aggrieved and defrauded investors. Don serves on PIABA's Legislation and Journals' Committees.

Don is also a certified Sommelier by the Wine School of Philadelphia and is a member of the Corinthian Yacht Club of Philadelphia.

### Amey J. Park – Associate
Amey J. Park is an Associate in the firm's Philadelphia office and practices in the firm's Consumer Protection and Commercial Litigation practice groups.

Before joining the firm, Ms. Park was an associate in the litigation department of a large corporate defense firm. She represented corporate and individual clients in complex commercial litigation, product liability, and personal injury matters in a wide variety of industries, including financial services, insurance, trust administration, and real estate. Ms. Park also represented clients *pro bono*, serving as first-chair counsel in a federal jury trial for violations of an inmate's constitutional rights by law enforcement officers and assisting a young refugee seeking asylum in federal immigration court.

Ms. Park is admitted to practice in state courts in Pennsylvania and New Jersey; the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, and the District of New Jersey; and the United States Court of Appeals for the Third Circuit.

**Alexandra Koropey Piazza – Associate**

Alexandra Koropey Piazza, an Associate, is a member of the firm's Employment Law, Consumer Protection and Lending Practices & Borrowers' Rights practice groups. In the Employment Law practice group, Ms. Piazza primarily focuses on wage and hour class and collective actions arising under state and federal law. Ms. Piazza's work in the Consumer Protection and Lending Practices & Borrowers' Rights practice groups involves consumer class actions concerning financial practices.

Ms. Piazza is a graduate of the University of Pennsylvania and Villanova University School of Law.  During law school, Ms. Piazza served as a managing editor of the Villanova Sports and Entertainment Law Journal and as president of the Labor and Employment Law Society. Ms. Piazza also interned at the United States Attorney's Office and served as a summer law clerk for the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania.

**Josh Ripley – Associate**

Josh Ripley is an Associate in the Antitrust, Insurance Products & Financial Services, and Environmental & Mass Tort practice groups.

Mr. Ripley graduated from Harvard Law School in 2015. While in law school, Mr. Ripley participated in various clinical organizations, including the Tenant Advocacy Project, the Employment Law Clinic, and the Predatory Lending and Consumer Protection Clinic.

**Camille Fundora Rodriguez – Associate**

Ms. Rodriguez is an Associate in the firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups. Ms. Rodriguez primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws.

Prior to joining the firm, Ms. Rodriguez practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters. Ms. Rodriguez is a graduate of Widener University School of Law.

Ms. Rodriguez is an active member of the Pennsylvania, Philadelphia, and Hispanic Bar Associations.

**Mark R. Suter – Associate**

Mark Suter is an Associate in the firm's Antitrust practice group. He represents businesses and workers in complex civil litigation throughout the country. Mr. Suter's practice focuses primarily on antitrust class actions alleging anticompetitive conduct such as price-fixing and wage suppression. Among his notable successes, he has represented direct purchasers against price-fixing cartels in *In re Capacitors Antitrust Litigation* (N.D. Cal.) ($451.5 million in settlements to date) and *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.) ($190.7 million total settlements). Mr. Suter also currently serves as co-lead counsel in *Le, et al v. Zuffa, LLC* (D. Nev.), representing

a proposed class of professional mixed martial arts fighters in antitrust litigation against the Ultimate Fighting Championship (UFC). In addition to his antitrust practice, he represents whistleblowers in *qui tam* or False Claims Act litigation against companies that have committed fraud against the government.

As a member of the firm's Pro Bono Committee, Mr. Suter coordinates firm-wide pro bono initiatives and maintains an active pro bono practice volunteering with local public interest organizations. He is also on the Executive Committee for Community Legal Services Justice Rising Advocates and a Board Member for the Young Lawyers Division of COSAL (the Committee to Support Antitrust Laws).

Mr. Suter graduated *magna cum laude*, Order of the Coif from Rutgers Law School. While in law school, he served as Senior Editor of the *Rutgers Law Review* and represented children and families as part of the Rutgers Child Advocacy Clinic. He received his B.A. in Philosophy and Political Science from McGill University.

### Y. Michael Twersky – Associate

Y. Michael Twersky concentrates his practice primarily on representing plaintiffs in complex litigation, including on insurance, antitrust, and environmental matters.

In the past, Mr. Twersky has worked on a wide variety of insurance matters including an insurance case in which a Federal District Court found on Summary Judgement that a large insurance company had breached its policy when it denied benefits under an accidental death insurance plan. Mr. Twersky has also worked on a number of antitrust class actions alleging that pharmaceutical manufacturers wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws, including: *In re Skelaxin (Metaxalone) Antitrust Litigation*, 1:12-md-02343 (E.D. Tenn.) ($73 million settlement in 2014), and *In re Solodyn Antitrust Litig.*, 14 MD 2503 (D. Mass.) (combined settlements in excess of $76 million in 2018). Mr. Twersky has also represented inmates in connection with allegations that various inmate calling services charged unreasonable rates and fees in violation of the Federal Communication Act.

Currently, Mr. Twersky is litigating a number of complex class actions related to insurance products, including proposed class actions in multiple forums against a workers' compensation insurance company alleging that the company deceptively sold illegal workers' compensation programs that were not properly filed with state regulators. *E.g.*, *Shasta Linen Supply, Inc. v Applied Underwriters et al.*, No. 2:16-cv-0158 (N.D. Cal.). Mr. Twersky is also involved in a proposed class action in Federal Court brought on behalf of Alaska-enrolled Medicaid Healthcare Providers against the developers of the Alaska Medicaid Management Information System Company alleging that providers were harmed as a result of the negligent and faulty design and implementation of the MMIS system. *See South Peninsula Hospital et al v. Xerox State Healthcare, LLC*, 3:15-cv-00177 (D. Alaska). Mr. Twersky is also involved in environmental litigation on behalf of various states to recover the costs of remediation for contamination to groundwater resources.

Mr. Twersky graduated from Temple University Beasley School of Law in 2011, where he was a member of the Rubin Public Interest Law Honors Society and a Class Senator. In addition, Mr. Twersky advised various clients in business matters as part of Temple University's Business Law Clinic.

**Nick Urban – Associate**
Nick Urban is an Associate in the Antitrust practice group. He concentrates his practice in the area of complex antitrust litigation.

Mr. Urban focuses on antitrust class actions alleging that pharmaceutical manufacturers wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. These cases include *In re Namenda Direct Purchaser Antitrust Litigation*, No. 1:15-cv-07488 (S.D.N.Y.) ($750 million settlement); *In re Modafinil Antitrust Litigation*, 2:06-cv-01797 (E.D. Pa.) ($512 million settlement with three of five defendants); *In re Aggrenox Antitrust Litigation*, 3:13-cv-01776 (D. Conn.) ($146 million settlement); *In re Skelaxin (Metaxalone) Antitrust Litigation*, 1:12-md-02343 (E.D. Tenn.) ($73 million settlement); *In re Wellbutrin XL Antitrust Litigation*, 2:08-cv-02431 (E.D. Pa.) ($37.5 million settlement with one of two defendants); *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 1:18-md-02819 (E.D.N.Y.); *In re Niaspan Antitrust Litigation*, 2:13-md-02460 (E.D. Pa.); *King Drug Company of Florence, Inc. et al., v. Abbott Laboratories et al,* 2:19-cv-3565 (E.D. Pa.); and *In re EpiPen Direct Purchaser Litigation* 0:20-cv-00827 (D. Minn.).

He has also devoted significant time to antitrust cases brought against the banking industry. E.g., *Ross and Wachsmuth v. American Express Co., et al.*, 04-CV-5723 (S.D.N.Y.) ($49.5 million settlement); and *Ross, et al. v. Bank of America, N.A. (USA), et al.*, 05-CV-7116 (S.D.N.Y.) (obtained settlements with four of the nation's largest card issuers (Bank of America, Capital One, Chase and HSBC) to drop their arbitration clauses for their credit cards for 3.5 years).

While at the University of Pennsylvania Law School, Mr. Urban served as senior editor for the Journal of Law and Social Change and worked at several organizations dedicated to increasing the availability of quality affordable housing through impact litigation and development. Prior to attending law school, he worked as an anti-hunger advocate in the San Diego region, and also worked for the Office of the Secretary of State of California

**Michaela Wallin – Associate**
Michaela Wallin is an Associate in the Antitrust and Employment Law practice groups. Ms. Wallin's work in the Antitrust group involves complex class actions, including those alleging that pharmaceutical manufacturers have wrongfully kept less expensive drugs off the market, in violation of the antitrust laws. In the Employment Law Group, Ms. Wallin focuses on wage and hour class and collective actions arising under federal and state law.

Prior to joining the firm, Ms. Wallin served as a law clerk for the Honorable James L. Cott of the United States District Court of the Southern District of New York. She also completed an Equal Justice Works Fellowship at the ACLU Women's Rights Project, where she worked to challenge

local laws that target domestic violence survivors for eviction and impede tenants' ability to call the police.

Ms. Wallin is a graduate of Columbia Law School, where she was a Harlan Fiske Stone Scholar. Ms. Wallin graduated *magna cum laude* from Bowdoin College, where she was Phi Beta Kappa and a Sarah and James Bowdoin Scholar.

## Counsel

### Abigail J. Gertner – Counsel

Abigail J. Gertner is an attorney in the firm's Philadelphia office and practices in the firm's Consumer Protection and ERISA Litigation practice groups.

Before joining the firm, Ms. Gertner worked at both plaintiff and defense firms, where she gained experience in complex litigation, including consumer fraud, ERISA, toxic tort, and antitrust matters. She concentrates her current practice on automotive defect, consumer fraud, and ERISA class actions.

Ms. Gertner graduated from Santa Clara University School of Law in 2003, where she interned for the Santa Clara County District Attorney's Office in the Child and Elder Abuse Unit. She completed her undergraduate studies at Tulane University in 2000, earning a B.S. in Psychology and a B.A. in Classics.

She is also active in her community, formerly serving as a Youth Aid Panel chairperson for Upland in Delaware County. She now serves on the Upland Borough Council, beginning her four-year term in January 2020.

Ms. Gertner is admitted to practice in state courts in Pennsylvania and New Jersey; and the United States District Courts for the Eastern District of Pennsylvania, the District of New Jersey, and the Eastern District of Michigan.

### Daniel E. Listwa – Counsel

Daniel E. Listwa has worked on a number of antitrust matters, with a focus on the suppression of generic competition by major pharmaceutical manufacturers. Before joining the firm, Mr. Listwa clerked for the Honorable J. Brian Johnson of the Lehigh County Court of Common Pleas, and was an associate at a medical malpractice defense firm in Blue Bell, PA. While in law school, Mr. Listwa was a staff writer for the Boston College Environmental Affairs Law Review, and interned at the U.S. District Court for the Eastern District of Pennsylvania.

### Stacy Savett – Counsel

Stacy Savett is a Staff Attorney in the firm's Employment & Unpaid Wages Group. She focuses on wage and hour class and collective actions arising under federal and state laws.

**Of Counsel**

**Harold Berger – Of Counsel & Managing Shareholder *Emeritus***

Judge Berger is Of Counsel & Managing Shareholder Emeritus. He participated in many complex litigation matters, including the *Exxon Valdez Oil Spill Litigation*, No. A89-095, in which he served on the case management committee and as Co-Chair of the national discovery team. He also participated in the *Three Mile Island Litigation*, No. 79-0432 (M.D. Pa.), where he acted as liaison counsel, and in the nationwide school asbestos property damage class action, *In re Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa.), where the firm served as co-lead counsel.

A former Judge of the Court of Common Pleas of Philadelphia, he has long given his service to the legal community and the judiciary. He is also active in law and engineering alumni affairs at the University of Pennsylvania and in other philanthropic endeavors. He serves as a member of Penn's Board of Overseers and as Chair of the Friends of Penn's Biddle Law Library, having graduated from both the engineering and law schools at Penn. Judge Berger also serves on the Executive Board of Penn Law's Center for Ethics and Rule of Law. In 2017, he was the recipient of Penn Law's Inaugural Lifetime Commitment Award, which recognizes graduates "who through a lifetime of service and commitment to Penn Law have truly set a new standard of excellence."

He is past Chair of the Federal Bar Association's National Committee on the Federal and State Judiciary and past President of the Federal Bar Association's Eastern District Chapter. He is the author of numerous law review articles, has lectured extensively before bar associations and at universities, and has served as Chair of the International Conferences on Global Interdependence held at Princeton University. Judge Berger has served as Chair of the Aerospace Law Committees of the American, Federal and Inter-American Bar Associations and, in recognition of the importance and impact of his scholarly work, was elected to the International Academy of Astronautics in Paris.

As his biographies in *Who's Who in America*, *Who's Who in American Law* and *Who's Who in the World* outline, he is the recipient of numerous awards, including the Special Service Award of the Pennsylvania Conference of State Trial Judges, a Special American Bar Association Presidential Program Award and Medal, and a Special Federal Bar Association Award for distinguished service to the Federal and State Judiciary. He has been given the highest rating (AV Preeminent) for legal ability as well as the highest rating for ethical standards by Martindale-Hubbell. Judge Berger was also presented with a Lifetime Achievement Award in 2014 by *The Legal Intelligencer* in recognition of figures who have helped shape the law in Pennsylvania and who had a distinct impact on the legal profession in the Commonwealth.

He is a permanent member of the Judicial Conference of the United States Court of Appeals for the Third Circuit and has served as Chair of both the Judicial Liaison and International Law Committees of the Philadelphia Bar Association. He has also served as National Chair of the FBA's Alternate Dispute Resolution Committee.

Recipient of the Alumnus of the Year Award of the Thomas McKean Law Club of the University of Pennsylvania Law School, he was further honored by the University's School of Engineering and Applied Science by the dedication of the Harold Berger Biennial Distinguished Lecture and Award given to a technical innovator who has made a lasting contribution to the quality of our lives. He was also honored by the University by the dedication of an auditorium and lobby bearing his name and by the dedication of a student award in his name for engineering excellence.

Long active in diverse, philanthropic, charitable, community and inter-faith endeavors Judge Berger serves as a Lifetime Honorary Trustee of the Federation of Jewish Charities of Greater Philadelphia, as a Director of the National Museum of Jewish History, as a National Director of the Hebrew Immigrant Aid Society (HIAS) in its endeavors to assist refugees and indigent souls of all faiths, as A Charter Fellow of the Foundation of the Federal Bar Association and as a member of the Hamilton Circle of the Philadelphia Bar Foundation.

Among other honors and awards, as listed above, Judge Berger was honored by the University of Pennsylvania Law School at its annual Benefactors' Dinner and is the recipient of the "Children of the American Dream" award of HIAS for his leadership in the civic, legal, academic and Jewish communities.

### Gary E. Cantor – Of Counsel
Gary E. Cantor is Of Counsel in the Philadelphia office. He concentrates his practice on securities and commercial litigation and derivatives valuations.

Mr. Cantor served as co-lead counsel in *Steiner v. Phillips, et al. (Southmark Securities)*, Consolidated C.A. No. 3-89-1387-X (N.D. Tex.), (class settlement of $82.5 million), and *In re Kenbee Limited Partnerships Litigation*, Civil Action No. 91-2174 (GEB), (class settlement involving 119 separate limited partnerships resulting in cash settlement, oversight of partnership governance and debt restructuring (with as much as $100 million in wrap mortgage reductions)). Mr. Cantor also represented plaintiffs in numerous commodity cases.

In recent years, Mr. Cantor played a leadership role in *In re Oppenheimer Rochester Funds Group Securities Litigation* ($89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc.), No. 09-md-02063-JLK (D. Col.); *In re KLA-Tencor Corp. Securities Litigation*, Master File No. C-06-04065-CRB (N.D. Cal.) ($65 million class settlement); *In re Sepracor Inc. Securities Litigation*, Civil Action no. 02-12235-MEL (D. Mass.) ($52.5 million settlement.); *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (DLC) (S.D.N.Y.) ($70 million class settlement). He was also actively involved in the *Merrill Lynch Securities Litigation* (class settlement of $475 million) and *Waste Management Securities Litigation* (class settlement of $220 million).

For over 20 years, Mr. Cantor also has concentrated on securities valuations and the preparation of event or damage studies or the supervision of outside damage experts for many of the firm's cases involving stocks, bonds, derivatives, and commodities. Mr. Cantor's work in this regard has focused on statistical analysis of securities trading patterns and pricing for determining materiality,

loss causation and damages as well as aggregate trading models to determine class-wide damages.

Mr. Cantor was a member of the Moot Court Board at University of Pennsylvania Law School where he authored a comment on computer-generated evidence in the University of Pennsylvania Law Review. He graduated from Rutgers College with the highest distinction in economics and was a member of Phi Beta Kappa.

**Susan Schneider Thomas – Of Counsel**
Susan Schneider Thomas concentrates her practice on *qui tam* litigation.

Ms. Thomas has substantial complex litigation experience. Before joining the firm, she practiced law at two Philadelphia area firms, Schnader, Harrison, Segal & Lewis and Greenfield & Chimicles, where she was actively involved in the litigation of complex securities fraud and derivative actions.

Upon joining the firm, Ms. Thomas concentrated her practice on complex securities and derivative actions. In 1986, she joined in establishing Zlotnick & Thomas where she was a partner with primary responsibility for the litigation of several major class actions including *Geist v. New Jersey Turnpike Authority, C.A.* No. 92-2377 (D.N.J.), a bond redemption case that settled for $2.25 million and *Burstein v. Applied Extrusion Technologies, C.A.* No. 92-12166-PBS (D. Mass.), which settled for $3.4 million.

Upon returning to the firm, Ms. Thomas has had major responsibilities in many securities and consumer fraud class actions, including *In re CryoLife Securities Litigation, C.A.* No. 1:02-CV-1868 BBM (N.D.Ga.), which settled in 2005 for $23.25 million and *In re First Alliance Mortgage Co.*, Civ. No. SACV 00-964 (C.D.Cal.), a deceptive mortgage lending action which settled for over $80 million in cooperation with the FTC. More recently, Ms. Thomas has concentrated her practice in the area of healthcare *qui tam* litigation. As co-counsel for a team of whistleblowers, she worked extensively with the U.S. Department of Justice and various State Attorney General offices in the prosecution of False Claims Act cases against pharmaceutical manufacturers that recovered more than $2 billion for Medicare and Medicaid programs and over $350 million for the whistleblowers. She has investigated or is litigating False Claims Act cases involving defense contractors, off-label marketing by drug and medical device companies, federal grant fraud, upcoding and other billing issues by healthcare providers, drug pricing issues and fraud in connection with for-profit colleges and student loan programs.

**Tyler E. Wren - Of Counsel**
Mr. Wren is a trial lawyer with over 35 years of experience in both the public and private sectors.

Mr. Wren has represented both plaintiffs and defendants in a broad spectrum of litigation matters, including class actions, environmental, civil rights, commercial disputes, personal injury, insurance coverage, election law, zoning and historical preservation matters and other

government affairs. Mr. Wren routinely appears in both state and federal courts, as well as before local administrative agencies.

Following his graduation from law school, Mr. Wren served as staff attorney to the Committee of Seventy, a local civic watchdog group. Mr. Wren then spent a decade in the Philadelphia City Solicitor's Office in various positions in which his litigation and counseling skills were developed: Chief Assistant City Solicitor for Special Litigation and Appeals, Divisional Deputy City Solicitor for the Environment, Counsel to the Philadelphia Board of Ethics and Counsel to the Philadelphia Planning Commission. After leaving government employ and before joining the Firm in 2010, Mr. Wren was in private practice, including nine years with the Sprague and Sprague firm, headed by nationally recognized litigator Richard Sprague.

# ODOM & DES ROCHES, LLC
## SUITE 2020, POYDRAS CENTER
### 650 POYDRAS STREET
### NEW ORLEANS, LOUISIANA 70130
### TEL.  (504) 522-0077
### FAX  (504) 522-0078

---

**Firm Resume**

---

Odom & Des Roches, LLC, engages in multi-party litigation of complex civil matters throughout the United States.  The firm's clients have included local businesses, national and international companies, and private individuals.

The lawyers of Odom & Des Roches, LLC, have particular depth of experience in antitrust litigation, corporate litigation, and pharmaceutical industry litigation.  The firm routinely handles complex class action cases and other matters both inside and outside the Multi-District Litigation context.  The firm's members have served as lead trial counsel in national antitrust class cases that have gone to trial in various federal courts around the country or were settled on the "courthouse steps."

The firm has been intimately involved in, among others, the following national antitrust cases representing direct purchasers:

- *In re Namenda Direct Purchaser Antitrust Litig.,* Civil Action No. 1:15-cv-7488, S.D.N.Y. (district court-approved settlement of $750,000,000).

- *King Drug of Florence, Inc., et al. v. Cephalon, Inc., et al.,* Civil Action No. 2:06-cv-01797, E.D. Pa. (district court-approved settlement of $512,000,000 and additional private settlements).

- *In re TriCor Direct Purchaser Antitrust Litig.,* Civil Action No. 05-340, D. Del. (district court-approved settlement of $250,000,000).

- *In re Buspirone Antitrust Litig.,* MDL Docket No. 1410, S.D.N.Y. (district court-approved settlement of $220,000,000).

- *In re Neurontin Antitrust Litig.,* MDL Docket No. 1479, D.N.J. (district court-approved settlement of $190,000,000).

- *In re Relafen Antitrust Litig.*, Master File No. 01-12239, D. Mass. (district court-approved settlement of $175,000,000).

- *In re Lidoderm Antitrust Litig.*, Civil Action No. 3:15-cv-01784, N.D. Cal. (district court-approved settlement of $166,000,000).

- *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278, E.D. Mich. (district court-approved settlement of $110,000,000).

- *In re Prograf Antitrust Litig.*, Civil Action No. 11-md-2242, D.Mass. (district court-approved settlement of $98,000,000).

- *In re Remeron Antitrust Litig.*, Civil Action No. 03-CV-0085, D.N.J. (district court-approved settlement of $75,000,000).

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, S.D. Fla. (district court-approved settlement of $72,500,000).

- *In re K-Dur Antitrust Litig.*, MDL Docket No. 1419, D.N.J. (district court-approved settlement of $60,000,000).

- *Meijer, Inc. et al. v. Abbott Laboratories*, Civil Action No. 4:07-cv-05985, N.D. Cal. (district court-approved settlement of $52,000,000).

- *In re Hypodermic Direct Purchaser Antitrust Litig.*, Civil Action No. 05-1602, D.N.J. (district court-approved settlement of $45,000,000).

- *Natchitoches Parish Hospital Service District, et al.  v. Tyco International (US), et al.*, Civil Action No. 05-12024, D. Mass. (district court-approved settlement of $32,500,000).

- *In re AndroGel Antitrust Litig.*, Civil Action No. 09-md-2084, N.D. Ga. (private settlements).

- *In re Lamictal Direct Purchaser Antitrust Litig.*, Civil Action No. 2:12-cv-00995, D.N.J. (case pending).

- *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, MDL No. 2445, E.D. Pa. (case pending).

- *In re Novartis and Par Antitrust Litig.*, Civil Action No. 1:18-cv-4361, S.D.N.Y. (case pending).

The core of the firm's philosophy and practice is its commitment and ability to try jury cases, and its lawyers structure their strategy from the outset of an engagement with an eye towards eventual appearances in the courtroom for motion practice and jury trials.  It is the firm's philosophy and experience that being prepared for the rigors of motion practice and trial maximizes the opportunities for the client to obtain favorable results.  In addition to its active jury trial practice, the firm has extensive appellate experience, and its senior partner argued and won the unanimous reversal of a federal circuit court of appeals before the United States Supreme Court.  Odom & Des Roches, LLC, which is rated "AV" by Martindale-Hubbell, maintains offices in New Orleans, Louisiana and Hahira, Georgia.  The firm is listed in Martindale-Hubbell's "Bar Register of Preeminent Lawyers."

## MEMBERS

**John Gregory Odom, PLC.**  Mr. Odom was born in Hahira, Lowndes County, Georgia on November 29, 1951, and was admitted to the bar of the State of Georgia in 1978, the District of Columbia in 1982, and the State of Louisiana in 1983.  He is also admitted to the bars of numerous United States District Courts and Courts of Appeals throughout the country, as well as the United States Supreme Court.  He practiced with a leading Savannah firm for several years, and was a business litigation partner in the second-largest firm in Louisiana for seven years before leaving to form his own firm in 1990.

Mr. Odom was educated at Yale University (B.A., cum laude, 1973); The Queen's College, Oxford University (B.A. (hons.), 1975; M.A., 1981); and the University of Virginia School of Law (J.D., 1978).  He is the author of "Recent Developments in Litigation Under the Racketeer Influenced and Corrupt Organizations Act and Federal Securities Law," Manual of Recent Developments in the Law, Louisiana State Bar Association, 1987-1990, and "Creative Applications of Civil RICO," 11 Am. J. Trial Adv. 245, Fall, 1987.  His regular areas of practice include corporate litigation, healthcare industry litigation, securities litigation, RICO litigation, professional liability litigation, class action litigation, and antitrust litigation.

**Stuart E. Des Roches, LLC.**  Mr. Des Roches was born in New Orleans, Louisiana on August 12, 1966, and was admitted to the bar for the State of Louisiana in 1992.  He has practiced continuously with Mr. Odom since 1992 and was made a partner in the firm in 1998.  He is admitted to practice in numerous United States District Courts and Courts of Appeals throughout the country, as well as the United States Supreme Court.  Mr. Des Roches was educated at the University of New Orleans (B.A., 1989), and Tulane University School of Law (J.D., 1992), and is a member of the New Orleans, Louisiana, and American Bar Associations, and the United States Supreme Court Historical Society.

Mr. Des Roches has routinely practiced antitrust law for over twenty-five years, and has particular experience in antitrust litigation relating to the Hatch-Waxman Act, the pharmaceutical industry, and medical devices.  Mr. Des Roches served as the lead trial lawyer for the class of direct purchasers in *In re Tricor Direct Purchaser Antitrust Litigation*  (D. Del.), which resulted in the largest settlement at that time of a Hatch-Waxman antitrust case ($250,000,000) after

commencement of trial.  He also served as co-lead trial counsel with the firm's partner Mr. Kelly in *Natchitoches Parish Hospital Service District, et al. v. Tyco Healthcare, et al.* (D. Mass.), which settled for $32,500,000 after three weeks of trial and on the eve of closing arguments.  In *Namenda,* he was tapped to serve as lead trial counsel and the matter resolved for $750,000,000 the evening before trial.  He has also been involved in various other litigation matters, including numerous trials, in the areas of general business and accountant's liability defense.

**Andrew W. Kelly.**  Mr. Kelly was born in Bellefonte, Pennsylvania on December 6, 1966, and was admitted to the bar for the States of California and Louisiana in 1994.  He is admitted to practice in the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana, the Southern District of California, the United States Court of Appeals for the Fifth Circuit, as well as admitted *pro hac vice* in various additional federal courts.  Mr. Kelly was educated at the University of California at Berkeley (B.A., 1988), and the University of San Diego School of Law (J.D., 1994).  He served as law clerk to the Honorable John Minor Wisdom, of the United States Court of Appeals for the Fifth Circuit.  His regular areas of practice include business litigation, class action litigation, and antitrust litigation.  Along with Mr. Des Roches, Mr. Kelly served as co-lead trial counsel for the class of direct purchasers in *Natchitoches Parish Hospital Service District, et al. v. Tyco Healthcare, et al.* ($32,500,000 settlement three weeks into trial).  He is also available for counseling on criminal defense matters.

**Chris Letter.**  Mr. Letter was born in Philadelphia, Pennsylvania on August 30, 1974. He earned a J.D. from Loyola University of New Orleans School of Law in 2007 and received a Bachelor of Arts degree in history from the University of New Orleans in 1998.  Mr. Letter is admitted to practice in the Louisiana Supreme Court, the several courts of the State of Louisiana, the United States District Courts in Louisiana, the Fifth Circuit Court of Appeals, as well as admitted *pro hac vice* in various additional federal courts.  He actively participates in the firm's antitrust litigation practice.

## <u>ASSOCIATES</u>

**Annie M. Schmidt.**  Ms. Schmidt was born in New Orleans, Louisiana on May 11, 1985. She earned a J.D. from Loyola University School of Law in 2010, and received a Bachelor of Arts degree from Spring Hill College in 2007.  Ms. Schmidt is admitted to practice before the Louisiana Supreme Court and the several courts of the State of Louisiana.  She actively participates in the firm's antitrust litigation practice.

**Dan Chiorean.**  Mr. Chiorean was born in Oradea, Romania in April 1980, and immigrated to the United States at the age of 11. He holds a Bachelor of Science in Industrial and Operations Engineering from The University of Michigan, where he was recognized on the Dean's List and University Honors List. Mr. Chiorean earned his *Juris Doctor* in May, 2012 from Tulane Law School, where he served on Moot Court Board. He joined Odom & Des Roches as an Associate in March, 2014 and is admitted to practice before the Louisiana Supreme Court and the several courts of the State of Louisiana, the United States District Court for the

Eastern District of Louisiana, the United States District Court for the Northern District of Georgia, as well as admitted *pro hac vice* in various additional federal courts. Mr. Chiorean is a member of the Louisiana State Bar Association, the New Orleans Bar Association, and the Federal Bar Association. He actively participates in the firm's antitrust litigation practice.

**Christopher Stow-Serge.**  Mr. Stow-Serge was born in Fort Lauderdale, Florida in February of 1985.  He earned a Bachelor of Arts degree from Tulane University in 2007 and a J.D. from Tulane Law School in 2012, where he graduated *magna cum laude*.  Mr. Stow-Serge is admitted to practice law in the state courts of Louisiana as well as the U.S. District Court for the Eastern District of Louisiana, the U.S. District Court for the Western District of Louisiana, the U.S. Fifth Circuit Court of Appeals, as well as admitted *pro hac vice* in various additional federal courts.  He actively participates in the firm's antitrust litigation practice.

**Amanda Hass.** Ms. Hass was born in Sterling, Virginia. She earned her Bachelor of Arts at New York University in 2012 and graduated *magna cum laude* from Loyola University of New Orleans College of Law in 2017. Ms. Hass joined Odom & Des Roches, LLC as an associate in April 2020 and focuses her practice on pharmaceutical antitrust litigation. Ms. Hass has broad litigation experience in areas including contract, tort, housing, civil rights, FLSA, First Amendment, ADA claims, and family law. She is admitted to practice law in the state courts of Louisiana as well as the U.S. District Court for the Eastern District of Louisiana, the U.S. District Court for the Middle District of Louisiana, the U.S. District Court for the Western District of Louisiana, and the U.S. Fifth Circuit Court of Appeals.

## OF COUNSEL

**Thomas Maas.** Mr. Maas concentrates his practice on complex litigation, antitrust, and intellectual property disputes, and he has broad litigation experience in antitrust, patent, trademark, trade secrets, securities fraud, and other complex commercial cases. He has developed particular experience in the pharmaceutical industry, including antitrust, patent/Hatch-Waxman, and contract litigation, as well as counseling in licensing and M&A transactions. Mr. Maas is highly knowledgeable on the intricacies of Food and Drug Administration (FDA) approval, exclusivity periods under Hatch-Waxman, and the antitrust implications of settlements in pharmaceutical patent litigation. Mr. Maas has represented clients in multiple billion dollar jury trials in the pharmaceutical industry, as well as in a billion dollar merger. He has also co-authored multiple successful appellate briefs before various federal appellate courts, and he is a former licensed pharmacy technician. Mr. Maas also counsels clients in the alcoholic beverage industry on a wide variety of subject matter areas, including trademark disputes and licensing, regulatory issues, financing and restructuring, and distribution and promotional agreements. He acts as lead outside counsel for a popular distilled spirits brand, and he was selected to the Executive Committee for the Distilled Spirits Council of the United States (DISCUS), the country's leading trade organization in the distilled spirits industry. Mr. Maas joined Odom & Des Roches in 2017 as Of Counsel, after ten years of practice with Katten Muchin Rosenman in Chicago.

********

# SMITH SEGURA RAPHAEL & LEGER, LLP

A LAW FIRM INCLUDING A LIMITED LIABILITY COMPANY

DAVID P. SMITH, LLC*
SUSAN C. SEGURA
DAVID C. RAPHAEL, JR.
ERIN R. LEGER

POST OFFICE BOX 12008
ALEXANDRIA, LOUISIANA 71315

221 ANSLEY BLVD.
ALEXANDRIA, LOUISIANA 71301
TELEPHONE: 318-445-4480
FACSIMILE: 318-487-1741

*Also Admitted in Tennessee

# FIRM RESUME

Smith Segura Raphael & Leger, LLP, is a law firm headquartered in Alexandria, Louisiana. The firm's principal area of practice is class action antitrust litigation. The clients of the firm include local businesses, national and international companies, and private individuals.

The firm's attorneys have been extensively involved in a number of complex multi-party lawsuits, including *In Re: Brand Name Prescription Drugs Antitrust Litigation*, MDL 996 (N.D. Ill.); *Miami-Luken, Inc. et al v. Ranbaxy Laboratories Ltd., et* al, , 2:06-cv-01797 (E.D. Pa.)*;* and *King Drug Co. of Florence, et al v. Abbott Laboratories, et al*, 2:19-cv-03565 (E.D. Pa)   The firm has also been involved in numerous complex and diverse class actions such as *Northwest Airlines, Inc., et al., Antitrust Litigation* (S.D. Mich.); *Cardizem Antitrust Litigation*, MDL 1278 (S.D. Mich); *Hytrin Antitrust Litigation,* MDL 1317 (S.D. Fla.)*; Cipro Antitrust Litigation,* MDL  1382 (E.D.N.Y.); *Buspirone Antitrust Litigation,* MDL 1410 (D.D.C); *K-Dur Antitrust Litigation,*  MDL 1419 (D.N.J.); *In Re: Relafen Antitrust Litigation,* 01-cv-12239 (D.  Mass); *Neurontin Antitrust Litigation,* MDL 1479 (D.N.J.)*; Remeron Antitrust Litigation,* 03-cv-0085 (D.N.J.)*; Independent Drug Co. v. Biovail Corporation, et al (Adalat CC Antitrust Litigation)* (D.D.C.);  *In re: OxyContin Antitrust Litigation,* MDL 04-md-1603 (S.D. N.Y.); *Louisiana Wholesale Drug Co., Inc, et a. v. Biovail Corp. et al (Tiazac Antitrust Litigation)* (D.D.C.); *Louisiana Wholesale Drug Co., Inc. v. Abbott Laboratories, et al (TriCor Antitrust Litigation)*, 05-cv-340 (D. Del.); *In re: Hypodermic Products Antitrust Litigation*, MDL No. 1730 (D.N.J.); *Louisiana Wholesale Drug Co., Inc. v. Ferring B.V., et al (DDAVP Antitrust Litigation)* (S.D.N.Y.)*; Natchitoches Parish Hospital Service District v. Tyco International, LTD, et al (Pulse Oximeter Antitrust Litigation)* (C.D. Cal.); *Natchitoches Parish Hospital Service District v. Tyco International, LTD, et al (Sharps Containers Antitrust Litigation)*, 05-cv-12024 (D. Mass.); *Louisiana Wholesale Drug Co., Inc. v. Warner Chilcott Limited Co., et al (Ovcon 35 Antitrust Litigation)* (D.D.C.); *King Drug Co. of Florence, Inc., v. Cephalon, Inc., et al (Modafinil Antitrust Litigation)*, 06-cv-1797 (E.D. Pa.)*; William Rosenstein & Sons, et al v. Eastern Mushroom Marketing Cooperative, Inc., et al (Mushrooms Antitrust Litigation)*, 06-cv-620 (E.D. Pa.)*; Texas Grain Storage, Inc., et al v. Monsanto Co.*, 07-cv-0673 (W.D. Tex.)*; In re: Nexium Antitrust Litigation*, MDL 12-md-2409 (D.Mass.)*; Rochester Drug Co-Operative, Inc., et al v. Braintree Laboratories, Inc. (Miralax Antitrust Litigation)* (D. Del.)*; Delaware Valley Surgical Supply Co., Inc., et al v. Ethicon, Inc. et al (Endosurgical Antitrust Litigation)*, 05-cv-8809 (C.D. Cal.)*; Louisiana Wholesale Drug Co., Inc. v. Sanofi Aventis, et al (Arava Antitrust Litigation)* (S.D.N.Y.)*; Meijer, Inc., et al v. Abbott Laboratories, et al (Norvir Antitrust Litigation)*, 07-cv-5985 (N.D. Cal.)*; Dik Drug Co., et al v. Altana Pharma Ag, et al (Protonix Antitrust Litigation)* (D.N.J.)*; Louisiana Wholesale Drug Co., Inc., et al v. Unimed Pharmaceuticals, Inc. et al (Androgel Antitrust Litigation)* (N.D. Ga.); *In re: Prograf Antitrust Litigation*, 11-cv-2242 (D. Mass.); *Burlington Drug Co., Inc., et al v. Pfizer, Inc., et al (In re Lipitor Antitrust Litigation)*, 12-cv-2389 (D.N.J.); *Louisiana Wholesale Drug Co., Inc., et al v. SmithKline Beecham, et al (Lamictal Antitrust Litigation)*, 12-cv-0995 (D.N.J.); *Louisiana Wholesale Drug Co., Inc. v. Shire LLC, and Shire U.S., Inc. (Adderall XR Antitrust Litigation),* 12-cv-3711 (S.D.N.Y.); *In re: Niaspan Antitrust Litigation*, MDL 13-md-2460 (E.D. Pa.); *In re: Suboxone Antitrust Litigation*, MDL 13-md-2445 (E.D. Pa.); *In re: Aggrenox Antitrust*

*Litigation*, MDL 14-md-2516 (D.Conn.); *In re: Lidoderm Antitrust Litigation*, MDL 14-md-2521 (N.D. Ca.); *In re:   In re: Opana ER Antitrust Litigation*, MDL-2580 (N.D. IL); *In re Namenda Antitrust Litigation*, 15-cv-7488 (S.D.N.Y.); *In re Asacol Antitrust Litigation*, 1:15-cv-12730 (D. Mass.); *Drogueria Betances, LLC, et al v. Novartis Pharmaceuticals Corporation, et al (Exforge Antitrust Litigation)*, 1:18-cv-04361 (S.D.N.Y.); *JM Smith Corporation d/b/a Smith Drug Company, et al v. Astrazeneca Pharmaceuticals L.P., et al (Seroquel XR Antitrust Litigation)*, 1:19-cv-07233 (S.D.N.Y); *Rochester Drug Co-Operative, Inc., et al v. Eli Lilly and Company, et al (Insulin Direct Purchaser Litigation)*, 3:20-cv-03426 (D.N.J.); *In re: EpiPen Direct Purchaser Litigation*, 0:20-cv-00827 (D. Minn.); and *JM Smith Corporation d/b/a Smith Drug Company, et al v. Abbvie Inc., et al (Bystolic Antitrust Litigation)*, 1:20-cv-05735 (S.D.N.Y.).

In addition to serving as class counsel and on the executive committees in a number of the antitrust class action cases listed above, the firm also served as co-lead class counsel in *Abshire v. State of Louisiana*, Case No. 377,713 c/w 412,265, 19th J.D.C., Parish of East Baton Rouge, State of Louisiana, a class action lawsuit against several state agencies for regulatory misconduct in which a multi-million dollar settlement was secured for the benefit of several hundred class members after decades of litigation.

## PARTNERS OF THE FIRM

**DAVID P. SMITH, LLC,** born in Lecompte, Louisiana; admitted to bar, 1968, Tennessee; 1971, Louisiana; U.S. Court of Military Appeals and U.S. Tax Court; 1974, U.S. Supreme Court.  Education: Louisiana State University and A. and M. College (B.A., 1964); University of Tennessee at Knoxville (J.D., 1967).  Capt., JAGC, USMCR, 1968-1971. Tax Attorney, Office of the Chief Counsel, Internal Revenue Service, 1971-1976.  Member:  Louisiana State and American Bar Associations.  Committees: Louisiana Bar Association Committees, including service on the Multi-Jurisdictional Practice Committee.   Areas of Practice:  Diverse state and federal litigation, including complex multi-party litigation, as well as commercial and business torts.
E-mail:  dsmith@ssrllp.com

**SUSAN C. SEGURA,** born in Loreauville, Louisiana; admitted to bar, 1993, Louisiana; also admitted to practice before U.S. Court of Appeals Fifth Circuit, U.S. District Court, Eastern and Western Districts of Louisiana.  Education:  University of Southwestern Louisiana (B.S., summa cum laude, 1987), Louisiana State University (J.D., 1993).   Member:   Alexandria, Louisiana State and American Bar Associations; Bar Association of the Federal Fifth Circuit.  Areas of Practice: Diverse state and federal litigation, including complex multi-party and/or class action litigation and commercial litigation.
E-mail:  ssegura@ssrllp.com

**DAVID C. RAPHAEL, JR.,** born in New Orleans, Louisiana; admitted to bar, 1994, Louisiana; also admitted to practice U.S. Supreme Court, U.S. Court of Appeals Third Circuit, U.S. Court of Appeals Fifth Circuit, U.S. Court of Appeals Federal Circuit, U.S. District Court, Eastern, Middle and Western Districts of Louisiana.  Education: Louisiana State University (B.S., 1989, J.D., 1993).  Member: Louisiana State and American Bar Associations.  Areas of Practice: Diverse state and federal litigation, including complex multi-party and/or class action litigation, as well as business transactions and commercial and business torts.
E-mail: draphael@ssrllp.com

**ERIN R. LEGER,** born in Lake Charles, Louisiana; admitted to bar, 2006, Louisiana. Education:  Louisiana State University (B.S., 2003; J.D., 2006).  Also admitted to practice in the U.S.

District Court for the Western District of Louisiana. Member: Louisiana and American Bar Associations. Areas of Practice: Diverse state and federal litigation, including complex multi-party litigation and/or complex and diverse class actions, as well as commercial and business torts.
E-mail:  eleger@ssrllp.com

## LEGAL ASSISTANTS OF THE FIRM

**NANCY A. BLACKWELL,** born in Taipei, Taiwan. Education: Delta Business College, Louisiana State University at Alexandria. Experience: Over 20 years experience in all areas of law with a present emphasis in complex commercial litigation and class action antitrust litigation.
E-mail: nblackwell@ssrllp.com

**DONNA G. THOMPSON,** born in Alexandria, Louisiana. Education: Delta Business College (Certificate in Legal Secretary studies). Legal experience includes areas of complex commercial litigation and class action antitrust litigation.
E-mail:  dthompson@ssrllp.com



TECHNOLOGICALLY **DRIVEN MINDS** FOR
TECHNOLOGICALLY **COMPLEX CASES**

# Firm Resume

heimpayne+chorushLLP

https://www.hpcllp.com/

# ABOUT
# HEIM, PAYNE & CHORUSH

We handle technologically complex cases, with a focus on patent infringement and class action antitrust cases. With the rise of post-grant challenges at the Patent Office, we have also handled numerous *Inter Partes Review and Reexamination proceedings*.

Our attorneys attended some of the top law schools in the nation, and many clerked for federal district court judges and Federal Circuit Court of Appeals judges.

All of our attorneys have technical backgrounds in engineering or the sciences. This combination enables us to effectively and efficiently take on the most complicated patent, trade secret, and antitrust legal challenges.

# Our Practice

HPC represents plaintiffs and defendants nationwide in patent, trade secret, and antitrust litigation in a broad range of technologies including pharmaceuticals, microprocessors, graphics processors, computer architecture, search engines, memory control systems, wireless local area networks, cellular telephone systems, Bluetooth technology, data transmission systems and networks, systems for streaming audio and video, database caching software, multiplayer online gaming systems, multiband antennas, drilling and other downhole systems, heart stents, and natural gas conversion systems.

HPC's representation of plaintiffs and defendants includes cases in the federal district courts throughout the nation and the Texas state district courts. Many of these cases result in trials. HPC also represents plaintiffs and defendants in appellate courts nationwide, including the Federal Circuit Court of Appeals and the United States Supreme Court.

HPC has an active practice before the Patent Trial and Appeal Board in patent review proceedings. HPC has represented both patent owners and petitioners in Inter Partes Review ("IPR") proceedings before the Board. For example, in *ABB, Inc. v. Roy-G-Biv Corp.*, a series of IPRs decided in 2014, HPC helped secure the first ever final written decision for a patent owner confirming the patentability of all challenged claims in an IPR.

Understanding and being proficient in post-grant proceedings before the Board is an important aspect of modern patent litigation. HPC also has the skills to handle these cases through appeal at the Federal Circuit with its many former Federal Circuit clerks.

Our attorneys have a wide variety of technical backgrounds that allows us to handle all facets of intellectual property litigation and IPRs. We handle every aspect of the most complicated patent and trade secret disputes. While we represent some of the largest energy and technology firms, many of our clients are smaller companies seeking to protect their innovations against the behemoths of industry.

# Our People

Our attorneys possess a rare combination of technical knowledge and top-tier legal experience and credentials. Each of our attorneys has one or more degrees in electrical engineering, computer engineering, chemical engineering, material engineering, physics, or chemistry. Many of our attorneys are registered to practice before the United States Patent & Trademark Office.

Many of the firm's attorneys served as law clerks at the United States Court of Appeals for the Federal Circuit and/or clerked at the United States District Court for the Eastern District of Texas. One of our attorneys received the highest score on the Texas Bar Examination, and we have a former U.S. Patent Examiner.

Across the board, our attorneys have proven technical and legal skills that enable us to obtain the best possible results for our clients, including some of the largest patent infringement verdicts and antitrust settlements in the country.

# Our Business Model

While we handle cases under traditional hourly billing arrangements, we often are retained under contingency arrangements in which we share the risk and reward with our clients by linking our fees to the results we achieve. We have developed fee arrangements with clients that range from partial contingent fees that reduce our hourly rates for a stake in the outcome, to full contingent arrangements where we receive no hourly fees and are solely compensated from the results we obtain for our clients. We also have been retained under flat fee arrangements, where we are paid a fixed amount each month during the period of the lawsuit.

As in its litigation practice, HPC offers flexible compensation arrangements for handling IPR proceedings, including hourly, fixed fee, and other variations. HPC is willing to work with a client to determine the most cost-effective fee structure for that client.

We have found that our experience in handling contingent fee cases enables us to more efficiently manage hourly work. We treat every case as a representative model of our abilities and integrity. That is why so many clients and co-counsel contact us when they have a new case. At HPC, we take pride in our ability to partner with other attorneys and firms to bring the best possible trial team together for the benefit of the client.

# Our Attorneys
















# About Michael Heim

Michael Heim is a founding partner and the managing director of the firm. He possesses a unique breadth of experience in the patent industry with more than 30 years of litigation experience, coupled with extensive experience developing strategies for managing and enforcing patent portfolios. Mike's principal focus is intellectual property litigation, and he is known in the industry as a skilled litigator of complex patent cases. He has led litigation teams from complaint to judgment in federal district courts in the Eastern District of Texas and across the country, winning favorable settlements and judgments for his clients. Mike also has extensive experience handling appeals in patent cases before the U.S. Court of Appeals for the Federal Circuit.

Mike has a degree in electrical engineering, and early in his career, served three years as a Patent Examiner at the U.S. Patent and Trademark Office where he specialized in examining patent applications involving electrical communications and computer software and hardware. He often litigates cases involving technology related to his expertise in the electronics field, including computer hardware and software and wireless communications. Particularly, he has handled cases in fields such as microprocessors, video processors, antenna technology, multi-player on-line gaming systems, wireless LANs and Bluetooth technology. Mr. Heim has also litigated class action antitrust lawsuits against pharmaceutical companies misusing intellectual property laws to maintain exclusive rights to brand-name drugs in order to keep generic products from entering the market.

Mike has been recognized as a leading lawyer by Forbes Magazine, Thomson-Reuters' Super Lawyers, Chambers USA, H Texas Magazine and IP Law & Business, among others. He has served as past President of the State Bar of Texas Intellectual Property Section and the Houston Intellectual Property Law Section. Mr. Heim has frequently lectured on litigation and intellectual property matters.

# Michael Heim

## EDUCATION

The George Washington School of Law, J.D., with honors, 1986

University of Missouri, B.S. in Electrical Engineering, 1983

## ADMISSIONS

U.S. Court of Appeals for the Federal Circuit

U.S. Court of Appeals for the Fifth Circuit

U.S. Patent & Trademark Office

U.S. District Court for the Northern District of Texas

U.S. District Court for the Eastern District of Texas

U.S. District Court for the Southern District of Texas

U.S. District Court for the Western District of Texas

State of Texas

## HONORS

- Chambers USA, 2005-2020, Leading Lawyers in America
- Lawyer of the Year, Litigation – Intellectual Property, by Best Lawyers, 2020
- Named Top 1000 Leading IP Professional in Intellectual Asset Management's (IAM) *Patent 1000* (2017-2020)
- IAM Strategy 300: The World's Leading IP Strategists, 2019
- IP Stars, 2018-2020, by Managing Intellectual Property magazine
- Best Lawyers in America, 2006-2021
- Texas Super Lawyers, 2004-2020, by Thomson Reuters
- Top 100 Super Lawyers in Houston, 2018, by Thomson Reuters
- Patent Stars, 2017, by Managing Intellectual Property magazine
- AV Preeminent Rated by Martindale-Hubbell

# About Leslie Payne

For more than 25 years, Leslie Payne's practice has focused on the prosecution and defense of actions in Federal and State courts at the trial and appellate levels in the areas of patent infringement, unfair competition, trademark infringement, trade secret misappropriation, breach of contract, tortious interference and other areas. He has extensive experience in these areas, from the filing of a case through discovery, trial, verdict, and appeal.

In addition, Les has represented clients in many reexamination and inter partes review proceedings at the U.S. Patent and Trademark Office. He has represented clients in many different engineering and science disciplines, including the mechanical, electrical, computer and chemical arts.

# Leslie Payne

## EDUCATION

Vanderbilt University School of Law, J.D., 1992

University of Tennessee, B.S. in Electrical Engineering, *magna cum laude*, 1989

## ADMISSIONS

- U.S. Supreme Court
- U.S. Court of Appeals for the Federal Circuit
- U.S. Court of Appeals for the Fifth Circuit
- U.S. Patent & Trademark Office
- U.S. District Court for the Northern District of Texas
- U.S. District Court for the Eastern District of Texas
- U.S. District Court for the Southern District of Texas
- U.S. District Court for the Western District of Texas
- State of Texas

## HONORS

- Chambers USA, 2020, Leading Lawyers in America
- Named Top 1000 Leading IP Professional in Intellectual Asset Management's (IAM) *Patent 1000* (2020)
- *Texas Super Lawyers* by Thomson Reuters, 2012-2020
- Best Lawyers in America (U.S. News & World Report), 2018-2021
- Preeminent AV Rated by Martindale Hubble

# About Russell Chorush

Dr. Russell Chorush is a founding partner and specializes in patent infringement and antitrust cases, particularly in the high technology arena of pharmaceutics and the Hatch-Waxman Act. He has represented various clients in litigation in fields ranging from electronics to chemicals, but focuses primarily on reverse-payment pharmaceutical cases brought under the Sherman Antitrust Act and *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013). In these cases, he has litigated (or is currently litigating) the merits of patents relating to a large number of different drug products including Namenda®, Provigil®, Tricor®, Neurontin®, Buspar®, Lipitor®, K-Dur®, Aggrenox®, Lidoderm®, and Neurontin®. The cases on which Russ has worked have achieved recoveries well in excess of $2 billion and he has prevailed in each case he has tried to a final decision. Prior to his professional law practice he graduated valedictorian from the University of Houston Law Center in May 2001 and obtained the top score on the July 2001 Texas State Bar examination.

While at the University of Houston Law Center, Russ served as the Notes & Comments editor on the Houston Law Review and received the following awards: the National Burton Award for Legal Achievement, the Dean's Scholarship, the Baker Botts Award, the West Group Outstanding Scholastic Achievement Award, the Suzanne White Booker Student Scholarship, the Locke Liddell & Sapp LLP IP and Technology Scholarship, the Hutcheson & Grundy Scholarship, the Joan Garfinkel Glantz Prize, the Griggs & Harrison Award, and the LEX Awards (top score in his law school section) in civil procedure, torts I, torts II, property II, and contracts II.

Prior to law school, Russ served as a laboratory manager for Texas Instruments, Inc. ("TI") and Air Liquide Corporation. He is a co-author of the book "Handbook of Chemicals and Gases for the Semiconductor Industry" as well as a number of published articles and is a named inventor on several patents assigned to TI. Dr. Chorush is an author of six published articles in peer-reviewed journals including the Journal of the American Chemical Society, Analytical Chemistry and the Journal of Mass Spectrometry. He received his Ph.D. in chemistry from Cornell University in 1994 and a B.S. in chemistry from the University of Texas at Austin in 1989.

# Russell Chorush

## EDUCATION

University of Houston Law Center, J.D., summa cum laude, 2001

Cornell University, Ph.D. in Chemistry, 1994

Cornell University, M.S. in Chemistry, 1992

University of Texas, B.S. in Chemistry, with honors, 1989

## ADMISSIONS

- United States Supreme Court
- U.S. Court of Appeals for the Federal Circuit
- U.S. Patent & Trademark Office
- U.S. District Court for the Eastern District of Texas
- U.S. District Court for the Southern District of Texas
- State of Texas

## HONORS

- Chambers USA, 2020, Leading Lawyers in America
- Named Top 1000 Leading IP Professional in Intellectual Asset Management's (IAM) *Patent 1000* (2020)
- Best Lawyers in America (U.S. News & World Report), 2018-2021
- *Texas Super Lawyers* by Thomson Reuters, 2019-2020
- University of Houston Law Center Rising Star Award, 2005
- Recipient of the highest score on the July 2001 Texas Bar Exam
- Valedictorian of the University of Houston Law Center Class of 2001

# About James Boone Baxter

James Boone Baxter is an experienced litigator with a focus on intellectual property disputes in district courts and before the U.S. Patent Trial and Appeal Board (PTAB). His background in engineering and his business experience before becoming a lawyer provide him with keen insight in highly technical issues and an appreciation for business-oriented solutions for clients. Mr. Baxter's experience includes litigation related to electronics, software, pharmaceuticals, oilfield technology and semiconductor processing.

In addition to patent litigation, Mr. Baxter represents clients in litigation against pharmaceutical companies engaging in anti-competitive behavior related to controversial reverse payments to generic suppliers. He is part of a Heim, Payne & Chorush team that has successfully represented numerous clients in antitrust litigation targeting pharmaceutical companies for stifling competition by preventing or delaying others from entering the market.

Before becoming an attorney, Mr. Baxter had a career as an engineer for a global oilfield services company where he worked directly with large international energy clients. In that capacity, he was involved in operating and designing patented technology, an experience that provides valuable business perspective and technical expertise for his litigation practice. In addition to his law degree, he holds a bachelor's degree in materials engineering and master's degrees in materials engineering and management.

Prior to joining Heim, Payne & Chorush, Mr. Baxter completed judicial clerkships for two U.S. District Courts in the IP-focused Eastern District of Texas. He served as law clerk for Judge Robert William Schroeder III and later served as law clerk and chief staff attorney for Chief Judge Leonard Davis, a position in which he managed all orders, including intellectual property, antitrust, FLSA, and criminal matters during a time when the Eastern District of Texas was the busiest and most important patent litigation venue in the nation.

# James Boone Baxter

## EDUCATION

Emory University School of Law, J.D, with Honors, Dean's List, Emory Moot Court Society, ABA-BNA Award for Excellent in the Study of Intellectual Property Law, 2013

University of Florida, B.S. Materials Engineering, 2002; Master's of Science in Materials Engineering and Management, 2004

## ADMISSIONS

- U.S. District Court for the Eastern District of Texas
- Registered Patent Attorney
- State of Texas

# About Allan Bullwinkel

Allan Bullwinkel's practice focuses on patent litigation related to computer and electrical engineering technologies in federal district courts and Inter Partes Review. He has also handled cases involving patent-related antitrust litigation and intellectual property related appeals before the Federal Circuit. With his engineering degree and his many years of prior work experience as an engineer, Allan brings a robust understanding of technical issues and an ability to engage with the technical aspects of cases.

Prior to joining HPC, Allan served as a judicial law clerk to Judge Leonard Davis at the United States District Court for the Eastern District of Texas.

While attending the University of Houston Law Center, he served as the Managing Editor of the Houston Law Review. Allan was also a member of the UHLC Moot Court Team as a writer and speaker. Allan continues to coach UHLC Moot Court teams that compete in the Giles Rich Moot Court competition.

Before attending law school, Allan worked as a software developer for approximately ten years in both small start-up companies and large research institutions. During this time, his work experiences ranged from developing software in a variety of programming languages to leading development teams for commercial software products.

# Allan Bullwinkel

## EDUCATION

University of Houston Law Center, J.D., Order of the Coif, Order of the Barons, 2011

Mississippi State University, B.S. in Computer Engineering, summa cum laude, 1997

## JUDICIAL EXPERIENCE

Law Clerk to the Honorable Leonard Davis, United States District Court for the Eastern District of Texas (2011-2012)

## ADMISSIONS

• U.S. District Court for the Eastern District of Texas
• U.S. District Court for the Southern District of Texas
• State of Texas

## HONORS

• Best Lawyers in America (U.S. News & World Report), 2020-2021
• Texas Rising Stars by Thompson Reuters, 2018 – 2020

# About Carlos Ruiz

Carlos Ruiz's practice focuses on patent litigation and antitrust cases. He takes an analytical approach to litigation informed by his scientific background and research experience. Carlos earned his law degree from the University of Houston Law Center, where he served as senior articles editor for the *Houston Journal of Health Law & Policy* and was active in national and international moot court and arbitration competitions, including earning a Best Speaker and First Finalist awards.

Before becoming a lawyer, Carlos earned an undergraduate degree in biochemistry and co-authored journal publications on neuroscience and pharmacology research at the Waggoner Center for Alcohol & Addiction Research at the University of Texas at Austin. This experience exposed him to the painstaking processes required in scientific research and innovation.

Carlos leverages that background to represent businesses and inventors in patent litigation related to a wide range of technology and business sectors, including oilfield technology, biotechnology and the wireless industry. He is able to analyze and understand technology at the heart of patent disputes and effectively communicate those concepts and key points to judges and juries. In addition to his patent infringement caseload, Carlos also handles patent-related antitrust litigation against pharmaceutical companies that abuse patent laws to gain an unfair competitive advantage.

# Carlos Ruiz

## EDUCATION

University of Houston Law Center, J.D., 2018

The University of Texas at Austin, B.S. in Biochemistry, 2015

## ADMISSIONS

- U.S. District Court for the Southern District of Texas
- State of Texas

# About Eric Enger

Eric Enger's practice focuses on patent litigation, where he has prosecuted and defended numerous high-tech companies in complex, multi-patent lawsuits in venues throughout the United States. Eric has also litigated trade secret misappropriation cases and counseled software companies on IP issues.

Prior to law school, Eric worked as an engineer for National Instruments and Dow Corning.

# Eric Enger

## EDUCATION

University of Houston Law Center, J.D., cum laude, Order of the Barons, 2004

University of Texas, B.S. in Electrical Engineering, 2000

## ADMISSIONS

- U.S. District Court for the Northern District of Texas
- U.S. District Court for the Eastern District of Texas
- U.S. District Court for the Southern District of Texas
- U.S. District Court for the Western District of Texas

## HONORS

- Best Lawyers in America, 2020-2021
- *Texas Super Lawyers* by Thomson Reuters/Super Lawyers, as published in Texas Monthly, 2019-2020
- Named Top 1000 Leading IP Professional in Intellectual Asset Management's (IAM) *Patent 1000* (2018-2020)
- *Texas Rising Stars* by Thomson Reuters/Super Lawyers, as published in Texas Monthly, 2008-2018
- Barrister, The Honorable Nancy F. Atlas Intellectual Property American Inn of Court, 2012-present
- Fellow, Texas Bar Foundation, 2011-present
- Preeminent AV Rated by Martindale Hubble

# About Chris First

Chris First practices complex litigation, primarily in antitrust and patent matters. He is often consulted for his ability to combine outside-the-box thinking with a unique breadth of knowledge of technology, procedure, and local practice.

Chris began his career practicing at a large international law firm in Washington, DC. His practice included representing some of the largest companies in the world in high-stakes technology litigation and handling a broad array of legal matters for a growing education technology startup.

In 2013, Chris was asked to serve as a law clerk to the Honorable Roy S. Payne of the United States District Court for the Eastern District of Texas in Marshall, Texas – the busiest federal trial court in the United States at that time.

While in Marshall, Chris handled over a thousand cases and assisted with large jury trials in antitrust, intellectual property, catastrophic personal injury, and civil rights matters. During his time at the Court, Chris also served as an acting law clerk to District Judge Rodney Gilstrap and then-Chief Judge Leonard Davis.

Chris graduated cum laude from the University of Florida Levin College of Law, where he earned the highest overall grade in Advanced Patent Law and Intellectual Property Litigation, as well as serving as a board member on the Journal of Technology Law and Policy. Chris was also named Pro Bono Student of the Year in 2010 for his pro bono work with indigent defendants in the 12th Judicial Circuit of Florida.

Chris obtained a breadth of experience prior to attending law school, spending a year as the only undergraduate research assistant in a groundbreaking search and rescue robotics lab, serving on the Board of Directors of a major entertainment venue, and working for two years as a management intern for the Stanley Cup champion Tampa Bay Lightning.

# Chris First

## EDUCATION

University of Florida Levin College of Law, J.D., cum laude, 2010

University of South Florida, B.S. in Computer Engineering, cum laude, 2007

## JUDICIAL EXPERIENCE

Law Clerk to the Honorable Roy Payne, United States District Court for the Eastern District of Texas (2013-2015)

## ADMISSIONS

• U.S.. Patent & Trademark Office
• U.S. District Court for the Eastern District of Texas
• U.S. District Court for the Middle District of Florida
• U.S. District Court for the Southern District of Texas
• State of Texas
• State of Florida

## HONORS

• *Texas Rising Stars* by Thomson Reuters, 2013, 2018-2020

# About Alden Harris

Alden Harris has litigated patent infringement cases in courts across the United States. His litigation experience spans a variety of technical fields including electrical and computer engineering, telecommunications, and biochemistry.

Alden served as a law clerk to the Honorable Roy Payne of the United States District Court for the Eastern District of Texas in Marshall, Texas. During his time at the Court, Alden also served as an acting law clerk to District Judge Rodney Gilstrap. During Alden's clerkship, the Marshall Division was one of the busiest federal courts in the United States and nearly half of all U.S. patent cases were filed there. Alden assisted with multiple jury trials in intellectual property, products liability, and civil rights. He also assisted with dozens of claim construction hearings.

Alden earned his law degree at the University of Texas where he was an Associate Editor of the Texas Law Review. While at UT, Alden was a finalist in the Intramural Mediation Competition, a semifinalist in the Hutcheson Moot Court competition, and received the Legal Research Board "Best Memorandum Award." He was also elected Chairman of the University of Texas Graduate Student Assembly.

# Alden Harris

## EDUCATION

University of Texas School of Law, J.D., with honors, 2012

Texas A&M University, B.S. in Physics, magna cum laude, 2009

## JUDICIAL EXPERIENCE

Law Clerk to the Honorable Roy Payne, United States District Court for the Eastern District of Texas (2015-2016))

## ADMISSIONS

• U.S. Court of Appeals for the Federal Circuit
• U.S. District Court for the Eastern District of Texas
• U.S. District Court for the Southern District of Texas
• U.S. District Court for the District of Colorado
• State of Texas

## HONORS

• *Texas Rising Stars* by Thomson Reuters, 2013, 2018-2020

# About Blaine Larson

Blaine Larson's practice focuses on patent infringement litigation related to electrical and computer engineering technologies. He has experience in all phases of litigation, from pre-suit investigation to appeals. Blaine has briefed and argued a variety of issues including several Markman hearings, taken and defended depositions, and participated in two winning trials.

Blaine rejoined the firm in 2017 after an 18-month clerkship with Judge Kimberly Moore of the U.S. Court of Appeals for the Federal Circuit. He first joined the firm in 2013 after serving as a law clerk to Chief Judge Leonard Davis of the U.S. District Court for the Eastern District of Texas.

Blaine graduated summa cum laude from the University of Houston Law Center, where he served on the Executive Board of the Houston Law Review. While at Texas A&M University, he was elected to the Tau Beta Pi and Eta Kappa Nu engineering honor societies. Blaine is also an Eagle Scout.

# Blaine Larson

## EDUCATION

University of Houston Law Center, J.D., summa cum laude, 2012

Texas A&M University, B.S. in Electrical Engineering, magna cum laude, 2009

## JUDICIAL EXPERIENCE

Law Clerk to the Honorable Kimberly Moore, United States Court of Appeals for the Federal Circuit (2016-2017)

Law Clerk to the Honorable Leonard Davis, United States District Court for the Eastern District of Texas (2012-2013)

## ADMISSIONS

• U.S. Patent & Trademark Office

• U.S. Court of Appeals for the Federal Circuit

• U.S. District Court for the Eastern District of Texas

• U.S. District Court for the Southern District of Texas

• State of Texas

# About William 'Wills' Collier

Wills Collier's practice focuses on patent infringement litigation related to a range of technologies, including computer and electrical engineering, oil and gas technologies, and mechanical systems. He has experience in all phases of district court litigation. Wills's technical and engineering background allows him to develop a deep understanding of the technology and effectively communicate those issues to judges and juries.

Wills Joined the firm in 2020 after a clerkship with Judge Robert Schroeder III of the U.S. District Court for the Eastern District of Texas. Wills began his career practicing patent litigation at a large international law firm. His practice focused on all aspects of patent litigation and represented a range of companies, from Fortune 500 to tech startups.

Wills graduated *cum laude* from Baylor Law School with a concentration in Intellectual Property. At Baylor, Wills served as Senior Technical Editor on the board of the Baylor Law Review and was recognized as Law Review Student of the Year for his contributions to the journal. He also earned the highest overall grade in Patent Law and participated extensively in Moot Court, joining the Baylor Barrister Society and competing in the International Moot Court Competition in Information Technology & Privacy Law.

Wills developed his passion for technology and innovation while earning his Bachelor of Science in Aerospace Engineering at Embry-Riddle Aeronautical University. He was also admitted to the Sigma Gamma Tau Aerospace Engineering Honor Society. Before attending law school, Wills obtained a breadth of experience working both for a major aerospace manufacturer and a small tech startup. During his last year at Embry-Riddle, Wills achieved his lifelong dream of obtaining his pilot's license.

# William 'Wills' Collier

## EDUCATION

Baylor Law School, Juris Doctor, *Cum Laude*, May 2015

**Embry-Riddle Aeronautical University**, Bachelor of Science in Aerospace Engineering, December 2011

## JUDICIAL EXPERIENCE

Law clerk to U.S. District Court Judge Robert Schroeder III of the U.S. District Court for the Eastern District of Texas (2018-2020)

# Our Expertise

HPC represents plaintiffs and defendants nationwide in patent, trade secret, and antitrust litigation in a broad range of technologies including pharmaceuticals, microprocessors, graphics processors, computer architecture, search engines, memory control systems, wireless local area networks, cellular telephone systems, Bluetooth technology, data transmission systems and networks, systems for streaming audio and video, database caching software, multiplayer online gaming systems, multiband antennas, drilling and other downhole systems, heart stents, and natural gas conversion systems.

Our attorneys have a wide variety of technical backgrounds that allow us to handle all facets of intellectual property litigation and IPRs. We handle every aspect of the most complicated patent and trade secret disputes. While we represent some of the largest energy and technology firms, many of our clients are smaller companies seeking to protect their innovations against the behemoths of industry.

# Antitrust Cases Involving Patents

HPC represents wholesale drug distribution companies as antitrust plaintiffs against pharmaceutical companies that misuse patents and patent litigation settlements to protect their drug monopolies and to block lower-priced generics from entering the market. These improper tactics include pay-for-delay schemes in which brand-name pharmaceutical companies improperly enforce patents or pay off generic companies to prevent or delay them from entering the market.

Heim, Payne & Chorush has an active patent-related antitrust practice representing drug purchasers in class action and Multi District Litigation antitrust lawsuits brought under the Sherman Antitrust Act.

# Appellate

In patent infringement litigation in particular, a jury's verdict rarely means the outcome of a case is resolved. It just signals the beginning of the next phase. Heim, Payne & Chorush has earned a national reputation for appellate work involving complex patent infringement litigation before the U.S. Court of Appeals for the Federal Circuit and the U.S. Supreme Court. Our work has resulted in preservation of important verdicts and reversals of trial-level outcomes for our clients. Success in this space requires a rare combination of legal skill, technical expertise and direct experience working in these appellate venues.

Whether assisting in an appeal or defending a jury verdict obtained in court, we stand ready to assist at all points of the process. Our team includes four former Federal Circuit clerks and four former clerks for the Eastern District of Texas. This experience provides keen insight into framing the issues at play and making the most of briefs and arguments.

Heim, Payne & Chorush has been involved in important, closely watched cases before the Federal Circuit and the U.S. Supreme Court. Most recently, the firm successfully petitioned for certiorari, briefed and helped argue *Commil USA v Cisco* to the U.S. Supreme Court, earning a landmark opinion that prevents defendants from arguing good-faith belief in invalidity as a defense to inducing infringement. The opinion in *Commil* is widely considered to be one most important intellectual property decisions made by the Supreme Court in the last 25 years.

# Inter Partes Review

Inter Partes Review ("IPR") challenges made possible by the 2012 America Invents Act have had a seismic impact on the course patent infringement litigation – giving defendants in infringement litigation the ability to pause litigation and immediately challenge a patent's validity at the U.S. Patent and Trademark Office.

Heim, Payne & Chorush has developed deep experience representing clients in IPR proceedings before the U.S. Patent Trial and Appeal Board. Our team was the first to prevail on behalf of a patent owner in Inter Partes Review proceedings before the USPTO (*ABB v Roy-G-Biv* 2014). The firm has an active and growing IPR practice and has secured numerous IPR wins for patent holders and accused infringers.

# Patent Litigation

We understand that for plaintiffs and defendants alike, patent disputes can mean the difference between a business thriving or collapsing. With so much at stake, working with attorneys who possess not only the legal acumen, but the technical background, industry experience, and scientific training required to understand these complex issues is absolutely essential.

With diverse backgrounds ranging from chemical engineering to software development, we understand this area of the law in a way that few others do. Our attorneys handle all manner of patent issues in a wide range of areas, including telecommunications, energy, computer architecture, microprocessors, online gaming systems, and pharmaceuticals.

We represent plaintiffs and defendants in patent infringement litigation in venues across the United States and have secured record verdicts and settlement in disputes involving complex, highly technical issues involving some of the world's largest corporations. The breadth and depth of our experience makes us a formidable force for those we represent, whether individuals or companies large and small.

# Trade Secrets

Heim Payne & Chorush is able to draw upon its extensive technical expertise in its trade secret practice. All of the firm attorneys have engineering or science degrees, and several have their graduate degrees, thus providing invaluable insight into the technical issues that often arise in trade secret litigation. In certain instances, a trade secret claim may be asserted in conjunction with an allegation of patent infringement, and Heim Payne & Chorush is uniquely situated to handle such lawsuits.

The firm has handled large trade secret cases in the semiconductor industry, the software field and in the oil and gas sector.



Faruqi & Faruqi, LLP is a woman-owned, -operated, and -controlled law firm, certified by the Women's Business Enterprise National Council, that focuses on complex civil litigation, including securities, antitrust, wage and hour, consumer, and pharmaceutical class actions as well as shareholder derivative and merger and transactional litigation.  The firm is headquartered in New York, and maintains offices in California, Delaware, Pennsylvania and Georgia.

Since its founding in 1995, Faruqi & Faruqi, LLP has served as lead or co-lead counsel in numerous high-profile cases which have provided significant recoveries to investors, consumers and employees.

# <u>PRACTICE AREAS</u>

## ANTITRUST LITIGATION

The attorneys at Faruqi & Faruqi, LLP represent direct purchasers, competitors, third-party payors, and consumers in a variety of individual and class action antitrust cases brought under Sections 1 and 2 of the Sherman Act.  These actions, which typically seek treble damages under Section 4 of the Clayton Act, have been commenced by businesses and consumers injured by anticompetitive agreements to fix prices or allocate markets, conduct that excludes or delays competition, and other monopolistic or conspiratorial conduct that harms competition.

*Actions for excluded competitors*.  Faruqi & Faruqi represents competitors harmed by anticompetitive practices that reduce their sales, profits, and/or market share.  One representative action is *Babyage.com, Inc., et al. v. Toys "R" Us, Inc., et al.* where Faruqi & Faruqi was retained to represent three internet retailers of baby products, who challenged a dominant retailer's anticompetitive scheme, in concert with their upstream suppliers, to impose and enforce resale price maintenance in violation of §§ 1 and 2 of the Sherman Act and state law.  The action sought damages measured as lost sales and profits.  This case was followed extensively by the Wall Street Journal.  After several years of litigation, this action settled for an undisclosed amount.

*Actions for direct purchasers*.  Faruqi & Faruqi represents direct purchasers who have paid overcharges as a result of anticompetitive practices that raise prices.  These actions are typically initiated as class actions.  A representative action on behalf of direct purchasers is *Rochester Drug Co-Operative, Inc. v. Warner Chilcott Public Limited Company, et al.*, No. 12-3824 (E.D. Pa.), in which Faruqi & Faruqi was appointed co-lead counsel for the proposed plaintiff class under Federal Rule of Civil Procedure 23(g). Faruqi & Faruqi's attorneys are counsel to direct purchasers (typically wholesalers) in multiple such class actions.

*Actions for third-party payors*.  Faruqi & Faruqi represents, both in class actions and in individual actions, insurance companies who have reimbursed their policyholders at too high a rate due to anticompetitive practices that raise prices.  One representative action is *In re Tricor Antitrust Litigation*, No.



05-360 (D. Del.), where Faruqi & Faruqi represented PacifiCare and other large third-party payors challenging the conduct of Abbott Laboratories and Laboratories Fournier in suppressing generic drug competition, in violation of §§ 1 and 2 of the Sherman Act. The *Tricor* litigation settled for an undisclosed amount in 2010.

  ***Results***.  Faruqi & Faruqi's attorneys have consistently obtained favorable results in their antitrust engagements.  Non-confidential results include the following: *In re Namenda Direct Purchaser Antitrust Litig.,* No. 15-7488 (S.D.N.Y.) ($750 million settlement); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.) ($166 million settlement); *In re Loestrin 24 Fe Antitrust Litig.,* 13-md-02472 (D.R.I.) ($120 million settlement); *In re Solodyn Antitrust Litigation*, 14-md-02503 (D. Mass.) ($76 million settlement); *In re Aggrenox Antitrust Litig.*, No. 14-2516 (D. Conn.) ($146 million settlement); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-00361 (E.D. Va.) ($94 million settlement); *In re Asacol Antitrust Litig.*, No. 15-12730 (D. Mass.) ($15 million settlement); *In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 12-md-2343 (E.D. Tenn.) ($73 million settlement); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) ($37.5 million partial settlement); *In re Iowa Ready-Mixed Concrete Antitrust Litigation*, No. C 10-4038 (N.D. Iowa) ($18.5 million settlement); *In re Metoprolol Succinate Direct Purchaser Antitrust Litigation*, 06-52 (D. Del.) ($20 million settlement); *In re Ready-Mixed Concrete Antitrust Litigation*, No. 05-979 (S.D. Ind.) ($40 million settlement); *Rochester Drug Co-Operative, Inc., et al. v. Braintree Labs, Inc*., No. 07-142-SLR (D. Del.) ($17.25 million settlement).

  A more complete list of Faruqi & Faruqi's active and resolved antitrust cases can be found on its web site at *www.faruqilaw.com*.

## SECURITIES FRAUD LITIGATION

  From its inception, Faruqi & Faruqi, LLP has devoted a substantial portion of its practice to class action securities fraud litigation. In *In re PurchasePro.com, Inc. Securities Litigation*, No. CV-S-01-0483 (JLQ) (D. Nev.), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $24.2 million settlement in a securities fraud litigation even though the corporate defendant was in bankruptcy.  As noted by Senior Judge Justin L. Quackenbush in approving the settlement, ***"I feel that counsel for plaintiffs evidenced that they were and are skilled in the field of securities litigation."***

  Other past achievements include: *In re Olsten Corp. Sec. Litig.*, No. 97-CV-5056 (RDH) (E.D.N.Y.) (recovered $24.1 million dollars for class members) (Judge Hurley stated: "The quality of representation here I think has been excellent."), *In re Tellium, Inc. Sec. Litig.*, No. 02-CV-5878 (FLW) (D.N.J.) (recovered $5.5 million dollars for class members); *In re Mitcham Indus., Inc. Sec. Litig.*, No. H-98-1244 (S.D. Tex.) (recovered $3 million dollars for class members despite the fact that corporate defendant was on the verge



of declaring bankruptcy), and *Ruskin v. TIG Holdings, Inc.*, No. 98 Civ. 1068 LLS (S.D.N.Y.) (recovered $3 million dollars for class members).

Recently, Faruqi & Faruqi, LLP, as sole lead counsel, won a historic appeal in the United States Court of Appeals for the Fourth Circuit in *Zak v. Chelsea Therapeutics Inc. Int'l, Ltd.*, Civ. No. 13-2730 (2015), where the Court reversed a trial court's *scienter* ruling for the first time since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court remanded the case to the district court, where Faruqi & Faruqi, LLP defeated defendants' motion to dismiss and subsequently obtained final approval of a $5.5 million settlement for the class. *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 12-CV-213 (MOC) (DCK) (W.D.N.C.). In *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal.), Faruqi & Faruqi, LLP served as sole lead counsel for the class in the federal court action, and, together with counsel in the parallel state court action, secured final approval of a $13 million global settlement of both actions on January 19, 2018. In *Rihn v. Acadia Pharmaceuticals, Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal.), the court denied defendants' first motion to dismiss, and on January 8, 2018, Faruqi & Faruqi, LLP, as sole lead counsel for the class, secured final approval of a $2.95 million settlement for the class, which represented approximately 36% of the total recognized losses claimed by the class. In *In re Geron Corp., Sec. Litig.*, No. 14-CV-1424 (CRB) (N.D. Cal.), Faruqi & Faruqi, LLP, as sole lead counsel for the class, defeated defendants' motion to dismiss and, on July 21, 2017, obtained final approval of a settlement awarding $6.25 million to the class. Also, in *In re Dynavax Techs. Corp. Sec. Litig.*, No. 13-CV-2796 (CRB) (N.D. Cal.), Faruqi & Faruqi, LLP, as sole lead counsel for the class, defeated defendants' motion to dismiss, and on February 6, 2017, secured final approval of a $4.5 million settlement on behalf of the class. In *In re L&L Energy, Inc. Sec. Litig.*, No. 13-cv-6704 (RA) (S.D.N.Y.), Faruqi & Faruqi, LLP, as co-lead counsel, obtained final approval on July 31, 2015 of a $3.5 million settlement for the class. In *In re Ebix, Inc. Securities Litigation*, No. 11-cv-2400 (RWS) (N.D. Ga.), the court denied defendants' motion to dismiss and Faruqi & Faruqi, LLP, as sole lead counsel, obtained final approval on June 13, 2014 of a $6.5 million settlement for the class. In *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479 (PHX) (ROS) (D. Ariz.), Faruqi & Faruqi, LLP, as co-lead counsel for the class, defeated defendants' motion to dismiss, succeeded in having the action certified as a class action, and secured final approval of a $4.5 million settlement for the class. *See also In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 Civ. 214 (HB) (S.D.N.Y.) (as sole lead counsel, obtained final approval of a $1.34 million settlement on behalf of the class); *Simmons v. Spencer, et al.*, No. 13 Civ. 8216 (RWS) (S.D.N.Y.) (as co-lead counsel obtained final approval of settlement awarding $1.5 million to the class).

Additionally, Faruqi & Faruqi, LLP is serving as court-appointed lead counsel in the following cases:

▪ *Loftus v. Primero Mining Corp.*, No. 16-01034 (BRO) (RAO) (C.D. Cal.) (appointed sole lead counsel for the class);

3



- *Bielousov v. GoPro, Inc., et al.*, No. 4:16-CV-06654-CW (N.D. Cal.) (as sole lead counsel for the class, defeated defendants' motion to dismiss);
- *Attigui v. Tahoe Resources, Inc., et al.*, No. 2:17-cv-01868 (RFB) (NJK) (D. Nev.) (appointed sole lead counsel for the class).
- *Khanna v. Ohr Pharmaceutical, Inc.*, No. 1:18-cv-01284 (LAP) (S.D.N.Y.) (appointed sole-lead counsel for the class);
- *DeSmet v. Intercept Pharmaceuticals, Inc.*, No. 1:17-cv-07371 (LAK) (S.D.N.Y.) (appointed sole-lead counsel for the class); and
- *Lee v. Synergy Pharmaceuticals, Inc. Sec. Litig.*, No. 1:18-cv-00873 (AMD) (VMS) (E.D.N.Y.) (appointed as co-lead counsel for the class).

## SHAREHOLDER MERGER AND TRANSACTIONAL LITIGATION

Faruqi & Faruqi, LLP is nationally recognized for its excellence in prosecuting shareholder class actions brought nationwide against officers, directors and other parties responsible for corporate wrongdoing. Most of these cases are based upon state statutory or common law principles involving fiduciary duties owed to investors by corporate insiders as well as Exchange Act violations.

Faruqi & Faruqi, LLP has obtained significant monetary and therapeutic recoveries, including millions of dollars in increased merger consideration for public shareholders; additional disclosure of significant material information so that shareholders can intelligently gauge the fairness of the terms of proposed transactions and other types of therapeutic relief designed to increase competitive bids and protect shareholder value.  As noted by Judge Timothy S. Black of the United States District Court for the Southern District of Ohio in appointing lead counsel *Nichting v. DPL Inc.*, Case No. 3:11-cv-141 (S.D. Ohio), "[a]lthough all of the firms seeking appointment as Lead Counsel have impressive resumes, the Court is most impressed with Faruqi & Faruqi."

For example, in *Hall v. Berry Petroleum Co.*, No. 8476-VCG (Del. Ch.), Faruqi & Faruqi, LLP as sole lead counsel was credited by the Delaware Chancery Court with contributing to an increase in exchange ratio in an all-stock transaction that provided Berry Petroleum Co. stockholders with an additional $600 million in consideration for their shares as well as the disclosure of additional material information regarding the transaction. The court noted at the settlement hearing "[t]he ability of petitioning counsel [Faruqi] is known to the Court, and plaintiff's counsel [Faruqi] are well versed in the prosecution of corporate law actions."  Faruqi & Faruqi, LLP achieved a similar result in *In Re Energysolutions, Inc. Shareholder Litigation*, Cons. C.A. No. 8203-VCG (Del. Ch.), in which the Faruqi Firm, as co-lead counsel, was credited in part with an increase in the merger consideration from $3.75 to $4.15 in cash per Energysolution share by the acquirer Energy Capital, and credited with additional material disclosures distributed to stockholders. In approving the settlement of the case and noting that the price increase amounted to an extra $36 million for stockholders, the Delaware Court stated that the standing and ability of the stockholders' counsel, including Faruqi & Faruqi, LLP and its co-counsel, is "…among the highest in our bar." *See In Re*



*Energysolutions, Inc. S'holder Litig.*, Cons. C.A. No. 8203-VCG (Del. Ch. Feb. 11, 2014).  In *In Re Jefferies Group, Inc. Shareholders Litigation*, C.A. No. 8059-CB (Del. Ch.), Faruqi & Faruqi, LLP acted as co-lead counsel representing Jeffries Group, Inc. stockholders in challenging the transaction with Leucadia National Corporation. After years of vigorous litigation, the parties reached a settlement that recovered $70 million additional consideration for the former Jeffries Group Inc. stockholders.

In *In re Playboy Enterprises, Inc. Shareholders Litigation*, Consol. C.A. No. 5632-VCN (Del. Ch.), Faruqi & Faruqi, LLP achieved a substantial post close settlement of $5.25 million.  In *In re Cogent, Inc. Shareholders Litigation*, Consol. C.A. No. 5780-VC (Del. Ch.) Faruqi & Faruqi, LLP, as co-lead counsel, obtained a post-close cash settlement of $1.9 million after two years of hotly contested litigation; In *Rice v. Lafarge* North *America, Inc., et al.*, No. 268974-V (Montgomery Cty., Md. Circuit Ct.), Faruqi & Faruqi, LLP, as co-lead counsel represented the public shareholders of Lafarge North America ("LNA") in challenging the buyout of LNA by its French parent, Lafarge S.A., at $75.00 per share.  After discovery and intensive injunction motions practice, the price per share was increased from $75.00 to $85.50 per share, or a total benefit to the public shareholders of $388 million.  The Lafarge court gave Class counsel, including Faruqi & Faruqi, LLP, shared credit with a special committee appointed by the company's board of directors for a significant portion of the price increase.

Similarly, in *In re: Hearst-Argyle Shareholder Litig.,* Lead Case No. 09-Civ-600926 (N.Y. Sup. Ct.) as co-lead counsel for plaintiffs, Faruqi & Faruqi, LLP litigated, in coordination with Hearst-Argyle's special committee, an increase of over 12.5%, or $8,740,648, from the initial transaction value offered for Hearst-Argyle Television Inc.'s stock by its parent company, Hearst Corporation.  Faruqi & Faruqi, LLP, in *In re Alfa Corp. Shareholder Litig.*, Case No. 03-CV-2007-900485.00 (Montgomery Cty, Ala. Cir. Ct.) was instrumental, along with the Company's special committee, in securing an increased share price for Alfa Corporation shareholders of $22.00 from the originally-proposed $17.60 per share offer, which represented over a $160 million benefit to class members, and obtained additional proxy disclosures to ensure that Alfa shareholders were fully-informed before making their decision to vote in favor of the merger, or seek appraisal.

Moreover, in *In re Fox Entertainment Group, Inc. S'holders Litig.*, Consolidated C.A. No. 1033-N (Del. Ch. 2005), Faruqi & Faruqi, LLP, a member of the three (3) firm executive committee, and in coordination with Fox Entertainment Group's special committee, created an increased offer price from the original proposal to shareholders, which represented an increased benefit to Fox Entertainment Group, Inc. shareholders of $450 million.  Also, in *In re Howmet Int'l S'holder Litig.*, Consolidated C.A. No. 17575 (Del. Ch. 1999) Faruqi & Faruqi, LLP, in coordination with Howmet's special committee, successfully obtained an increased benefit to class members of $61.5 million dollars).



Recently, in *In re Orchard Enterprises, Inc. Stockholder Litigation*, C.A. No. 7840-VCL (Del. Ch.), Faruqi & Faruqi, LLP acted as co-lead counsel with two other firms.  That action involved the approval of a merger by Orchard's Board of Directors pursuant to which Dimensional Associates LLC would cash-out the stock of Orchard's minority common stockholders at a price of $2.05 per share and then take Orchard private.  On April 11, 2014, the parties reached an agreement to settle their claims for a payment of $10.725 million to be distributed among the Class, which considerably exceeded the $2.62 per share difference between the $2.05 buyout price and the $4.67 appraisal price determined in *In re Appraisal of The Orchard Enterprises, Inc.*, C.A. No. 5713-CS, 2012 WL 2923305 (Del. Ch. July 18, 2012).

Faruqi also has noteworthy successes in achieving injunctive or declaratory relief pre and post close in cases where corporate wrongdoing deprives shareholders of material information or an opportunity to share in potential profits.  In *In re Harleysville Group, Inc. S'holders Litigation*, C.A. Bo. 6907-VCP (Del. Ch. 2014), Faruqi as sole lead counsel obtained significant disclosures for stockholders pre-close and secured valuable relief post close in the form of an Anti-Flip Provision providing former stockholders with 25% of any profits in Qualifying Sale.  In April 2012, Faruqi as sole lead obtained an unprecedented injunction in *Knee v. Brocade Communications Systems, Inc.*, No. 1-12-CV-220249, slip op. at 2 (Cal. Super. Ct. Apr. 10, 2012) (Kleinberg, J.).  In *Brocade*, Faruqi, as sole lead counsel for plaintiffs, successfully obtained an injunction enjoining Brocade's 2012 shareholder vote because certain information relating to projected executive compensation was not properly disclosed in the proxy statement.  (Order After Hearing [Plaintiff's Motion for Preliminary Injunction; Motions to Seal]).  In *Kajaria v. Cohen*, No. 1:10-CV-03141 (N.D. Ga., Atlanta Div.), Faruqi & Faruqi, LLP, succeeded in having the district court order Bluelinx Holdings Inc., the target company in a tender offer, to issue additional material disclosures to its recommendation statement to shareholders before the expiration of the tender offer.

## SHAREHOLDER DERIVATIVE LITIGATION

Faruqi & Faruqi, LLP has extensive experience litigating shareholder derivative actions on behalf of corporate entities.  This litigation is often necessary when the corporation has been injured by the wrongdoing of its officers and directors.  This wrongdoing can be either active, such as the wrongdoing by certain corporate officers in connection with purposeful backdating of stock-options, or passive, such as the failure to put in place proper internal controls, which leads to the violation of laws and accounting procedures.  A shareholder has the right to commence a derivative action when the company's directors are unwilling or unable, to pursue claims against the wrongdoers, which is often the case when the directors themselves are the wrongdoers.

The purpose of the derivative action is threefold: (1) to make the company whole by holding those responsible for the wrongdoing accountable; (2) the establishment of procedures at the company to ensure



the damaging acts can never again occur at the company; and (3) make the company more responsive to its shareholders. Improved corporate governance and shareholder responsiveness are particularly valuable because they make the company a stronger one going forward, which benefits its shareholders. For example, studies have shown the companies with poor corporate governance scores have 5-year returns that are 3.95% below the industry average, while companies with good corporate governance scores have 5-year returns that are 7.91 % above the industry-adjusted average. The difference in performance between these two groups is 11.86%. *Corporate Governance Study: The Correlation between Corporate Governance and Company Performance*, Lawrence D. Brown, Ph.D., Distinguished Professor of Accountancy, Georgia State University and Marcus L. Caylor, Ph.D. Student, Georgia State University. Faruqi & Faruqi, LLP has achieved all three of the above stated goals of a derivative action. The firm regularly obtains significant corporate governance changes in connection with the successful resolution of derivative actions, in addition to monetary recoveries that inure directly to the benefit of the company. In each case, the company's shareholders indirectly benefit through an improved market price and market perception.

In *In re UnitedHealth Group Incorporated Derivative Litig.*, Case No. 27 CV 06-8065 (Minn. 4th Judicial Dist. 2009) Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, obtained a recovery of more than $930 million for the benefit of the Company and corporate governance reforms designed to make UnitedHealth a model of corporate responsibility and transparency. ***At the time, the settlement reached was believed to be the largest settlement ever in a derivative case***. *See* "UnitedHealth's Former Chief to Repay $600 Million," Bloomberg.com, December 6, 2007 ("the settlement . . . would be the largest ever in a 'derivative' suit . . . according to data compiled by Bloomberg.").

As co-lead counsel in *Weissman v. John, et al.*, Cause No. 2007-31254 (Tex. Harris County 2008) Faruqi & Faruqi, LLP, diligently litigated a shareholder derivative action on behalf of Key Energy Services, Inc. for more than three years and caused the company to adopt a multitude of corporate governance reforms which far exceeded listing and regulatory requirements. Such reforms included, among other things, the appointment of a new senior management team, the realignment of personnel, the institution of training sessions on internal control processes and activities, and the addition of 14 new accountants at the company with experience in public accounting, financial reporting, tax accounting, and SOX compliance.

More recently, Faruqi & Faruqi, LLP concluded shareholder derivative litigation in *The Booth Family Trust, et al. v. Jeffries, et al.*, Lead Case No. 05-cv-00860 (S.D. Ohio 2005) on behalf of Abercrombie & Fitch Co. Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, litigated the case for six years through an appeal in the U.S. Court of Appeals for the Sixth Circuit where it successfully obtained reversal of the district court's ruling dismissing the shareholder derivative action in April 2011. Once remanded to the district court, Faruqi & Faruqi, LLP caused the company to adopt important corporate governance reforms narrowly

7



targeted to remedy the alleged insider trading and discriminatory employment practices that gave rise to the shareholder derivative action.

The favorable outcome obtained by Faruqi & Faruqi, LLP in *In re Forest Laboratories, Inc. Derivative Litigation*, Lead Civil Action No. 05-cv-3489 (S.D.N.Y. 2005) is another notable achievement for the firm. After more than six years of litigation, Faruqi & Faruqi, LLP, as co-lead counsel, caused the company to adopt industry-leading corporate governance measures that included rigorous monitoring mechanisms and Board-level oversight procedures to ensure the timely and complete publication of clinical drug trial results to the investing public and to deter, among other things, the unlawful off-label promotion of drugs.

## CONSUMER PROTECTION LITIGATION

Attorneys at Faruqi & Faruqi, LLP have advocated for consumers' rights, successfully challenging some of the nation's largest and most powerful corporations for a variety of improper, unfair and deceptive business practices. Through our efforts, we have recovered hundreds of millions of dollars and other significant remedial benefits for our consumer clients.

For example, in *Bates v. Kashi Co., et al.*, Case No. 11-CV-1967-H BGS (S.D. Cal. 2011), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $5.0 million settlement fund on behalf of California consumers who purchased Kashi products that were deceptively labeled as "nothing artificial" and "all natural." The settlement provides class members with a full refund of the purchase price in addition to requiring Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain products. As noted by Judge Marilyn L. Huff in approving the settlement, *"Plaintiffs' counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims."* Moreover, in *Thomas v. Global Vision Products*, Case No. RG-03091195 (California Superior Ct., Alameda Cty.), Faruqi & Faruqi, LLP served as co-lead counsel in a consumer class action lawsuit against Global Vision Products, Inc., the manufacturer of the Avacor hair restoration product and its officers, directors and spokespersons, in connection with the false and misleading advertising claims regarding the Avacor product. Though the company had declared bankruptcy in 2007, Faruqi & Faruqi, LLP, along with its co-counsel, successfully prosecuted two trials to obtain relief for the class of Avacor purchasers. In January 2008, a jury in the first trial returned a verdict of almost $37 million against two of the creators of the product. In November 2009, another jury awarded plaintiff and the class more than $50 million in a separate trial against two other company directors and officers. This jury award represented the largest consumer class action jury award in California in 2009 (according to VerdictSearch, a legal trade publication).



Additionally, in *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-04718-PGG-DCF (S.D.N.Y. 2011), Faruqi & Faruqi, LLP, as co-lead class counsel, reached a significant settlement with CitiMortgage related to improper foreclosure practices of homes owned by active duty servicemembers. The settlement was recently finalized pursuant to a Final Approval Order dated October 6, 2015, which provides class members with a monetary recovery of at least $116,785.00 per class member, plus the amount of any lost equity in the foreclosed property.

Below is a non-exhaustive list of settlements where Faruqi & Faruqi, LLP and its partners have served as lead or co-lead counsel:

- *In re Sinus Buster Products Consumer Litig.,* Case No. 1:12-cv-02429-ADS-AKT (E.D.N.Y. 2012). The firm represented a nationwide class of purchasers of assorted cold, flu and sinus products. A settlement was obtained, providing class members with a cash refund up to $10 and requiring defendant to discontinue the marketing and sale of certain products.
- *In re: Alexia Foods, Inc. Litigation.,* Case No. 4:11-cv-06119 (N.D. Cal. 2011). The firm represented a proposed class of all persons who purchased certain frozen potato products that were deceptively advertised as "natural" or "all natural." A settlement was obtained, providing class members with the cash refunds up to $35.00 and requiring defendant to cease using a synthetic chemical compound in future production of the products.
- *In re: Haier Freezer Consumer Litig.*, Case No. 5:11-CV-02911-EJD (N.D. Cal. 2011). The firm represented a nationwide class of consumers who purchased certain model freezers, which were sold in violation of the federal standard for maximum energy consumption. A settlement was obtained, providing class members with cash payments of between $50 and $325.80.
- *Loreto v. Coast Cutlery Co.*, Case No. 11-3977 SDW-MCA (D.N.J. 2011) The firm represented a proposed nationwide class of people who purchased stainless steel knives and multi-tools that were of a lesser quality than advertised. A settlement was obtained, providing class members with a full refund of the purchase price.
- *Rossi v Procter & Gamble Company.*, Case No. 11-7238 (D.N.J. 2011). The firm represented a nationwide class of consumers who purchased deceptively marketed "Crest Sensitivity" toothpaste. A settlement was obtained, providing class members with a full refund of the purchase price.
- *In re: Michaels Stores Pin Pad Litig.*, Case No. 1:11-CV-03350 CPK (N.D. Ill. 2011). The firm represented a nationwide class of persons against Michaels Stores, Inc. for failing to secure and safeguard customers' personal financial data. A settlement was obtained, which provided class members with monetary recovery for unreimbursed out-of-pocket losses incurred in connection with the data breach, as well as up to four years of credit monitoring services.
- *Kelly, v. Phiten*, Case No. 4:11-cv-00067 JEG (S.D. Iowa 2011). The firm represented a proposed nationwide class of consumers who purchased Defendant Phiten USA's jewelry and other products, which were falsely promoted to balance a user's energy flow. A settlement was obtained, providing class members with up to 300% of the cost of the product and substantial injunctive relief requiring Phiten to modify its advertising claims.
- *In re: HP Power-Plug Litigation,* Case No. 06-1221 (N.D. Cal. 2006). The firm represented a proposed nationwide class of consumers who purchased defective laptops manufactured by defendant. A settlement was obtained, which provided full relief to class members, including among other benefits a cash payment up to $650.00 per class member, or in the alternative, a repair free-of-charge and new limited warranties accompanying repaired laptops.
- *Delre v. Hewlett-Packard Co.*, C.A. No. 3232-02 (N.J. Super. Ct. 2002). The firm represented a proposed nationwide class of consumers (approximately 170,000 members) who purchased, HP dvd-100i dvd-writers ("HP 100i") based on misrepresentations regarding the write-once ("DVD+R")



capabilities of the HP 100i and the compatibility of DVD+RW disks written by HP 100i with DVD players and other optical storage devices.  A settlement was obtained, which provided full relief to class members, including among other benefits, the replacement of defective HP 100i with its more current, second generation DVD writer, the HP 200i, and/or refunds the $99 it had charged some consumers to upgrade from the HP 100i to the HP 200i prior to the settlement.

In addition, Faruqi & Faruqi, LLP and its partners are currently serving as lead or co-lead counsel in the following class action cases:

- *Dei Rossi et al. v. Whirlpool Corp.,* Case No. 2:12-cv-00125-TLN-JFM (E.D. Cal. 2012) (representing a certified class of people who purchased mislabeled KitchenAid brand refrigerators from Whirlpool Corp.)
- *In re: Scotts EZ Seed Litigation*, Case No. 7:12-cv-04727-VB (S.D.N.Y. 2012) (representing a certified class of purchasers of mulch grass seed products advertised as a superior grass seed product capable of growing grass in the toughest conditions and with half the water.)
- *Forcellati et al., v Hyland's, Inc. et al.,* Case No. 2:12-cv-01983-GHK-MRW (C.D. Cal. 2012) (representing a certified nationwide class of purchasers of children's cold and flu products.)
- *Avram v. Samsung Electronics America, Inc., et al.,* Case No. 2:11-cv-06973 KM-MCA (D.N.J. 2011) (representing a proposed nationwide class of persons who purchased mislabeled refrigerators from Samsung Electronics America, Inc. for misrepresenting the energy efficiency of certain refrigerators.)
- *Dzielak v. Whirlpool Corp., et al*., Case No. 12-CIV-0089 SRC-MAS (D.N.J. 2011) (representing a proposed nationwide class of purchasers of mislabeled Maytag brand washing machines for misrepresenting the energy efficiency of such washing machines.)
- *In re: Shop-Vac Marketing and Sales Practices Litigation,* Case No. 4:12-md-02380-YK (M.D. Pa. 2012) (representing a proposed nationwide class of persons who purchased vacuums or Shop Vac's with overstated horsepower and tank capacity specifications.)
- *In re: Oreck Corporation Halo Vacuum And Air Purifiers Marketing And Sales Practices Litigation*, MDL No. 2317 (the firm was appointed to the executive committee, representing a proposed nationwide class of consumers who purchased vacuums and air purifiers that were deceptively advertised effective in eliminating common viruses, germs and allergens.)

## EMPLOYMENT PRACTICES LITIGATION

Faruqi & Faruqi, LLP is a recognized leader in protecting the rights of employees.  The firm's Employment Practices Group is committed to protecting the rights of current and former employees nationwide.  The firm is dedicated to representing employees who may not have been compensated properly by their employer or who have suffered investment losses in their employer-sponsored retirement plan.  The firm also represents individuals (often current or former employees) who assert that a company has allegedly defrauded the federal or state government.

Faruqi & Faruqi represents current and former employees nationwide whose employers have failed to comply with state and/or federal laws governing minimum wage, hours worked, overtime, meal and rest breaks, and unreimbursed business expenses.  In particular, the firm focuses on claims against companies for (i) failing to properly classify their employees for purposes of paying them proper overtime pay, or (ii) requiring employees to work "off-the-clock," and not paying them for all of their actual hours worked.



In prosecuting claims on behalf of aggrieved employees, Faruqi & Faruqi has successfully defeated summary judgment motions, won numerous collective certification motions, and obtained significant monetary recoveries for current and former employees.  In the course of litigating these claims, the firm has been a pioneer in developing the growing area of wage and hour law.  In *Creely, et al. v. HCR ManorCare, Inc.*, C.A. No. 3:09-cv-02879 (N.D. OH), Faruqi & Faruqi, along with its co-counsel, obtained one of the first decisions to reject the application of the Supreme Court's Fed. R. Civ. P. 23 certification analysis in *Wal-Mart Stores, Inc. v. Dukes et. al.,* 131 S. Ct. 2541 (2011) to the certification process of collective actions brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA").  The firm, along with its co-counsel, also recently won a groundbreaking decision for employees seeking to prosecute wage and hour claims on a collective basis in *Symczyk v. Genesis Healthcare Corp. et al.*, No. 10-3178 (3d Cir. 2011).  In *Symczyk,* the Third Circuit reversed the district court's ruling that an offer of judgment mooted a named plaintiff's claim in an action asserting wage and hour violations of the FLSA.  Notably, the Third Circuit also affirmed the two-step process used for granting certification in FLSA cases.  The *Creely* decision, like the Third Circuit's *Genesis* decision, will invariably be relied upon by courts and plaintiffs in future wage and hour actions.

Some of the firm's notable recoveries include *Bazzini v. Club Fit Management, Inc.,* C.A. No. 08-cv-4530 (S.D.N.Y. 2008), wherein the firm settled a FLSA collective action lawsuit on behalf of tennis professionals, fitness instructors and other health club employees on very favorable terms.  Similarly, in *Garcia, et al., v. Lowe's Home Center, Inc., et al.*, C.A. No. GIC 841120 (Cal. Sup. Ct. 2008), Faruqi & Faruqi served as co-lead counsel and recovered $1.6 million on behalf of delivery workers who were unlawfully treated as independent contractors and not paid appropriate overtime wages or benefits.

The firm's Employment Practices Group also represents participants and beneficiaries of employee benefit plans covered by the Employee Retirement Income Security Act of 1874 ("ERISA").  In particular the firm protects the interests of employees in retirement savings plans against the wrongful conduct of plan fiduciaries.  Often, these retirement savings plans constitute a significant portion of an employee's retirement savings.  ERISA, which codifies one of the highest duties known to law, requires an employer to act in the best interests of the plan's participants, including the selection and maintenance of retirement investment vehicles.  For example, an employer who administers a retirement savings plan (often a 401(k) plan) has a fiduciary obligation to ensure that the retirement plan's assets (including employee and any company matching contributions to the plan) are directed into appropriate and prudent investment vehicles.

Faruqi & Faruqi has brought actions on behalf of aggrieved plan participants where a company and/or certain of its officers breached their fiduciary duty by allowing its retirement plans to invest in shares of its own stock despite having access to materially negative information concerning the company which materially impacted the value of the stock.  The resulting losses can be devastating to employees'

11



retirement accounts. Under certain circumstances, current and former employees can seek to hold their employers accountable for plan losses caused by the employer's breach of their ERISA-mandated duties.

The firm's Employment Practices Group also represents whistleblowers in actions under both federal and state False Claims Acts. Often, current and former employees of business entities that contract with, or are otherwise bound by obligations to, the federal and state governments become aware of wrongdoing that causes the government to overpay for a good or service. When a corporation perpetrates such fraud, a whistleblower may sue the wrongdoer in the government's name to recover up to three times actual damages and additional civil penalties for each false statement made. Whistleblowers who initiate such suits are entitled to a portion of the recovery attained by the government, generally ranging from 15% to 30% of the total recovery.

False Claims Act cases often arise in context of Medicare and Medicaid fraud, pharmaceutical fraud, defense contractor fraud, federal government contractor fraud, and fraudulent loans and grants. For instance, in *United States of America, ex rel. Ronald J. Streck v. Allergan, Inc. et al.*, No. 2:08-cv-05135-ER (E.D. Pa.), Faruqi & Faruqi represents a whistleblower in an un-sealed case alleging fraud against thirteen pharmaceutical companies who underpaid rebates they were obliged to pay to state Medicaid programs on drugs sold through those programs.

Based on its experience and expertise, the firm has served as the principal attorneys representing current and former employees in numerous cases across the country alleging wage and hour violations, ERISA violations and violations of federal and state False Claims Acts.

# ANTITRUST DEPARTMENT ATTORNEYS

## PETER KOHN

Mr. Kohn is a partner in Faruqi & Faruqi, LLP's Pennsylvania office. He is Chair of the Firm's Pharmaceutical Litigation Department and Co-Chair of the Firm's Antitrust Department.

He is a 1992 graduate of Temple University Law School (cum laude), and a 1989 graduate of the University of Pennsylvania (B.A., English). At Temple Law School, he was senior staff for the Temple Law Review and received awards for trial advocacy.

Mr. Kohn's track record in antitrust is noteworthy. He has prepared several significant lawsuits for trial under the Sherman and Clayton Acts, including In re Namenda Antitrust Litig., No. 15-7488 (S.D.N.Y.) ($750 million settlement), In re Modafinil Antitrust Litig., No. 06-1797 (E.D. Pa.) ($500 million settlement), In re Tricor Direct Purchaser Antitrust Litig., No. 05-340 (D. Del.) ($250 million settlement), In re Buspirone Patent & Antitrust Litig., MDL No. 1410 (S.D.N.Y.) ($220 million settlement), In re Relafen Antitrust Litig.,

12



No. 01-12239 (D. Mass.) ($175 million settlement), In re Lidoderm Antitrust Litig., No. 14-2521 (N.D. Cal.) ($166 million settlement), In re Aggrenox Antitrust Litig., No. 14-2516 (D. Conn.) ($146 million settlement), In re Loestrin 24 Fe Antitrust Litig., No. 13-2472 (D.R.I.) ($120 million settlement), In re Cardizem CD Antitrust Litig., No. 99-MD-1278 (E.D. Mich.) ($110 million settlement), In re Solodyn Antitrust Litig., No. 14-10438 (D. Mass) ($76 million settlement), In re Remeron Direct Purchaser Antitrust Litig., No. 03-cv-0085 (D.N.J.) ($75 million settlement), In re Terazosin Hydrochloride Antitrust Litig., No. 99-MDL-1317 (S.D. Fla.) ($72.5 million settlement), and Meijer, Inc. v. Warner-Chilcott, No. 05-2195 (D.D.C.) ($22 million settlement).  He has been appointed to leadership positions in several such cases, including In re Pennsylvania Title Ins. Antitrust Litig., No. 08cv1202 (E.D. Pa.), Mylan Pharms., Inc. v. Warner Chilcott, No. 12-cv-3824 (E.D. Pa.), In re Effexor XR Antitrust Litig., No. 11-cv-5479 (D.N.J.), In re Prandin Antitrust Litig., No. 10-12141 (E.D. Mich.), In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig., No. 13-2445 (E.D. Pa.), In re Loestrin 24 Fe Antitrust Litig., No. 13-2472 (D.R.I.), and In re Lidoderm Antitrust Litig., No. 14-2521 (N.D. Cal.).

He has also been a frequent invited speaker on antitrust issues.  He spoke before the American Bar Association's Section of Antitrust Law's Spring Meeting in 2010 (on the subject of resale price maintenance), 2015 (on the subject of product "hopping" and FDA risk mitigation abuse), and 2018 (on the subject of reverse-payment patent settlement agreements).  He spoke at HarrisMartin's Antitrust Pay-for-Delay Litigation Conference in 2014, 2015, and 2017 on the subject of reverse-payment patent settlement agreements.  He spoke in 2012 on the subject of the filed rate doctrine at the American Antitrust Institute.  He has also spoken at ABA "brown bag" lunches on the subject of product hopping cases (2015) and reverse-payment patent settlement agreements (2017).

Mr. Kohn has been chosen by his peers as a "SuperLawyer" in Pennsylvania between 2009 and 2020.  He is a member of the bars of the Supreme Court of Pennsylvania, the United States Court of Appeals for the Third, Sixth, Ninth, and Federal Circuits, and the United States District Courts for the Eastern District of Pennsylvania and the Eastern District of Michigan.

## JOSEPH T. LUKENS

Mr. Lukens is a partner in Faruqi & Faruqi, LLP's Pennsylvania office and Co-Chair of the firm's Antitrust Litigation Practice Group.

Mr. Lukens was a shareholder at the Philadelphia firm of Hangley Aronchick Segal Pudlin & Schiller, where he represented large retail pharmacy chains as opt-out plaintiffs in numerous lawsuits under the Sherman Act.  Among those lawsuits were In re Brand Name Prescription Drugs Antitrust Litigation (MDL 897, N.D. Ill.), In re Terazosin Hydrochloride Antitrust Litigation (MDL 1317, S.D. Fla.), In re TriCor Direct Purchaser Antitrust Litigation (05-605, D. Del.), In re Nifedipine Antitrust Litigation (MDL1515,

13



D.D.C.), *In re OxyContin Antitrust Litigation* (04-3719, S.D.N.Y), and *In re Chocolate Confectionary Antitrust Litigation* (MDL 1935, M.D. Pa.).  While the results in the opt-out cases are confidential, the parallel class actions in those matters which are concluded have resulted in settlements exceeding $1.1 billion.

Earlier in his career, Mr. Lukens concentrated in commercial and civil rights litigation at the Philadelphia firm of Schnader, Harrison, Segal & Lewis.  The types of matters that Mr. Lukens handled included antitrust, First Amendment, contracts, and licensing.  Mr. Lukens also worked extensively on several notable *pro bono* cases including *Commonwealth v. Morales*, which resulted in a rare reversal on a second post-conviction petition in a capital case in the Pennsylvania Supreme Court.

Mr. Lukens graduated from LaSalle University (B.A. Political Science, *cum laude*, 1987) and received his law degree from Temple University School of Law (J.D., *magna cum laude*, 1992) where he was an editor on the *Temple Law Review* and received several academic awards.  After law school, Mr. Lukens clerked for the Honorable Joseph J. Longobardi, Chief Judge for the United States District Court for the District of Delaware (1992-93).  Mr. Lukens is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States Supreme Court (1996-present); the United States District Court for the Eastern District of Pennsylvania (1993-present), the United States Court of Appeals for the Third Circuit (1993-present), and the United States Court of Appeals for the District of New Jersey (1994-present).

Mr. Lukens has several publications, including: *Bringing Market Discipline to Pharmaceutical Product Reformulations*, 42 Int'l Rev. Intel. Prop. & Comp. Law 698 (September 2011) (co-author with Steve Shadowen and Keith Leffler); *Anticompetitive Product Changes in the Pharmaceutical Industry*, 41 Rutgers L.J. 1 (2009) (co-author with Steve Shadowen and Keith Leffler); *The Prison Litigation Reform Act: Three Strikes and You're Out of Court — It May Be Effective, But Is It Constitutional?,* 70 Temp. L. Rev. 471 (1997); *Pennsylvania Strips The Inventory Search Exception From Its Rationale – Commonwealth v. Nace*, 64 Temp. L. Rev. 267 (1991).

## BRADLEY J. DEMUTH

Bradley J. Demuth's practice is focused on complex antitrust litigation with particular expertise in cases involving pharmaceutical overcharges resulting from delayed generic entry schemes, price fixing, and other anticompetitive conduct.  Mr. Demuth is a partner in the firm's New York office.

Upon graduating, cum laude, from American University Washington College of Law (1999), Mr. Demuth served as a law clerk to the United States Court of Appeals for the Second Circuit.  While thereafter associated with notable defense firms, Mr. Demuth successfully represented several national and multinational corporate defendants in a wide range of antitrust and other commercial disputes.  His antitrust experience includes litigating issues in the pharmaceutical, high-tech, professional sports, consumer goods,

14



luxury goods, financial benchmarking, commodities, and industrial materials contexts.

Upon joining the Plaintiffs' bar in 2012, Mr. Demuth has made notable contributions in several high-profile pharmaceutical antitrust cases that resulted in significant recoveries, including in:

- In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation (E.D.N.Y.) ($51 million settlement pending final approval);
- American Sales Company, LLC v. Pfizer, Inc. (E.D. Va.) (Celebrex) ($94 million settlement);
- In re Aggrenox Antitrust Litigation (D. Conn.) ($146 million settlement);
- Castro v. Sanofi Pasteur, Inc. (D.N.J.) (Menactra) ($61.5 million settlement); and
- In re Flonase Antitrust Litigation (E.D. Pa.) ($150 million settlement).

Mr. Demuth is currently involved in several other pending high-profile pharmaceutical antitrust matters including:  In re Generic Pharmaceutical Pricing Antitrust Litigation (E.D. Pa.) and In re Zetia (Ezetimibe) Antitrust Litig. (E.D. Va.).

Mr. Demuth is a member of the New York State bar and is admitted to practice before the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York.

## DAVID FELDERMAN

David Felderman is a Partner in Faruqi & Faruqi, LLP's Pennsylvania office.  Mr. Felderman has extensive experience in complex litigationand is currently involved in several pending pharmaceutical antitrust matters including:  In re Generic Pharmaceutical Pricing Antitrust Litigation (E.D. Pa.); and In re Zetia (Ezetimibe) Antitrust Litigation (E.D.Va.). In addition, Mr. Felderman is currently involved in the following *qui tam* action: U.S. ex rel. Streck v. Bristol-Myers Squibb Co. (E.D.Pa.).

Prior to Faruqi & Faruqi, Mr. Felderman was a Partner at Spector, Roseman & Kodroff, P.C. (2000-2018) where he handled class action litigation with a focus on antitrust and securities fraud cases.  In addition, from 2008 through 2018, he served as the Partner in charge of the day-to-day operations of the firm's Global Portfolio Monitoring Platform where he provided portfolio monitoring services to institutional investors including public pension funds, Taft-Hartley funds, asset managers, and other institutional investors.

Throughout his career, Mr. Felderman has participated in litigating numerous securities fraud and antitrust class actions including the following:  In re The Bancorp, Inc. Securities Litigation, No. 14 Civ. 0952 (GMS) (D. Del.); In re Sunoco, Inc., April Term, 2012, No. 3894 (Pa. Common Pleas, Phila. County); In re Harleysville Mutual, November Term, 2011, No. 2137 (Pa. Common Pleas, Phila. County); In re Lehman Brothers Holdings, Inc. Equity/Debt Securities Litigation, No. 08-cv-5523 (S.D.N.Y.); In re Alltel Shareholder

15



Litigation, Civ. No. 2975-CC (Del. Chancery); In re Converium/SCOR Holding (Switzerland) AG Litigation, No. 04 Civ. 7897 (DLC) (S.D.N.Y.); In re AOL Time Warner Securities Litigation, MDL Docket No. 1500 (S.D.N.Y.); Stop & Shop Supermarket Co. v. Smithkline Beecham Corp., No. 03-cv-04578; In re Insurance Brokerage Antitrust Litigation, No. 04-5184 (D. N.J.); In re Monosodium Glutamate Antitrust Litigation, MDL Docket No. 1328 (D. Minn); and In re Flat Glass Antitrust Litigation, MDL No. 1200 (W.D. Pa.).

Mr. Felderman was also previously associated with McEldrew & Fullam, P.C. (1998-2000) where his practice focused on medical malpractice and product liability litigation. Prior to that, Mr. Felderman served as a law clerk to the Honorable Bernard J. Goodheart in the Philadelphia Court of Common Pleas.

Professionally, Mr. Felderman served a three-year term (2000-2002) as a member of the Executive Committee of the Philadelphia Bar Association's Young Lawyers Division where he Co-Chaired Legal Line, P.M. for three consecutive years. Under his leadership, Legal Line, P.M. won the National Association of Bar Executives 2001 LEXIS Community and Education Outreach Award. Mr. Felderman also formerly served as a member of the Philadelphia Bar Association's State Civil Committee (1998-1999) and the Pennsylvania Trial Lawyers Association's New Lawyer Section Leadership Council (1998-1999).

Additionally, Mr. Felderman currently serves as a member of the Penn Alumni Interview Program where he is responsible for interviewing prospective freshman. Mr. Felderman previously served as a member of the Board Directors of the Penn Alumni Club of Philadelphia (2002-2006) where he served as President (2004-2006) and Chair of the Membership Committee (2004-2006). He also served as a member of the Board of Directors of Penn's Alumni Class Leadership Council (2003-2008) where he served a two-year term as Chair of the By-Laws Committee (2006-2008). Moreover, Mr. Felderman served as a member of the Board of Directors of the Alumni Society of The William Penn Charter School (1998-2001) where he served a one-year term as Secretary (2000-2001). He has also served as a Class Agent since 1998 and served as the Reunion Chair for the Class of 1987's 15th, 20th, 25th, and 30th reunions.

Mr. Felderman is a 1991 graduate of the University of Pennsylvania (B.A., Economics) and a 1996 *cum laude* graduate of Temple University Law School Mr. Felderman is a member of the bars of the Supreme Court of Pennsylvania, the Supreme Court of New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of New Jersey.

## ADAM STEINFELD

Adam Steinfeld is a Partner in Faruqi & Faruqi, LLP's New York office. He practices in the area of antitrust litigation with a focus on competition in the pharmaceutical industry.

Mr. Steinfeld has litigated successfully with significant contributions in *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220M settlement); *In re Cardizem CD Antitrust Litigation*,

16



No. 99-MD-1278 (E.D. Mich.) ($110M settlement); *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175M settlement); *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75M settlement); *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.) ($72.5M settlement); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.) ($250M settlement); *Mylan Pharms., Inc. v. Warner Chilcott*, No. 12-cv-3824 (E.D. Pa.) ($12 million settlement*); In re Aggrenox Antitrust Litigation* No. 3:14-MD-2516 (D. Conn.) ($146 million settlement); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.) ($166 million settlement); *In re Loestrin 24 Fe Antitrust Litig.,* 13-md-02472 (D.R.I.) ($120M settlement).

Prior to joining Faruqi & Faruqi, Mr. Steinfeld was a partner at Garwin, Gerstein and Fisher, LLP, New York.

Mr. Steinfeld is the author of Nuclear Objections: The Persistent Objector and the Legality of the Use of Nuclear Weapons, 62 Brooklyn L. Rev. 1635 (winter, 1996).

Mr. Steinfeld received his law degree from Brooklyn Law School (J.D., 1997) where he was an editor on the Brooklyn Law Review and received several academic awards.  Mr. Steinfeld is a member of the bars of the States of New York, New Jersey and Massachusetts; and is admitted to practice before the United States District Courts for the District New Jersey, Eastern District of New York, Southern District of New York, and Western District of New York.  Mr. Steinfeld graduated from Brandeis University (B.A., Politics, 1994).

## STEPHEN G. DOHERTY

Stephen Doherty is Senior Counsel in the Pennsylvania office of Faruqi & Faruqi, LLP.   Mr. Doherty practices in the area of antitrust law and is significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name and generic drugs and charging pharmaceutical manufacturers with price fixing and with illegally blocking the market entry of less expensive competitors.

Earlier in his career, Mr. Doherty litigated consumer fraud and employment discrimination cases in both state and federal courts in Pennsylvania and New Jersey.  He has served on numerous volunteer boards, including Gilda's Club of Delaware Valley and the BCBA Pro Bono Committee, has served as a volunteer instructor for VITA Education Services, and as a pro bono lawyer for the Consumer Bankruptcy Assistance Project.

Mr. Doherty is a 1992 graduate of Temple University Law School, where he was senior staff for the Temple Law Review and received several academic awards and is the author of Joint Representation Conflicts of Interest: Toward A More Balanced Approach, 65 Temp. L. Rev. 561 (1992).  Mr. Doherty is a 1988 graduate of Dickinson College (B.A., Anthropology and Latin American Studies).



# NEILL CLARK

Neill Clark is Of Counsel in Faruqi and Faruqi, LLP's Pennsylvania office. Mr. Clark focuses his practice on complex commercial antitrust litigation involving the pharmaceutical industry.

Before joining the firm, Mr. Clark was an associate at Berger & Montague, P.C. where he was significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

Eight of those cases have resulted in substantial settlements totaling over $950 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for $110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for $220 million; *In re Relafen Antitrust Litig.* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Antitrust Litig.* settled in April 2005 for $75 million; *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million; *In re Ovcon Antitrust Litig.* settled in 2009 for $22 million; and *In re Tricor Direct Purchaser Antitrust Litig.* settled in April 2009 for $250 million.

Mr. Clark was also principally involved in a case alleging a conspiracy among hospitals and the Arizona Hospital and Healthcare Association to depress the compensation of per diem and traveling nurses, *Johnson et al. v. Arizona Hospital and Healthcare Association et al.*, No. CV07-1292 (D. Ariz.).

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.  Two cases in which he has been significantly involved have been featured as "Noteworthy Cases" in the NATIONAL LAW JOURNAL articles, "The Plaintiffs' Hot List" (*In re Tricor Antitrust Litig.* October 5, 2009 and *Johnson v. Arizona Hosp. and Healthcare Ass'n.*, October 3, 2011).

Mr. Clark graduated cum laude from Appalachian State University in 1994 and from Temple University Beasley School of Law in 1998, where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award.

# RAYMOND N. BARTO

Raymond N. Barto's practice is focused on antitrust litigation.  Mr. Barto is a Senior Associate in the firm's New York office.

Prior to joining F&F, Mr. Barto was an associate at a prominent New York City law firm where he represented consumers, shareholders, and employees in class action litigation.

While at Brooklyn Law School, Mr. Barto served as an Articles Editor for the Brooklyn Law Review.  As well, Mr. Barto served as an intern to the Honorable Judge William Pauley III of the United



States District Court for the Southern District of New York; the United States Attorney's Office for the Eastern District of New York; the litigation department for Marsh & McLennan Companies; and the Kings County District Attorney's Office.

Mr. Barto earned his J.D., cum laude, from Brooklyn Law School (2013).  Mr. Barto earned his undergraduate degree from Fordham University (B.A., History, 2007).

Mr. Barto is licensed to practice law in New York and New Jersey.

## DAVID CALVELLO

David Calvello is a Senior Associate in Faruqi & Faruqi, LLP's New York office where his focus is litigating antitrust matters.  He has worked on multiple cases that resulted in significant settlements, including *In re Lidoderm Antitrust Litigation*, 14-md-02521 (N.D. Cal.) ($166M settlement), *In re Loestrin 24 Fe Antitrust Litigation*, 13-md-02472 (D.R.I.) ($120M settlement), and *In re Solodyn Antitrust Litigation*, 14-md-02503 (D. Mass.) ($76M settlement).  He was selected to Super Lawyers' Rising Stars in 2020 and 2019.

Mr. Calvello graduated from the University of Richmond (B.S., 2011) with a double major in Finance and Political Science and Pace Law School (J.D., *magna cum laude*, 2014).  He is licensed to practice law in New York and New Jersey and is admitted to practice before the United States District Court for New Jersey as well as the Southern and Eastern Districts of New York.

In law school, Mr. Calvello served as an editor on the Pace International Law Review and received the New Rochelle Bar Association Award upon graduation.  He was also very active in moot court competitions, and competed in the Willem C. Vis International Commercial Arbitration Moot held in Vienna, Austria.

## KRISTYN FIELDS

Kristyn Fields' practice is focused on antitrust litigation.  Ms. Fields is a Senior Associate in the firm's New York office.

Prior to joining F&F, Ms. Fields interned for the Honorable Martin Marcus, New York Supreme Court, Bronx County.  As well, Ms. Fields participated in the Brooklyn Law Incubator & Policy Clinic providing pro bono counsel to emerging start-up companies.  While at Brooklyn Law School, Ms. Fields served as an Executive Articles Editor of the Brooklyn Journal of Corporate, Financial & Commercial Law.  Also, Ms. Fields was a member of the Moot Court Honor Society.

Ms. Fields earned her J.D. from Brooklyn Law School (2016).  Ms. Fields earned her undergraduate degree from Boston College (B.A., Political Science, 2013).

Ms. Fields is licensed to practice law in New York and is admitted to practice before the United



States District Courts for the Southern and Eastern Districts of New York.