UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
*In re Bystolic Antitrust Litigation*
:
:
:
:
:     20-cv-5735 (LJL)
:     20-cv-7110 (LJL)
This Order relates to: All Direct Purchaser Actions   :     20-cv-8754 (LJL)
:     20-cv-8756 (LJL)
:
:          ORDER
:
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/12/2020

LEWIS J. LIMAN, United States District Judge:

On Friday, November 6, 2020 the Court held a hearing on the pending applications to appoint interim lead counsel in the Direct Purchaser Actions.

As an initial matter, all parties agree that the Direct Purchaser Actions should be consolidated with one another. The Clerk of Court is respectfully directed to consolidate the above captioned cases under No. 20-cv-5735. As set forth in the operative case management plan, at No. 20-cv-5735, Dkt. No. 82, the Direct Purchaser Actions will be coordinated with the End Payor Actions.

The Court hereby GRANTS the application, at No. 20-cv-5735, Dkt. No. 45, to appoint Bruce E. Gerstein and his firm, Garwin Gerstein & Fisher LLP ("Garwin"), and David F. Sorensen and his firm, Berger Montague PC ("Berger"), as interim co-lead class counsel for the putative direct purchaser class pursuant to Fed. R. Civ. P. 23(g)(3). Garwin and Berger's request to appoint an executive committee is DENIED. The application to appoint Dianne M. Nast ("Nast") and Michael L. Roberts ("Roberts") as interim lead class counsel is DENIED.

"When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (citing *In re Air Cargo Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)). The Rule 23(g)(1)(A) factors, in turn, are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition, Rule 23(g)(1)(B) provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "Where there are multiple lead counsel applicants, and each are 'adequate' as evaluated under the criteria enumerated in Rule 23(g)(1)(A), 'the court must appoint the applicant best able to represent the interested of the class.'" *Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. May 21, 2012) (quoting Fed. R. Civ. P. 23(g)(2)). The Court has previously discussed these factors in detail in its consideration of the applications to appoint interim lead counsel in the End Payor Actions. *See* No. 20-cv-5735, Dkt. No. 50.

Each of the applicants exhibits a deep knowledge of the applicable law and a breadth of experience representing similar classes in complex antitrust cases, including pharmaceutical cases. The Court cannot favor one group of applicants over the other on the Rule 23(g)(1)(A)(ii) and (iii) factors. The Rule 23(g)(1)(A)(i) factor, however, clearly favors the Garwin and Berger applicants. They were the first to identify the claims in these actions and to investigate them and have expended substantial resources to do so. They claim, without contradiction, that they spent over a year and more than 1,300 hours of work to identify the claims. Those are sunk costs.

They were expended in connection with another case and the class (if there is one) will not be charged for them.  Even if the 1,300 figure is overstated, the putative class will still benefit from counsel's investment in the case. The fourth 23(g)(1)(A) factor slightly favors the application of Nast and Roberts, as they represent having all of the relevant resources in-house.  By contrast, Garwin and Berger propose either an Executive Committee or to distribute the work to lawyers at other firms with whom they have worked subject to court approval.  Rule 23(g)(1)(A)(iv) seems to refer to the resources that counsel has that it will commit to the case, and not to resources that it can gather by teaming with others.  There are obvious benefits both in efficiency and in accountability when the relevant resources are contained within a limited number of firms.  The Court has some concern, for example, that multiple lawyers across different firms should not attend conferences, hearings, and depositions.  At this stage, however, those factors are not disqualifying.  Assuming a class is certified, there will be further opportunity to select class counsel and ensure that the matter is handled efficiently and effectively.

As to other pertinent considerations under Rule 23(g)(1)(B), the Court is satisfied with the quality of the pleadings of Garwin and Berger and the "vigorousness" of their representation of their client.  *See In re Comverse Tech., Inc. Derivative Litg.*, 2006 WL 3761986, at *2-3 (E.D.N.Y. Sept. 22, 2006) (holding that among the factors relevant for consideration are the quality of the pleadings, the vigorousness of the prosecution of the lawsuits, and the capabilities of counsel).  Garwin and Berger have also undertaken substantial efforts to advance the case, including cooperating with counsel for the endpayors to finalize a draft protective order and ESI protocol as well as the Case Management Plan.  Counsel  have represented a commitment to diversity and to investing in younger lawyers, and the Court is satisfied that it is recruiting and cultivating talent from a diverse pool of lawyers.  In addition, Garwin Gerstein & Fisher is based

in New York, which fact alone should bestow certain efficiencies and advantages.  *See* Dkt. No. 50 at 15-16.

The request to appoint an executive committee is denied.  "[C]ommitteees of counsel can lead to substantially increased costs and unnecessary duplication of efforts. At this preliminary stage of the litigation, … a leadership structure consisting of two co-lead counsel will be sufficient to address the various complexities that may arise, while keeping unnecessary costs to a minimum."  *In re Commodity Futures Litig.*, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 4, 2012); *see also In re Deva Concepts Products Liability Litig*, 2020 WL 4368362, at *4  (S.D.N.Y. July 30, 2020) (commending counsel for eliminating formal executive committee); *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 58 (E.D.N.Y. 2015) (appointing two firms as co-lead counsel and noting "the inevitable redundancies and inefficiencies attendant to a four-firm leadership structure"); Manual for Complex Litigation 10.221 (4th ed. 2004) ("Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making. . . . The most important [factor in class counsel appointments] is achieving efficiency and economy without jeopardizing fairness to the parties.").

SO ORDERED.

Dated: November 12, 2020
       New York, New York

LEWIS J. LIMAN
United States District Judge