# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Bystolic Antitrust Litigation* | |
| This Document Relates To: | C.A. No. 1:20-cv-05735-LJL |
| All Actions | <u>PROTECTIVE ORDER</u> |

LEWIS J. LIMAN, United States District Judge:

WHEREAS all of the parties to this action (collectively, the "Parties,"[1] and, individually, a "Party") request that this Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of certain nonpublic and confidential material that will be exchanged pursuant to and during the course of discovery in this case;

WHEREAS, the Parties, through counsel, agree to the following terms;

WHEREAS, the Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords only extends to the limited information or items that are entitled, under the applicable legal principles, to confidential treatment;

WHEREAS, the Parties further acknowledge that this Protective Order does not create entitlement to file confidential information under seal; and

WHEREAS, in light of these acknowledgements, and based on the representations of the Parties that discovery in this case will involve confidential documents or information the public disclosure of which will cause harm to the producing person and/or third party to whom a duty of confidentiality is owed, and to protect against injury caused by dissemination of confidential documents and information, this Court finds good cause for issuance of an appropriately tailored confidentiality order governing the pretrial phase of this action;

IT IS HEREBY ORDERED that any person subject to this Protective Order—including without limitation the parties to this action, their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Protective Order—shall adhere to the following terms:

1.      Any person subject to this Protective Order who receives from any other person subject to this Protective Order any "Discovery Material" (*i.e.*, information of any kind produced

---

[1] The definition of "Parties" includes Plaintiffs and Defendants, as well as their officers, directors, current employees, former employees, agents, legal counsel, and anyone hired or retained to assist in the prosecution or defense of this Action.

or disclosed pursuant to and in course of discovery in this action) that is designated as "Confidential" or "Highly Confidential" pursuant to the terms of this Protective Order (hereinafter "Confidential Discovery Material") shall not disclose such Confidential Discovery Material to anyone else except as expressly permitted hereunder.

2.    The person producing any given Discovery Material, whether a Party or a non-party to this litigation, ("Producing Party"), may designate as Confidential only such portion of such material the public disclosure of which is either restricted by law or will cause harm to the business, commercial, financial or personal interests of the producing person and/or a third party to whom a duty of confidentiality is used and that consists of:

    (a) previously nondisclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

    (b) previously nondisclosed material relating to ownership or control of any non-public company;

    (c) previously nondisclosed business plans, product development information, or marketing plans;

    (d) any information of a personal or intimate nature regarding any individual; or

    (e) any other category of information hereinafter given confidential status by the Court.

3.    The Producing Party may designate as "Highly Confidential" any material, or portion of such material, which could cause a significant competitive or commercial disadvantage if shared with the Parties to this case. Highly Confidential material may include (but is not limited to) nonpublic, highly sensitive information such as:

    (a) Information related to pricing (including but not limited to credits, discounts, returns, allowances, rebates, and chargebacks);

    (b) Projected future sales, volumes, profits, revenue, and costs;

    (c) Claims and reimbursement data;

    (d) Distribution agreements with third parties, including wholesalers;

    (e) Transactional data;

    (f) Information protected by foreign, federal, or state privacy laws;

    (g) Information related to settlement of litigation or negotiations thereof;

    (h) Information related to research, development, and testing of, or production plans for, a Party's existing or proposed future products;

2

(i) Information relating to the processes, apparatus, or analytical techniques used by a Party or Non-Party in its present or proposed commercial production of such products;

(j) Information relating to compliance with product safety or other government regulations;

(k) Information relating to pending or abandoned patent applications which have not been made available to the public;

(l) Personnel files;

(m) Communications regarding any Highly Confidential material that themselves qualify for designation as Highly Confidential; and

(n) Other material that contain current trade secrets.

4.     With respect to the Confidential or Highly Confidential portion of any Discovery Material other than deposition transcripts and exhibits, the Producing Party or their counsel may designate such portion as "Confidential" or "Highly Confidential" as follows. For documents in hard-copy form or modifiable electronic format, the Producing Party may designate the document by stamping or otherwise clearly marking as "Confidential" or "Highly Confidential" each page of the document, or portion thereof, that is deemed Confidential or Highly Confidential in a manner that will not interfere with legibility of the document.  A Producing Party may designate natively produced electronic documents and other non-imaged media as "Confidential" or "Highly Confidential," as appropriate, by noting such designation in an accompanying cover letter and, to the extent possible, by affixing a legend or stamp to the media itself (i.e., disc, hard-drive, etc.) on which the material is provided, and including the appropriate confidentiality designation in the load file provided with the electronic production.

5.     With respect to deposition transcripts and exhibits thereto, a Party or its counsel may designate such portion as Confidential or Highly Confidential either by (a) indicating on the record during the deposition that a question calls for Confidential or Highly Confidential information, in which case the reporter will bind the transcript of the designated testimony (consisting of question and answer) in a separate volume and mark it as "Confidential Information Governed by Protective Order" or "Highly Confidential Information Governed by Protective Order"; or (b) notifying the reporter and all counsel of record, in writing, within 30 days receipt of the transcript, of the specific pages and lines of the transcript and/or the specific exhibits that are to be designated Confidential or Highly Confidential, and sending a copy of the designated transcript or exhibit that redacts all information designated as Confidential or Highly Confidential. During the 30-day period following the conclusion of a deposition, the entire deposition transcript will be treated as if it had been designated Highly Confidential.

6.     Any document produced (or material containing information from a document produced), any deposition transcripts or exhibits, any expert reports, any filings, and other materials from the underlying patent litigations involving any of the Parties in this Action, that were designated therein as Confidential or Highly Confidential shall be treated as such under this

Order, unless the original source of the document agrees to waive confidentiality, the document has since become public, or the Court orders otherwise.

7.     Any Confidential or Highly Confidential Material that was exchanged by the Parties prior to the execution of this Order are also subject to the provisions of this Order.

8.     If at any time prior to the trial of this action, a Producing Party realizes that some portion(s) of Discovery Material that she, he, or it had previously produced without limitation should be designated as Confidential or Highly Confidential, she, he, or it may so designate by so apprising all prior recipients of the Discovery Material in writing, and thereafter such designated portion(s) of the Discovery Material will thereafter be deemed to be and treated as Confidential or Highly Confidential under the terms of this Protective Order. Notwithstanding this provision, a Party may challenge the asserted confidentiality designation as provided for herein.

9.     No person subject to this Protective Order other than the Producing Party shall disclose any of the Discovery Material designated by the Producing Party as Confidential to any other person whomsoever, except to:

    (a)  up to two (2) in-house Counsel for the Parties to this action;

    (b)  counsel retained specifically for this action ("Outside Counsel"), including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

    (c)  outside vendors or service providers and their staff (such as copy-service providers, document-management consultants, graphic production services or other litigation support services, or jury consultants/participants in mock jury excercises) that counsel hire and assign to this matter, including computer service personnel performing duties in relation to a computerized litigation system;

    (d)  any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

    (e)  as to any document, (i) its author, its addressee, and any other person indicated on the face of the document as having received a copy, (ii) any deponent, at their deposition, who counsel has a good-faith basis to believe reviewed or had personal knowledge of the specific subject matter of the Discovery Material prior to its production in this Action, and such a belief is confirmed by first laying a foundation as to that personal knowledge consistent with Federal Rule of Evidence 602, (iii) any current employee, director, or agent of the Producing Party, or (iv) any witness designated to testify as a Rule 30(b)(6) witness on behalf of the Producing Party;

    (f)  at trial, any witness of the Producing Party, during the course of his or her sworn testimony in this action;

(g) any person retained by a Party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, including their staff, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto.  Before any independent consultant or expert with expertise in the research, development, marketing, or approval of pharmaceuticals who has within the last three (3) years worked or consulted for a brand or generic pharmaceutical manufacturer regarding marketing or development of, or obtaining approval of, pharmaceutical products ("Pharmaceutical Expert or Consultant")—which specifically does not include any trial consultants, graphic or audiovisual consultants, or economic experts—is afforded access to a Producing Party's Confidential Discovery Material, the identity and current resume or curriculum vitae of the Pharmaceutical Expert or Consultant shall be furnished to the Party or Parties whose Confidential Discovery Material may be disclosed to the Pharmaceutical Expert or Consultant along with a copy of an executed Non-Disclosure Agreement in the form annexed as an Exhibit hereto ("Pharmaceutical Expert Notice").  The Pharmaceutical Expert Notice may be provided at any time after this Order is signed by the Parties.  No Confidential Discovery Material shall be disclosed to such Pharmaceutical Expert or Consultant until the expiration of a five (5) business day period commencing upon the furnishing of the Pharmaceutical Expert Notice.  If, within five (5) business days of the furnishing of a Pharmaceutical Expert Notice, any Producing Party objects in writing with an explanation of the basis for the objection to the proposed disclosure, the parties shall then have two (2) additional business days after an objection is raised to use good-faith efforts to reach an agreement regarding the proposed disclosure, during which period of time disclosure of Confidential Discovery Material may not be made absent an agreement. If agreement cannot be reached, the Producing Party objecting to disclosure may apply to the Court for relief within two (2) business days after it is determined that an agreement cannot be reached or that party's objections under this section shall be deemed waived. The burden shall be on the objecting party to show the Court good cause why the disclosure should not be made. In the event an application is made to the Court, however, the materials will continue to be treated as Confidential Discovery Material in accordance with this Order during the time the Court considers the application and will not be disclosed to the Pharmaceutical Expert or Consultant;

(h) stenographers engaged to transcribe depositions conducted in this action; and

(i) this Court, including any appellate court, and the court reporters and support personnel for the same.

10.    No person subject to this Protective Order other than the Producing Party shall disclose any of the Discovery Material designated by the Producing Party as Highly Confidential to any other person whomsoever, except to those individuals identified in subparagraphs 9(b)-9(i) except that the Parties agree that two representatives of each named Plaintiff to this litigation may review unredacted copies of the complaints filed in this litigation along with the documents

produced under FOR-BYS-00000001 – 438, which are the agreements quoted in the complaints. Defendants agree that as part of the class certification proceedings in this litigation they will not challenge the adequacy of any named class representative on the basis that they have not reviewed documents produced in this litigation by Defendants as Highly Confidential or Confidential Discovery Material, but it is agreed that Defendants reserve all other rights to challenge the adequacy of the named class representatives.

11.     Prior to any disclosure of any Confidential Discovery Material to any person referred to in subparagraphs 9(d) or 9(g) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement in the form annexed as an Exhibit hereto stating that that person has read this Protective Order and agrees to be bound by its terms. Said counsel shall retain each signed Non-Disclosure Agreement.

12.     Any Party who objects to any designation of Discovery Material as either Confidential or Highly Confidential may at any time prior to the trial of this action serve upon counsel for the designating person a written notice stating with particularity the grounds of the objection. If the Parties cannot reach agreement promptly, counsel for all Parties will address their dispute to this Court in accordance with Paragraph 1(B) of this Court's Individual Practices in Civil Cases.

13.     A Party may be requested to produce Discovery Material that is subject to contractual or other obligations of confidentiality owed to a third party. Within five (5) business days of receiving the request, the receiving Party subject to such obligation shall inform the third party of the request and that the third party may seek a protective order or other relief from this Court. If neither the third party nor the receiving Party seeks a protective order or other relief from this Court within 21 days of that notice, the receiving Party shall produce the information responsive to the discovery request but may affix the appropriate controlling designation.

14.     Recipients of Confidential Discovery Material under this Protective Order may use such material solely for the prosecution and defense of this action and any appeals thereto, and specifically (and by way of example and not limitations) may not use Confidential Discovery Material for any business, commercial, or competitive purpose. Nothing contained in this Protective Order, however, will affect or restrict the rights of any person with respect to its own documents or information produced in this action; in other words, a Producing Party may disclose, without limitation, its own Confidential Discovery Material or Highly Confidential Discovery Material. Nor does anything contained in this Protective Order limit or restrict the rights of any person to use or disclose information or material obtained independently from and not through or pursuant to the Federal Rules of Civil Procedure.

15.     Nothing in this Protective Order will prevent any person subject to it from producing any Confidential Discovery Material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided, however, that such person receiving a request, will provide written notice to the Producing Party (i.e., the party that produced the Confidential Discovery Material) before disclosure and as soon as reasonably possible, and, if permitted by the time allowed under the request, at least ten (10) days before any disclosure. Upon receiving such

notice, the Producing Party will have the right to oppose compliance with the subpoena, other compulsory process, or other legal notice if the Producing Party deems it appropriate to do so.

16.     All persons seeking to file redacted documents or documents under seal with the Court shall follow Rule 2(G) of this Court's Individual Practices in Civil Cases and the procedures set out in Paragraph 18. No person may file with the Court redacted documents or documents under seal without first seeking leave to file such papers. All persons producing Confidential Discovery Material are deemed to be on notice that the Second Circuit puts limitations on the documents or information that may be filed in redacted form or under seal and that the Court retains discretion not to afford confidential treatment to any Confidential Discovery Material submitted to the Court or presented in connection with any motion, application or proceeding that may result in an order and/or decision by the Court unless it is able to make the specific findings required by law in order to retain the confidential nature of such material. Notwithstanding its designation, there is no presumption that Confidential Discovery Material will be filed with the Court under seal. The Parties will use their best efforts to minimize such sealing.

17.     All persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial or supporting or refuting any motion for summary judgment, even if such material has previously been sealed or designated as Confidential or Highly Confidential.

18.     Documents containing or describing Confidential Discovery Material may be provisionally filed under seal with a letter motion consistent with Rule 2(G) of the Court's Individual Practices in Civil Cases.  Absent a motion to the contrary, the Court will hold the motion to seal in abeyance for fourteen (14) calendar days for the Producing Party to file a letter brief in support of any proposed redactions, and as exhibits thereto, proposed redacted public versions of any sealed papers consistent with Rule 2(G), and the motion to seal shall set forth the moving party's request that the court not rule for a period of at least 14 days (provided however that nothing in this order shall preclude the court from ruling earlier as the court deems fit).  The filing party will meet and confer with any party who has produced Confidential Discovery Material and the burden will be on the Producing Party to justify the continued redaction or sealing of any materials filed provisionally under seal. Once the Court approves any proposed redactions, the Producing Party shall provide the filing party a version of the approved redacted public papers for filing.

19.     Each person who has access to Discovery Material that has been designated as Confidential or Highly Confidential shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

20.     Disclosure of Certain Information Regarding Expert Witnesses.

(a) No subpoenas (for depositions or documents) need be served on any Rule 26(a)(2)(B) or Rule 26(a)(2)(C) expert in this case.  Instead, the Party or Parties retaining such expert will make him or her available for deposition, at a time mutually agreed to by the Parties.  If an expert is required to submit a report pursuant to Rule 26(a)(2)(B), the deposition of such expert will be conducted after the report is served.  If a testifying expert is not required to submit a report pursuant to Rule 26(a)(2)(C), the deposition of such expert will be conducted

within thirty (30) days of that expert's disclosure, or at another time mutually agreed by the Parties. If such an expert has already been deposed as a fact witness, he or she may be deposed again in his or her expert capacity.

(b) Within three (3) business days of service of a report, the Party submitting such report shall produce: (i) the data, facts or other information relied upon by the expert in forming the expert witness's opinions; (ii) any exhibits that will be used to summarize or support the expert witness's opinions; (iii) the expert witness's qualifications, including a list of all publications authored in the previous ten (10) years; (iv) a list of all other cases, during the previous four years, where the expert witness has testified as an expert at trial or by deposition; and (v) a statement of the compensation to be paid for the study and testimony in this case.  To the extent such disclosures include charts, tables, exhibits, information or data processed or modeled by computer at the direction of a disclosed testifying expert in the course of forming the expert's opinions, machine-readable copies of the exhibits, information, or data (including all linked data files, input and output files, formulas contained within spreadsheet cells and similar electronic information necessary to understand the charts, tables, exhibits, information, or data) sufficient to allow the replication of all analysis contained in the report, where applicable, along with appropriate computer programs and instructions necessary to access and use the data (unless such computer programs are reasonably and readily commercially available) shall also be provided with such disclosures. Information gleaned from websites and third-party sources that are not readily available shall also be provided with such disclosures.

21.     Non-Disclosure of Certain Information Regarding Expert Witnesses.

(a) The below-listed categories of documents, recording media, and communications need not be disclosed by any Party and an expert may not be examined at deposition, hearing, or trial on the contents of the below-listed categories of documents, recording media, and communications (subject to the exceptions at the end of this Paragraph):

    i.  any notes or other writings taken or prepared by or for an expert witness in connection with this matter (aside from the final written expert report(s) and notes generated while testifying), including:

        1.  written correspondence or memoranda to or from, and notes of conversations between and among the expert witness and the expert's assistants and/or support staff, non-testifying consultants (including their staffs), or attorneys for the Party or Parties (including their staffs); and/or

        2.  copies of materials produced by any Party in this Action bearing the notes, markings, or comments of the expert, the expert's assistants and/or support staff, non-testifying consultants

(including their staffs), or attorneys for the Party or Parties (including their staffs);

ii. any draft reports, draft studies, draft work papers, draft declarations, or other draft materials prepared by, for, or at the direction of an expert witness, regardless of the form in which the draft is recorded; and

iii. any oral or written communication between and among expert witnesses and their assistants and/or support staff, non-testifying consultants (including their staffs), or attorneys for the Party or Parties (including their staffs), regardless of the form of the communications.  For avoidance of doubt, this includes oral or written communication between any of the individuals listed above, including but not limited to (a) one expert and/or their staff and assistants and (b) another expert and/or their staff and assistants.

(b) The foregoing exclusions from disclosure set forth in subparagraphs (a)-(i-iii) do not apply to any communications, documents, data sets, or analyses upon which an expert relies as a basis for his or her ultimate opinion. In addition, examination shall be permitted on alternative analyses, methodologies, or approaches to issues on which the expert is testifying, regardless of whether the expert considered them in forming the expert's opinion.

Communications between and among experts, their staffs, and attorneys shall not be discoverable unless relied upon as a basis for any expert's ultimate opinion(s). Although communications relating to compensation for the expert's work or testimony shall not be required to be produced or exchanged, the Parties may examine witnesses at deposition or trial as to the amount they charge.

22.     Except as provided under Fed. R. Civ. P. 26(b)(4)(D), no Party may take discovery of an expert who has been retained or specially employed by another Party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial, without the express written consent and authorization of the Party employing such expert.

23.     Any Personally Identifying Information ("PII") (*e.g.,* social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the persons who receive such information and are bound by this Protective Order in a manner that is secure and confidential. In the event that the person receiving PII experiences a data breach, she, he, or it shall immediately notify the Producing Party of the same and cooperate with the Producing Party to address and remedy the breach. Nothing herein shall preclude the Producing Party from asserting legal claims or constitute a waiver of legal rights or defenses in the event of litigation arising out of the receiving person's failure to appropriately protect PII from unauthorized disclosure.

24.     This Protective Order shall survive the termination of the litigation. Within 45 days of the final disposition of this action, all Discovery Material designated as "Confidential" or "Highly Confidential," and all copies thereof, shall be promptly returned to the Producing Party,

or destroyed.  As to those materials that contain, reflect, incorporate, attach, or reference attorney work product, counsel of record for the Parties shall be entitled, without violating this Order, to retain such work product in their files, so long as the terms of this Order will continue to govern any such retained materials. In addition, counsel of record for the Parties shall be entitled, without violating this Order, to retain pleadings, affidavits, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts, and the trial record (including exhibits) even if such materials contain or describe Confidential Material or Highly Confidential Material, so long as this Order will continue to govern any such retained materials. The Receiving Party's commercially reasonable efforts shall not require the return or destruction of materials that (a) are stored on backup storage media made in accordance with regular data backup procedures; (b) are located in the email archive system or archived electronic files of departed employees; or (c) are subject to legal hold obligations, provided, however, that (i) any such material shall be treated in accordance with this Order; (ii) to the extent that any material is accessed from backup storage media, information protected by data privacy obligations shall be destroyed or returned; (iii) to the extent that any material is accessed from an email archive system or archived electronic files of departed employees, information protected by data privacy obligations shall be destroyed or returned; and (iv) legal hold obligations shall be periodically reviewed for necessity and proportionality and information protected by data privacy obligations shall not be retained in perpetuity. Nothing in this Paragraph shall obligate any Party to destroy its own Confidential Information at the close of this Action or at any other time.

25.     All persons subject to this Protective Order acknowledge that willful violation of this Protective Order could subject them to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

SO STIPULATED AND AGREED.

Agreed to:

Dated: December 15, 2020

| | |
|---|---|
| */s/ Kimberly Hennings* | */s/ Robin A. van der Muelen* |
| Bruce E. Gerstein | Robin A. van der Meulen |
| Kimberly Hennings | Gregory S. Asciolla |
| Dan Litvin | Matthew J. Perez |
| **GARWIN GERSTEIN & FISHER LLP** | Veronica Bosco |
| 88 Pine Street, 10th Floor | **LABATON SUCHAROW LLP** |
| New York, NY 10005 | 140 Broadway |
| Tel.: (212) 398-0055 | New York, NY 10005 |
| Fax: (212) 764-6620 | Tel: (212) 907-0700 |
| bgerstein@garwingerstein.com | Fax: (212) 818-0477 |
| khennings@garwingerstein.com | rvandermeulen@labaton.com |
| dlitvin@garwingerstein.com | gasciolla@labaton.com |
| | mperez@labaton.com |
| David F. Sorensen | vbosco@labaton.com |
| Caitlin G. Coslett | |
| Daniel C. Simons | */s/ Sharon K. Robertson* |
| **BERGER MONTAGUE PC** | Sharon K. Robertson |
| 1818 Market Street, Suite 3600 | Donna M. Evans (*pro hac vice* pending) |
| Philadelphia, PA 19103 | **COHEN MILSTEIN SELLERS & TOLL** |
| (215) 875-3000 | **PLLC** |
| dsorensen@bm.net | 88 Pine Street, 14th Floor |
| ccoslett@bm.net | New York, NY 10005 |
| dsimons@bm.net | Tel: (212) 838-7797 |
| | Fax: (212) 838-7745 |
| *Interim Co-Lead Counsel for the Proposed* | srobertson@cohenmilstein.com |
| *Direct Purchaser Class* | devans@cohenmilstein.com |
| | |
| | Robert A. Braun |
| | Jessica Weiner (*pro hac vice* pending) |
| | **COHEN MILSTEIN SELLERS & TOLL** |
| | **PLLC** |
| | 1100 New York Avenue, NW |
| | Fifth Floor |
| | Washington, D.C. 20005 |
| | Tel: (202) 408-4600 |
| | *rbraun@cohenmilstein.com* |
| | *jweiner@cohenmilstein.com* |
| | |
| | *Interim Co-Lead Counsel for the Proposed* |
| | *End-Payor Class* |

| | |
|---|---|
| */s/ Mark Gidley* | */s/ Christopher Holding* |
| J. Mark Gidley | Christopher T. Holding |
| Peter J. Carney | Sarah K. Frederick |
| Noah A. Brumfield | **GOODWIN PROCTER, LLP** |
| **WHITE & CASE LLP** | 100 Northern Avenue |
| 701 Thirteenth Street, NW | Boston, MA 02210 |
| Washington, DC 20005-38007 | Tel: (617)-570-1753 |
| Tel: (202) 626-3600 | Fax: (617)-523-1231 |
| Fax: (212) 354-8113 | sfrederick@goodwinlaw.com |
| mgidley@whitecase.com | cholding@goodwinlaw.com |
| pcarney@whitecase.com | |
| nbrumfield@whitecase.com | *Counsel for Watson Pharma, Inc. (n/k/a* |
| | *Actavis Pharma, Inc.), Watson Laboratories,* |
| *Counsel for AbbVie, Inc., Allergan Inc.,* | *Inc. (NV), Watson Laboratories, Inc. (DE)* |
| *Allergan Sales LLC, Allergan USA, Inc.* | *(Actavis Laboratories UT, Inc.), Watson* |
| *Forest Laboratories Inc., Forest Laboratories* | *Laboratories, Inc. (NY) (later known as* |
| *Holdings Ltd., Forest Laboratories Ireland,* | *Actavis Laboratories NY, Inc.), Watson* |
| *LTD., Watson Pharmaceuticals Inc., Actavis,* | *Laboratories, Inc., (CT), Teva* |
| *Inc.* | *Pharmaceutical Industries Ltd., Teva* |
| | *Pharmaceuticals USA, Inc.* |

| | |
|---|---|
| */s/ Devora Allon* | */s/ Teresa Bonder* |
| Devora W. Allon. P.C. | Natalie Christine Clayton |
| **KIRKLAND & ELLIS LLP** | **ALSTON & BIRD, LLP** |
| 601 Lexington Avenue | 90 Park Avenue |
| New York, NY 10022 | New York, NY 10016 |
| Tel: (212)-446-5697 | Tel: (212)-210-9573 |
| Fax: (212)-446-6460 | Fax: (212)-922-3845 |
| devora.allon@kirkland.com | natalie.clayton@alston.com |
| | |
| Jay P. Lefkowitz. P.C. | Teresa T. Bonder (pro hac vice) |
| **KIRKLAND & ELLIS LLP** | **ALSTON & BIRD, LLP** |
| 601 Lexington Avenue | 560 Mission Street, Ste. 2100 |
| New York, NY 10022 | San Francisco, CA 94105 |
| Tel: (212)-446-4970 | Tel: (415)-243-1000 |
| Fax: (212)-446-4900 | Fax: (415)-243-1001 |
| lefkowitz@kirkland.com | teresa.bonder@alston.com |
| | |
| *Counsel for Torrent Pharma, Inc.* | Matthew D. Kent (pro hac vice) |
| | D. Andrew Hatchett (pro hac vice) |
| | **ALSTON & BIRD, LLP** |
| | 1201 W. Peachtree Street |
| | Atlanta, GA 30309 |
| | Tel: (404)-881-7000 |
| | Fax: (404)-881-7777 |
| | matthew.kent@alston.com |
| | andrew.hatchett@alston.com |
| | |
| | *Counsel for Glenmark Generics, Inc., USA* |
| | *n/k/a Glenmark Pharmaceuticals Inc.,* |
| | *Glenmark Generics Ltd. d/b/a Glenmark* |
| | *Pharmaceuticals Ltd.* |
| */s/ Ahmed Riaz* | */s/ Richard Schoenstein* |
| Ahmed M.T. Riaz | Richard C. Schoenstein |
| **SCHIFF HARDIN LLP** | Janet B. Linn |
| 1185 Avenue of the Americas | **TARTER KRINSKY & DROGIN LLP** |
| Suite 3000 | 1350 Broadway |
| New York, NY 10036 | New York, NY 10018 |
| 212-753-5000 | Tel: (212)-216-8000 |
| ariaz@schiffhardin.com | Fax: (212)-216-8001 |
| | rschoenstein@tarterkrinsky.com |
| | jlinn@tarterkrinsky.com |
| | |
| *Counsel for Indchemie Health Specialties* | *Counsel for Hetero USA Inc.,* |
| *Private Ltd., Alkem Laboratories Ltd., Ascend* | *Hetero Labs Ltd.,* Hetero |
| *Laboratories LLC* | Drugs Ltd. |

SO ORDERED

This Order reflects a proposed order filed by the parties, with the addition of language to the second sentence of paragraph 18.  The added language is underlined.

Dated:  December 16, 2020
New York, New York

_____
HON. LEWIS J. LIMAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In re Bystolic Antitrust Litigation*

This Document Relates To:

All Actions

C.A. No. 1:20-cv-05735-LJL

<u>NON-DISCLOSURE AGREEMENT</u>

I, _____, acknowledge that I have read and understand the

Protective Order in this action governing the non-disclosure of those portions of Discovery

Material that have been designated as Confidential. I agree that I will not disclose such

Confidential Discovery Material to anyone other than for purposes of this litigation and that at

the conclusion of the litigation I will either return all discovery information to the party or

attorney from whom I received it or destroy such discovery information. By acknowledging

these obligations under the Protective Order, I understand that I am submitting myself to the

jurisdiction of the United States District Court for the Southern District of New York for the

purpose of any issue or dispute arising hereunder and that my willful violation of any term of the

Protective Order could subject me to punishment for contempt of Court.

Dated: _____        _____