UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
*In re Bystolic Antitrust Litigation* :
:
:
:
_____ : 20-cv-5735 (LJL)
:
This Order relates to: All Actions : ORDER
:
:
:
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/15/2021

LEWIS J. LIMAN, United States District Judge:

Before the Court is a motion to transfer venue in two related sets of consolidated, putative class-action cases involving alleged antitrust violations in connection with the anti-hypertension drug Bystolic. For the following reasons, the motion to transfer venue is denied.

## BACKGROUND

There are two sets of lawsuits before the Court. The first set of lawsuits are brought by direct purchasers of Bystolic and generic equivalents ("Direct Purchaser Actions"). Dkt. No. 111. The second set of lawsuits are brought by indirect purchasers of Bystolic (together with direct purchasers, "Plaintiffs"), which include consumers, health insurers, and welfare plans ("End Payor Actions"). Dkt. No. 113. The lawsuits are brought against the manufacturers and marketers of Bystolic (the "Forest Defendants")[1] and other drug manufacturers ("Generic Defendants")[2] (collectively, "Defendants"). The Forest and Generic Defendants allegedly

---

[1] The Forest Defendants are defined as AbbVie Inc., Allergan, Inc., Allergan Sales, LLC, Allergan USA, Inc., Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., and Forest Laboratories, LLC.
[2] The Generic Defendants are defined as Hetero USA Inc., Hetero Labs Ltd., Hetero Drugs Ltd.

entered into anticompetitive settlement and license agreements that had the effect of delaying the production of generic equivalents to Bystolic; Plaintiffs allege that had such equivalents been able to enter the market earlier, the price of Bystolic would have decreased, benefitting consumers.[3] The first action filed in this district was an End Payor Action filed on July 17, 2020 by the City of Providence against the Forest Defendants. *See City of Providence v. AbbVie Inc.*, No. 20-cv-5538 (S.D.N.Y. July 17, 2020), Dkt. No. 1. Six days later, on July 23, 2020, the first Direct Purchaser action was filed as a related action under the instant case number by J M Smith Corp. against the Forest and Generic Defendants. *See* Dkt. No. 1.[4] The remaining consolidated and coordinated cases were subsequently filed as related to those actions.

Defendants argue that these cases should be transferred to the District of New Jersey principally because (1) none of the Defendants are located in this district while 11 of the 14 U.S.-based Defendants are headquartered in the District of New Jersey; (2) third parties implicated in the complaint, including generic producers that would have entered as competitors but for the allegedly improper agreements, are located in New Jersey; (3) only two of the named Plaintiffs reside in this district; and (4) "[t]he purported Generic Defendants' decision to delay was made in New Jersey and elsewhere (not New York)." Dkt. No. 80 at 9. Defendants also argue that because these cases are brought as nationwide class actions, Plaintiffs' choice of

---

Torrent Pharmaceuticals Ltd., Torrent Pharma Inc., Alkem Laboratories Ltd.; Indchemie Health Specialties Private Ltd.; Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A.; Amerigen Pharmaceuticals, Inc., Amerigen Pharmaceuticals, Ltd.; Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Watson Pharma, Inc., Watson Pharmaceuticals Inc., Actavis, Inc., Teva Pharmaceutical Industries Ltd., and Teva Pharmaceuticals USA, Inc..

[3] For a more detailed summary of the facts alleged in the complaints, see Dkt. No. 50 at 3-5.

[4] J M Smith Corp. had originally filed its complaint in the Northern District of California, *see M Smith Corp. v. AbbVie Inc.*, No. 20-cv-4581 (N.D. Cal. July 23, 2020), but it dismissed that action and filed the instant action as related after City of Providence filed its action at No. 20-cv-5538.

forum should carry less weight. For the reasons that follow, Defendants' arguments do not carry their burden to establish that a transfer is warranted.

## LEGAL STANDARD

Under Section 1404(a) of the United States Code, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute codifies the doctrine of *forum non conveniens* for the federal system and provides for "transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

To determine whether transfer is appropriate, the Court applies a two-step inquiry. First, it determines whether the action could have been brought in the proposed transferee court. Second, the Court "'balances the private and public interests,' to determine whether transfer is warranted '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" *Inventel Prods. LLC v. Penn LLC*, 2017 WL 818471, at *2 (S.D.N.Y. Feb. 28, 2017) (quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); 28 U.S.C. § 1404(a)).

These cases are brought pursuant to federal and state antitrust laws, and it is undisputed that they could have been filed instead in the District of New Jersey pursuant to 28 U.S.C. § 1331. The question presented turns on the balance of the private and public interests.

"Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine &*

3

*Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)).

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *Id*. at 114 (quoting *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Accordingly, "district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion," *id*. (collecting cases), and operate with considerable discretion, *see Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court.") (quoting *Filmline*, 865 F.2d at 520).

## DISCUSSION

The balance of relevant factors weighs against transferring venue.

### A.     Plaintiff's choice of forum

"[A] plaintiff's choice of forum is presumptively entitled to substantial deference," for "our legal system has traditionally deferred to the plaintiff's choice of forum." *Gross*, 386 F.3d at 230 (citing *Iragorri v. United Techs Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) (en banc)). Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (plaintiff's choice of forum is "entitled to substantial consideration") (citation omitted);.

Where, as here, a plaintiff has brought a class action, the plaintiff's choice of forum is accorded less weight. *See In re Warrick*, 70 F.3d at 741 n.7 ("[T]he plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); *Totilo v. Herbert*, 538 F. Supp. 2d 638, 640 (S.D.N.Y. 2008) ("Where . . . the plaintiff sues on

behalf of a putative class, the degree of deference accorded its choice is diminished"). The plaintiff's choice of forum is accorded even less weight where the putative class consists of members that "will likely be geographically dispersed throughout the United States." *In re Hanger Orthopedic Grp., Inc.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006); *cf. In re Warrick*, 70 F.3d at 741 n. 7 (giving weight to the residence of large share of the putative class members). Where a plaintiff is suing as one of many and where those many are located throughout the country, there may be reasons to suspect that the choice of forum is not based on any true reasons of convenience but is purely tactical and represents forum shopping.

However, although a plaintiff's choice of forum is given less weight in the class action context, it is not deprived of all weight. *See Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *6 (E.D.N.Y. Sept. 22, 2015). A representative plaintiff's choice is still presumed to be based on legitimate factors and thus is "entitled to some deference." *Id.*; *see Scalabrini v. PMAB, LLC*, 2020 WL 1049167, at *8 (S.D.N.Y. Mar. 3, 2020) ("Affording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum.") (quoting *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002)).

In addition, although the choice of forum made by a plaintiff that is a putative representative may be of less weight than if it were suing solely in an individual capacity, it is relevant that many of the class members reside in New York. *See In re Warrick*, 70 F.3d at 741 n.7 (observing the relevance that a "disproportionate share of the putative class members reside[d] in [the] chosen forum"); *Fairchild v. Eisai, Inc.*, 2011 WL 3438408 (D. Conn. Aug. 4, 2011) (considering residence of absent class members); *cf. Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 526 (1947) ("[W]hat forum is appropriate for such a task may require consideration of [the forum's] relations to the whole group of members and stockholders whom

plaintiff volunteers to represent as well as the nominal plaintiff himself."). A named plaintiff's decision to sue where members of his putative class are located is legitimate.

In this case, Defendants have not established that Plaintiffs' proffered reasons for bringing suit in this district are illegitimate or insignificant. Plaintiffs have averred that "many Plaintiffs reside in New York and/or have significant suit-related contacts with New York state, making litigation in this District more convenient than litigation in New Jersey and . . . weighing against transfer." Dkt. No. 103 at 21-22 (citing examples). Five of the named Plaintiffs—KPH Healthcare Service, Inc., UFC W Local 1500 Welfare Fund, York Keels, Teamsters Local 237, and Angela Maffei—reside in New York State, the latter two in this district. Defendants have not supported with any evidence the proposition that Plaintiffs have engaged in any improper forum shopping by filing suit in this district, which, as Plaintiffs point out, bears a connection to the underlying facts as the agreements being challenged were executed here. *See Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 434 (S.D.N.Y. 2018) ("Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.") (citation omitted); *cf. Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 576 (S.D.N.Y. 2015) ("[Plaintiff's] claims arose from his employment in this District, which mitigates any inference of forum shopping and entitles his choice of forum to deference."). There is no evidence, for example, that forum here was chosen with objective to achieve "perhaps justice blended with some harassment" or as part of "a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp.*, 330 U.S. at 507.

Accordingly, Plaintiffs' choice of forum weighs against transfer.

    **B.**    **Convenience of the witnesses and to the parties**

Defendants hang their hat primarily on convenience of the forum to the witnesses and to

the parties. This factor weights only slightly in Defendants' favor and is not sufficient to carry Defendants' burden to make a "strong case for transfer." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112.

Defendants have emphasized that 11 of the 14 U.S.-based Defendants are located in New Jersey, and that relevant third parties are located in New Jersey. The more relevant question, however, is the location of the witnesses and the relative convenience to the witnesses of a New Jersey forum versus a New York forum. As to this question, the facts are more evenly balanced. Defendants point to a number of witnesses who reside in New Jersey while Plaintiffs identify witnesses who reside in New York. *See* Dkt. No. 103 at 8-10. As to some witnesses, the best Defendants are able to say is that they work in New Jersey, a fact that would be substantially important but for the additional fact that New York is proximate to New Jersey and that work in New Jersey does not preclude residence in New York. Neither side lays out facts regarding the relative ease of access to a New York or New Jersey law office or court or to witnesses who reside in New Jersey. As Plaintiffs note, it is easy for a New Jersey resident to travel into New York City, and Plaintiffs have averred that witnesses in New Jersey can be deposed remotely or in whatever location is convenient to them.

It is in this sense that the proximity of New York and New Jersey is relevant. Although Defendants correctly point out that "[t]he proximity of New Jersey to New York does not preclude transfer," *Freeman v. Hoffmann-La Roche*, 2007 WL 895282, at *3 (S.D.N.Y. Mar. 21, 2007), it is assuredly also correct that the physical proximity of New York and New Jersey and the ease of transportation into New York City from Northern New Jersey—where several of the parties and third parties highlighted by Defendants are located—are relevant to the analysis and weigh against transfer. This is particularly true when one is assessing (1) the significance of the

assertion that a number of witnesses work in New Jersey with no corresponding indication of the witness' residence[5]; and (2) the relative ease of convenience of a New York forum for even a witness who lives in the State of New Jersey. *See Schwartz v. Marriott Hotel Servs.*, 186 F. Supp. 2d 245, 252 (E.D.N.Y. 2002) ("The plaintiff's choice of forum far outweighs the two factors that slightly favor transfer . . . [especially because, in part,] the forums are no further than 65 miles apart . . ."); *id*. ("Section 1404(a) was 'designed and reserved for those instances where the transfer was sought to a District Court substantially distant from the district where the action had been instituted; otherwise it is difficult to imagine that there could be real inconvenience to the parties or witnesses.'") (citation omitted); *Wellington Computer Graphics, Inc. v. Modell*, 315 F. Supp. 24, 28 (S.D.N.Y. 1970) ("In effect defendants are claiming that being forced to appear in New York City rather than Newark, New Jersey—cities twelve miles apart—so substantially inconveniences them that plaintiff should be deprived of its choice of forum. The contention is frivolous."); *cf. Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 436 (E.D.N.Y. 2012) ("In considering the convenience of the witnesses, the Court should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.") (internal quotation marks and citation omitted).

The cases Defendants cite do not support the proposition that the proximity of New York and New Jersey is irrelevant or that this case should be transferred. Each of those cases involved parties or claims (or both) with no connection to the plaintiff's chosen forum whatsoever, which is not the case here. *See Freeman,* 2007 WL 895282, at *3-4 (holding that "[t]he proximity of

---

[5] Defendants do identify a number of potential witnesses that reside in New Jersey. Dkt. No. 80 at 14-15. The Court weighs the convenience of these parties in favor of transfer, but it is not sufficient to warrant transfer, for the reasons provided herein.

New Jersey to New York does not preclude transfer" and transferring the case where no witness for the plaintiff was located in its chosen forum); *Inventel Prods.*, 2017 WL 818471, at *4 (reciting that "[t]he proximity of New Jersey to New York does not preclude transfer," and transferring the case where "only one of the sixteen identified potential witnesses is located in [the plaintiff's] chosen forum" while "[d]efendants and all of their witnesses are located in the proposed transferee forum"); *Avemco Ins. Co. v. GSF Holding Corp.*, 1997 WL 566149, at *7 (S.D.N.Y. Sept. 11, 1997) (transferring where the plaintiff's choice of forum was neither its home state nor the place out of which the cause of action arose); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 209 (S.D.N.Y. 1989) (transferring a case that "has no significant connection with this forum, while it has substantial connection with New Jersey").

### C.     The remaining factors

The remaining factors are either neutral or cut against transfer.

Although a majority of documents may be housed in New Jersey, "[t]he location of documents and records is not a compelling consideration when records are easily portable." *Sec. & Exch. Comm'n v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 227 (S.D.N.Y. 2015) (collecting cases); *see Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007), *aff'd sub nom N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). There has been no showing that the relevant documents cannot be easily obtained and shared electronically.

The locus of operative facts is debatable. Defendants contend that Plaintiffs' theory of anticompetitive conduct requires an evaluation of "the competitive constraints posed by . . . other hypertension treatments, many of which are supplied by . . . third parties located in New Jersey." Dkt. No. 8 at 20-21. Moreover, Defendants argue, the Forest Defendants relocated from New

9

York to New Jersey in 2014, and "almost all relevant conduct—including the Bystolic sales and marketing activities from which Plaintiffs' claims arise—occurred in the District of New Jersey." *Id.* at 21. Plaintiffs allege that the anticompetitive agreements were executed in this district.[6] The intent, effect, and consequences of those agreements are central issues in this case. The locus of operative fact is therefore neutral.

The availability of process to compel the attendance of unwilling witnesses is neutral. Defendants have not identified any witness who is not within the jurisdiction of this Court but is within the jurisdiction of the District of New Jersey. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

The parties agree that the relative means of the parties is a neutral factor in this case.

## CONCLUSION

Defendants' motion to transfer venue is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 79.

SO ORDERED.

Dated: January 15, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge

---

[6] The parties dispute where the Court should understand the agreements to have been negotiated. Plaintiffs contend that they were negotiated in New York, where the Forest Defendants had its headquarters at the time. Defendants point out that "[a]most all of the Generic Defendants have New Jersey based entities, and several have declared that they negotiated the at-issue agreements from their New Jersey offices." Dkt. No. 144 at 4. Defendants do not dispute that the agreements were executed in New York. These arguments are at least in equipoise, if not favoring Plaintiff's position.