**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Bystolic Antitrust Litigation* | Case No. 20-cv-05735-LJL |
| This Document Relates To: All Actions | |

**[PROPOSED] ORDER REGARDING THE PROTOCOL FOR**
**PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND**
**HARD COPY DOCUMENTS**

WHEREAS, the above consolidated action, brought by the Direct Purchaser Class, End-Payor Class, and Retailer Plaintiffs (collectively, "Plaintiffs") against Defendants AbbVie, Inc., Allergan, Inc., Allergan Sales, LLC, Allergan USA, Inc., Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories, LLC, Forest Laboratories Ireland Ltd., Watson Pharmaceuticals Inc., Actavis, Inc., Hetero USA Inc., Hetero Labs Ltd., Hetero Drugs Ltd., Torrent Pharma Inc., Ascend Laboratories, LLC, Alkem Laboratories Ltd., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA (n/k/a Glenmark Pharmaceuticals Inc.), Glenmark Generics Ltd. (d/b/a Glenmark Pharmaceuticals Ltd.), ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.), Watson Laboratories, Inc. (CT), Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), Watson Laboratories, Inc. (NY) (later known as Actavis Laboratories NY, Inc.), Teva Pharmaceutical Industries Ltd., and Teva Pharmaceuticals USA, Inc. and each of their respective predecessor and successor entities, officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), employees, agents, attorneys, representatives, independent contractors, and

other Persons acting or authorized to act on their behalf (collectively, "Defendants" and collectively with Plaintiffs "the Parties") is pending before this Court;

WHEREAS, the Parties seek to facilitate the exchange of Documents in this action, pursuant to this Court's authority and with the consent of the Parties;

WHEREAS, the Parties and the Court recognize that this Protocol is based on facts and circumstances as they are currently known to each Party, that the discovery process is iterative, and that additions and modifications to this Protocol may become necessary as more information becomes known to the Parties; and

WHEREAS, the timelines set forth in this Order and the specifications provided in Exhibit A may be modified by written stipulation of the Parties without further Order of the Court:

**IT IS HEREBY ORDERED:**

## 1.   DEFINITIONS

1.1    "Action" means *In re Bystolic Antitrust Litigation*, Case No. 20-cv-05735-LJL (S.D.N.Y.) and all cases coordinated or consolidated with that matter.

1.2    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure and in Local Rule 26.3(c)(2). For avoidance of doubt, the term "Document" shall include Hard Copy Documents and ESI.  A draft or non-identical copy is a separate Document within the meaning of this term.

1.3    "Document Family" means any set of documents that were stored or sent together. Examples of "Document Families" include but are not limited to (a) an email and all attachments thereto, or (b) a document with embedded files.

1.4    "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1.5     "Extracted Text" means the text extracted from a Document, and includes all header, footer, and document body information.

1.6     "Hard Copy Document" means a Document that was maintained in paper or other tangible form.

1.7     "Load File" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files, as well as the corresponding Extracted Text or OCR text files, and containing agreed-upon extracted or user-created Metadata, as well as information indicating unitization (*i.e.*, document breaks and document relationships such as those between an email and its attachments). A Load File is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a Load File for all produced Documents in accordance with the specifications provided in Exhibit A.

1.8     "Metadata" means information or data about data, and includes, without limitation: (i) all other text and information other than Extracted Text, (ii) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; (iii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise accessed or manipulated by a user of such system; and/or (iv) structured information about ESI that is created by the file system or application, embedded in the ESI, and sometimes modified through ordinary business use.

1.9     "Native Format" means the format of ESI in the application in which such ESI was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

1.10    "OCR" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

1.11    "Party" or "Parties" means, individually or collectively, all Plaintiffs and Defendants, as well as any later added plaintiffs and defendants.

1.12    "Producing Party" means any Party or third party that produces Documents in this Action.

1.13    "Requesting Party" means any Party who serves a discovery request or subpoena in this Action.

1.14    "Responsive Document"

- **Defendants' Proposal for Paragraph 1.14:** "Responsive Document" means any Document or Document Family that is responsive to any discovery request or subpoena served on a Producing Party in this Action subject to the Producing Party's responses and objections to any discovery request or subpoena (to the agreed upon extent to which those responses and objections limit the scope of production or to the extent the Court orders that the scope of production may be so limited), agreement of the Parties, and any limitations set forth in the Local Rules, the Federal Rules of Civil Procedure, or Court order.

- **Plaintiffs' Proposal for Paragraph 1.14:** "Responsive Document" means any Document or Document Family that is responsive to any discovery request or subpoena served on a Producing Party in this Action subject to the Producing Party's responses and objections to any discovery request or subpoena (to the agreed upon extent to which those responses and objections limit the scope of

production or to the extent the Court orders that the scope of production may be so limited), agreement of the Parties, and any limitations set forth in the Local Rules, the Federal Rules of Civil Procedure, or Court order.

1.15    "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as SAP, JD Edwards, Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

1.16    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of Hard Copy Documents. For files produced as TIFF images, each page of a document shall be electronically saved as an image file, as outlined in Exhibit A.

1.17    "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program design to interpret the data, including but not limited to, word processing documents, slide presentations, email, PDFs, spreadsheets, webpages, image files, and others of similar variable format.

## 2.    SCOPE

2.1    The procedures and protocols set forth in this Order shall govern the production format of Documents in this Action, unless the Parties agree in writing to change them, pursuant to Paragraph 6, or the Court changes them at the request of a Party. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action. The discovery requests, objections thereto, agreements of the Parties, and any Court orders shall govern the scope of Documents to be produced. Nothing in this Order is intended to be

inconsistent with or to exceed a Party's obligations under the Local Rules, the Federal Rules of Civil Procedure, or applicable state and federal statutes.

2.2     As outlined in Federal Rule of Civil Procedure 26(b)(2)(B), a Producing Party need not ordinarily provide Documents from sources that it identifies as not reasonably accessible because of undue burden or cost. If a Producing Party objects to production of particular Documents as not being reasonably accessible because of undue burden or cost, such Party shall describe the nature of the objection and burden with reasonable particularity in the Party's Responses and Objections to the Requesting Party's Request for Production or, if the issue is unknown at the time of the Responses and Objections, via letter within seven (7) days of the Producing Party learning of the issue. The Parties shall promptly meet and confer in good faith thereafter in an attempt to resolve the issue concerning accessibility and, if no resolution is reached, the Requesting Party may seek appropriate relief from the Court (though nothing in this Protocol shifts or alters the burdens set forth in the Federal Rules of Civil Procedure in connection with the production of documents from sources a party identifies as not reasonably accessible because of undue burden or cost or a motion to compel discovery or for a protective order concerning such documents). For the avoidance of doubt, the Parties need not object to production of information from those sources of ESI identified in Paragraph 3.12.

2.3     The production specifications in this Order and Exhibit A hereto apply to Documents that are produced in this Action, except that, to the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may, to the extent they currently exist in the format of the prior production, be produced in the same format in which they previously were produced or prepared for production, along with any produced metadata and accompanying privilege logs.

The Producing Party shall, to the extent reasonably possible, honor a reasonable written request made in good faith for reproduction of a Document with the specifications set forth in this Order and Exhibit A hereto and shall produce the Document in accordance with the production specifications in this Order and Exhibit A hereto within fourteen (14) days.

2.4     Generally, the costs of producing Documents pursuant to this Order shall be borne by each Producing Party. Any Producing Party who produces Documents in TIFF format (to the extent permitted under this Protocol) shall do so at their sole cost and expense, and such Producing Party hereby waives the right to seek reimbursement or taxing of such TIFF'ing costs pursuant to 28 U.S.C. § 1920, or any other state or federal cost recovery provision.

2.5     The Parties do not waive any objections to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of any document requests, or any other objection under the Local Rules or Federal Rules of Civil Procedure. Nothing in this Stipulated Order shall be interpreted to require the disclosure of information that is otherwise not discoverable under the Local Rules, Federal Rules of Civil Procedure, or applicable state and federal statutes.

2.6     By entering this Order, a Party is not giving up its right to review its Documents for privilege or any other reason (including to identify non-responsive documents), and the existence of this Order cannot be used to compel a Party to produce documents without review.

2.7     <u>Withholding or redacting privileged members of a Document Family:</u>

(a)     If a Party claims that a member of a document family (*e.g.*, attachments to a responsive cover email, a cover email that attaches a responsive attachment, or documents attached to the same email as a responsive document) that contains a responsive document is

privileged, it shall be redacted or, if not possible to redact, produced as a Bates-labeled slipsheet in place of the attachment, along with all non-privileged Metadata for the attachment as specified in Exhibit A. The slipsheet for each withheld attachment will state "Family Member Withheld as Privileged" and separately logged for privilege. The Parties agree to meet and confer in good faith to attempt to resolve any disputes arising under this provision.

(b)     In the event that a Party initially withholds a Document that forms a part of a Document Family, and that Document is later produced either by decision of the Party or by order of the Court, the Party shall either produce that Document with the Bates number previously given to the slipsheet for that document (and if the Document is more than one page long, each page shall have the same Bates number with some kind of suffix added to the end), or reproduce the Document Family with a new Bates sequence along with cross-reference Metadata fields identifying the original production Bates information specified in Exhibit A.

(c)     Where possible, the Producing Party shall provide updated Metadata associating the previously withheld Document with its Document Family.

2.8     The Parties shall meet and confer in good faith in an effort to resolve any disputes that may arise under this Order, prior to seeking assistance from the Court in accordance with the Court's Individual Practices in Civil Cases and in accordance with the Local Rules.

## 3.     PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

3.1     <u>Specifications</u>:     The Parties shall produce Documents according to the specifications provided in this Order and Exhibit A hereto. A Party must preserve ESI and take reasonable steps to ensure that the dates, times, and file metadata are the same as the original source data and are not the byproduct of data collection or data processing. The Parties agree to meet and confer in good faith if any of the technological specifications set forth in this Order or

Exhibit A result in unforeseen technological issues. The Parties agree not to degrade the searchability of Documents as part of the Document production process.

    3.2    <u>De-Duplication</u>:  The Parties shall use reasonable, good faith efforts to avoid the production of duplicate Documents. The Parties agree that production of Documents globally de-duplicated to remove exact duplicate Documents shall constitute production of Documents as maintained in the ordinary course of business provided that a single copy of the responsive Document is produced. Near-duplicate Documents shall be produced rather than removed. A Party may not eliminate duplicate Documents by manual review except by express agreement with the Requesting Party on how such a process will be performed. Exact duplicates shall be defined as Documents with exact MD5 or SHA-1 hash values. Where any such Documents have attachments, hash values must be identical for both the Document-plus-attachment(s) (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone. For email, the MD5 hash values shall be calculated at the parent level and include the full body of any and all attachments and shall also include the "TO," "FROM," "CC," "BCC," and "Date Sent" values in that calculation (and the "Date Sent" value shall be populated for all emails, including emails received by Custodians). When the Producing Party is globally de-duplicating across custodians, the Producing Party shall populate a field of Metadata that identifies each custodian who had a copy of the produced Document (the "Custodian – All" field) in addition to a separate field of data identifying the custodian whose Document is produced.  Nothing in this agreement will be read to prevent a Producing Party from reducing the volume of entirely duplicative content within email threads by using "email thread suppression." As used herein, email thread suppression means reducing duplicative production of email threads by (1) producing the most recent email containing the thread of all emails, as well as the attachments to that particular email, and (2) excluding emails

constituting exact duplicates of emails within the produced string. However, if an email thread splits or individual emails within the thread have different attachments, Metadata, or other information, then a Producing Party must produce all the responsive and non-privileged individual emails (as well as all attachments thereto, if any) required to fully produce the related email threads. For the avoidance of doubt, any email with attachments not removed due to de-duplication described above shall be produced separately, with those attachments.

- **Defendants' Proposal for Remainder of Paragraph 3.2:** For email threads that are withheld in their entirety for privilege and suppressed pursuant to this subdivision, the Parties will review any emails that were de-duplicated through thread suppression and produce a privilege log entry for such documents.

- **Plaintiffs' Proposal for Remainder of Paragraph 3.2:** Each email withheld as privileged must be separately logged, not just the last-in-time email in the email thread or a single log entry covering an email thread containing multiple emails.

3.3    Documents To Be Produced Natively:

(a)

- **Plaintiffs' Proposal for Paragraph 3.3(a):** A Producing Party shall produce Microsoft Word, Microsoft Excel and other spreadsheet files, Microsoft PowerPoint and other presentation files, including comma or tab delimited text files, and audio and video files in Native Format pursuant to the specifications in Exhibit A, except where such files are redacted in accordance with this Order. Any files not easily converted to or reviewable in image format, *i.e.*, that reasonably require viewing in their native format for a full understanding of

their content, must be produced in their native file format.  The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its Native Format, is governed by Paragraph 3.4.  The production Load Files shall contain a link to the produced Native Format files as specified in the "Native Link" Metadata field described in Exhibit A.  Each electronic file produced in Native Format shall be assigned a unique Bates number as set forth in Paragraph 3.6, and for each a single page placeholder TIFF image branded with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT," and the corresponding confidentiality designation under the Protective Order will be produced.  No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced Native Format Document without ensuring that either the corresponding placeholder slipsheet is attached to the Document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document.

- **Defendants' Proposal for Paragraph 3.3(a):**  A Producing Party shall produce ~~Microsoft Word,~~ Microsoft Excel and other spreadsheet files, Microsoft PowerPoint and other presentation files, including comma or tab delimited text files, and audio and video files in Native Format pursuant to the specifications in Exhibit A, except where such files are redacted in accordance with this Order.  Any files not easily converted to or reviewable in image format, *i.e.*, that reasonably require viewing in their native format for a full

understanding of their content, must be produced in their native file format.  The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its Native Format, is governed by Paragraph 3.4.  The production Load Files shall contain a link to the produced Native Format files as specified in the "Native Link" Metadata field described in Exhibit A.  Each electronic file produced in Native Format shall be assigned a unique Bates number as set forth in Paragraph 3.6, and for each a single page placeholder TIFF image branded with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT," and the corresponding confidentiality designation under the Protective Order will be produced.  No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced Native Format Document without ensuring that either the corresponding placeholder slipsheet is attached to the Document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document.

(b)      Documents produced in Native Format shall be produced with all required Metadata contained in or associated with that file to the extent technologically possible and consistent with Exhibit A. Metadata and Extracted Text taken from natively produced files (and for non-natively produced files) will be provided at a Document level. There will be one text file per Document, using the same name as the beginning Bates number of the Document. The extracted text file for a Document will reside in a folder titled "TEXT." The text file associated

with any redacted Document will exclude redacted text (*i.e.*, the Producing Party will OCR the redacted image and replace the original extracted text).

(c)     If production in Native Format is helpful to decipher the meaning, context, or content of a Document produced only in TIFF format, the Producing Party shall honor a reasonable written request made in good faith and shall produce the Document in Native Format within fourteen (14) days, unless such production would reveal material redacted in accordance with Paragraph 3.8.  Likewise, color copies of Documents produced in grayscale or in black and white shall be produced upon request within fourteen (14) days when color is helpful to fully understand the Document or when the request is otherwise reasonable

(d)     Where the Document produced only in TIFF format that is requested in Native Format contains redactions, the Producing Party will, if requested, produce a version of the Native Document containing redactions. If the Producing Party is unable to do so, the Parties will meet and confer to resolve the issue or raise it with the Court, as necessary.

(e)     For container files such as zip files, PST files, or msg files, the contents will be extracted and individually produced in the production where responsive.  Logos, etc., in email footers do not need to be produced as independent documents.

3.4     <u>Structured Data</u>:  To the extent a response to discovery requires production of Structured Data, in advance of producing such Structured Data, the Parties agree to meet and confer regarding the content and format of the production. If available, the Producing Party will produce a data dictionary for the fields provided and will answer reasonable requests to explain any codes or abbreviations contained in the Structured Data through a meet-and-confer process. The Parties also agree to meet and confer regarding the location of requested Structured Data, and, to the extent such Structured Data is responsive and reasonably accessible, it shall be identified

and located through search filters or through a targeted go-get approach, as appropriate.  (The Parties reserve all rights to challenge any claim that requested data or documents are not reasonably accessible.)

3.5     Unitization:  If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed in the ordinary course of business when collected by the Producing Party. For example, distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records. Documents stored in a binder, folder, or similar container shall be produced in the same order as they appear therein. Similarly, pages that are stapled or clipped shall be produced as a single Document and not multiple one-page Documents.

3.6     Bates Numbers and Confidentiality Designations for TIFF Images:  Each page of a Document produced in TIFF file format shall have a Bates number electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document. Bates numbers should not be included in the extracted text of Documents. The Bates number for each Document shall be created so as to identify the Producing Party. To that end, each Party's Bates numbers shall have unique identifying prefixes. If a Document is produced subject to a claim that it is Confidential or Highly Confidential under the Protective Order, ECF No. 148, or any subsequent relevant orders or stipulations, each page of the Document shall have the appropriate confidentiality designation electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document.

3.7     Metadata Fields and Processing:  The Parties shall not remove any non-privileged existing Metadata from any Document prior to its production and shall produce Documents with,

at least, all agreed upon Metadata fields identified in Exhibit A to the extent reasonably available. However, the Parties are not obligated to populate manually any of the fields in Exhibit A, with the exception of the following, which must always be populated: (a) Prod Bates Beg, (b) Prod Bates End, (c) Custodian or Source, (d) Page Count, (e) Production Volume, (f) Confidentiality, (g) Custodian – All, (h) DocType, (i) Redactions, and (j) Technical Issues. Additionally, the Parties must populate the following fields in Exhibit A if applicable: (a) Prod Bates Beg Attach, (b) Prod Bates End Attach, (c) MD5 or SHA-1 Hash Value, and (d) Custodian – All (if Documents are being de-duped across custodians and a duplicate Document exists). Metadata identified in Exhibit A shall be provided in a Concordance format delimited file as outlined in Exhibit A. With the exception of the fields which the parties have agreed to manually populate as noted above, nothing herein shall require a Producing Party to create or produce Metadata that does not exist in the data as kept in the ordinary course of business or is not reasonably or technically accessible. Unless otherwise specified, by producing Metadata, the Producing Party affirms that such Metadata came from its records, with the exception of the vendor-manually populated fields outlined above.

    3.8    <u>Redacted Documents</u>:

    (a)

- **Defendants' Proposal for Paragraph 3.8(a):** To the extent that a responsive document contains privileged content or non-responsive Highly Confidential material (as defined in Paragraph 3 of the Protective Order, ECF No. 148, governing this Action), the Producing Party may produce that Document in redacted form. Any redactions shall be clearly indicated on the face of the Document, and each page of the Document from which information is redacted shall bear a designation that it has been redacted. The designation shall make

clear the reason for the redaction by stating "Redacted – Privilege" or "Redacted – Highly Confidential Non-Responsive."   Where a Document contains privileged content and/or non-responsive Highly Confidential Material that requires redaction, and responsive and non-privileged information, the Producing Party shall redact the privileged content and/or non-responsive Highly Confidential material and produce the remainder of the document as unredacted.  Any redactions for non-responsive Highly Confidential material must be no more extensive than necessary to protect the non-responsive Highly Confidential Material from disclosure.  The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this Paragraph.  The production of a privileged document in a redacted form does not affect the Producing Party's obligation to properly document the assertion of privilege on a privilege log.

- **Plaintiffs' Proposal for Paragraph 3.8(a):**  "To the extent that a responsive document contains privileged content ~~or non-responsive Highly Confidential material (as defined in Paragraph 3 of the Protective Order, ECF No. 148, governing this Action)~~, the Producing Party may produce that Document in redacted form.  Any redactions shall be clearly indicated on the face of the Document, and each page of the Document from which information is redacted shall bear a designation that it has been redacted.  The designation shall make clear the reason for the redaction by stating "Redacted – Privilege" ~~or "Redacted — Highly Confidential Non-Responsive~~.   Where a Document contains privileged content ~~and/or non-responsive Highly Confidential Material~~

that requires redaction, and responsive and non-privileged information, the Producing Party shall redact the privileged content ~~and/or non responsive Highly Confidential material~~ and produce the remainder of the document as unredacted. ~~Any redactions for non-responsive Highly Confidential material must be no more extensive than necessary to protect the non-responsive Highly Confidential Material from disclosure.~~ The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this Paragraph. The production of a privileged document in a redacted form does not affect the Producing Party's obligation to properly document the assertion of privilege on a privilege log."

(b)     In the event that the Producing Party asserts privilege over a Document requires and redacts the contents it claims are privileged, the Parties agree that full text may be replaced with OCR text that excludes the redacted material, and Metadata fields may be redacted if they contain information that may be redacted pursuant to this Paragraph 3.8.

(c)     When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable, should identify the reason for the redaction in the manner identified in Paragraph 3.8(a), and the "Redactions" Metadata field should be populated to indicate the Document contains redactions.

(d)     If a Document to be produced in Native Format requires redaction then it should be produced by producing the Document either in redacted TIFF format, or, in the case of Microsoft Excel documents, in redacted near Native Format. If the Producing Party is unable produce Microsoft Excel documents in redacted near Native Format, the Parties will meet and confer to resolve the issue or raise it with the Court, as necessary. The native file should show the

word "redacted" where applicable, should identify the reason for the redaction in the manner identified in Paragraph 3.8(a), and a production load file field should be populated to indicate the native file contains a redaction.

(e)      A Party claiming privilege protection for a portion of a Document Family (*e.g.*, an attachment or part of an attachment to an email) must support its claim of privilege for each Document in the family that is withheld or redacted.

3.9

- **Defendants' Proposal for Paragraph 3.9:**  <u>Non-Responsive Attachments:</u> Fully non-responsive attachments to responsive parent documents need not be produced.  For such fully non-responsive attachments, a placeholder slipsheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship.  The Parties will produce the existing Metadata provided for in Exhibit A for a non-responsive attachment for which a "Withheld Non-Responsive" slip-sheet is produced.  The Parties reserve the right to request a limited number of such non-responsive attachments, and the Parties agree to meet and confer in good faith regarding any request for such non-responsive attachments or to resolve any dispute arising under this provision.  For avoidance of doubt, the Parties would still be required to produce the cover email for responsive attachments even if the cover email itself is non-responsive.

- **Plaintiffs' Proposal for Paragraph 3.9:**  <u>Production of Complete Document Families.</u>  If any portion of a Document Family is responsive (*e.g.*, the cover email or the email attachment), the Producing Party shall produce the entire

Document Family (*e.g.*, an email with all attachments thereto) except to the extent any portion of the Document Family is redacted or withheld on the basis of a privilege claim.

3.10    <u>Technical Processing Problems</u>:  If a member of a Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected Document, technical issue), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates numbered slipsheet that states "Technical issue—file cannot be processed" (or similar language). The associated Metadata for the file with the technical problem shall be produced if technically possible and reasonable. The Producing Party shall also provide a Metadata field entitled "Technical Issue" and populate it for every document with a technical problem.

3.11    <u>Time</u>:  When processing Documents, UTC should be selected as the time zone. When a Metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy hh:mm:ss. A Party must preserve ESI and take reasonable steps to ensure that the dates, times, and file metadata are the same as the original source data and are not the byproduct of data collection or data processing.

3.12    <u>Cost Containment</u>:  To help contain costs, the Parties agree that there is no need to preserve or collect Documents from the following sources, which are deemed to not likely contain relevant information and to be not reasonably accessible:

a)  Voice mails;

b)  mobile devices;

c)  text and instant messages;

d)  personal computers and personal e-mail not regularly used for business;

e)   social media sites not regularly used for business;

f)   random access memory (RAM) or other ephemeral data;

g)   on-line access data such as temporary Internet files, histories, caches, cookies, etc.;

h)   "deleted," "slack," "fragmented," or "unallocated" data on hard drives; and

i)   back-up tapes and other archival media that is understood to be duplicative of data that is more accessible elsewhere and that is being preserved. This includes, but is not limited to, backup media created as part of a disaster recovery system.

3.13   <u>Processing Available Data</u>:   The Producing Party shall collect and process Documents using methods that preserve available data. The Producing Party shall use the following specifications (to the extent reasonably feasible) when converting Documents permitted to be produced in TIFF format from Native Format into TIFF image files prior to production:  (a) all tracked changes and comments shall be maintained as last saved so that all changes to a Document are evident; (b) all word processing and slideshow Documents shall either include and show field codes for auto-date and auto-time fields or the vendor shall force off auto date when processing; (c) author comments shall remain and be made visible; (d) presenter notes shall be made visible; and (e) any other hidden text shall be expanded, extracted, and rendered in the TIFF file, including hidden worksheets, hidden columns, hidden rows, speakers notes, tracked changes, or comments.

## 4.   ASSERTIONS OF PRIVILEGE

4.1   Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the Parties hereby agree that a Producing Party may redact or, to the extent necessary, withhold a document

if it is protected by attorney-client privilege, joint-defense privilege, common-interest privilege, or the work-product doctrine, though the Requesting Party reserves all right to challenge any privilege assertion.

    4.2    <u>General Requirements</u>:

    (a)    Privilege logs will be produced in Excel format and in conformity with the Local and Federal Rules, and "enable other parties to assess the claim" as required in Fed. R. Civ. P 26(b)(5)(A)(ii). The Parties shall not use "categorical" privilege logs.

    (b)    The Parties shall not be required to log attorney-client privileged or joint defense privileged communications or work-product materials relating to this lawsuit that were created after July 9, 2020.[2] However, all privileged or work-product material must be preserved in the event of a later dispute. Notwithstanding the foregoing, the Parties will continue to meet and confer over what, if any, obligation a Party will have to log attorney-client, joint defense, common interest, or work-product privileged materials relating to defending or responding to the FTC investigation that were created on or after the date the Party received a Civil Investigative Demand from the FTC.

    (c)    To the extent a response to discovery requires a Party to provide a production set from a prior litigation or government investigation, the privilege logs from those proceedings/litigations will be sufficient to inform the Requesting Party of the Documents that were withheld. The privilege logs from those proceedings/litigations will be produced in the same file format as produced in those proceedings/litigations. The Producing Party does not need to re-log these Documents on another privilege log.

---

[2] July 9, 2020 is the date of the earliest filed complaint.

4.3     <u>Information Provided</u>:

(a)     A Producing Party may generate a privilege log in Excel format by exporting objective metadata, which shall include the following unless a particular field is unavailable:  (i) a unique privilege log identifier or, in the case of redacted documents or for withheld documents where a slip sheet was produced, the Bates number assigned to such document or slip sheet; (ii) document type (*e.g.*, email, attachment, standalone document); (iii) the custodian/custodial file in which the document was maintained, the identity of persons who sent, or authored the document, and the addressees, recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories); (iv) date sent, received, and created; and (v) file name and email subject line. For each entry, the privilege log must include the type or nature of the privilege asserted (*i.e.*, attorney-client privilege, joint-defense privilege, common-interest privilege, or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified); and an indication of whether the document has been redacted and produced or withheld in its entirety.

(b)     Each email attachment over which privilege is claimed must also be separately logged.

(c)     If not readily apparent from the available metadata, a Producing Party shall include a description of the subject matter of the information contained in the document that, without revealing information itself privileged or protected, is sufficiently detailed to enable the Receiving Party to understand the subject matter of the document and the basis of the claim of privilege or immunity.

(d)      A Producing Party shall list in each entry all attorneys that arguably trigger privilege including specific individual attorney names accompanied by an asterisk.  Privilege logs shall be accompanied by a list of counsel identified in the log and the name of the law firm or other organization with which they were employed or affiliated.

(e)      Each subsequent log's entries shall begin with the next document entry number following the prior served log.  When an entry is subsequently removed from a log, the entry shall remain on subsequent logs with a notation "Produced Entirely" or "Produced Redacted."

4.4      <u>Requests for Additional Information</u>:  After the receipt of a privilege log, if a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log are inappropriately being withheld and should be produced, then it shall raise the issue with the Producing Party in writing with sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within fourteen (14) days, the Producing Party shall respond in writing. If the response does not satisfy the Requesting Party, then the Parties shall meet and confer within seven (7) days of the Producing Party's response and if the dispute as to the privileged nature of the materials cannot be resolved, then the Requesting Party may seek relief from the Court as to the privilege issues raised with the Producing Party.

**4.5**      <u>**Timing**</u>**:**

- **Defendants' Proposal for Paragraph 4.5:**  Omitted OR

   Privilege logs shall be produced within forty five (45) days of the date on which the Parties certify substantial completion of document production.  For subsequent productions, privilege logs must be provided within thirty (30) days of the date on which the corresponding productions are made.

- **Plaintiffs' Proposal for Paragraph 4.5:**  Privilege logs shall be produced within twenty-one (21) days of the corresponding production.

5. **SEARCH METHODOLOGY**

5.1    <u>Protocol for Agreeing on Custodians and Non-Custodial Sources</u>:  Seven (7) days after service of the Producing Party's responses and objections to requests for production, the Producing Party shall identify its proposed individual custodians (including their title) and non-individual custodians, *e.g.*, departmental custodians. At that time, the Producing Party shall provide reasonably accessible organizational charts to the extent they exist in the normal course of business. Or, if such organization charts are not available, the Producing Party will disclose each custodian's title and the departments within its organization in which the proposed individual custodians worked at the time relevant to the requests for production. Thereafter, the Parties will meet and confer within fourteen (14) days to agree as to the individual custodians ("Agreed Individual Custodians") and non-individual custodians. If a Party has identified responsive Documents outside of those in the files of Agreed Individual Custodians, that are not also independently identified via searches of the files of Agreed Individual Custodians, that Party must still produce the responsive Documents. The Parties shall search the relevant files of the Agreed Individual Custodians and non-custodial sources pursuant to the procedures set out herein. However, if a party wishes to rely on a non-public Document that comes from an individual custodian's files that has not otherwise been produced from non-individual custodial files and that individual is not an Agreed Individual Custodian, the Party must identify that individual custodian and search and produce Documents from that individual. If the Parties are unable to reach agreement on the Agreed Individual Custodians and non-individual custodians within fourteen

(14) days of the meet and confer, the Parties may bring to the Court any dispute concerning the identification of appropriate individual custodians and non-custodial sources.

      5.2    <u>Protocol for Agreeing on Use of Search Filters</u>:  Twenty-one (21) days after service of the Producing Party's responses and objections to requests for production, the Producing Party shall identify proposed search terms and date ranges to identify Documents potentially responsive to those requests. Thereafter the Parties will meet and confer within fourteen (14) days to agree as to the keyword search terms and date ranges.  During the meet-and-confer process, the Requesting Party may propose to Producing Parties search terms that they believe in good faith will reasonably identify responsive documents without unreasonably identifying non-responsive and/or irrelevant documents.  Either Party may bring to the Court any dispute concerning the same if the Parties are unable to reach agreement on keyword search terms and/or date ranges within fourteen (14) days of the meet and confer. Notwithstanding the foregoing, to the extent any Party otherwise identifies or knows of responsive Documents not hit upon by keyword searches, all such non-privileged Documents must be produced, subject to any agreements reached regarding the Parties' objections to discovery requests. The meet and confer process regarding search filters will occur on the same schedule as the meet and confer process regarding custodians.

      5.3    <u>Use of Predictive Coding:</u>  Before any Party begins using Predictive Coding through technology assisted review ("TAR") as a means of identifying responsive and/or relevant documents, such Party shall advise the Requesting Party of its intention, whereupon the Requesting Party and the Party that intends to use Predictive Coding will meet and confer regarding the use of Predictive Coding.  The Parties reserve all rights to challenge or object to the use of TAR.

      5.4    <u>Additional Search Terms, Custodians, and Non-Custodial Sources.</u>  A Party may propose additional custodians, non-custodial sources, or search terms be used to identify

responsive Documents, if it provides a reasonable basis to believe that additional custodians or search terms will lead to the discovery of responsive material. The Producing Party, however, shall have no obligation to search any additional custodian's ESI without agreement or Order of the Court.  The Parties agree to meet and confer in good faith concerning any such requests.

**6.      VARIANCE**

The timelines (date requirements) set forth herein and the specifications provided in Exhibit A may be varied by agreement of the Parties in writing without order of the Court.  Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure and the Local Rules.  Court approval shall be required for modifications to this Protocol other than modifications of the required timelines included herein or the specifications provided in Exhibit A.

**7.      CONFIDENTIALITY**

Documents shall be subject to the terms of the Protective Order entered by the Court, ECF No. 148, as well as Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.

**8.      AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until that Party has met and conferred in good faith with all Parties involved in the dispute.

Dated: February 16, 2021

/s/ J. Mark Gidley
J. Mark Gidley
Peter J. Carney (pro hac vice)
Noah A. Brumfield (pro hac vice)
Eric Grannon (pro hac vice pending)
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005-38007
Tel: (202)-626-3600
Fax: (212)-354-8113
mgidley@whitecase.com
pcarney@whitecase.com
nbrumfield@whitecase.com
egrannon@whitecase.com

*Counsel for AbbVie, Inc., Allergan Inc., Allergan Sales LLC, Allergan USA, Inc. Forest Laboratories Inc., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Watson Pharmaceuticals Inc. (later known as Actavis, Inc.)*

/s/ Devora W. Allon
Devora W. Allon. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-5697
Fax: (212)-446-6460
devora.allon@kirkland.com

Jay P. Lefkowitz. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-4970
Fax: (212)-446-4900
lefkowitz@kirkland.com

*Counsel for Torrent Pharma, Inc.*

/s/ Christopher T. Holding
Christopher T. Holding (pro hac vice)
Sarah K. Frederick (pro hac vice)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: (617)-570-1753
Fax: (617)-523-1231
sfrederick@goodwinlaw.com
cholding@goodwinlaw.com

*Counsel for Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.), Watson Laboratories, Inc. (NY) (later known as Actavis Laboratories NY, Inc.), Watson Laboratories, Inc., (CT), Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc.*

/s/ Teresa Bonder
Natalie Christine Clayton
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212)-210-9573
Fax: (212)-922-3845
natalie.clayton@alston.com

Teresa T. Bonder (pro hac vice)
**ALSTON & BIRD LLP**
560 Mission Street, Ste. 2100
San Francisco, CA 94105
Tel: (415)-243-1000
Fax: (415)-243-1001
teresa.bonder@alston.com

/s/ Ahmed M.T. Riaz
Ahmed M.T. Riaz
**SCHIFF HARDIN LLP**
1185 Avenue of the Americas
Suite 3000
New York, NY 10036
(212)-753-5000
ariaz@schiffhardin.com

Suzanne L. Wahl (pro hac vice)
**SCHIFF HARDIN LLP**
350 S. Main St., Suite 210
Ann Arbor, MI 48104
(734) -222-1500
swahl@schiffhardin.com

*Counsel for Indchemie Health Specialties Private
Ltd., Alkem Laboratories Ltd., Ascend Laboratories
LLC*

/s/ Elyse D. Echtman
Elyse D. Echtman
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY  10019-6142
Tel: (212)-506-5000
Fax: (212)-506-5151
eechtman@orrick.com

John "Jay" Jurata, Jr. (to be admitted *pro hac vice*)
James Tierney (to be admitted *pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Tel: (202)-339 8400
Fax: (202)-339 8500
jjurata@orrick.com
jtierney@orrick.com

*Counsel for Defendant ANI Pharmaceuticals, Inc.*

Matthew D. Kent (pro hac vice)
Andrew Hatchett (pro hac vice)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, GA 30309
Tel: (404)-881-7000
Fax: (404)-881-7777
matthew.kent@alston.com
andrew.hatchett@alston.com

*Counsel for Glenmark Generics Inc.,
USA (n/k/a Glenmark Pharmaceuticals
Inc., USA), Glenmark Generics Ltd.
(n/k/a Glenmark Pharmaceuticals Ltd.),
Glenmark Pharmaceuticals Ltd., and
Glenmark Pharmaceuticals S.A. (n/k/a
Ichnos Sciences S.A.)*

/s/ Richard C. Schoenstein
Richard C. Schoenstein
Janet B. Linn
**TARTER KRINSKY & DROGIN**
1350 Broadway
New York, NY 10018
(212)-216 8000
rschoenstein@tarterkrinsky.com
jlinn@tarterkrinsky.com

*Attorneys for Defendants Hetero
Labs Ltd., Hetero Drugs Ltd.,
Hetero USA Inc.*

/s/ Caitlin G. Coslett
David F. Sorensen
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
dsorensen@bm.net
ccoslett@bm.net

*/s/ Kimberly Hennings*
Bruce E. Gerstein
Kimberly Hennings
Dan Litvin
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Tel.: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

*Interim Co-Lead Counsel for the Proposed Direct
Purchaser Class and Counsel for Smith Drug
Company*

Russell Chorush
**HEIM PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, TX 77002
(713) 221-2000
rchorush@hpcllp.com

Peter Kohn
Joseph T. Lukens
**FARUQI & FARUQI, LLP**
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com

*Counsel for Smith Drug Company*

Dianne M. Nast
**NASTLAWLLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

Andrew W. Kelly
**ODOM & DES ROCHES LLC**
650 Poydras Street, Suite 2020
New Orleans, LA 70130
(504) 522-0077
stuart@odrlaw.com
akelly@odrlaw.com

Susan Segura
David C. Raphael, Jr.
Erin R. Leger
**SMITH SEGURA RAPHAEL
& LEGER, LLP**
221 Ansley Blvd.
Alexandria, LA 71303
(318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com
eleger@ssrllp.com

Michael L. Roberts
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, AR 72223
(501) 821-5575
mikeroberts@robertslawfirm.us

*/s/ Robin A. van der Meulen*
Robin A. van der Meulen
Gregory S. Asciolla
Matthew J. Perez
Veronica Bosco
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
(212) 907-0700
rvandermeulen@labaton.com
gasciolla@labaton.com
mperez@labaton.com
vbosco@labaton.com

*Interim Co-Lead Counsel for the
Proposed End-Payor Class*

Joseph M. Vanek
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
jvanek@sperling-law.com

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.*

*/s/ Sharon K. Robertson*
Sharon K. Robertson
Donna M. Evans (*pro hac vice* pending)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

Robert A. Braun
Jessica Weiner (*pro hac vice* pending)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Fifth Floor
Washington, D.C. 20005
(202) 408-4600
rbraun@cohenmilstein.com
jweiner@cohenmilstein.com

*Interim Co-Lead Counsel for the Proposed End-Payor Class*

By: */s/ Barry L. Refsin*
Alexander J. Egerváry
Barry L. Refsin (*pro hac vice*)
Chelsea M. Nichols (*pro hac vice*)
Caitlin V. McHugh (*pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
aegervary@hangley.com
brefsin@hangley.com
cnichols@hangley.com
cmchugh@hangley.com

Monica L. Kiley (*pro hac vice*)
Eric L. Bloom (*pro hac vice*)
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
2805 Old Post Road, Suite 100
Harrisburg, PA 17110-3676
(717) 364-1030
mkiley@hangley.com
ebloom@hangley.com

*Counsel for Plaintiffs CVS Pharmacy, Inc., Rite Aid Corporation and Rite Aid Hdqtrs. Corp.*

By: */s/ Scott E. Perwin*
Scott E. Perwin (*pro hac vice*)
Lauren C. Ravkind (*pro hac vice*)
Anna T. Neill (*pro hac vice* pending)
**KENNY NACHWALTER P.A.**
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131
(305) 373-1000
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

*Counsel for Plaintiffs Walgreen Co., The Kroger
Co., Albertsons Companies, Inc. and H-E-B, L.P*

**SO ORDERED.**

Dated: _____, 2021

                                        _____
                                        Hon. Lewis J. Liman
                                        United States District Judge

# Exhibit A: Specifications for the Production of Documents

## 1.      Cover Letter and Delivery Media

Each production shall include a cover letter or cover email with information sufficient to: (i) identify all accompanying delivery media; (ii) identify the production on such media by assigning a Volume ID; and (iii) include the Bates range for the documents produced in each volume. Delivery media shall comply with the specifications below.

|  | Requirement: |
|---|---|
| **Delivery Media:** | USB hard drive, DVD and/ or CD-R (ISO9660 format) or a secure FTP site |
| **Encryption:** | All media should be encrypted |
| **Volume ID:** | CD set number, e.g. VOL1 |
| **Physical Media Label:** | TOP: <production name, volume number><br>MIDDLE: <Bates range><br>BOTTOM: <date> |
| **Number of Copies:** | 1 |

## 2.      Deliverable Includes

| Item: | Requirement: |
|---|---|
| **a)  Load File (Metadata file)** | Concordance (.dat) |
| **b)  Image File** | Opticon (.opt) |
| **c)  Images** | • Group IV TIFF, 300 DPI, single-page TIFF images<br>• Color documents should be produced in JPEG format<br>• Images may be produced in grayscale or in black and white unless color images are necessary to decipher the meaning, context, or content of the document, or if black and white photocopying or conversion to TIFF format makes any substantive information contained in the document unintelligible.  However, color copies of Documents produced in grayscale or in black and white shall be produced upon request within fourteen (14) days when color is necessary to fully understand the Document or when the request is otherwise reasonably justified.<br>• All black/white images must be in 1-bit TIFF images and color documents must be in 24-bit JPEG files<br>• All documents referenced in a production image load file shall have all corresponding images, text, and data<br>• All images in the delivery volume shall be contained in the image load file<br>• The image key shall be named the same as the Bates number of the page<br>• Every image will contain a unique Bates number, and a prefix that identifies the party producing the document<br>• The Bates numbers shall be sequential, and in a consistent font type, size, and spacing.<br>• Image file names cannot contain spaces, (e.g., the correct format would be AB00000001 not AB 00000001).<br>• If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. |

| Item: | Requirement: |
|---|---|
| **d)  Text Files** | • Extracted text of a document must be delivered on a document level<br>• A text file will be provided for every document<br>• For any document without extracted text or OCR, a text placeholder file will be inserted<br>• All text for a single document should be contained within one file with subfolders<br>• OCR shall be performed:<br>  o  For all redacted images<br>  o  For all non-searchable electronic documents for which the text cannot be extracted<br>  o  Branding should be performed *after* OCR in the format agreed to by the parties.<br>• All text files should be named after the beginning Bates number of the document (ProdBatesBeg.txt) |
| **e)  Native Files** | • Native file format for:<br>  o  Spreadsheets (e.g., MS Excel, Lotus 123, etc.)<br>  o  Presentations (e.g., MS PowerPoint, etc.)<br>  o  **Plaintiffs' Proposal:**  Word documents (e.g., MS Word, etc.)<br>    **Defendants' Proposal** is that "Word documents (e.g., MS Word, etc.)" not be included here<br>  o  Database (e.g., MS Access, QuickBooks, etc.)<br>  o  Drawing (e.g., Visio, CAD, etc.)<br>  o  Audio and Video (e.g., QuickTime Movie, Windows Media Video Voicemails)<br>• All Native files should be named after the beginning Bates number of the document (BEGDOC.xls).<br>• Documents produced in native format should be produced with a single page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format."<br>• Documents produced in native format should have a file path value for the native file in the "Native Link" metadata field. |
| **f)  Exception Handling** | A single-page TIFF placeholder should be used for each document within a family that was not converted and endorsed with the Prod Bates Beg. |
| **g)  Display Hidden Text** | Maintain and display hidden text (i.e., force on all hidden data). For example, track changes in MS Word, speaker notes in MS PowerPoint, and hidden rows in MS Excel. |
| **h)  Maintain Date and Time** | Maintains the date/time of the document as it was last saved, edited, etc., not the date of collection or processing (I.e., force off auto data). |

## 3.   Directory Structure

The directory structure will contain the following main folders: DATA, NATIVE, TEXT, and IMAGES.
Ex: Vol1\ NATIVE\000X\

| | Requirement: |
|---|---|
| **DAT File Location** | In subfolder: \DATA |
| **OPT File Location** | In subfolder: \DATA |
| **Images** | In subfolder: \IMAGES<br>In sequentially numbered subfolders containing approximately 1000 images each (i.e. ..\Images\001 ) |

| Text Files | In subfolder: \TEXT |
|---|---|
| Native Files | In subfolder. i.e. \NATIVE |

## 4.      Delimiters

| | Requirement | |
|---|---|---|
| **Field Separator** | ASCII Code 20 ( ) | Separates load file columns |
| **Field Values** | ASCII Code 254 (þ) | Marks the beginning and end of each load file field (also known as a text qualifier) |
| **Multi-value** | ASCII Code 059 (;) | Separates distinct values in a column. This delimiter is only used when importing into a Relativity multi-choice field |
| **Newline** | ASCII 174 Code (®) | Marks the end of a line in any extracted or long text field |
| **Null Fields** | | If a Field has no value, leave blank |

## 5.      Metadata

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Author** | Original composer of document. | TEXT | Populated attachments and loose files. | |
| **Confidentiality** | Applicable confidentiality designation of document, otherwise blank. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Conversation ID** | Email thread created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. | TEXT | Populated for messages only. | |
| **Custodian or Source** | Name of custodian who possessed the document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Custodian - All** | Name of all custodians who possessed the document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Date Created** | Date from the date created property extracted from the original file or email message. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Last Modified** | Date from the modified property of a document, representing the date and time that changes to the document were last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |

3

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Date Last Saved** | Date from the property of a document, representing the date and time that the document was last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Received** | Date that the email message was received (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **Date Sent** | Date that the email message was sent (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **DocType** | Populated with: Email, Attachment, eDocPaper | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Email BCC** | Recipients of 'blind carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email CC** | Recipients of 'carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email From** | Originator of the email message. | TEXT | Populated for messages only. | |
| **Email Subject** | Subject of the email message. | TEXT | Populated for messages only. | |
| **Email To** | List of recipients or addressees of the email message. | TEXT | Populated for messages only. | |
| **Extracted Text Size** | Extracted text file size in kilobytes | DECIMAL | Populated for messages, attachments, and loose files. | |
| **File Extension** | Three (or more) character extension of the document that represents the file type to the Windows Operating System. Examples are PDF, DOC, or DOCX. The file extension is identified by the file header vs. file extension of the file name itself. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Name** | Original name of the file. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Size** | File size in kilobytes of native document. | DECIMAL | Populated for messages, attachments, and loose files. | |

4

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Importance** | Email importance flag, to the extent reasonably and technically available | TEXT | Populated for emails only. | |
| **Last Saved By** | Person or username from the modified property of a document, representing the person or user that last saved the document. | TEXT | Populated for attachments and loose files. | |
| **MD5 or SHA-1 Hash Value** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 or SHA-1 hash algorithm | TEXT | Populated for messages, attachments and loose files. | |
| **Message-ID** | The Outlook Message ID assigned by the Outlook mail server, if applicable | TEXT | Populated for messages only. | |
| **Original Folder Path** | Original folder path of file or folder name for paper documents. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Page Count** | The number of pages in the file | NUMERICAL | Populated for messages, attachments, and loose files. | |
| **Prod Bates Beg** | Beginning Bates number, or production number, on first page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg Attach** | First Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Prod Bates End** | Bates number, or production number, on last page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates End Attach** | Last Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Production Volume** | Production Volume ID | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Redactions** | Yes/No field indicating whether document is redacted. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Technical Issue** | Yes/No field indicating whether document has technical problem. | TEXT | Populated for messages, attachments and loose files. | Populated |

5

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Time Created** | Time from the Date Created property extracted from the original file or email message. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Last Modified** | Time from the Modified property of a document, representing the date and time that changes to the document were last saved. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Received** | Time that the email message was received (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Time Sent** | Time that the email message was sent (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Title** | Title information saved in metadata with document. | TEXT | Populated for attachments and loose files. | |
| **Native Link** | Link to Native File. Native files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.xls). | TEXT | Populated for attachments and loose files. | |
| **Text Link** | Link to Text Files.<br><br>Text files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt). | TEXT | Populated for attachments and loose files. | |