

**CAITLIN G. COSLETT** / *SHAREHOLDER*
**d** 215.875.3057 | ccoslett@bm.net

February 16, 2021

<u>**VIA ECF**</u>
The Honorable Lewis J. Liman
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:** *In re Bystolic Antitrust Litigation*, No. 20-cv-05735-LJL (All Actions)

Dear Judge Liman,

Plaintiffs write regarding Plaintiffs' ESI Protocol proposals, set forth in ECF No. 232.

**I.     Plaintiffs' proposed paragraph 3.2 should be adopted because each individual email withheld as privileged within an email thread should be logged.**

The Court should require that privilege logs include an entry for each email withheld as privileged. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 685 (N.D. Ga. 2014) ("The emerging majority view appears to be that individual emails within a string should be separately logged in some fashion."), *reconsid. granted on other grounds*, 2014 WL 11531065 (N.D. Ga. May 21, 2014); *BreathableBaby, LLC v. Crown Crafts, Inc.*, 2013 WL 3350594, at *8 (D. Minn. May 31, 2013) ("courts are moving in the direction of requiring litigants to log separately each e-mail in a string."), *rpt. and rec. adopted*, 2013 WL 3349999 (D. Minn. July 1, 2013). This is warranted because every email in a thread is "a separate communication, for which a privilege may or may not be applicable." *Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.*, 2008 WL 4547190, at *1 (N.D. Cal. Oct. 10, 2008). *See also Davita, Inc.*, 301 F.R.D. at 685 ("A string of emails, after all, is not just a single communication. It reflects a series of different communications that, because of the way in which it was printed or maintained, happens to exist as one document."). The date, universe of authors and recipients, and subject matter may (and, experience shows, often will) vary from email to email within a thread, and so every communication in a thread should be logged to "accurately state how many separate communications are included in the withheld document, and who received which of those communications." *Davita*, 301 F.R.D. at 685.

Defendants' proposal to require logging of only the most recent email in a thread would improperly deny Plaintiffs the information needed to effectively assess and challenge Defendants' claims of privilege. For example, if the last email in a thread consisted of a party simply forwarding an email chain to counsel, logging only the last-in-time email, as Defendants propose, would not capture or provide any information regarding any non-privileged communications that may have preceded that forwarding. "[T]he obvious and unavoidable byproduct of" Defendants'



proposal "would be stealth claims of privilege which, by their very nature, could *never* be the subject of a meaningful challenge by opposing counsel or actual scrutiny by a judge; this, in turn, would render Fed.R.Civ.P. 26(b)(5) a nullity." *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005). Accordingly, the Court should adopt Plaintiffs' proposed language requiring logging of every withheld email.

**II.     Plaintiffs' proposed paragraph 3.3(a) and section 2(e) of Exhibit A to the ESI Protocol should be adopted because Word documents should be produced in native form.**

Defendants have agreed to produce Microsoft Excel and PowerPoint documents in native form, recognizing that production in native form facilitates review and understanding of the produced documents. Microsoft Word documents too should be produced in native form so that the parties will have "the same ability . . . to access, search, and display the relevant responsive information." *Johnson v. RLI Ins. Co.*, 2015 WL 5125639, at *5 (D. Alaska Aug. 31, 2015) (requiring production of drafts in native Word format). *See also Doyle v. Gonzales*, 2011 WL 611825, at *3 (E.D. Wash. Feb. 10, 2011) ("All data, files, and communications that are ordinarily stored on electronic media including . . . word processing documents . . . shall be produced in native format [absent agreement by the parties]."). Defendants' proposal to convert Microsoft Word documents into TIFF files would create "a static, two-dimensional image form, rendering them not 'reasonably usable.'" *Corbello v. Devito*, 2011 WL 1466605, at *2 (D. Nev. Apr. 15, 2011) (ordering production of movie scripts in native Microsoft Word format) (citing Sedona Principle 12 Comment 12a and Advisory Committee Notes to the 2006 Amendment of Rule 34(b)). Production of native Word documents is particularly crucial here given the importance of the redlined draft agreements exchanged during the negotiations of the challenged agreements.

**III.    Plaintiffs' proposed paragraph 3.8 should be adopted because only privileged materials should be redacted or withheld.**

Defendants propose to redact information from responsive documents on relevance grounds. But redacting based on grounds other than privilege – the only grounds permitted by the Federal Rules – is a "generally unwise" practice that "breed[s] suspicions, and . . . may deprive the reader of context." *In re State St. Bank & Tr. Co. Fixed Income Funds Invs. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009). *See also Tween Brands Inv., LLC v. Bluestar All., LLC*, 2015 WL 6955177, at *2 (S.D. Ohio Nov. 10, 2015) (responsiveness redactions "leave[] too many open questions about [Defendants'] definition of 'relevant' and about whether additional relevant information was 'inadvertently' redacted."); *Johnson v. City of N.Y.*, 2018 WL 276349, at *3 (E.D.N.Y. Jan. 3, 2018) ("New York federal courts generally frown upon the practice of redacting unresponsive or irrelevant information."). Defendants' proposal is particularly problematic here given the large number of Defendants that would be allowed to unilaterally determine what is irrelevant and so can be redacted, runs contrary to the Federal Rules and the corresponding case law in this Circuit, and should be rejected in favor of Plaintiffs' proposal, under which material may be withheld or redacted only for privilege reasons.

Rule 34(a) requires "production of 'documents,' as opposed to the relevant information



contained in those documents," and provides no "express or implied support" for "scrub[bing] responsive documents of non-responsive information." *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at \*2 (W.D. Pa. Sept. 30, 2008). "The weight of authority in [the Second] Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents." *Christine Asia Co, Ltd. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018). *See also Coventry Capital US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at \*9 (S.D.N.Y. Dec. 16, 2020) ("Redactions are normally impermissible unless based on a legal privilege."); *Cyris Jewels v. Casner*, 2016 WL 2962203, at \*4 (E.D.N.Y. May 20, 2016) ("the court has found [no authority] upholding a party's right to redact from admittedly responsive and relevant documents information based on that party's unilateral determinations of relevancy."); *Stinson v. Houslanger & Assocs.*, 2020 U.S. Dist. LEXIS 71661, at \*7-8 (S.D.N.Y. Apr. 23, 2020) (forbidding redactions unless based on privilege) (attached as Ex. 1); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at \*9 (S.D.N.Y. Jan. 24, 2018) ("redactions on grounds of non-responsiveness or relevance generally impermissible," especially where a protective order is in place). Courts in similar pharmaceutical antitrust cases have also recognized that relevance redactions are not permissible. *E.g.*, *In re Generic Pharm. Pricing Antitrust Litig.*, 2019 WL 1613437, at \*1 (E.D. Pa. Apr. 9, 2019) ("[A] party may redact or withhold responsive documents only where they are covered by attorney-client privilege or the work-product doctrine or contain sensitive personally identifying information."); *In re Restasis (Cyclosporins Opthalmic Emulsion) Antitrust Litig.*, 2018 WL 3007926, at \*1 (E.D.N.Y. May 31, 2018) ("[A] party should not be permitted to unilaterally decide to redact portions of a responsive document because it determines that they are competitively sensitive and not relevant.").

Moreover, relevance redactions inevitably lead to discovery disputes that bog down litigation and create unnecessary delays. *See Cyris Jewels*, 2016 WL 2962203, at \*2, \*5 (resolving a dispute about "redactions [that] covered plainly relevant material," but the process took four-and-one-half months to resolve); *Christine Asia Co.*, 327 F.R.D. at 53-54 (motion practice, oral argument, and a written opinion required to conclude the defendant's unilateral relevancy and responsiveness determinations were facially unreliable). The superior practice is for "doubts about relevance [to] be resolved in favor of production in the first instance" rather than learning later "that documents of unquestioned relevance have been withheld or redacted solely on the basis of defendant's unilateral and self-serving determinations of relevance." *Flynn v. Goldman, Sachs & Co.*, 1991 WL 238186, at \*2 (S.D.N.Y. Nov. 1, 1991).

Defendants' assertion that redactions are necessary to protect sensitive information is further refuted by the Court's detailed Protective Order – which was based on the parties' jointly proposed protective order – that permits Defendants to designate information as Confidential or Highly Confidential, and limits access to such information to a highly restrictive, enumerated set of people such as the parties' outside counsel. *See* ECF Nos. 147 & 148, at ¶¶ 9, 10. Courts recognize that such protective orders adequately protect sensitive information. *See Christine Asia Co.*, 327 F.R.D. at 55 (protective order "addresses any concerns that Defendants may have regarding the confidential or sensitive nature of the information redacted from documents."); *Tween Brands Inv.*, 2015 WL 6955177, at \*2 ("a protective order restricting [] dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the



case.") (citation omitted); *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017) ("Protective Order will provide sufficient protection"); *In re K-Dur Antitrust Litig.*, 2003 WL 27375780, at *2 (S.D. Fla. Aug. 21, 2003) (Andrx's confidentiality concerns "addressed by the implementation of an appropriate confidentiality order, which is already in place in this case, and to which Andrx has voiced no objection.").

**IV.  Plaintiffs' proposed paragraphs 1.14 and 3.9 should be adopted because an email and all attachments thereto should be produced together, as a single document.**

An email and all attachments thereto comprise a single "document" that must be produced in its entirety, without the omission of any purportedly non-responsive attachments. *See* The Sedona Conference Glossary: E-Discovery & Digital Information Management, 15 Sedona Conf. J. 305, 322 (S. Harris et al. eds., 4th ed. 2014) (defining a "document" as "[a] collection of pages or files . . . constituting a logical single communication of information, but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter"); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011) ("prevailing practice . . .  is for parties to produce any non-privileged attachment to an e-mail if the e-mail is determined to be relevant, and to produce the e-mail if any of the attachments are determined to be relevant."), *rpt. and rec. adopted,* 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011); *Virco Mfg. Corp. v. Hertz Furniture Sys.*, 2014 WL 12591482, at *5-6 (C.D. Cal. Jan. 21, 2014) ("emails produced in discovery should be accompanied by their attachments" and the failure to do so is, in effect, an improper, unilateral redaction of "portions of documents it otherwise apparently views to be discoverable/relevant/responsive"); *Nguyen v. Roth & Rau AG*, 2009 WL 10682036, at *2-3 (D. Md. Jul. 28, 2009) ("e-mails and their attachments must be produced together"); *Landau v. Zong*, 2017 WL 6336630, at *3 (M.D. Pa. Dec. 12, 2017) ("[E]mail attachments . . . should be considered components of the emails themselves.").  In addition, Rule 34(b)(2)(E)(i) requires a party to "produce documents as they are kept in the usual course of business," and emails and attachments are kept together in the usual course of business. *See PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, 2007 WL 2687670, at *6 (N.D.N.Y. Sept. 7, 2007) ("one would expect that an email and its attachment would have been kept together in the regular course of business, and the production of said documents would have followed suit.").  Moreover, "Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents," *Orion Power Midwest, L.P.*, 2008 WL 4462301, at *2, and so the entire document – the email and all attachments thereto – must be produced if the cover email or any attachment is responsive.  *See Karnoski v. Trump*, 2020 WL 2736961, at *1 (W.D. Wash., Mar. 4, 2020) (ordering the production of documents within a "family group" such as attachments to emails and noting that "[t]he Federal Rules of Evidence favor the *complete* production of non-privileged evidence if some portion of the evidence is deemed responsive").

Defendants propose to chop up their production, withholding attachments that do not contain agreed search terms or are otherwise deemed non-responsive even if, for example, the withheld email attachment is expressly referenced by the produced cover email.  Simply put, an email goes together with its attachments – employees do not regularly attach random, unrelated documents to their business communications.  That a document is attached to an email reflects that

**BERGER | MONTAGUE**

the attachment and email are related, and must be read and reviewed as a whole, and so must be produced together.  Allowing Defendants to withhold email attachments would deny Plaintiffs relevant discovery.  *See Karnoski*, 2020 WL 2736961, at *2 (permitting producing party to withhold purportedly non-responsive email attachments is "to permit the producing party to essentially unilaterally redact otherwise responsive discovery").

Even if production of all email attachments would inconvenience Defendants, this inconvenience does not outweigh the proportional benefit to Plaintiffs from discovery of complete document families.  *See PSEG Power*, 2007 WL 2687670, at *11 ("the potential for discovery outweighs the cost and burden of re-produc[ing emails to include attachments]. . . .  Attachments to emails are important and useful and may assist [the requesting party] in presenting admissible evidence"); *Nguyen*, 2009 WL 10682036, at *3 ("the court is not persuaded that the burden of producing all 1,600 e-mails, coupled with their attachments, would outweigh the benefit to be derived by plaintiffs from this discovery.").  Besides, Plaintiffs are only asking for the production of *complete* versions of documents that are returned when Defendants use the agreed upon search terms.  The least burdensome and only way to ensure that Defendants' productions are complete is for Defendants to produce emails and their attachments together, without withholding purportedly non-responsive attachments.

**V.     Plaintiffs' proposed paragraph 4.5 ensures the timely production of privilege logs.**

Privilege logs should be served within 21 days of each document production so that the Parties can begin their review before the substantial completion of all productions and continue to receive logs within this same timeframe thereafter, as additional documents are produced.  Plaintiffs' proposal is 21 days longer than provided by Local Rule 26.2(b), which requires that information supporting privilege claims be provided "at the time of the response to [the relevant discovery request]."  *See, e.g.*, *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014) (Local Rule 26.2(b) requires that a party must provide "[a] privilege log" at the time a response to a request for documents is due unless a later date is "agreed upon by the parties or set by the court") (citation omitted).  Privilege logs contain information critical to Plaintiffs' ongoing factual discovery, including shaping discovery requests and informing deponent selection. Defendants' proposal to delay their initial productions of privilege logs until 45 days after substantial completion of document productions will prejudice Plaintiffs, requiring them to sift through thousands of log entries for each of the numerous Defendants long into this case.

Plaintiffs' proposed timeframe does not unduly burden Defendants, who must necessarily review and determine privilege claims for responsive documents *before* selecting and sending documents to their vendor for processing, *i.e.*, *prior* to each production.  Moreover, most of the privilege log entries' information is automatically populated using metadata from the redacted or withheld documents (*e.g.*, date, custodian, sender, and recipients).  A three-week deadline for logs from the date of each document production is reasonable, fair and efficient.

Sincerely,

/s/ Caitlin G. Coslett