WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
T +1 202 626 3600

whitecase.com

February 16, 2021

**BY ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: Defendants' Submission on ESI Protocol in *In re Bystolic Antitrust Litig.*, Case No. 1:20-cv-05735 (LJL)**

Dear Judge Liman:

We write on behalf of the Defendants pursuant to Paragraph 1.B of the Court's Individual Practices in Civil Cases and Paragraph 12.b of the Joint Case Management Plan and Scheduling Order No. 1, ECF No. 82.

The parties have conferred and agree on all but four important aspects of the proposed Order Regarding the Protocol for Production of Electronically Stored Information and Hard Copy Documents, ECF No. 232 ("ESI Protocol"). The parties are at impasse and request the Court's involvement.

*First*, Defendants request the ability to redact non-responsive information that is also highly confidential and competitively sensitive (ESI Protocol ¶ 3.8(a)). *Second*, Defendants request the ability to slip sheet and not produce wholly non-responsive attachments (¶¶ 1.14, 3.9). *Third*, Defendants seek to produce Word documents in the TIFF production format that is standard for large document productions, and not in native format (¶ 3.3(a) & Exhibit A, at 2). *Finally*, Defendants believe it is premature to set privilege log deadlines. This should instead follow the timing of document production, if necessary. If it needs to be resolved now, then timely production should be facilitated by logging email chains as one entry, whereas Plaintiffs seek to impose significant and unnecessary delay and cost by requiring Defendants to log *each* individual email contained in a document as a separate entry (¶¶ 3.2, 4.5).

1. **The Court Should Permit the Parties to Protect Non-Responsive Highly Confidential Information Through Redaction**

It is standard practice in pharmaceutical antitrust cases (and consistent with Defendants' proposal) to redact non-responsive information that is also non-public, competitively sensitive Highly Confidential material (as defined in the Protective Order). *See* ESI Protocol ¶ 3.8(a). Redaction

The Honorable Lewis J. Liman
February 16, 2021

of a narrow category of non-responsive competitively sensitive and trade secret information is critical to protecting that information from potential disclosure to competitors (including other co-Defendants) and customers. Disclosure of information about products outside the scope of this litigation would impact potential commercial decisions and competition.

Courts routinely allow redaction of *non-responsive*, highly confidential information in pharmaceutical antitrust litigation, including in at least eight recent cases: *Aggrenox*, *Asacol*, *Celebrex*, *Doryx*, *Effexor*, *Lipitor*, *Loestrin*, and *Namenda*.[1] In *Aggrenox*, *Asacol*, and *Namenda*, courts allowed redactions despite the fully-briefed objections of many of the Plaintiffs here.[2]

Moreover, the 2015 amendments to the Federal Rules of Civil Procedure confirm this sensible approach. As amended, Rule 26(b)(1) permits discovery only if it is both (1) proportional to the needs of the case and (2) *relevant* to any party's claim or defense. Non-responsive information is, by definition, irrelevant and thus not discoverable. Further, Rule 26 expressly protects "trade secret[s]" and "confidential research, development, or commercial information" against disclosure. *See* Fed. R. Civ. P. 26(c)(1)(G). Given the time and cost for Defendants in reviewing for redaction, it is an inherently self-limiting process—Defendants have no interest in expending resources on redacting irrelevant information that is not highly sensitive. Furthermore, Defendants have offered a challenge process adopted from other ESI protocols should Plaintiffs believe redacted information might be responsive. *See* ESI Protocol, Defendants' Proposal for ¶ 3.8(a). In contrast, Plaintiffs' proposal forbidding the redaction of Highly Confidential non-responsive material would unnecessarily and gratuitously put non-responsive trade secrets and competitively sensitive information into the case. This is contrary to amended Rule 26(c).

Even with the entry of the Protective Order, allowing redactions will reduce the burden on the Court in addressing sealing requests. Further, redactions will reduce the very real risk of inadvertent disclosure (including in hearings and depositions) of competitively sensitive information to competitors, customers, and industry experts who may work for competitors. Allowing the parties to segregate non-responsive, confidential information at the outset is more effective than requiring parties to compartmentalize information after it is inserted into the case.

2. **The Court Should Not Require Production of Wholly Non-Responsive Attachments**

Defendants propose another provision used by courts to protect highly confidential information consistent with Rule 26. Defendants' proposal would allow a producing party to omit wholly non-

---

[1] *See* ESI Protocols in *Aggrenox*, at ¶ E(3)(1), No. 3:14-md-02516 (D. Conn.), ECF. No. 235 (ordering redactions over Plaintiffs' objection); *Asacol*, at ¶ 3.9, No. 15-cv-12730 (D. Mass.), No. 202 (same); *Namenda*, at 2, Case No. 1:15-cv-07488 (S.D.N.Y.), ECF No. 349 (same); *see also* ESI Protocols in *Celebrex*, at ¶ D(1)(i), No. 2:14-cv-00395 (E.D. Va.), ECF No. 88 (agreed by Plaintiffs); *Effexor*, at ¶ D(1)(i), No. 3:11-cv-05479 (D.N.J.), ECF No. 245 (same); *Lipitor*, at ¶ D(1)(i), No. 3:12-cv-02389 (D.N.J.), ECF No. 416 (same); *Doryx*, at ¶ III(L), No. 2:12-cv-03824 (E.D. Pa.), ECF No. 94 (same); *Loestrin*, at ¶ VI(C)(11), No. 1:13-md-02472 (D.R.I.), ECF No. 234 (same).

[2] *See Asacol*, Direct Purchaser Plaintiff's Memorandum in Support, Dkt. No. 168 (D. Mass. Oct. 5, 2016); Ex. A to Defendants' Memorandum, Dkt. No. 169-1 (D. Mass. Oct. 5, 2016) (attaching *Aggrenox*, Tr. of Telephone Status Conference at 36:7-40:24 (D. Conn. Sept. 10, 2014)); *Namenda*, Memorandum of Law in Support of Motion for Entry of ESI Protocol, Dkt. No. 120 (S.D.N.Y. Dec. 8, 2016).

responsive documents that exist as part of a "document family" (e.g., irrelevant email attachments). For example, a non-responsive document providing pricing or development information for an *unrelated* drug may be excluded from the production and replaced with a slip-sheet indicating a non-responsive attachment is withheld.  ESI Protocol, Defendants' Proposal for ¶ 3.9.

This slip-sheeting process has been ordered or agreed to in numerous complex pharmaceutical antitrust cases like this one, including *Aggrenox* (ordered over the objections of plaintiffs), *Asacol* (same), *Celebrex*, *Doryx*, and *Loestrin* and has worked well with minimal or no motion practice or intervention from the court.[3]

Defendants combined are likely to produce hundreds of thousands of pages or more in this litigation.  The burden of review and production will be immense.  Allowing parties to focus review on responsive documents creates needed efficiencies, speeding up the review by all parties. Defendants cannot produce non-responsive family member documents without the needless burden and expense of reviewing the documents for privilege and potential redaction.

Any concerns about the omission of non-responsive attachments are addressed through safeguards in the ESI Protocol.  Under Defendants' proposed Paragraph 3.9, Plaintiffs *will* receive *parent* emails where any attachment is responsive.  Plaintiffs will know that a non-responsive document was omitted based on the slip-sheet, and will receive the metadata (e.g., file name, author, etc.) for omitted documents.  Additionally, Defendants' proposal explicitly reserves the right of all parties to request a limited number of non-responsive attachments for review, and requires all Parties to meet and confer in good faith to resolve any disputes that may arise.  ESI Protocol ¶ 3.9.

### 3.   Plaintiffs' Proposal that Word Documents Be Produced in Native Form Should be Rejected As Unduly Burdensome and Unnecessary

Plaintiffs unreasonably seek to force Defendants to produce nearly all documents (Word, Excel, and Power Point files) in native format rather than as image files.  Defendants agree to native production of Excel and Power Point files, but object to native production of Word files due to the production burden and security concerns.  Instead, Defendants propose to follow common practice and produce Word documents in TIFF + format.  That means producing a static image file along with a load file containing all of the extracted text, as well as a significant volume of metadata agreed to by the parties.

The Federal Rules contain two default options for the production of ESI—either "in a form or forms in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34. "Typically," however, "a requesting party *does not need ESI produced in its native format*. . . . Indeed, the most common way to produce ESI for more than a decade has been to create a static electronic image in Tagged Image File Format (TIFF) . . . ."  THE SEDONA PRINCIPLES, Third

---

[3] *See* ESI Protocols in *Aggrenox*, at ¶ 3(m), No. 3:14-md-02516 (D. Conn.), ECF. No. 235 (ordering parties may withhold non-responsive attachments); *Asacol*, at ¶ 3.10, No. 15-cv-12730 (D. Mass.), No. 202 (same); *see also* ESI Protocols in *Celebrex*, at ¶ C(2)(d), No. 2:14-cv-00395 (E.D. Va.), ECF No. 88 (agreed by Plaintiffs); *Doryx*, at ¶ III(L), No. 2:12-cv-03824 (E.D. Pa.), ECF No. 94 (same); *Loestrin*, at ¶ VI(C)(12), No. 1:13-md-02472 (D.R.I.), ECF No. 234 (same).

The Honorable Lewis J. Liman
February 16, 2021

WHITE & CASE

Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 172 (2018), Principle 12, Comment 12.b (emphasis added). Unsurprisingly, *not one* of the eight cited ESI Protocols from similar pharmaceutical antitrust cases—e.g., *Aggrenox*, *Asacol*, *Celebrex*, *Doryx*, *Effexor*, *Lipitor*, *Loestrin*, and *Namenda* (*supra* note 1)—allow for the production of Word files in native format.

**Security/Spoliation Issues with Native Word Files.** Forcing Defendants to produce all Word documents in native form would create significant security risks. *See, e.g.*, SEDONA PRINCIPLES at 178, Principle 12, Comment 12.b.ii ("[T]he ease with which ESI can be copied and moved has raised concerns about the security of productions of large volumes of native format files in litigation . . . ."). Producing Word documents in TIFF also prevents inadvertent alteration, spoliation, or manipulation of the document and its metadata. SEDONA PRINCIPLES at 178, Principle 12, Comment 12.b.ii; *id.* at 169, Comment 12a ("[C]are should be taken when handling native format files, and their accompanying metadata and other non-apparent data, to avoid any inadvertent alteration.").

**Manageability/Labeling.** Producing Word files as native files also introduces difficulties in Bates labeling the documents for use in in motions, depositions and at trial, and in indicating any confidentiality pursuant to the Protective Order. Appropriate labeling of documents containing highly confidential business information is essential where hundreds of thousands of pages are likely to be exchanged between and among competitors and Plaintiff purchasers.

Defendants' proposal is reasonable and necessary. Production in native should be limited to only those files where it is necessary to reveal information not reflected in a TIFF production, i.e., Excel and Power Point files.

Plaintiffs lose nothing under Defendants' proposal. Under the agreed-to provisions of the ESI Protocol, where a Word document has features such as tracked changes or comments contained in the native file, those track changes or comments will appear in the image file produced. ESI Protocol ¶ 3.13. Additionally, the Protocol permits a party to make reasonable requests for the production of a document in either native or color format where such production would be helpful to the reviewing party or useful in understanding context. *Id.* ¶ 3.3(c).

4. **Plaintiffs' Proposal on Privilege Log Deadlines at this Early Stage of the Case and Logging Every Email in an Email Thread Is Premature And Would Impose an Undue Burden on the Defendants**

The parties have agreed that they may employ email thread de-duplication—a useful technology that allows litigants to review the most inclusive version of an email chain, while eliminating fully duplicative emails. But Plaintiffs would limit its effectiveness because this technology involves creation of a privilege log that would require Defendants to break up and log each individual email within a single email thread. The Plaintiffs' exploded approach to a single email dividing it up into numerous entries on the privilege log would make the log hard to read for the Court and the parties.

WHITE & CASE

The Honorable Lewis J. Liman
February 16, 2021

Defendants can comply with the Local and Federal rules by consolidating the information from a single email chain into one privilege log entry. That would include, for example, providing a date range for the communications and listing all recipients. Additionally, in an effort to compromise, Defendants agreed to separately review and log any emails that were not initially reviewed due to thread de-duplication for any email chain withheld in full. Plaintiffs, however, seek to force the parties to create unique and unnecessary privilege log entries for each communication within an email thread and to complete logs within 21 days of production.

Courts and commentators routinely emphasize the immense and increasing burden of putting together traditional privilege logs. *See* Commentary, SDNY Local Rule 26 ("With the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and *not really informative to opposing counsel and the Court*.") (emphasis added); SEDONA PRINCIPLES at 81, Comment 3d ("[P]reparing and reviewing a privilege log can be extremely time-consuming. . . . The immense volume of ESI now subject to discovery exacerbates the problem.").

Plaintiffs' proposal to increase the burden beyond the traditional document-by-document privilege log by exploding a single email chain into tiny pieces is, moreover, directly contrary this District's Local Rules. Specifically Rule 26.2(c) precludes privilege log objections solely on the basis that the log "departs from a document-by-document or communication-by-communication listing," so long as the party receives the requisite information.[4]

**Premature to Set Timing For Privilege Logs.** Defendants submit that it is premature at this time to set time frames for the production of privilege logs. If the motions to dismiss are not granted in full, and the parties proceed to set a discovery schedule, this issue can be resolved at that time with the benefit of view of the discovery that may remain. However, if the Court is inclined to set a timeframe, production of the log within 45 days of certification of substantial completion of the party's production of documents, and 30 days of any subsequent production is necessary. This is due to the complexity of discovery, and the volume of documents. Plaintiffs' proposed 21 days is unreasonable, and will result in logs that require extensive back and forth and likely supplementing that wastes the parties' time and resources.

Respectfully submitted,

*/s/ J. Mark Gidley*
J. Mark Gidley
Peter J. Carney (pro hac vice)

*/s/ Christopher T. Holding*
Christopher T. Holding (pro hac vice)
Sarah K. Frederick (pro hac vice)

---

[4] SDNY Local Rule 26.2(c) (requiring identification of "the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s)."); *see also* Fed. R. Civ. P. 26 (requiring the log "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); Fed. R. Civ. P. 26, Advisory Committee's Note to 1993 Amendment ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged . . .").

Noah A. Brumfield (pro hac vice)
Eric Grannon (pro hac vice pending)
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005-38007
Tel: (202)-626-3600
Fax: (212)-354-8113
mgidley@whitecase.com
pcarney@whitecase.com
nbrumfield@whitecase.com
egrannon@whitecase.com

*Counsel for AbbVie, Inc., Allergan Inc., Allergan Sales LLC, Allergan USA, Inc. Forest Laboratories Inc., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Watson Pharmaceuticals Inc. (later known as Actavis, Inc.)*

/s/ Devora W. Allon
Devora W. Allon. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-5697
Fax: (212)-446-6460
devora.allon@kirkland.com

Jay P. Lefkowitz. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-4970
Fax: (212)-446-4900
lefkowitz@kirkland.com

*Counsel for Torrent Pharma, Inc.*

/s/ Ahmed M.T. Riaz
Ahmed M.T. Riaz
**SCHIFF HARDIN LLP**
1185 Avenue of the Americas
Suite 3000
New York, NY 10036
(212)-753-5000

**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: (617)-570-1753
Fax: (617)-523-1231
sfrederick@goodwinlaw.com
cholding@goodwinlaw.com

*Counsel for Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.), Watson Laboratories, Inc. (NY) (later known as Actavis Laboratories NY, Inc.), Watson Laboratories, Inc., (CT), Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc.*

/s/ Teresa Bonder
Natalie Christine Clayton
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212)-210-9573
Fax: (212)-922-3845
natalie.clayton@alston.com

Teresa T. Bonder (pro hac vice)
**ALSTON & BIRD LLP**
560 Mission Street, Ste. 2100
San Francisco, CA 94105
Tel: (415)-243-1000
Fax: (415)-243-1001
teresa.bonder@alston.com

Matthew D. Kent (pro hac vice)
Andrew Hatchett (pro hac vice)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, GA 30309
Tel: (404)-881-7000
Fax: (404)-881-7777
matthew.kent@alston.com
andrew.hatchett@alston.com

The Honorable Lewis J. Liman
February 16, 2021

ariaz@schiffhardin.com

Suzanne L. Wahl (pro hac vice)
**SCHIFF HARDIN LLP**
350 S. Main St., Suite 210
Ann Arbor, MI 48104
(734)-222-1500
swahl@schiffhardin.com

*Counsel for Indchemie Health Specialties Private Ltd., Alkem Laboratories Ltd., Ascend Laboratories LLC*

*/s/ Elyse D. Echtman*
Elyse D. Echtman
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY  10019-6142
Tel: (212)-506-5000
Fax: (212)-506-5151
eechtman@orrick.com

John "Jay" Jurata, Jr. (to be admitted *pro hac vice*)
James Tierney (to be admitted *pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Tel: (202)-339 8400
Fax: (202)-339 8500
jjurata@orrick.com
jtierney@orrick.com

*Counsel for Defendant ANI Pharmaceuticals, Inc.*

*Counsel for Glenmark Generics Inc., USA (n/k/a Glenmark Pharmaceuticals Inc., USA), Glenmark Generics Ltd. (n/k/a Glenmark Pharmaceuticals Ltd.), Glenmark Pharmaceuticals Ltd., and Glenmark Pharmaceuticals S.A. (n/k/a Ichnos Sciences S.A.)*

*/s/ Richard C. Schoenstein*

Richard C. Schoenstein
Janet B. Linn
**TARTER KRINSKY & DROGIN**
1350 Broadway
New York, NY 10018
(212)-216 8000
rschoenstein@tarterkrinsky.com
jlinn@tarterkrinsky.com

*Attorneys for Defendants Hetero Labs Ltd., Hetero Drugs Ltd., Hetero USA Inc.*