**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BYSTOLIC ANTITRUST LITIGATION | Lead Case No. 1:20-cv-05735-LJL |
| This Document Relates to:<br><br>All End-Payor Actions | |

**NONRESIDENT DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RULE 12(b)(2) MOTION TO DISMISS END-PAYOR PLAINTIFFS' NON-NEW YORK CLAIMS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

JURISDICTIONAL ALLEGATIONS ................................................................................. 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    A.    Nonresident Defendants are not subject to general jurisdiction. ........................... 6

    B.    Nonresident Defendants are not subject to specific jurisdiction............................ 6

    C.    EPPs' creative pleading cannot cure the jurisdictional defects. .......................... 10

        1.    The doctrine of pendent personal jurisdiction, if it still exists, does not apply in this case.................................................................................. 10

        2.    New York's long-arm statute does not save EPPs' Non-New York Claims. ..................................................................................................... 12

        3.    Choice of law provisions in the settlement agreements are irrelevant. ................................................................................................. 15

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*,
916 F. Supp. 1324 (S.D.N.Y. 1996)..................................................................14

*Berdeaux v. OneCoin Ltd.*,
2021 WL 4267693 (S.D.N.Y. Sep. 20, 2021)........................................................8

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..........................................................................12

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017)......................................................................... *passim*

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).....................................................................................15

*Carter v. Ford Motor*,
2021 WL 1165248 (S.D. Fla. Mar. 26, 2021)......................................................12

*Chizniak v. CertainTeed Corp.*,
2020 WL 495129 (N.D.N.Y. Jan. 30, 2020)....................................................9, 10

*Cullen v. Shutterfly Lifetouch, LLC*,
2021 WL 2000247 (N.D. Cal. May 19, 2021)......................................................11

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014).....................................................................................6

*In re Dental Supplies Antitrust Litigation*,
2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ......................................................5

*Dow Corning Corp. v. RSI Silicon Prods., LLC*,
2010 WL 5723428 (E.D. Mich. Nov. 15, 2010)....................................................6

*Freudensprung v. Offshore Tech. Servs.*,
379 F.3d 327 (5th Cir. 2004) .........................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................................................................................6, 7

*Greene v. Mizuho Bank, Ltd.*,
289 F. Supp. 3d 870 (N.D. Ill. 2017) ................................................................11

*IUE AFL-Cio Pension Fund v. Hermann*
   9 F.3d 1049 (2d Cir. 1993) ............................................................................................. 11

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
   828 F. App'x 740 (2d Cir. 2020) .................................................................................... 13

*In re K-Dur Antitrust Litig.*,
   2008 WL 2660783 (D.N.J. Mar. 19, 2008) ...................................................................... 7

*Kaplan v. Hezbollah*,
   2022 U.S. Dist. LEXIS 35820 (E.D.N.Y. Feb. 28, 2022) ............................................. 13

*Klein v. Parker Univ.*,
   2021 WL 5414327 (N.D. Cal. Apr. 29, 2021) ................................................................ 10

*Langer v. Honey Baked Ham, Inc.*,
   2020 WL 6545992 (S.D. Cal Nov. 6, 2020) .............................................................. 11, 12

*Lincoln v. Ford Motor Co.*,
   2020 WL 5820985 (D. Md. Sept. 29, 2020) .................................................................... 5

*Lugones v. Pete & Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020) ................................................................... 8, 9, 10

*Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*,
   368 F. Supp. 3d 460 (E.D.N.Y. 2019) ......................................................................... 5, 6

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992) ........................................................................................ 14

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ........................................................................................... 8

*Napoli-Bosse v. GM LLC*,
   453 F. Supp. 3d 536 (D. Conn. 2020) ........................................................................... 10

*Narrative Ark Ent. LLC v. Archie Comic Publ'ns, Inc.*,
   2017 WL 3917040 (S.D.N.Y. Sept. 5, 2017) ................................................................ 13

*In re Rezulin Prods. Liab. Litig.*,
   392 F. Supp. 2d 597 (S.D.N.Y. 2005) ............................................................................. 7

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ..................................................................................... 6, 14

*Roy v. FedEx Ground Package Sys.*,
   353 F. Supp. 3d 43 (D. Mass. 2018) ........................................................................... 6, 8

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F. 4th 103 (2d Cir. 2021) ...................................................................13

*Sharpe v. Puritan's Pride, Inc.*,
    2019 WL 188658 (N.D. Cal. Jan. 14, 2019) ...............................................5

*Siegfried v. Boehringer Ingelheim Pharm., Inc.*,
    2017 WL 2778107 (E.D. Mo. June 27, 2017) .......................................9, 10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    299 F.R.D. 555 (E.D. Tenn. 2014).............................................................7

*Sloan v. General Motors LLC*,
    2019 WL 6612221 (N.D. Cal. Dec. 5, 2019) .............................................10

*Sloan v. GM, LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ......................................................10

*Smith v. Apple, Inc.*,
    2022 WL 313874 (S.D.N.Y. Feb. 2, 2022)...........................................9, 10

*Spratley v. FCA US LLC*
    2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) .................................9, 10, 12

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)......................................................................6

*Stacker v. Intellisource, LLC*,
    2021 WL 2646444 (D. Kan. June 28, 2021)..........................................8, 12

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001).................................................................5, 12

## INTRODUCTION

End-Payor Plaintiffs ("EPPs") bring 86 different state-law claims under the laws of 32 jurisdictions. Only two of those claims arise under New York law. The other 84 arise under the laws of other states for alleged injuries that occurred outside New York (the "Non-New York Claims"). EPPs assert those Non-New York Claims against 32 defendants—28 of which are not New York residents (the "Nonresident Defendants").[1] Because this Court lacks personal jurisdiction over the Nonresident Defendants with respect to the Non-New York Claims, those claims should be dismissed.

Before this Court can hear the Non-New York Claims against the Nonresident Defendants, the Court must find that *each defendant* has minimum contacts with New York sufficient for the Court to exercise personal jurisdiction over that defendant with respect to *each claim* asserted against it. The fact that a court has personal jurisdiction to hear *some* claims against *some* defendants does not allow that court to hear all claims against all defendants. That longstanding rule was most recently re-confirmed in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), where the Court held that federal due process does not allow a court to exercise personal jurisdiction over nonresident defendants for claims arising outside the forum state—even if the court can hear identical claims brought by in-state residents.

The EPPs' Non-New York Claims are just like the claims that the Court dismissed in *Bristol-Myers.* As in *Bristol-Myers*, EPPs fail to plead facts (as opposed to conclusory allegations) establishing that the Nonresident Defendants have minimum contacts with New York sufficient to

---

[1] Nonresident Defendants include all defendants named in the End-Payor Plaintiffs' Second Consolidated Amended Class Action Complaint (Dkt. No. 376) *except for* Watson Laboratories, Inc. (NY), Forest Laboratories, Inc., and Forest Laboratories, Inc.'s successors—Forest Laboratories, LLC and Allergan Sales, LLC.

subject them to personal jurisdiction over Non-New York Claims. At most, EPPs allege that one of the defendants—Forest Laboratories, Inc. (which does not join this motion)—had offices in New York a decade ago when the challenged patent settlements were executed. That is irrelevant. The law is well-settled that one contracting party's residence in the forum does not create a sufficient nexus to subject all contracting parties to personal jurisdiction in any suit tangentially related to that contract. EPPs offer no factual allegations to show that any of the Nonresident Defendants purposefully availed themselves of New York such that they should be forced to defend all manner of claims brought in New York, including the Non-New York Claims which arise out of transactions outside the state.

This Court lacks personal jurisdiction over the Nonresident Defendants with respect to 84 Non-New York Claims. Those claims should be dismissed with prejudice.

## JURISDICTIONAL ALLEGATIONS

EPPs are health benefit plans that paid some or all of the cost of Bystolic, a prescription drug used to treat high blood pressure and hypertension. *See* EPPs' Second Consolidated Amended Class Action Complaint ("Compl.") (Dkt. No. 376) ¶ 1. Bystolic is the brand name of a medicine that was originally brought to market by Forest Laboratories, Inc. *Id.* Beginning in December 2011, several generic manufacturers filed applications with the FDA seeking approval to market generic versions of Bystolic. *Id.* ¶ 5. Forest sued the generic manufacturers for patent infringement, and each of those cases eventually settled under terms that allowed the generics to launch their generic products on September 17, 2021. *Id.* ¶ 7. EPPs allege that the generic defendants would have won their patent cases and launched their generic products earlier if they had not settled. *Id.* ¶ 12. EPPs allege that the patent settlements and other business deals signed around the same time unlawfully delayed generic entry, which in turn caused EPPs to pay inflated prices for branded Bystolic. *Id.* ¶ 356.

EPPs bring this lawsuit against 32 different defendants. Only one defendant (Forest Laboratories, Inc.) is alleged to have ever had its principal place of business in New York. Compl. ¶ 54. Forest Laboratories, Inc. no longer exists; it was later rolled into Forest Laboratories, LLC, which merged into Allergan Sales, LLC. *See* Declaration of Brian Fong ¶¶ 15–17, ECF No. 81-1. One other defendant (Watson Laboratories, Inc. (NY)) is alleged to be "organized and existing under the laws of the State of New York." Compl. ¶ 87. In light of those allegations, Forest Laboratories, Inc., Forest Laboratories, LLC, Allergan Sales, LLC, and Watson Laboratories, Inc. do not join this motion.

Aside from those four defendants, EPPs do not allege that any of the remaining 28 Nonresident Defendants is incorporated in or has its principal place of business in New York. Nor does it allege that any of the Nonresident Defendants even entered the state or otherwise directed activities toward New York. At most, the EPPs allege that some of the Nonresident Defendants were counterparties to settlement agreements with Forest Laboratories, Inc., which was a New York resident at the time the agreements were signed. *See, e.g.*, Compl. ¶ 38 (alleging that "[e]ach of the Generic Defendants . . . negotiated . . . with the then-New York headquartered Forest Defendants"); *id.* ¶ 41 ("It was foreseeable to the Generic Defendants . . . that Forest was negotiating and implementing the settlement agreements . . . from New York"). Those settlement agreements resolved patent lawsuits that were pending in Delaware and Illinois, and which otherwise had no alleged connection to this state. *Id.* ¶ 189 & nn.101–107.

EPPs assert 86 state-law claims under the laws of 32 different jurisdictions. *See* Compl., Counts I–IV. Only two of those claims are brought under New York law.[2] The other 84 Non-New York Claims are based on alleged injuries arising from transactions that occurred in other states.

---

[2] Counts II and III each includes a single claim under New York law.

There are seven named plaintiffs identified in the EPPs' complaint. Two of those plaintiffs—UFCW Local 1500 Welfare Fund and Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees' Benefit Fund (together "the New York Plaintiffs")—are based in New York and at least minimally allege injuries from Bystolic purchases in New York. *See* Compl. ¶¶ 48, 53. Nonresident Defendants do not dispute that this Court has personal jurisdiction over them with regard to the New York Plaintiffs' claims under New York law.

Instead, this motion is aimed at the Non-New York Claims brought by the other five named EPPs (the "Nonresident Plaintiffs") that reside in other states and allege injuries arising from transactions in other states:

- Plaintiff Mayor and City Council of Baltimore is a municipal government in Maryland. Compl. ¶ 47. It alleges that it paid for Bystolic bought from pharmacies in 20 different states (but not from a pharmacy in New York). *Id.*

- Plaintiff Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund ("FOP") is based in Florida. Compl. ¶ 50. FOP alleges that it paid for Bystolic bought from pharmacies in four states (but not from a pharmacy in New York). *Id.*

- Plaintiff Law Enforcement Health Benefits, Inc. ("LEHB") is a voluntary employee benefit plan from Pennsylvania. Compl. ¶ 45. LEHB alleges that it paid for Bystolic bought from pharmacies in five different states (but not from a pharmacy in New York). *Id.*

- Plaintiff Teamsters Local No. 1150 Prescription Drug Benefit Plan ("Teamsters Local No. 1150") is from Connecticut. Compl. ¶ 51. Teamsters Local alleges that it paid for Bystolic bought from pharmacies in three states (but not from a pharmacy in New York). *Id.*

- Plaintiff Teamsters Western Region & Local 177 Health Care Plan ("Teamsters Western") is an Arizona-based health and welfare plan. Compl. ¶ 49. Teamsters Western alleges that it paid for Bystolic bought from pharmacies in 28 different states. *Id.* Teamsters Western is the only Nonresident Plaintiff that identifies New York as among the states where one of its members purchased Bystolic. *Id.*

EPPs barely mentioned New York in their original complaint. After the Nonresident Defendants moved to dismiss for lack of personal jurisdiction, EPPs amended their complaint to insert scattered references to New York in hopes that they could manufacture a link between the

Nonresident Defendants and this forum. But for all the reasons discussed below, EPPs fail to show that the Nonresident Defendants have minimum contacts with New York sufficient to give this Court jurisdiction over their Non-New York Claims, all of which arise from transactions that occurred outside the state.

## LEGAL STANDARD

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). When assessing personal jurisdiction, "the court must look first to the long-arm statute of the forum state, in this instance New York." *Id.* (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Id.*

"Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litigation*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). "*[E]ach named plaintiff*" must establish jurisdiction over *each defendant*. *Lincoln v. Ford Motor Co.*, 2020 WL 5820985, at *4 (D. Md. Sept. 29, 2020) (emphasis added); *see also Sharpe v. Puritan's Pride, Inc.*, 2019 WL 188658, at *4 (N.D. Cal. Jan. 14, 2019) ("Requiring *each named plaintiff* to establish specific personal jurisdiction . . . is the proper approach under *BMS* and its precedents." (emphasis added)). And each named plaintiff must do so "with respect to *each claim asserted*." *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 479 (E.D.N.Y. 2019) (emphasis added); *see also Dow Corning Corp. v. RSI Silicon Prods., LLC*, 2010 WL 5723428, at *5 (E.D. Mich. Nov. 15, 2010) ("[A] court must find a basis to exercise jurisdiction over the defendant with respect to *each individual claim*." (emphasis added)).

**ARGUMENT**

The Due Process Clause bars courts from exercising personal jurisdiction over a nonresident defendant for claims arising outside the forum state. *Bristol-Myers*, 137 S. Ct. at 1780–82. This Court lacks personal jurisdiction over Nonresident Defendants with respect to the 84 Non-New York Claims.

**A.   Nonresident Defendants are not subject to general jurisdiction.**

Personal jurisdiction can be either "general" or "specific." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). There can be no dispute that Nonresident Defendants are not subject to general jurisdiction in New York. General jurisdiction over a corporation exists only if its contacts with the forum are "so continuous and systematic" that the corporation "is fairly regarded as at home" in the state. *Daimler AG v. Bauman,* 134 S. Ct. 746, 760 (2014). "[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *SPV OSUS*, 882 F.3d at 343; *see also Daimler AG,* 134 S. Ct. at 760. EPPs do not allege that any Nonresident Defendant is incorporated or has its principal place of business in New York.

**B.   Nonresident Defendants are not subject to specific jurisdiction.**

Absent general jurisdiction, EPPs must establish that the Court has specific jurisdiction over each defendant as to "each claim asserted." *Madison Stock Transfer*, 368 F. Supp. 3d at 479. To do so, they must plead facts showing (i) that each defendant has minimum contacts with the forum and (ii) that each individual claim "arises out of or relates to [those] contacts." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011).

The relevant location in an overcharge case is "where the plaintiffs were [allegedly] overcharged." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 586 (E.D. Tenn. 2014). For health plans, that is the state where the payment was processed (generally the company's

principal place of business), not the state where the drug was dispensed. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.,* 392 F. Supp. 2d 597, 611 n.85 (S.D.N.Y. 2005); *In re K-Dur Antitrust Litig.,* 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008). Applying that principle here, none of the five Nonresident Plaintiffs was injured in New York given that they would have processed payments in their own home states (Arizona, Connecticut, Florida, Maryland, and Pennsylvania). Even if the location where a drug was dispensed were relevant, Teamsters Western is the only Nonresident Plaintiff that allegedly paid for Bystolic dispensed by a New York pharmacy. Inasmuch as the Court finds that allegation meaningful, it would save only Teamsters Western's New York claim, but would not permit Teamsters Western (or any other Nonresident Plaintiff) to assert claims under other states' laws for purchases that occurred outside New York.

The Supreme Court's 2017 *Bristol-Myers* decision confirms that courts do not have personal jurisdiction over a nonresident defendant for claims brought by a nonresident plaintiff alleging injuries that occurred outside the forum state. In *Bristol-Myers*, hundreds of plaintiffs sued Bristol-Myers Squibb in California alleging that they were harmed when they ingested Plavix. Most plaintiffs were not California residents and had not purchased Plavix in California. *Bristol-Myers*, 137 S. Ct. at 1778, 1781. The Supreme Court held that the California state court lacked personal jurisdiction over Bristol-Myers for the claims brought by those nonresident plaintiffs who neither purchased the product in the forum state nor alleged an injury suffered in California. The Court explained that, to establish personal jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers*, 137 S. Ct. at 1780 (*quoting Goodyear,* 564 U.S. at 919). The existence of regular in-state sales by the defendant was not enough. *Bristol-Myers,* 137 S. Ct. at 1781 (*quoting Goodyear,* 564 U.S. at 931 n.6). Nor was it enough that "*other* plaintiffs were

7

prescribed, obtained, and ingested [the product] in [the forum state]." *Id.* (emphasis in original). "What is needed . . . is a connection between the forum and the specific claims at issue." *Id.* at 1781.

Although *Bristol-Myers* involved a "mass" action, this Court has recognized that "[t]he overwhelming majority of federal courts have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions."[3] *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 235–36 (S.D.N.Y. 2020) (quoting *Sloan v. General Motors LLC*, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019)). Although some courts have suggested there is a "split" as to whether *Bristol-Myers* extends to class actions, the so-called split concerns whether the decision applies to claims by unnamed members—not whether it applies to the named plaintiffs' claims. *See, e.g.*, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("*the named representatives must* be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so") (emphasis added); *Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *7 (S.D.N.Y. Sep. 20, 2021) (applying *Bristol-Myers* to the named plaintiffs' claims but holding that the "unnamed class members, who may or may not ever become parties to this action, are irrelevant to the question of specific jurisdiction"). This motion does not concern the unnamed class members; it focuses exclusively on the Non-New York Claims by Nonresident *Named* Plaintiffs.

---

[3] *See also Stacker v. Intellisource, LLC*, 2021 WL 2646444, at *8 (D. Kan. June 28, 2021) ("While there are differences between *Bristol-Myers'* mass action and a Rule 23 nationwide class action, the court agrees that the due process concerns recognized in *Bristol-Myers* and other Supreme Court precedent would foreclose a nationwide class action that is not limited to a nonresident defendant's conduct in the forum state."); *Roy v. FedEx Ground Package Sys.*, 353 F. Supp. 3d 43, 56–57 (D. Mass. 2018) ("District courts generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over *named plaintiffs* in federal class actions.") (emphasis added) (collecting cases).

In *Lugones*, for example, the defendant faced class-action claims by ten named plaintiffs, including five New York residents and five residents of other states. Applying *Bristol-Myers*, Judge Failla held that this Court "cannot exercise specific jurisdiction over the claims brought by the [five] named Plaintiffs who lack ties to New York." *Lugones*, 440 F. Supp. 3d at 235. Those plaintiffs "d[id] not claim that they purchased Defendant's [product] in New York or that they were exposed to Defendant's marketing or advertising in New York." *Id.* Instead, they alleged only that the defendant sold its product to others in New York, which was insufficient to establish personal jurisdiction over the nonresident named plaintiffs' individual claims.

Similarly, in *Spratley v. FCA US LLC*, the court dismissed claims brought by six (out of eight) named plaintiffs who were "not New York residents" and "did not purchase [the product] in New York." 2017 WL 4023348, at *6 (N.D.N.Y. Sept. 12, 2017). Applying *Bristol-Myers*, the court held that the six nonresident plaintiffs had not shown that the nonresident defendants had sufficient contacts with New York because their purchases (and therefore their injuries) occurred in other states. *Id.* Many other courts in this district and across the country have reached the same conclusion. *See, e.g.*, *Smith v. Apple, Inc*., 2022 WL 313874, at *4 (S.D.N.Y. Feb. 2, 2022) (rejecting argument that *Bristol-Meyers* does not apply to federal class actions and holding that the Court lacked personal jurisdiction over South Carolina named plaintiffs' claims because they were injured in transactions that occurred outside New York); *Chizniak v. CertainTeed Corp.*, 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020) (dismissing claims by out-of-state plaintiffs who did "not allege that they purchased their vinyl siding in New York or that they suffered any injury in this state"); *Siegfried v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 2778107, at *5 (E.D. Mo. June 27, 2017) (dismissing claims by "the eighty-six non-Missouri plaintiffs" injured outside the forum state).

The same reasoning applied in *Lugones*, *Spratley*, *Smith*, *Chizniak*, *Siegfried*, and many other cases[4] applies here. Nonresident Plaintiffs did not purchase Bystolic in New York and did not suffer any injury in New York. Nothing allows them to force the Nonresident Defendants to defend against a lawsuit in New York that seeks to recover damages under the laws of other states for injuries that allegedly occurred in other states.[5]

### C.  EPPs' creative pleading cannot cure the jurisdictional defects.

EPPs sprinkle references to "New York" throughout the complaint in hopes of manufacturing jurisdiction where none exists. But haphazard references to New York are not enough to establish jurisdiction over Nonresident Defendants for EPPs' Non-New York Claims.

### 1.  The doctrine of pendent personal jurisdiction, if it still exists, does not apply in this case.

EPPs first assert that because the Court has personal jurisdiction over their single Sherman Act claim for injunctive relief, the Court should exercise *pendent* personal jurisdiction over 84 state-law claims that have no nexus to New York. *See* Compl. ¶ 36. Pendent personal jurisdiction is a discretionary doctrine that allows a court with jurisdiction over certain federal claims (those subject to nationwide service of process) to also exercise jurisdiction over related state-law claims

---

[4] *See also Klein v. Parker Univ.*, 2021 WL 5414327, at *2 (N.D. Cal. Apr. 29, 2021) ("Sifting through the doctrinal confusion, with particular attention to the few appellate courts that have weighed in, this much is clear: 'named [class] representatives must be able to demonstrate either general or specific jurisdiction[.]' Here, the non-resident named plaintiffs have not done so. . . . [T]hese plaintiffs' claims . . . must be dismissed.").

[5] After *Bristol-Myers*, some courts initially questioned its application to cases arising under federal question jurisdiction. *Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018). But those decisions, which have fallen out of favor, do not apply where a plaintiff, like plaintiffs here, invoke jurisdiction under a state long-arm statute. *Napoli-Bosse v. GM LLC*, 453 F. Supp. 3d 536, 542 (D. Conn. 2020). That reasoning also does not apply where a plaintiff alleges subject matter jurisdiction under the Class Action Fairness Act, as EPPs allege here. Compl. ¶ 30; *Sloan*, 2019 WL 6612221, at *8 n.3 (explaining that "CAFA . . . does not confer federal question jurisdiction" and thus would not provide a basis to distinguish the due-process principles outlined in *Bristol-Myers*).

that arise from a common nucleus of fact. If the pendent personal jurisdiction doctrine even survived *Bristol-Myers*, and there is reason to believe it did not,[6] it "is a doctrine of discretion, not of plaintiff's right" and it "need not be exercised in every case in which it is found to exist." *IUE AFL-Cio Pension Fund v. Hermann* 9 F.3d 1049, 1056, 1059 (2d Cir. 1993).

It would make no sense to apply the pendent personal jurisdiction doctrine here. EPPs' only federal claim is a claim for injunctive relief. But there is no injunctive relief that the Court can issue because the challenged settlement agreements gave the generic defendants the right to launch on September 17, 2021. Compl. ¶ 7. That date passed more than seven months ago, and EPPs acknowledge that several generic versions of Bystolic are already on the market. *Id.* ¶ 75 (Alkem); ¶ 83 (ANI). For that reason, EPPs lack standing to seek injunctive relief (or the injunctive relief claim is moot). *See* Defendants' Rule 12(b)(6) Motion to Dismiss EPPs' Second Amended Complaint at 4–5. EPPs' invalid federal claim cannot support application of pendant personal jurisdiction over 84 Non-New York Claims. *Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *5 (N.D. Cal. May 19, 2021) (declining to apply pendent personal jurisdiction because "the sole federal claim in this case is subject to dismissal").

But even if the lone federal injunctive-relief claim is not dismissed, it would flaunt the due-process principles reaffirmed in *Bristol-Myers* to allow a tenuous federal claim for injunctive relief to override due-process principles and allow this Court to exercise jurisdiction over 84 non-New York damages claims that will substantially predominate over any injunctive relief. *Cf. Langer v.*

---

[6] *See, e.g.*, *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874–75 (N.D. Ill. 2017) ("[E]ven if the doctrine [of pendent personal jurisdiction] at one time permitted the court to exercise personal jurisdiction over a claim like Pearce's it no longer does in light of *Bristol-Myers*."). As Justice Sotomayor acknowledged during oral argument, a decision dismissing non-resident plaintiffs' claims in *Bristol-Myers* (which is what the majority opinion did) would "destroy[] pendent personal jurisdiction on every level." Transcript of Oral Argument at 5, *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017) (No. 16-466).

*Honey Baked Ham, Inc.*, 2020 WL 6545992, at *7–10 (S.D. Cal Nov. 6, 2020). Moreover, exercising pendent personal jurisdiction here would not mean including "additional claims by a single plaintiff" but instead "burdening [defendants] with the innumerable claims of innumerable other plaintiffs with no connection to the forum." *Carter v. Ford Motor*, 2021 WL 1165248, at *11, *15 (S.D. Fla. Mar. 26, 2021). For those reasons, the Court should decline to exercise its discretion to apply the doctrine of pendent personal jurisdiction. *See Spratley,* 2017 WL 4023348, at *7–8 (questioning the viability of the "pendent personal jurisdiction" doctrine but noting that the rule "is discretionary" so "even if the Court were to have the authority to exercise pendent personal jurisdiction over the out-of-state Plaintiffs' claims, the Court declines to do so").

### 2.   New York's long-arm statute does not save EPPs' Non-New York Claims.

Plaintiffs next allege that the Court has specific personal jurisdiction over all claims under CPLR § 302(a) (New York's long-arm statute). But even if EPPs could satisfy the long-arm statute, this Court still cannot exercise personal jurisdiction where doing so violates constitutional due process principles. The Second Circuit has held that "some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Thus, even "[i]f the exercise of jurisdiction is appropriate under [the long-arm] statute, the court must [still] decide whether such exercise comports with the requisites of due process." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). For all the reasons stated, the due process principles outlined in *Bristol-Myers* forbid an out-of-state plaintiff from bringing claims against nonresident defendants when those claims arise from transactions outside the forum State. If New York's long-arm statute says otherwise, it must give way to the U.S. Constitution.

But Plaintiffs' allegations don't even satisfy the long-arm statute. To support their invocation of the long-arm statute, EPPs make a conclusory allegation that "each of the Generic

Defendants engaged in and committed at least one overt act in furtherance of the conspiracy, which was conceived, planned, and implemented in New York." Compl. ¶ 37. That allegation does not state that any "overt act" took place in New York. But if that is what Plaintiffs intended, the next sentence makes clear that insofar as EPPs are claiming an "overt act" occurred in New York, the only thing they can point to is the fact that one counterparty to the settlement agreement (Forest Laboratories, Inc.) had offices in New York when the agreements were signed in 2012. *Id.*; *see also, e.g.*, *id.* ¶ 38 (describing alleged conspiracy with "then-New York headquartered Forest"). That is not enough. "[T]he mere presence of one conspirator [in the forum] would not be enough to confer personal jurisdiction over another alleged conspirator." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F. 4th 103, 124–25 (2d Cir. 2021) (internal quotations omitted); *see also Kaplan v. Hezbollah*, 2022 U.S. Dist. LEXIS 35820, at *15 (E.D.N.Y. Feb. 28, 2022) (finding no conspiracy jurisdiction, because there was no link between what "actually injured Plaintiffs" and the co-conspirator's actions in the forum).

Courts in this district and across the country routinely hold that "[m]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 344 (5th Cir. 2004); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 745 (2d Cir. 2020) ("[I]t is elementary that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum."); *Narrative Ark Ent. LLC v. Archie Comic Publ'ns, Inc.*, 2017 WL 3917040, at *8 (S.D.N.Y. Sept. 5, 2017) ("[T]he mere fact that a non-domiciliary enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts, unless the purpose of the contract is to project the

non-domiciliary into the New York market.").[7] Instead, the Court must examine things like "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in assessing whether a contract with a resident of the forum state is sufficient to establish personal jurisdiction over a nonresident. *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 916 F. Supp. 1324, 1333 (S.D.N.Y. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)).

Plaintiffs allege none of those things. The challenged settlement agreements resolved pending patent lawsuits that were filed in Delaware and Illinois. EPPs do not allege that Nonresident Defendants negotiated those settlement agreements in New York—or even that any of them set foot in the state. Nor do they allege that those agreements created any ongoing performance obligations in New York. At most, EPPs allege that settlement agreements were entered "for the purpose of ensuring all the other Generic Defendants would also delay market entry in New York . . . *and all other states*." Compl. ¶ 39 (emphasis added). If that allegation were sufficient, drug companies would be subject to universal nationwide jurisdiction in every state in every pay-for-delay case regardless of whether there was a single alleged transaction that took place in the state. Due process and *Bristol-Myers* forbid that result.

Plaintiffs try to dress up the New York allegations (*see* Compl. ¶¶ 38–42), but in substance they allege only that one counterparty to the settlement agreements was a New York resident. The fact that Forest Laboratories, Inc.—which does not join this motion—once had its principal place of business in New York does not mean that Nonresident Defendants that executed contracts with

---

[7] *See also Mellon Bank PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident."); *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir. 1991) ("[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident.").

Forest Laboratories have sufficient minimum contacts with New York to support jurisdiction over claims alleging inflated prices on transactions outside the state.

### 3. Choice of law provisions in the settlement agreements are irrelevant.

Finally, Plaintiffs allege that several of the challenged agreements had a New York choice-of-law provision. Compl. ¶ 43. But this case does not involve a dispute under the agreements where a choice-of-law or forum-selection provision would be triggered. EPPs are not disputing a term in the settlement agreements or trying to enforce the terms of those agreements. Those provisions are irrelevant. Moreover, the Supreme Court has held that a forum selection clause "standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. *Burger King* concerned an alleged breach of the underlying contract containing the forum selection clause. The argument is even weaker here where EPPs are not asking the Court to interpret or enforce the challenged agreements. That *certain* defendants negotiated to use New York law to resolve disputes about the enforcement of the agreement in no way justifies this Court exercising jurisdiction over EPPs' Non-New York Claims in this case.

### CONCLUSION

This Court lacks personal jurisdiction over Nonresident Defendants for claims brought by the Nonresident Plaintiffs under the laws of other states. The Court should dismiss the Non-New York Claims with prejudice.

Dated: April 19, 2022                                    Respectfully submitted,

/s/ Mark Gidley
J. Mark Gidley
Peter J. Carney (pro hac vice)
Eric Grannon (pro hac vice)
Adam Acosta (pro hac vice)
Celia McLaughlin (pro hac vice)
Holly Letourneau (pro hac vice)
Kelly Newman
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005-38007
Tel: (202)-626-3600
Fax: (212)-354-8113
mgidley@whitecase.com
pcarney@whitecase.com
egrannon@whitecase.com
adam.acosta@whitecase.com
cmclaughlin@whitecase.com
hletourneau@whitecase.com
kelly.newman@whitecase.com

*Counsel for AbbVie, Inc., Allergan Inc., Allergan USA, Inc., Watson Pharmaceuticals Inc. (later known as Actavis, Inc.)*

/s/ Devora Allon
Devora W. Allon. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-5697
Fax: (212)-446-6460
devora.allon@kirkland.com

Jay P. Lefkowitz. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-4970
Fax: (212)-446-4900
lefkowitz@kirkland.com

*Counsel for Torrent Pharma, Inc.*

/s/ Ahmed M.T. Riaz
Ahmed M.T. Riaz
**ARENTFOX SCHIFF LLP**

/s/ Christopher Holding
Christopher T. Holding (pro hac vice)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: (617)-570-1753
Fax: (617)-523-1231
cholding@goodwinlaw.com

*Counsel for Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.), Watson Laboratories, Inc., (CT), Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc.*

/s/ Teresa Bonder
Teresa T. Bonder (pro hac vice)
**ALSTON & BIRD LLP**
560 Mission Street, Ste. 2100
San Francisco, CA 94105
Tel: (415)-243-1000
Fax: (415)-243-1001
teresa.bonder@alston.com

Matthew D. Kent (pro hac vice)
Andrew Hatchett (pro hac vice)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, GA 30309
Tel: (404)-881-7000
Fax: (404)-881-7777
matthew.kent@alston.com
andrew.hatchett@alston.com

Natalie Christine Clayton
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212)-210-9573
Fax: (212)-922-3845
natalie.clayton@alston.com

*Counsel for Glenmark Generics Inc., USA (n/k/a Glenmark Pharmaceuticals Inc., USA), Glenmark Generics Ltd. (n/k/a Glenmark Pharmaceuticals Ltd.), Glenmark*

1185 Avenue of the Americas
Suite 3000
New York, NY 10036
(212)-753-5000
ahmed.riaz@afslaw.com

Suzanne L. Wahl (pro hac vice)
**ARENTFOX SCHIFF LLP**
350 S. Main St., Suite 210
Ann Arbor, MI 48104
(734)-222-1500
suzanne.wahl@afslaw.com

*Counsel for Indchemie Health Specialties Private Ltd., Alkem Laboratories Ltd., Ascend Laboratories LLC*

*/s/ Eileen M. Cole*
Eileen M. Cole
John "Jay" Jurata, Jr. (*pro hac vice*)
James Tierney (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Tel: (202)-339 8400
Fax: (202)-339 8500
eileen.cole@orrick.com
jjurata@orrick.com
jtierney@orrick.com

*Counsel for Defendant ANI Pharmaceuticals, Inc.*

*Pharmaceuticals Ltd., and Glenmark Pharmaceuticals S.A. (n/k/a Ichnos Sciences S.A.)*

*/s/ Jonathan D. Janow*
Jonathan D. Janow
**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, N.W., Suite 300
Washington, DC 20006-3807
Tel: (202) 452-6057
Fax: (202) 452-7989
jonathan.janow@bipc.com

Abigail F. Coster
**BUCHANAN INGERSOLL & ROONEY PC**
640 5th Avenue, 9th Floor
New York, NY 10019-6102
Tel: (212) 440-4419
Fax: (212) 440-4401
abigail.coster@bipc.com

*Counsel for Defendants Hetero Labs Ltd., Hetero Drugs Ltd., and Hetero USA Inc.*

*/s/ Tobias Snyder*
Tobias Snyder
Marc Lewis
Newton Oldfather
**LEWIS & LLEWELLYN LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 800-0590
Fax: (415) 390-2127
tsnyder@lewisllewellyn.com
mlewis@lewisllewellyn.com
noldfather@lewisllewellyn.com

*Counsel for Defendants Amerigen Pharmaceuticals Ltd. and Amerigen Pharmaceuticals Inc.*