**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BYSTOLIC ANTITRUST LITIGATION | Lead Case No. 1:20-cv-05735-LJL |
| This Document Relates to: All Actions | |

**PLAINTIFFS' OPPOSITION TO TEVA PHARMACEUTICAL INDUSTRIES LTD.'S
MOTION TO DISMISS THE FEBRUARY 2022 COMPLAINTS UNDER RULE 12(b)(2)**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 2

    A.     Teva Ltd. Dominates and Controls Teva USA ...................................... 2

    B.     Teva Assumed Watson's Liabilities ...................................................... 6

III.   LEGAL STANDARD .................................................................................... 7

IV.    ARGUMENT ................................................................................................. 7

    A.     The Clayton Act and the New York Long Arm Statute Constitute
         Statutory Authority for the Exercise of Jurisdiction Over Teva Ltd. ..... 7

         1.     Clayton Act ................................................................................ 8

         2.     New York Long Arm Statute ..................................................... 10

    B.     Plaintiffs Make a *Prima Facie* Showing That Teva Ltd. Is Subject to
         Personal Jurisdiction Based on Its Control Over Teva USA .............. 11

         1.     Teva Ltd. Is Subject to Jurisdiction Based on the Conduct of Its
              United States Agent ................................................................... 12

         2.     Teva USA Is a Mere Department of Teva Ltd. .......................... 14

         3.     Teva Ltd. Is Subject to Jurisdiction As Watson's Successor. ..... 18

    C.     The Exercise of Jurisdiction Over Teva Ltd. Comports with the
         Constitution ......................................................................................... 21

V.     IN THE ALTERNATIVE, THE COURT SHOULD ALLOW PLAINTIFFS TO
    TAKE JURISDICTIONAL DISCOVERY FROM TEVA LTD. WHILE THE
    CASE PROCEEDS AGAINST THE OTHER DEFENDANTS ..................... 25

VI.    CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank*,
   989 F.2d 76 (2d Cir. 1993) ............................................................................................ 7

*Advance Coating Tech., Inc. v. LEP Chem. Ltd.*,
   142 F.R.D. 91 (S.D.N.Y. 1992) ................................................................................... 14

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
   585 F.3d 696 (2d Cir. 2009) ................................................................................. 18, 20

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
   782 F. Supp. 215 (S.D.N.Y. 1992) .............................................................................. 21

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
   480 U.S. 102 (1987) ............................................................................................... 22, 23

*AT & S Transp., LLC v. Odyssey Logistics & Tech. Corp.*,
   803 N.Y.S.2d 118 (App. Div. 2d Dep't 2005) ............................................................. 20

*Carney v. Beracha*,
   996 F. Supp. 2d 56 (D. Conn. 2014) ............................................................................. 7

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998) .......................................................................................... 22

*City and Cty. of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................................. passim

*Colon v. Multi-Pak Corp.*,
   477 F. Supp. 2d 620 (S.D.N.Y. 2007) ......................................................................... 21

*Convergen Energy LLC v. Brooks*,
   2020 WL 5549039 (S.D.N.Y. Sept. 16, 2020) ............................................................ 12

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) ............................................................................... 8, 11, 12

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ........................................................................................ 10

*Dennis v. JPMorgan Chase & Co.*,
   343 F. Supp. 3d 122 (S.D.N.Y. 2018) ......................................................................... 10

*Dorfman v. Marriott Int'l Hotels, Inc.*,
  2002 WL 14363 (S.D.N.Y. Jan. 3, 2002)..................................................................... 8, 11, 14, 16

*E. Claiborne Robins Co., Inc. v. Teva Pharm. Indus. Ltd.*,
  2020 WL 5749936 (E.D. Va. Sept. 25, 2020) ..................................................................... 13, 21

*Eastman Kodak Co. v. S. Photo Materials Co.*,
  273 U.S. 359 (1927) ..................................................................................................................... 8, 9

*ESI, Inc. v. Coastal Corp.*,
  61 F. Supp. 2d 35 (S.D.N.Y. 1999)......................................................................................... 15, 16

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
  711 F. Supp. 730 (S.D.N.Y. 1989).................................................................................................. 9

*Fitzgerald v. Fahnestock & Co.*,
  730 N.Y.S.2d 70 (App. Div. 1st Dep't 2001) ............................................................................... 20

*Fly Shoes s.r.l. v. Bettye Muller Designs Inc.*,
  2015 WL 4092392 (S.D.N.Y. July 6, 2015) ................................................................................. 18

*Frummer v. Hilton Hotels Int'l, Inc.*,
  227 N.E.2d 851 (N.Y. 1967) ........................................................................................................ 12

*Frummer v. Hilton Hotels Int'l, Inc.*,
  229 N.E.2d 696 (N.Y. 1967) ........................................................................................................ 12

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
  667 F. Supp. 2d 308 (S.D.N.Y. 2009)..................................................................................... 12, 15

*Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A.*,
  128 F. Supp. 2d 86 (D. Conn. 2001) .............................................................................................. 7

*Gundlach v. IBM Japan, Ltd.*,
  983 F. Supp. 2d 389 (S.D.N.Y. 2013) .......................................................................................... 17

*Gundlach v. Int'l Bus. Machs. Inc.*,
  594 F. App'x 8 (2d Cir. 2014) ...................................................................................................... 17

*H. Daya Int'l, Co. v. Do Denim LLC*,
  2022 WL 974382 (S.D.N.Y. Mar. 31, 2022) ............................................................................... 20

*Hilton Hotels (UK) Ltd. v. Frummer*,
  389 U.S. 923 (1967) ...................................................................................................................... 12

*Hume v. Lines*,
  2016 WL 6524285 (W.D.N.Y. Nov. 3, 2016)......................................................................... 14, 16

*In re Aggrenox Antitrust Litig.,*
   94 F. Supp. 3d 224 (2015) ............................................................................... 10

*In re Foreign Exch. Benchmark Rates Antitrust Litig.,*
   2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .......................................... 11

*In re Nat'l Prescription Opiate Litig.,*
   2019 WL 3553892 (N.D. Ohio Aug. 5, 2019) ....................................... 1, 16, 17, 25

*In re Propranolol Antitrust Litig.,*
   249 F. Supp. 3d 712 (S.D.N.Y. 2017) ..................................................... 21

*In re Tamoxifen Citrate Antitrust Litig.,*
   262 F. Supp. 2d 17 (E.D.N.Y. 2003) ................................................ passim

*In re Vitamin C Antitrust Litig.,*
   2012 WL 2930109 (E.D.N.Y. July 18, 2012) .......................................... 7, 9, 11

*Janzini v. Nissan Motor Co., Ltd.,*
   148 F.3d 181 (2d Cir. 1998) .................................................................. 16

*Kidz Cloz, Inc. v. Officially for Kids, Inc.,*
   2002 WL 1586877 (S.D.N.Y. July 17, 2002) ...................................... 18, 20

*Kreutter v. McFadden Oil Corp.,*
   522 N.E.2d 40 (N.Y. 1988) ................................................................... 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
   732 F.3d 161 (2d Cir. 2013) .................................................................. 24

*Charles Schwab Corp. v. Bank of Am. Corp.,*
   883 F.3d 68 (2d Cir. 2018) .............................................................. 12, 21

*Linde v. Arab Bank, PLC,*
   262 F.R.D. 136 (E.D.N.Y. 2009) ........................................................... 17

*LPD New York, LLC v. Adidas Am., Inc.,*
   2017 WL 1162181 (E.D.N.Y. Mar. 27, 2017) ...................................... 14

*Manning v. Erhardt + Leimer, Inc.,*
   2020 WL 759656 (W.D.N.Y. Feb. 7, 2020) .......................................... 12

*Meteoro Amusement Corp. v. Six Flags,*
   267 F. Supp. 2d 263 (N.D.N.Y. 2003) ................................................... 15

*MM Global Servs. Inc. v. Dow Chem. Co.,*
   404 F. Supp. 2d 425 (D. Conn. 2005) ................................................. 9, 22

*Palmieri v. Estefan,*
   793 F. Supp. 1182 (S.D.N.Y. 1992) ................................................................. 17

*Payamps v. M & M Convenience Deli & Grocery Corp.,*
   2019 WL 8381264 (E.D.N.Y. Dec. 9, 2019) ...................................................... 18

*Powder Coating Consultants v. Powder Coating Inst.,*
   2009 WL 3418224 (D. Conn. Oct. 21, 2009)..................................................... 25

*Pyramyd Stone Int'l Corp. v. Crosman Corp.,*
   1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) ....................................................... 17

*Schumacher v. Richards Shear Co.,*
   59 N.Y.2d 239 (1983) ....................................................................................... 21

*Self Int'l (HK) Ltd. v. La Salle Nat'l Bank,*
   2002 WL 500372 (S.D.N.Y. Mar. 29, 2002) .................................................... 23

*Societe Anonyme Dauphitex v. Schoenfelder Corp.,*
   2007 WL 3253592 (S.D.N.Y. Nov. 2, 2007) .................................................... 21

*Star Lines, Ltd. v. Puerto Rico Mar. Shipping Auth.,*
   442 F. Supp. 1201 (S.D.N.Y. 1978)................................................................... 10

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,*
   31 F. App'x 738 (2d Cir. 2002)........................................................................ 25

*Thani v. Hanke,*
   2021 WL 1895033 (S.D.N.Y. May 11, 2021).................................................... 23

*Time Warner Cable, Inc. v. Networks Grp., LLC,*
   2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010) ............................................ 8, 11, 18

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,*
   571 F.3d 221 (2d Cir. 2009).............................................................................. 18

*United States v. Scophony Corp.,*
   333 U.S. 795 (1948) ...................................................................................... 9, 10

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.,*
   2021 WL 6200907 (E.D. Pa. Dec. 29, 2021) ................................................... 21

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
   751 F.2d 117 (2d Cir. 1984).............................................................................. 14

*Wash. State Inv. Bd. v. Odebrecht S.A.,*
   461 F. Supp. 3d 46 (S.D.N.Y. 2020).................................................................. 20

*Williamson v. Verizon Commc'ns Inc.*,
   2013 WL 227691 (S.D.N.Y. Jan. 22, 2013) ............................................................... 15

*WM Int'l, Inc. v. 99 Ranch Mkt. #601*,
   329 F.R.D. 491 (E.D.N.Y. 2019) ............................................................... 25

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................... 21, 22

**Statutes**

15 U.S.C. § 22 ............................................................... 8

**Rules**

N.Y. C.P.L.R. § 302(a) ............................................................... 8, 10, 21

N.Y. C.P.L.R. § 302(a)(1) ............................................................... 12

## I.      INTRODUCTION

Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") does not dispute this Court's jurisdiction. Accordingly, this Court has jurisdiction over Defendant Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), Teva USA's parent, by virtue of Teva Ltd.'s complete domination and control of its wholly owned subsidiary Teva USA. On the basis of this relationship, two courts recently denied motions to dismiss by Teva Ltd. for alleged lack of jurisdiction. *See City and Cty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 634-39 (N.D. Cal. 2020) ("*San Francisco*"); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 3553892, at *4-6 (N.D. Ohio Aug. 5, 2019) ("*Nat'l Opiate*"). Teva Ltd.'s similar motion to dismiss for lack of jurisdiction in this case should also be denied.

Plaintiffs in both *San Francisco* and *Nat'l Opiate* obtained jurisdictional discovery. While much of that discovery is under seal, Plaintiffs here expressly cited and incorporated the publicly available portions into their complaints.[1] At this stage, Plaintiffs need make only a *prima facie* showing that Teva Ltd. is subject to personal jurisdiction. Because Plaintiffs have made such a showing, Teva Ltd.'s motion to dismiss under Rule 12(b)(2) should be denied.

Teva Ltd. is no stranger to U.S. courts—it has filed scores of lawsuits in federal courts across the country, including at least fourteen in this District.[2] Teva Ltd. also has not contested jurisdiction in several similar reverse payment cases where it is or was a defendant, including in this District.[3] There is nothing unfair about requiring Teva Ltd. to litigate in this forum.

---

[1] *See*, *e.g.*, Direct Purchaser Class Pls.' Third Consol. and Am. Class Action Compl. ("TCAC"), ECF No. 373. As relevant to this motion, the other plaintiffs' complaints are substantially identical to the TCAC.

[2] *See* Ex. 1. Unless otherwise noted, cited exhibits are to the Declaration of Kimberly M. Hennings dated May 27, 2021, ECF No. 284 (exhibits are filed at ECF No. 284-1 to 284-11).

[3] *See* Defs.' Teva Pharms. USA, Inc. and Teva Pharm. Indus., Ltd.'s Answer to the First Am. Compl. and Request for Jury Trial at 1, *In re Namenda Indirect Purchaser Antitrust Litig.*, No.

Alternatively, Plaintiffs respectfully request leave to take jurisdictional discovery so that we may present the Court with the same type of evidence that was before the courts in *San Francisco* and *Nat'l Opiate*.

## II.     FACTUAL BACKGROUND

### A.     Teva Ltd. Dominates and Controls Teva USA

Teva Ltd. manufactures and sells pharmaceutical products in the United States through Teva USA. TCAC ¶ 57.[4] Teva USA obtains regulatory approval of Teva Ltd.'s generic pharmaceutical products in the United States and markets them nationwide. TCAC ¶ 57. Without Teva USA, Teva Ltd. could only sell its products in the United States—including New York—by establishing itself here and doing all the things that Teva USA does. TCAC ¶ 57.

Teva USA is financially dependent on Teva Ltd. Teva Ltd. serves as Teva USA's guarantor on revolving lines of credit. For example, Teva Ltd. guaranteed the loan used to acquire Allergan plc's generic products business (which, as explained below, included several

---

15-cv-6549 (S.D.N.Y. Feb. 4, 2020), ECF No. 377 (joint answer filed by "Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd. (collectively 'Teva')"); Answer of Teva Pharms. USA, Inc. and Teva Pharm. Indus., Ltd. to Compl. at 1, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-2409 (D. Mass. May 17, 2013), ECF No. 231 (same); Teva's Answer to Direct Purchaser Class Plaintiffs' Second Am. Consolidated Class Action Compl. and Jury Demand at 1, *In re Effexor Antitrust Litig.*, No. 11-cv-5479 (D.N.J. Feb. 15, 2018), ECF No. 469 (same); Answer of Teva Pharm. Indus. Ltd. and Teva Pharms. USA, Inc. to the Consolidated Am. Direct Purchaser Compl. at 1, *In re Lamictal Direct Purchaser Antitrust Litig.,* No. 12-cv-995 (D.N.J. Nov. 25, 2015), ECF No. 152 (same); Teva's Answer to Direct Purchaser Plaintiffs' Consolidated Class Action Compl. at 1, 8, *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa. Oct. 15, 2014), ECF No. 122 (same and admitting "that Teva is one the largest generic manufacturers of pharmaceuticals in the United States"); Teva Pharm. Indus. Ltd.'s Answer to the First Am. Compl., *Value Drug Co. v. Takeda Pharms. U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa. Apr. 13, 2022), ECF No. 225 (Teva Ltd.'s answer after electing not to renew its motion to dismiss for lack of personal jurisdiction following filing of the amended complaint). In each case, Teva Ltd. and Teva USA are, or were, represented by the same counsel.

[4] Citing Ex. 2 (Packaging, Tadalafil Tablets USP 2.5 mg); Ex. 3  (Packaging, Mesalamine Delayed-Release Capsules, 400 mg).

Watson entities named as defendants here). To complete the Allergan transaction, Teva Ltd. and Teva USA were co-borrowers under a $5.0 billion term loan and a $4.5 billion revolving credit facility, and Teva Ltd. served as Teva USA's guarantor for both. TCAC ¶ 58(b).[5]

Teva Ltd. wields substantial control over Teva USA's day-to-day activities. From routine transactions such as launching a product or entering into an important contract, to larger decisions such as whether to acquire another company, Teva Ltd. is immersed in Teva USA's business. TCAC ¶ 58(g), (h).[6] For example, Teva Ltd.'s Global Research and Development division controls Teva USA's "product formulation, design, and commercial execution," and reviews the profitability of Teva USA's products. TCAC ¶ 58(h).[7] Teva Ltd.'s Executive Vice President and Head of North America has facilitated the withdrawal of at least one FDA-approved Teva USA product. TCAC ¶ 58(h).

Teva Ltd. has fully integrated Teva USA into its organizational structure, and Teva Ltd. and Teva USA market themselves as "One global brand. One story. One Teva." TCAC ¶ 58(a).[8] Teva Ltd. sets policies to create a unified global appearance, including policies governing its subsidiaries' logos and color schemes. Teva USA is easily identified as a subsidiary of Teva Ltd.

---

[5] Citing Ex. 5 (Teva Pharmaceutical Industries, Ltd. Report of Foreign Private Issuer (Form 6-K), at Ex. 2.1 (Dec. 18, 2012)); Ex. 6 (Teva Pharmaceutical Industries, Ltd. Report of Foreign Private Issuer (Form 6-K), Ex. 99.1 (Nov. 16, 2015)). Further examples include Teva Ltd. and Teva USA's co-borrowing under a $3.0 billion revolving credit facility in 2012, as well as a $2.3 billion revolving credit facility in 2019. Teva Ltd. served as Teva USA's guarantor for each of these credit facilities. TCAC ¶ 58(b) (citing Ex. 5 (Teva Pharmaceutical Industries, Ltd. Report of Foreign Private Issuer (Form 6-K), at Ex. 2.1 (Dec. 18, 2012)); Ex. 8 (Teva Pharmaceutical Industries, Ltd. Current Report (Form 8-K), at Ex. 10.1 (Apr. 8, 2019))).

[6] Citing Ex. 4 (Teva Ltd. Rule 30(b)(6) Deposition of Doron Herman, Teva's Ltd.'s Senior Vice President, Head of Tax, *In re Nat'l. Prescription Opiate Litig.* No. 17-MD-2804 (N.D. Ohio June 20, 2019) (filed in *City and Cty. of San Francisco v. Purdue Pharma L.P.*, No. 18-cv-7591 (N.D. Cal. May 15, 2020) (ECF No. 207-1, Ex. 2)) ("Herman Dep."), at 74:22-80:19).

[7] Citing *San Francisco*, 491 F. Supp. 3d at 636.

[8] Citing Herman Dep. at 221:11-17.

because Teva Ltd. requires it to follow these policies. TCAC ¶ 58(a).[9]

Teva Ltd. imposes global publication policies on its subsidiaries. TCAC ¶ 58(i).[10] Teva USA must comply with these policies if it wishes to publish any scientific or medical information. TCAC ¶ 58(i).[11] Teva Ltd.'s drug safety department makes global decisions about safety issues related to Teva Ltd.'s products, and those decisions are binding on Teva USA. TCAC ¶ 58(j).[12] Teva Ltd.'s head of drug safety frequently travels to subsidiaries including Teva USA to implement safety standards. TCAC ¶ 58(j).[13]

Teva Ltd. imposes its global policies on its subsidiaries through its Chief Internal Auditor. TCAC ¶ 58(i).[14] Teva Ltd. has a team of employees that travels to Teva USA to audit its compliance with U.S. law, and the audits may result in adverse findings and recommended actions for Teva USA. Teva USA cannot challenge the audit's findings. TCAC ¶ 58(i).[15]

Teva Ltd.'s CEO is Kare Schultz. Mr. Schultz actively oversees the entire Teva Ltd. portfolio—including Teva USA—and has ultimate responsibility for allocating Teva resources, including Teva USA's. TCAC ¶ 58(f).[16] Teva Ltd. has implemented guidelines that allow it to control Teva USA's corporate structure, including its executive and subcommittee members. TCAC ¶ 58(e). With this power, Teva Ltd. controls Teva USA's core operations, such as its "marketing, administration, manufacturing, research and development, purchase of supplies,

---

[9] Citing Herman Dep. at 61:14-66:13.

[10] Citing Herman Dep. at 73:13-14, 144:19-21.

[11] Citing Herman Dep. at 356:9-357:24.

[12] Citing Herman Dep. at 291:22-292:14.

[13] Citing Herman Dep. at 361:15-19.

[14] Citing Herman Dep. at 114:20-115:8

[15] Citing Herman Dep. at 379:3-17.

[16] Citing *San Francisco*, 491 F. Supp. 3d at 636.

[and] finance" operations. TCAC ¶ 58(e).[17]

There is substantial overlap between the organizational structure and personnel of Teva Ltd. and Teva USA, which allows Teva Ltd. to control Teva USA's business. Teva Ltd. is organized into various global divisions, such as Legal, Brand and Communications, and Finance. Teva USA has corresponding divisions, but each is under the ultimate control of the corresponding division at Teva Ltd. TCAC ¶ 58(f).[18] At least four of the twelve Teva Ltd. corporate officers are Teva USA employees, further underscoring the common control of these two entities. TCAC ¶ 58(d).[19]

Teva Ltd. treats its subsidiaries' earnings as its own. It uses subsidiary cash flows to pay dividends and repurchase shares and controls and co-mingles its subsidiaries' receivables and collections. TCAC ¶ 58(c), (d).[20] A Teva Ltd.-controlled Special Purpose entity operates a receivables securitization program that exchanges receivables and collections for cash payments, thereby allowing Teva Ltd. to give its subsidiaries an advance on their receivables. *Id.* ¶ 58(c).[21]

Teva Ltd. and Teva USA also share intellectual property and have jointly filed lawsuits in United States courts to protect patents. TCAC ¶ 58(k).[22] Similarly, Teva Ltd. and Teva USA jointly filed suit in the District of New Jersey against another pharmaceutical company for an

---

[17] *San Francisco*, 491 F. Supp. 3d at 637.

[18] Citing Herman Dep. at 102:5-123:22.

[19] Citing Herman Dep. at 94:25-98:20.

[20] Citing *San Francisco*, 491 F. Supp. 3d at 636; Herman Dep. at 174:22-179:22.

[21] Citing *San Francisco*, 491 F. Supp. 3d at 636; Herman Dep. at 174:22-179:22.

[22] Citing, *e.g.*, First Am. Compl., *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, No. 08-cv-7611 (S.D.N.Y. Nov. 30, 2009), ECF No. 108 (patent infringement case involving a patent Teva Ltd. exclusively licensed, and for which Teva USA held an approved New Drug Application ("NDA")); Compl., *Teva Pharms. USA, Inc. v. Sandoz Inc.*, No. 17-cv-275 (D.N.J. Jan. 13, 2017), ECF No. 1 (patent infringement case involving a patent Teva USA exclusively licensed from Teva Ltd., and for which Teva USA held an approved NDA).

alleged breach of a settlement agreement. TCAC ¶ 58(k).[23]

### B.    Teva Assumed Watson's Liabilities

In 2015, Teva Ltd. designed and executed a Master Purchase Agreement with Allergan plc to acquire Defendant Watson,[24] which at the time was known as Actavis (a subsidiary of Allergan plc). The financial results stemming from the acquisition are reflected in Teva Ltd.'s financial statements, where Teva Ltd. takes credit for the benefits of the deal. TCAC ¶ 58.

The Master Purchase Agreement defined the "Buyer" as "Buyer Parent [Teva Ltd.] or any Affiliate or Subsidiary of Buyer Parent that Buyer Parent *designates* to purchase any of the Acquired Assets and/or are a party to any Ancillary Agreement." MPA § 1.1 (ECF No. 390-1, Decl. of Brian Shanahan Ex. A) (all emphases added unless stated otherwise). For Watson's U.S. assets, Teva Ltd. designated Teva USA to act on its behalf under the Master Purchase Agreement. *See* Teva Ltd. Br. at 16-17. Thus, when Teva Ltd. purchased Watson, it expressly agreed to assume Watson's liabilities and claims. TCAC ¶ 56.[25] Among those liabilities were those Watson incurred by entering into the allegedly unlawful reverse payment agreements that are the subject of this lawsuit. Teva Ltd. has done nothing to renounce Watson's unlawful conduct. In fact, through Teva USA, Teva Ltd. joined the conspiracy by continuing to refrain from launching or distributing a generic Bystolic product. TCAC ¶ 56.[26]

---

[23] Citing *Teva Pharm. Indus. Ltd. v. SmithKline Beecham Corp.*, No. 08-3706 (D.N.J. July 23, 2008).

[24] Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Watson Pharma, Inc., and Watson Pharmaceuticals Inc. are collectively "Watson".

[25] Citing Ex. 7 (Allergan plc, Quarterly Report (Form 10-Q) at Ex. 2.2 (Aug. 6, 2015) (Master Purchase Agreement dated as of July 26, 2015 by and between Allergan PLC and Teva Pharmaceutical Industries)).

[26] In the alternative, these facts show that under the direction and control of Teva Ltd., Teva USA assumed Watson's liabilities. TCAC ¶ 59.

## III.   LEGAL STANDARD

To find specific jurisdiction over Teva Ltd., "the Court must find statutory authority to exercise jurisdiction . . . [and] decide whether the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Constitution." *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, at *4 (E.D.N.Y. July 18, 2012) (citation omitted). "Where, as here, there has been no discovery on jurisdictional issues and the court is relying solely on the parties' pleadings and affidavits, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *Carney v. Beracha*, 996 F. Supp. 2d 56, 63 (D. Conn. 2014). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) (citations omitted). Thus, when a plaintiff's complaint and evidentiary submissions and "the defendant's affidavits conflict, the Court may provisionally accept [plaintiff's] disputed factual allegations as true." *Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 89-90 (D. Conn. 2001).

## IV.   ARGUMENT

Plaintiffs have made a *prima facie* showing that Teva Ltd. is subject to personal jurisdiction because it completely controlled and directed Teva USA in order to profit from the United States market, and joined and participated in the anticompetitive scheme at issue here through Teva USA.

### A.   The Clayton Act and the New York Long Arm Statute Constitute Statutory Authority for the Exercise of Jurisdiction Over Teva Ltd.

Teva USA does not contest jurisdiction. Under the Clayton Act or the New York Long

Arm Statute,[27] its parent Teva Ltd. is subject to jurisdiction if: (1) Teva USA is deemed to be the

agent of Teva Ltd.; (2) Teva USA is deemed to be the alter ego or a "mere department" of Teva

Ltd.; and/or (3) Teva Ltd. is a successor-in-interest to Watson. *See, e.g.*, *CutCo Indus., Inc. v.

Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (jurisdictional contacts of agent can be attributed to

principal under New York Long Arm Statute).[28]

### 1.   Clayton Act

Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may
> be brought not only in the judicial district whereof it is an inhabitant, but also in
> ***any district wherein it may be found or transacts business***; and all process in
> such cases may be served in the district of which it is an inhabitant, or wherever it
> may be found.

15 U.S.C. § 22 (emphasis added).

"This section thus provides both bases for venue and personal jurisdiction that

supplement the general venue and service of process provisions in the United States Code and

Federal Rules of Civil Procedure." *Tamoxifen*, 262 F. Supp. 2d at 21.[29] The Supreme Court has

long recognized that the "necessary effect" of the Clayton Act "was to enlarge the local

---

[27] *See* 15 U.S.C. § 22 and N.Y. C.P.L.R. § 302(a).

[28] *See also, e.g.*, *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111, at *6
(S.D.N.Y. Sept. 9, 2010) (plaintiffs adequately alleged successor in interest liability for
jurisdiction to attach to parent corporation under N.Y. Long Arm Statute); *In re Tamoxifen
Citrate Antitrust Litig.*, 262 F. Supp. 2d 17, 23 (E.D.N.Y. 2003) (applying agency and successor
liability standard to hold that jurisdiction attaches under the Clayton Act to parent corporation
based on the activities of its subsidiary); *Dorfman v. Marriott Int'l Hotels, Inc.*, 2002 WL 14363,
at *2 (S.D.N.Y. Jan. 3, 2002) (when a subsidiary functions as a mere department of the parent or
acts as the parent's agent, the parent is subject to jurisdiction under the N.Y. Long Arm Statute).

[29] *See also Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 370 (1927) ("Whether
or not the jurisdiction of the District Court was rightly sustained—which resolves itself into a
question whether the venue of the suit was properly laid in that court—depends upon the
construction and effect of section 12 of the Clayton Act.").

jurisdiction of the district courts so as to establish the venue of such a suit not only . . . in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein." *Eastman Kodak Co.*, 273 U.S. at 372-73; *see also MM Global Servs. Inc. v. Dow Chem. Co.*, 404 F. Supp. 2d 425, 432 (D. Conn. 2005) (same). "Courts within the Second Circuit analyze this provision as two separate but interrelated clauses: the words preceding the semicolon provide a basis for venue, and the words following the semicolon provide that if venue is proper pursuant to the venue clause, personal jurisdiction may be established through worldwide service of process." *Vitamin C*, 2012 WL 2930109, at *4 (citation omitted).

Teva Ltd. does not contest service of process, and courts have made clear that "transacts business" under the Clayton Act is to be broadly interpreted to best serve consumers and to hold accountable foreign corporations that benefit from United States markets:

> The Supreme Court has construed the term "transacts business" to mean "the practical and broader business conception of engaging in ***any substantial business operations***." In so doing, the Court condemned a restrictive interpretation that overly relied upon the "artful arrangement of agents' authority, or of their comings and goings, or of the geography of minute incidents in contracting" if that would bar an aggrieved person from establishing venue locally.[30]

The transacting business standard "means that under most circumstances, venue will be easier to satisfy under section 12 than under the general venue provisions[.] . . . Congress added the transacting business criterion in 1914 in order to provide plaintiffs with a larger number of forums in which to litigate their antitrust claims. The provision has been broadly interpreted with this goal in mind." *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 733 (S.D.N.Y. 1989) (citations and quotations omitted). Courts in this Circuit have long recognized that

---

[30] *Tamoxifen*, 262 F. Supp. 2d at 22 (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 807, 808 n.19 (1948)).

"determining whether a corporation is transacting business within the meaning of [the Clayton Act] requires a particularly pragmatic inquiry whose touchstone is the realities of commercial affairs . . . rather than the 'hairsplitting legal technicalities.' . . . Whether business is transacted in a district is to be determined by 'an appraisal of the unique circumstances of a particular situation.'" *Star Lines, Ltd. v. Puerto Rico Mar. Shipping Auth*., 442 F. Supp. 1201, 1204 (S.D.N.Y. 1978) (quoting *Scophony*, 333 U.S. at 808, 819). Thus, the "propriety of venue turns on the nature of the corporate defendant's business." *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 429 (2d Cir. 2005).

Here, Teva Ltd. transacts business in the United States through its wholly owned subsidiary, Teva USA. Teva USA does not act independently, but rather, acts under the complete control and direction of, and for the benefit of its corporate parent. As explained more fully below, under these circumstances, where (as here) a corporate subsidiary is subject to jurisdiction, jurisdiction may likewise be had over the corporate parent.[31]

### 2. New York Long Arm Statute

The New York Long Arm Statute applies to "any non-domiciliary . . . who in person *or through an agent*" transacts business within the state. N.Y. C.P.L.R. §302(a) (emphasis added). Like the jurisdictional analysis under the Clayton Act, New York law looks to the practical reality of the corporate activity, rather than artificial, formalistic limitations. As detailed above,

---

[31] Teva Ltd. relies on *In re Aggrenox Antitrust Litig*., 94 F. Supp. 3d 224, 256-57 (D. Conn. 2015), but there, the court declined to credit plaintiffs' allegations or order jurisdictional discovery and failed to analyze whether the activity of Teva USA relevant to the specific cause of action from which the case arose was sufficient to subject Teva Ltd. to personal jurisdiction. Similarly, in *Dennis v. JPMorgan Chase & Co*., 343 F. Supp. 3d 122 (S.D.N.Y. 2018), the court found that plaintiff had made "no allegations" that the foreign defendants transacted business in New York. *Id*. at 199. Here, Plaintiffs have alleged that Teva Ltd.'s business in this district is transacted through Teva USA. *See supra*, at § II.A.

Teva USA is the instrument by which Teva Ltd. avails itself of the United States market, including New York. Without the activities of Teva USA, which has already consented to jurisdiction, Teva Ltd. would be compelled to do business here itself or forego the profits it reaps from sales in New York. These allegations are sufficient to conclude that Teva USA is the agent of its corporate parent and therefore justifies the exercise of jurisdiction over that parent under the New York Long Arm Statute. *See infra*, at 12-14. Moreover, while the New York statute is an *additional* basis for the exercise of jurisdiction here, it is not a limitation. Where a foreign corporation falls within the Clayton Act's national reach (here through the activities of its subsidiaries), a separate basis for jurisdiction under New York law is unnecessary. *See Vitamin C*, 2012 WL 2930109, at *6 ("Since jurisdiction is proper under the Clayton Act . . . it would not be appropriate for this Court to narrow its jurisdictional inquiry based on New York's long-arm statute.").

**B.    Plaintiffs Make a *Prima Facie* Showing That Teva Ltd. Is Subject to Personal Jurisdiction Based on Its Control Over Teva USA**

Three theories allow the Court also to exercise jurisdiction over Teva Ltd. because of its relationship with, and control over, Teva USA pursuant to the Clayton Act and/or the New York Long Arm Statute: (1) agency; (2) alter ego/mere department; and (3) successor-in-interest. *See CutCo*, 806 F.2d at 366; *Tamoxifen*, 262 F. Supp. 2d at 23; *Dorfman*, 2002 WL 14363, at *2; *Time Warner*, 2010 WL 3563111, at *6. Each theory provides an independent basis for the Court to exercise personal jurisdiction over Teva Ltd.[32]

---

[32] Defendants attempt to conflate the doctrine of veil piercing that applies to determine whether one corporation is responsible for the debts of a related corporation with the test for a finding of jurisdiction. But the test for imputing jurisdictional contacts to a parent is less stringent. *Vitamin C*, 2012 WL 2930109, at *10. And this case has no resemblance to *In re Foreign Exch. Benchmark Rates Antitrust Litig.,* where all of the plaintiffs' allegations to support veil piercing appeared in a footnote in plaintiffs' brief. 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016).

1. **Teva Ltd. Is Subject to Jurisdiction Based on the Conduct of Its United States Agent**

In determining whether jurisdiction based on agency exists under New York Law and federal common law, the focus is "on the realities of the relationship in question rather than the formalities of agency law." *CutCo*, 806 F.2d at 366 (citations omitted). Plaintiffs need make only a *prima facie* showing that "the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *8 (S.D.N.Y. Sept. 16, 2020) (Liman, J.) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)).[33] The fact that a subsidiary is independently incorporated is irrelevant. *See*, *e.g.*, *Manning v. Erhardt + Leimer, Inc.*, 2020 WL 759656, at *4-6 (W.D.N.Y. Feb. 7, 2020). Plaintiffs "need not establish a formal agency relationship." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988).[34]

Plaintiffs allege that Teva USA acts for the benefit of Teva Ltd., with Teva Ltd.'s knowledge and consent. *See* TCAC ¶ 58(d); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (allegations that parent benefited from contracts formally entered into by subsidiary established a *prima facie* case of agency). Teva USA sells, labels, and packages generic drugs manufactured by Teva Ltd. and "Teva USA is a United States agent of Teva Ltd. for the purposes of obtaining regulatory approval of and marketing its drugs,

---

[33] *See also Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851, 854 (N.Y. 1967) (To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials."), *remittitur amended*, 229 N.E.2d 696 (N.Y. 1967), *cert. denied*, 389 U.S. 923 (1967). In *Convergen*, a letter of intent between two companies describing them as "affiliates" was insufficient to impute jurisdiction over the foreign entity. 2020 WL 5549039, at *14. Plaintiffs allege a far closer relationship between parent and subsidiary here.

[34] *See also id.* (holding that to establish jurisdiction under section 302(a)(1), the plaintiff was not required to "establish a formal agency relationship between [the foreign] defendants and [the alleged agent]").

including its generic version of Bystolic, in the United States including New York." TCAC ¶ 57.

Plaintiffs also allege that Teva Ltd. controls Teva USA structurally, operationally, and financially. *See* TCAC ¶ 58(a); (c); (e); (h). Teva Ltd. integrates Teva USA into one commercial organization. TCAC ¶ 58(a). Teva Ltd. sets policies to create a unified global appearance. TCAC ¶ 58(a). Teva USA must adhere to those policies. TCAC ¶ 58(a) Teva Ltd. also controls and co-mingles its subsidiaries' receivables and collections. TCAC ¶ 58(c). Plaintiffs' complaint explains that "Teva Ltd. exercises substantial control over Teva USA's 'marketing, administration, manufacturing, research and development, purchase of supplies, finance,' and other supporting operations" and "Teva Ltd. exercises substantial control of Teva USA's day-to-day activities." TCAC ¶ 58(e); (h). This supports finding jurisdiction over Teva Ltd.[35]

Plaintiffs' allegations further show that Teva Ltd. "exercised some control" over Teva USA "in the matter that is the subject of the lawsuit." *See* Teva Ltd. Br. at 25. When Teva Ltd. purchased Watson, it structured the purchase agreement so that its subsidiary expressly agreed to adopt Watson's liabilities and claims on its behalf. TCAC ¶¶ 56, 58. Among those liabilities were those Watson incurred by entering into the generic delay agreements that are the subject of this lawsuit. TCAC ¶ 56. Through Teva USA, Teva Ltd. joined the alleged conspiracy by continuing to refrain from launching or distributing a generic Bystolic product. TCAC ¶ 56. Because Teva USA was Teva Ltd.'s domestic regulatory agent for its generic drug business, Teva Ltd. exercised control over Teva USA's delay in launching generic Bystolic. TCAC ¶ 57.

---

[35] *See E. Claiborne Robins Co., Inc. v. Teva Pharm. Indus. Ltd.*, 2020 WL 5749936, at *10 (E.D. Va. Sept. 25, 2020) ("Teva Ltd.'s acquisition of Cephalon and Teva's corporate structure suggest the existence of an express or implied agreement to undertake Anesta and Cephalon's debts and obligations relating to Amrix because they show that the debts and obligations to Amrix entered the Teva corporate family following 2011.").

Accordingly, Teva Ltd. exercised control over Teva USA in the subject matter of this lawsuit.[36]

## 2.  Teva USA Is a Mere Department of Teva Ltd.

Jurisdiction over a parent corporation based on the activities of its subsidiary is also proper where the parent's control of the subsidiary extends beyond ownership such that the subsidiary is considered a "mere department" of the parent.[37] *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). To determine if a subsidiary is a "mere department" of its parent, courts consider the following factors: (1) common ownership, (2) financial dependency of the subsidiary, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent. *Id.* As courts recognize, "the distinction between the mere department test and the agency test, as applied, is not [necessarily] great." *Dorfman*, 2002 WL 14363, at *11 (citation omitted).

"Other than common ownership," which is undisputed here, "no single factor is required for a court to find that a parent corporation exercises substantial control over a subsidiary." *Dorfman*, 2002 WL 14363, at *7  (citations omitted). "A subsidiary may function as a mere

---

[36] Teva Ltd. cites *LPD New York, LLC v. Adidas Am., Inc*., 2017 WL 1162181 (E.D.N.Y. Mar. 27, 2017) (Teva Ltd. Br. at 25). There, the court *denied* the defendant's motion to dismiss for lack of personal jurisdiction and granted the plaintiff jurisdictional discovery, recognizing the low bar to obtain such discovery. *Id.* at *18.

[37] The terms "mere department" and "alter ego" are used synonymously by the courts. *See*, *e.g*., *Hume v. Lines*, 2016 WL 6524285, at *4 (W.D.N.Y. Nov. 3, 2016) ("In determining whether entities are alter egos or mere departments of each other, courts closely examine the relationship between the two entities") (citation omitted); *Advance Coating Tech., Inc. v. LEP Chem. Ltd*., 142 F.R.D. 91, 97 (S.D.N.Y. 1992) ("The theory plaintiffs pursue is that LEP Chemical is the alter ego, that is, a 'mere department,' of LEP Industrial.").

department of its parent even where the companies observe corporate formalities." *Id.* at *9.[38]

"The fact that the parent characterizes its subsidiary as part of the parent's business tends to

show that the parent treats the subsidiary as a department." *Id* at *8 (collecting cases).

The second factor—financial dependency—is established where the parent provides "no-

or low-interest loans to the subsidiary or extends credit on terms not otherwise available,

guarantees the subsidiary's obligations, or provides and pays for insurance coverage or other

necessities on behalf of the subsidiary." *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 53

(S.D.N.Y. 1999). Here, to complete the acquisition of Watson, Teva Ltd. and Teva USA co-

signed a $5.0 billion term loan and a $4.5 billion revolving credit facility, and Teva Ltd. served

as Teva USA's guarantor for both. TCAC ¶ 58(b). A Teva Ltd.-controlled entity grants its

subsidiaries, including Teva USA, an advance on their receivables. TCAC ¶ 58(c). Finally, Teva

Ltd.'s board must approve Teva USA's acquisitions. TCAC ¶ 58(b); (g); (h).[39]

The third factor—the parent's interference in selecting executives and failure to observe

corporate formalities—looks at "whether the parent shares officers with the subsidiary and shifts

executives among its subsidiaries, whether the parent pays the executives' salaries, and whether

the subsidiary holds separate meetings of its Board of Directors." *ESI, Inc.*, 61 F. Supp. 2d at 54.

Here, Teva Ltd. controls the executive and subcommittee membership of Teva USA, giving Teva

---

[38] *See also GEM*, 667 F. Supp. 2d at 320 ("While the SAC and supporting affidavit are silent regarding corporate formalities, they nonetheless make a prima facie showing that [the subsidiary] was a mere department of [the parent].").

[39] The totality of these facts shows that Teva Ltd. exercises much more control over Teva USA than the simple guarantee of two loans alleged in *Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 2d 263, 272 (N.D.N.Y. 2003) (Teva Ltd. Br. at 20). In *Williamson v. Verizon Commc'ns Inc.*, 2013 WL 227691, at *2 (S.D.N.Y. Jan. 22, 2013) (Teva Ltd. Br. at 20 n. 12), the court failed to consider whether a parent company's use of its subsidiary as a piggybank to enrich its shareholders supported an alter-ego finding. The court simply made the uncontroversial finding that filing consolidated earnings reports, by itself, does not demonstrate financial dependence. *Id.*

Ltd. control over Teva USA's daily operations. TCAC ¶ 58(e). Based on a factual record

developed through discovery, the Court in *San Francisco* concluded that Teva Ltd. exercised

control over Teva USA's day-to-day activities. 491 F. Supp. 3d at 636–37. Several Teva USA

employees serve as Teva Ltd. corporate officers. TCAC ¶ 58(d). This kind of employee and

corporate officer sharing supports Plaintiffs' allegations that Teva USA operates as a mere

department of Teva Ltd. *See Nat'l Opiate*, 2019 WL 3553892, at *4. Teva Ltd. also sets binding

policy for Teva USA's drug safety, audits Teva USA for compliance with Teva Ltd. policies, and

protects shared intellectual property through joint litigation with Teva USA in United States

courts. TCAC ¶ 58 (c), (j), and (k).

The fourth factor—the parent's control over marketing and operations—is "satisfied

where the parent's promotional materials or public documents hold out the subsidiary as a branch

or division of the parent, or the parent determines the subsidiary's operational policies and

strategy." *ESI, Inc.*, 61 F. Supp. 2d at 55 (citation omitted). "The fact that the parent imposes

operational policies and procedures on the subsidiary provides evidence that the parent controls

the subsidiary as part of its business, not just as an investment." *Dorfman*, 2002 WL 14363, at

*9.[40] This is the case here. Plaintiffs alleged that Teva Ltd. has fully integrated Teva USA into its

organizational structure. Teva Ltd. sets policies to create a unified global appearance for this

singular organization, including policies governing its subsidiaries' logos and color schemes.

TCAC ¶ 58(a).[41] Teva Ltd.'s CEO is the ultimate decision maker responsible for allocating

---

[40] In assessing this factor, "courts commonly look for whether the parent determines policy
without interference by the subsidiary, runs the subsidiary's day-to-day affairs, and refers to the
subsidiary as a branch or department." *Hume*, 2016 WL 6524285, at *8 (citations omitted).

[41] The defendant's statements in *Janzini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998),
are different from Teva Ltd.'s here. *See* Teva Ltd. Br. at 22. In *Janzini*, Nissan made aspirational
statements about "need[ing] to become a truly global company" and made a "request for world-
wide cooperation." *Janzini*, 148 F.3d at 185. Here, Teva Ltd. has announced that it is a fully

resources to Teva USA. TCAC ¶ 58(f); *see also San Francisco*, 491 F. Supp. 3d at 636. Teva

Ltd. has control over Teva USA's major contracts, product formulation, and other day-to-day

activities. TCAC ¶ 58(h).[42] Teva Ltd.'s right to ultimately approve the launch of a product by

Teva USA establishes its control over Teva USA's day-to-day activities. *Nat'l Opiate*, 2019 WL

3553892, at *4. Numerous Teva USA global divisions report to their Teva Ltd. counterparts,

TCAC ¶ 58(f), further demonstrating Teva Ltd.'s control over Teva USA, *Nat'l Opiate*, 2019

WL 3553892, at *4; *San Francisco*, 491 F. Supp. 3d at 636.[43]

---

[42] integrated, global company. TCAC ¶ 58(a). The court in *Gundlach v. IBM Japan, Ltd.* did not conclude that statements about a "globally integrated enterprise policy" were irrelevant to whether a parent controls its subsidiary's marketing and operations. It only found that such statements did not demonstrate control on their own. 983 F. Supp. 2d 389, 397 (S.D.N.Y. 2013), *aff'd* 594 F. App'x 8 (2d Cir. 2014). Here, Teva Ltd. actively promotes itself as "[o]ne global brand," and it has implemented that slogan through policies controlling Teva USA's appearance, allocating Teva USA's resources, and controlling Teva USA's day-to-day activities. TCAC ¶ 58(a); (f); (h). Similarly, *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 144-45 (E.D.N.Y. 2009), another case on which Teva Ltd. relies, stands for the unremarkable proposition that merely alleging the existence of a "global enterprise" without alleging "the parent's control over the subsidiary's" operations is insufficient to establish personal jurisdiction. Here, in contrast, Teva Ltd. and Teva USA are not only "one global brand," but Teva Ltd. also controls Teva USA structurally, operationally, and financially. *See* TCAC ¶ 58.

[42] Teva Ltd. argues that it can make broad policy decisions for Teva USA without exercising day-to-day control. But Teva Ltd.'s control over Teva USA goes far beyond "broad policy," as shown by, for example, Teva Ltd.'s intervention in at least one Teva USA decision about whether to launch a product, Teva Ltd.'s approval of Teva USA's major contracts, and Teva Ltd.'s control of Teva USA's product formulation. TCAC ¶ 58(h). Teva Ltd.'s control is much more intrusive than in the cases it cites. *See* Teva Ltd. Br. at 23-24 (citing *Palmieri v. Estefan*, 793 F. Supp. 1182, 1188 (S.D.N.Y. 1992) (no control over marketing and operations when subsidiaries make independent decisions about what products to release); *Pyramyd Stone Int'l Corp. v. Crosman Corp.*, 1997 WL 66778, at *7 (S.D.N.Y. Feb. 18, 1997) (no control over contract negotiations with customers or where to market products)).

[43] Defendants incorrectly assert that the court in *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Oct. 16, 2019), determined that Teva USA was not a mere department of Teva Ltd. Teva Ltd. Br. at 19. That court, which denied jurisdictional discovery, held only that the plaintiff "d[id] not controvert" Teva Ltd.'s evidence on the issue. *Id.* at slip op. at 4. The plaintiff's allegations in that case were undeveloped, centering around Teva Ltd.'s sales in the U.S., a single revolving credit facility, and allegations of tortious conduct untethered to the U.S. *Id.* at 3-4. Plaintiffs' allegations here go far beyond that and demonstrate that Teva Ltd. exercised substantial control

### 3.   Teva Ltd. Is Subject to Jurisdiction as Watson's Successor.

There is no dispute that Watson is subject to jurisdiction in this Court. Accordingly, Teva Ltd. is also subject to specific jurisdiction as Watson's successor in interest.

"An allegation of successor liability against an entity whose predecessor is subject to personal jurisdiction can provide personal jurisdiction over the successor entity." *Fly Shoes s.r.l. v. Bettye Muller Designs Inc*., 2015 WL 4092392, at *2 (S.D.N.Y. July 6, 2015) (citation omitted). "Successorship doctrine prevents parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). "[S]uccessor liability will lie when . . . 'there is an express or implied agreement to assume the other company's debts and obligations.'" *Kidz Cloz, Inc. v. Officially for Kids, Inc*., 2002 WL 1586877, at *4 (S.D.N.Y. July 17, 2002) (citation omitted). "[I]t is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego *or successor* of a corporation that would be subject to personal jurisdiction in that court." *Time Warner*, 2010 WL 3563111, at *5-6 (quoting *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,* 571 F.3d 221, 224 (2d Cir. 2009)) (emphasis added). "[P]leadings of successor liability are subject to the lenient . . . requirements of Rule 8(a). In fact, Plaintiffs do not need to explicitly use the words 'successor liability' for the pleading to adequately allege such a claim." *Payamps v. M & M Convenience Deli & Grocery Corp*., 2019 WL 8381264, at *10 (E.D.N.Y. Dec. 9, 2019) (citations omitted). Plaintiffs here allege that Teva Ltd. inherited Watson's liabilities and claims through the Teva

---

over Teva USA and that Teva USA was financially dependent on Teva Ltd. *See* TCAC ¶ 58.

Ltd.'s purchase of Actavis. TCAC ¶ 56.[44] *See Tamoxifen*, 262 F. Supp. 2d at 23 (finding personal jurisdiction over a defendant under similar circumstances).

There is no dispute that Teva Ltd. "contracted" with Watson, as confirmed by Teva USA's Deputy General Counsel of Transactions. *See* ECF No. 262, Decl. of Brian Shanahan ¶ 12.[45] Nevertheless, Teva Ltd. claims that it cannot be considered Watson's successor because the Master Purchase Agreement by which it purchased Watson defines "Buyer" to be Teva Ltd. *or* any affiliate or subsidiary that it "designates to purchase any of the acquired assets." Teva Ltd. Br. at 16-17. According to Teva Ltd., because it designated Teva USA as the purchaser of Watson's assets in the U.S., it cannot be considered a buyer subject to successor liability. *Id.* To the contrary, the Master Purchase Agreement clearly demonstrates that Teva USA was acting as Teva Ltd.'s agent in the purchase of Watson's U.S. assets. Teva Ltd. was the Buyer-Parent that negotiated the rights to acquire Watson's assets in every country where Watson did business, and Teva Ltd. designated Teva USA as its agent to acquire Watson's assets and liabilities in the U.S. *See* MPA § 1.1 (ECF No. 390-1, Decl. of Brian Shanahan Ex. A). Accordingly, Plaintiffs allege:

> Teva Ltd. directed, structured, negotiated, and executed the Master Purchase Agreement leading to the acquisition of Actavis. Teva's USA's acquisition of Actavis worked to the benefit of Teva Ltd., and the financial results stemming from the acquisition are reflected in Teva Ltd.'s financial statements. Teva Ltd. admits that it entered into and structured the deal through which the Watson assets

---

[44] "Teva Ltd. purchased Watson, at the time known as Actavis, on July 26, 2015. As part of the purchase, Teva Ltd. agreed to adopt 'all Liabilities and Claims' of Watson/Actavis. Teva USA is Teva Ltd.'s wholly-owned subsidiary and is responsible for distributing (or forbearing from distributing pursuant to the challenged Watson settlement agreement and side deal) generic Bystolic on behalf of Teva Ltd." (citations omitted).

[45] Teva Ltd. agreed in the declaration to its prior motion to dismiss under Rule 12(b)(2) that "Teva Israel contracted to become the indirect parent company of the Watson Entities through a Master Purchase Agreement with Allergan plc[.]" ECF No. 262, Decl. of Brian Shanahan ¶ 12. Recognizing the gravity of this concession, Teva Ltd. omitted this language from the current version of Mr. Shanahan's declaration submitted with this motion to dismiss. *See* ECF No. 390-1, Decl. of Brian Shanahan ¶ 12.

and liabilities were acquired.

TCAC ¶ 58; *see also* TCAC ¶ 59; *Kidz Cloz*., 2002 WL 1586877, at *5 (Plaintiff's allegation that successor assumed "all the predecessor's debts and obligations" sufficient to establish successor liability). Teva Ltd.'s "formulistic" reading of the Master Purchase Agreement to "escape contractual obligations" is precisely what successor liability is designed to prevent.[46] *Aguas*, 585 F.3d at 701.

Even assuming Teva Ltd. had not expressly acquired Watson's labilities via the MPA (which it has), successor liability will still apply where "in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." *H. Daya Int'l, Co. v. Do Denim LLC*, 2022 WL 974382, at *10 (S.D.N.Y. Mar. 31, 2022), *reconsid. denied,* 2022 WL 1289340 (S.D.N.Y. Apr. 29, 2022) (quoting *AT & S Transp., LLC v. Odyssey Logistics & Tech. Corp.*, 803 N.Y.S.2d 118, 120 (App. Div. 2d Dep't 2005)). Teva Ltd. plainly did so here, where, through its subsidiaries, it marketed and sold Watson's portfolio of generic drugs including, belatedly, generic Bystolic. That Watson still exists is irrelevant because courts applying New York law "have repeatedly held that the continued existence of the predecessor corporation is not dispositive" of successor liability. *Wash. State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 67 (S.D.N.Y. 2020) (citing cases). *See also Fitzgerald v. Fahnestock & Co.*, 730 N.Y.S.2d 70, 72 (App. Div. 1st Dep't 2001) ("So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary."). The cases upon which Teva Ltd.

---

[46] *See San Francisco*, 491 F. Supp. 3d at 638-39 ("The City's allegations plausibly suggest that Teva Ltd.'s abuses the corporate form by using its subsidiaries as shells to prevent the City's recovery, and thus constitute a preliminary showing that treating these entities as distinct would result in injustice.").

relies do not require otherwise.[47] In contrast, in a case applying New York law, Teva Ltd. was

held liable as a successor to an acquired predecessor despite that predecessor surviving as a

wholly-owned subsidiary. *See E. Claiborne Robins Co., Inc. v. Teva Pharm. Indus. Ltd*., 2020

WL 5749936, at *11 (E.D. Va. Sept. 25, 2020) (Teva Ltd.'s "corporate structure" supported a

finding that it had "implicitly agreed" to take on its subsidiary's liabilities, without reference to

that subsidiary's continued existence).

**C.    The Exercise of Jurisdiction over Teva Ltd. Comports with the Constitution.**

To determine whether the exercise of personal jurisdiction is consistent with "traditional

notions of fair play and substantial justice," courts must ask whether there exist "minimum

contacts between the defendant and the forum state," such that exercise of jurisdiction would be

"reasonable." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal

quotations omitted). Importantly, a finding of jurisdiction under the Clayton Act *or* any section

of N.Y. C.P.L.R. § 302(a) necessarily satisfies due process.[48]

---

[47] *See Colon v. Multi-Pak Corp*., 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (declining jurisdiction where successor "did not design, manufacture or sell" the product at issue). Teva Ltd. also cites *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 245 (1983), for the proposition that a predecessor must be extinguished in order for successor liability to apply, but courts applying *Schumacher* have held that it does not preclude successor liability where the predecessor's "assets, business location, address, employees, good will and management" have been transferred to the successor. *Societe Anonyme Dauphitex v. Schoenfelder Corp*., 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007) (holding that *Schumacher* does not require extinguishment of the predecessor). *Value Drug* is inapposite as that court explicitly refused to consider agency/alter-ego jurisdiction, which plaintiffs allege here. *Value Drug Co. v. Takeda Pharms., U.S.A., Inc*., 2021 WL 6200907, at *21, nn.182, 183 (E.D. Pa. Dec. 29, 2021) ("[O]ur finding as to personal jurisdiction has no bearing on whether Teva Ltd. may be liable as a successor under a potentially applicable law besides Pennsylvania.").

[48] *See, e.g.*, *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 n.6 (S.D.N.Y. 1992) ("[I]f there is jurisdiction pursuant to CPLR § 302, then such jurisdiction will be constitutional."); *Charles Schwab*, 883 F.3d at 85 ("[W]here we have found personal jurisdiction based on an agent's contacts, we have never suggested that due process requires something more than New York law."); *In re Propranolol Antitrust Litig*., 249 F. Supp. 3d 712, 730-31 (S.D.N.Y. 2017) (exercise of Clayton Act jurisdiction satisfies due process).

The due process inquiry for federal question cases, such as cases brought under the Sherman Act, considers contacts with the United States as a whole. *Chew v. Dietrich*, 143 F.3d 24, 30 (2d Cir. 1998).[49] When assessing whether the exercise of jurisdiction is reasonable, courts look "to, among other things, the burden on the defendants in litigating in a foreign forum, the interest in the forum in adjudicating the dispute, and the interests of the plaintiffs in obtaining efficient and convenient relief." *MM Global*, 404 F. Supp. 2d at 435 (*citing World-Wide Volkswagen Corp.*, 444 U.S. at 292). Jurisdiction is appropriate when the defendant purposely avails itself of the privilege of doing business in the forum and could foresee being haled into court there. *Chew*, 143 F.3d at 28 (citations and quotations omitted).

The factors courts examine to determine if the exercise of jurisdiction is reasonable overwhelmingly favor exercising jurisdiction here. First, courts find that when "the particular defendants . . . are foreign affiliates of a domestic corporation that also has been sued in this case, the burden of litigating here is not a consideration that weighs substantially in favor o[f] dismissal." *MM Global*, 404 F. Supp. 2d at 435.[50] This case is also proceeding against and being defended by Teva Ltd.'s subsidiaries, so including Teva Ltd. as a defendant is no additional burden. Second, because Teva Ltd. "allegedly participated in the antitrust conspiracy [through its subsidiary Teva USA's control of Watson], maintaining [its] presence in this action furthers the plaintiffs' interest in obtaining efficient and convenient relief." *Id.* Third, "because, at bottom,

---

[49] *See also MM Global*, 404 F. Supp. 2d at 434. Teva Ltd. asserts that it lacks sufficient national contacts to establish jurisdiction, but the business transactions described herein and Teva Ltd.'s repeated use of the federal courts in the United States to pursue the litigation described below demonstrate that Teva Ltd. has extensive and ongoing direct contacts with the United States (in addition to the contacts of Teva USA that may be imputed to it as demonstrated above).

[50] Teva Ltd.'s reliance on *Asahi Metal* is unavailing because that litigation was between two foreign corporations, neither of which had a domestic affiliate otherwise involved in the case. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987).

the plaintiffs allege that our domestic market was injured by the activities alleged in the amended complaint 'national interests in furthering the policies of [U.S. antitrust law] militates in favor of exercising personal jurisdiction.'" *Id.* (citation omitted) (alteration in original).

Once minimum contacts have been established, the interests of the Plaintiffs and the State of New York would justify even serious burdens being placed upon Teva Ltd. to defend itself in this forum. *See Asahi Metal Indus.*, 480 U.S. at 114. But other than the conclusory assertion that litigating in this forum would cause a "significant and unreasonable burden," Teva Ltd. offers nothing to substantiate its burden claim. *See Thani v. Hanke*, 2021 WL 1895033, at *9 (S.D.N.Y. May 11, 2021) (finding that "Defendants' conclusory argument that it would be 'patently unfair and markedly unreasonable to Defendants' for [plaintiff] to bring suit in New York carries little persuasive weight") (citations omitted). Because Teva Ltd. "succeeded in interest to the signatory of the Settlement Agreement, and openly claims to seek the advantages of the United States market, the burden of defending this action simply is not so overwhelming that it would otherwise be unreasonable or fail to comport with traditional notions of fair play and substantial justice." *Tamoxifen*, 262 F. Supp. 2d at 24. Teva Ltd.'s position that defending itself in this Court would be burdensome is also belied by Teva Ltd.'s repeated choice to litigate in U.S. courts.[51]

In fact, Teva Ltd. *specifically* contemplated being haled into a New York court when it executed the MPA, which is not only governed by New York law, but also includes a provision by which Teva Ltd. "irrevocably and unconditionally submits, for itself and its property, to the non-exclusive jurisdiction" of state and federal courts in New York. MPA at §13.9 & 10 (ECF No. 390-1, Shanahan Decl. Ex. A). Teva Ltd. further agreed to "waive[], to the fullest extent it

---

[51] *See, e.g.*, *Self Int'l (HK) Ltd. v. La Salle Nat'l Bank*, 2002 WL 500372, at *4 (S.D.N.Y. Mar. 29, 2002) (fact that foreign parent company "recently has brought a number of lawsuits in the New York courts" favored denial of 12(b)(2) motion).

may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue" in New York. *Id*. If a question of contract interpretation were to be litigated (as Teva Ltd. attempts to do here via Rule 12(b)(6)), Teva Ltd. insisted that it be litigated in this forum. Teva Ltd. cannot now reasonably argue it is unprepared or unable to litigate here.

In *Barnhill v. Teva Pharms. USA, Inc.*, Teva Ltd. made similar perfunctory claims, arguing that the burden of having to defend itself in a foreign legal system should be given significant weight. No. 06-282, ECF No. 60, slip op. at 8 (S.D. Ala. Apr. 24, 2007). In denying Teva Ltd.'s motion to dismiss for lack of personal jurisdiction, the court rejected claims of burden because Teva Ltd. "owns a United States subsidiary" and could not "claim to be completely unfamiliar with this country's legal system[.]" *Id.* That finding applies here, too.

Teva Ltd.'s interests in this case are aligned with those of its subsidiary, Teva USA, which has moved to dismiss all of Plaintiffs' claims. Teva Ltd. and Teva USA share intellectual property and have litigated together in this district to protect their patents and to pursue claims involving the breach of a settlement agreement Teva USA entered into with another pharmaceutical company. *See supra* at 5-6; TCAC ¶ 58(k). Indeed, Teva Ltd. has filed dozens of cases as a plaintiff in federal courts across this country including at least fourteen in this District. *See* Ex. 1. In addition, Teva Ltd. has not contested jurisdiction in several comparable, reverse payment cases, including cases in this district. *See supra*, n.3. Teva Ltd. is more than capable of litigating in this forum. Moreover, any claim of burden is substantially undercut because travel is largely unnecessary since hearings, depositions and other proceedings can be handled remotely.[52]

---

[52] *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 174 (2d Cir. 2013) (finding that even where the defendant was based in Lebanon and all the plaintiffs lived in Israel, "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on [the defendant]" (internal quotation omitted)).

**V.     IN THE ALTERNATIVE, THE COURT SHOULD ALLOW PLAINTIFFS TO TAKE JURISDICTIONAL DISCOVERY FROM TEVA LTD. WHILE THE CASE PROCEEDS AGAINST THE OTHER DEFENDANTS**

In the event that the Court does not find Plaintiffs' submissions in this case to be sufficient to support personal jurisdiction over Teva Ltd., Plaintiffs respectfully request in the alternative that the Court grant Plaintiffs an opportunity to take jurisdictional discovery to create a record as in *Nat'l Opiate* and *San Francisco* while this case proceeds against the remaining defendants. Courts in the Second Circuit permit jurisdictional discovery when "a plaintiff has made less than a *prima facie* showing but made a 'sufficient start' toward establishing personal jurisdiction." *Powder Coating Consultants v. Powder Coating Inst.*, 2009 WL 3418224, at *1 (D. Conn. Oct. 21, 2009). At a minimum, Plaintiffs' allegations establish such a "sufficient start" toward establishing personal jurisdiction over Teva Ltd.[53] The courts in *Nat'l Opiate* and *San Francisco* denied Teva Ltd.'s motions to dismiss on jurisdictional grounds following jurisdictional discovery. 2019 WL 3553892, at *1; 491 F. Supp. 3d at 635-38. Some of the facts discovered in those cases form the basis of Plaintiffs' allegations here, but much of that record remains under seal. Plaintiffs should be afforded at least the same discovery allowed in *Nat'l Opiate* and *San Francisco*, which could likely be expedited if Teva Ltd. would agree to produce the full jurisdictional discovery record from those cases.

**VI.     CONCLUSION**

For the foregoing reasons, Teva Pharmaceutical Industries Ltd.'s Motion to Dismiss the February 2022 Complaints Under Rule 12(b)(2) should be denied.

---

[53] *See Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) ("[P]laintiffs' jurisdictional allegations are neither sparse nor insufficiently specific; they are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate."); *WM Int'l, Inc. v. 99 Ranch Mkt. #601*, 329 F.R.D. 491, 495 (E.D.N.Y. 2019) ("Plaintiffs' allegations support a colorable, non-frivolous claim of jurisdiction with respect to Tawa, and as a result, Plaintiffs are entitled to jurisdictional discovery.").

DATED: May 23, 2022

Respectfully submitted,

By: */s/ Kimberly M. Hennings*

Bruce E. Gerstein
Kimberly M. Hennings
Dan Litvin
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
(212) 398-0055
bgerstein@garwingerstein.com
khennings@garwingerstein.com
dlitvin@garwingerstein.com

David F. Sorensen
Caitlin G. Coslett
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
dsorensen@bm.net
ccoslett@bm.net

*Interim Co-Lead Counsel for the Direct
Purchaser Class and Counsel for Smith Drug
Company*

Russell Chorush
HEIM PAYNE & CHORUSH, LLP
1111 Bagby, Suite 2100
Houston, TX 77002
(713) 221-2000
rchorush@hpcllp.com

Andrew W. Kelly
ODOM & DES ROCHES, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
 (504) 522-0077
stuart@odrlaw.com
akelly@odrlaw.com

Peter Kohn
Joseph T. Lukens
FARUQI & FARUQI, LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Susan Segura
David C. Raphael, Jr.
Erin R. Leger
SMITH SEGURA RAPHAEL & LEGER,
LLP
221 Ansley Blvd.
Alexandria, LA 71303
(318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com

eleger@ssrllp.com

*Additional Counsel for the Direct Purchaser Class and Smith Drug Company*

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

Michael L. Roberts
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
Little Rock, AR 72223
(501) 821-5575
mikeroberts@robertslawfirm.us

Joseph M. Vanek
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
jvanek@sperling-law.com

*Additional Counsel for the Direct Purchaser Class and Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.*

*/s/ Barry L. Refsin*
Barry L. Refsin
Alexander J. Egerváry
HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
brefsin@hangley.com
aegervary@hangley.com

Monica L. Kiley
Eric L. Bloom
HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110-3676
(717) 364-1030
mkiley@hangley.com
ebloom@hangley.com

*Attorneys for Plaintiffs CVS and Rite Aid*

*/s/ Scott E. Perwin*
Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
Four Seasons Tower
1441 Brickell Avenue
Suite 1100
Miami, FL 33131
(305) 373-1000
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

*Attorneys for Walgreen Plaintiffs*

*/s/ Sharon K. Robertson*
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

Robert A. Braun
Jessica Weiner
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
rbraun@cohenmilstein.com
jweiner@cohenmilstein.com

*Interim Co-Lead Counsel for the
Proposed End-Payor Class*

*/s/ Robin A. Van der Meulen*
Robin A. van der Meulen
Gregory S. Asciolla
Matthew J. Perez
Veronica Bosco
**DICELLO LEVITT GUTZLER**
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Telephone: (646) 933-1000
rvandermeulen@dicellolevitt.com
gasciolla@dicellolevitt.com
mperez@dicellolevitt.com
vbosco@dicellolevitt.com

*Interim Co-Lead Counsel for the Proposed
End-Payor Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served electronically on all parties of record via the CM/ECF system.

Dated: May 23, 2022                              <u>*/s/ Kimberly M. Hennings*</u>
                                                         Kimberly M. Hennings