UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BYSTOLIC ANTITRUST LITIGATION | Lead Case No. 1:20-cv-05735-LJL |
| This Document Relates to:<br><br>All End-Payor Actions | |

**NONRESIDENT DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RULE 12(b)(2) MOTION TO DISMISS END-PAYOR PLAINTIFFS' NON-NEW YORK CLAIMS FOR LACK OF PERSONAL JURISDICTION**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

      A.      EPPs cannot satisfy the requirements for conspiracy jurisdiction. .......................... 2

      B.      EPPs' arguments about CPLR § 302(a)(1) and (a)(3) are wrong and irrelevant. ................................................................................................................ 6

      C.      *Langan*, a case about standing, is irrelevant to the due process minimum contacts analysis ..................................................................................................... 7

      D.      There is no basis for pendent personal jurisdiction. ............................................... 7

CONCLUSION ............................................................................................................................... 7

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ................................................................................................. 6

*Aquiline Capital Partners LLC v. FinArch LLC*,
   861 F. Supp. 2d 378 (S.D.N.Y. 2012) .............................................................................. 6

*Berkshire Bank v. Lloyds Banking Grp. PLC*,
   2022 WL 569819 (2d Cir. Feb. 25, 2022) ....................................................................... 3

*Bristol-Myers Squibb Co. v. Superior Court of California ("BMS")*,
   137 S. Ct. 1773 (2017) ............................................................................................. 1, 5, 6

*Burrows Paper Corp. v. R.G. Eng'g, Inc.*,
   363 F. Supp. 2d 379 (N.D.N.Y. 2005) ............................................................................. 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ...................................................................................1, 2, 3, 7

*Contant v. Bank of Am. Corp.*,
   385 F. Supp. 3d 284 (S.D.N.Y. 2019) ........................................................................ 1, 3

*Freudensprung v. Offshore Tech. Servs., Inc.*,
   379 F.3d 327 (5th Cir. 2004) ........................................................................................ 4, 5

*H. L. Moore Drug Exch., Inc. v. Smith, Kline & French Labs.*,
   384 F.2d 97 (2d Cir. 1967) .............................................................................................. 3

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
   828 F. App'x 740 (2d Cir. 2020) .................................................................................... 4

*Kaplan v. Hezbollah*,
   2022 U.S. Dist. LEXIS 35820 (E.D.N.Y. Feb. 28, 2022) .............................................. 5

*Langan v. Johnson & Johnson Consumer Cos.*,
   897 F.3d 88 (2d. Cir. 2018) ............................................................................................. 7

*Leasco Data Processing Equip. Corp. v. Maxwell*,
   468 F.2d 1326 (2d Cir. 1972) .......................................................................................... 3

*Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*,
   368 F. Supp. 3d 460 (E.D.N.Y. 2019) ............................................................................. 7

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   299 F.R.D. 555 (E.D. Tenn. 2014) ..................................................................................... 7

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001) ......................................................................................... 2, 6

**Other Authorities**

N.Y. CPLR § 302(a) ................................................................................................... 2, 6, 7

## INTRODUCTION

Nonresident Defendants' Rule 12(b)(2) motion is narrow. The question for the Court is whether the nonresident named plaintiffs—like Fraternal Order of Police Miami Lodge 20, Insurance Trust Fund ("Miami FOP"), a Florida health plan that was allegedly injured when it purchased Bystolic in Florida—may come into this New York forum and assert claims under the laws of other states for injuries that occurred in other states (the "Non-New York Claims") against defendants who are not at home here. Under longstanding due process principles, recently reaffirmed in *Bristol-Myers Squibb Co. v. Superior Court of California ("BMS")*, 137 S. Ct. 1773 (2017), the answer is no.

EPPs do not dispute that the Nonresident Defendants' individual contacts with New York are insufficient for this Court to exercise personal jurisdiction over any of them with respect to the Non-New York Claims. Nor could they. EPPs do not allege that any Nonresident Defendant entered New York, or otherwise engaged in "suit-related conduct" in New York that "create[s] a substantial connection with the forum." *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 291 (S.D.N.Y. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

Instead, EPPs rely almost exclusively on the concept of "conspiracy jurisdiction"—framed first under § 302(a)(2) of the New York long-arm statute (Opp. 5–7) and also as part of the due process minimum-contacts inquiry (*id.* 10–14)—to argue that Forest's contacts with the forum may be imputed to the Nonresident Defendants for purposes of establishing personal jurisdiction. But even assuming that EPPs have plausibly alleged a conspiracy between Forest and the Nonresident Defendants (they have not, as explained in Defendants' parallel motions to dismiss), EPPs have failed to allege that Forest engaged in overt acts in furtherance of the conspiracy of the sort that can satisfy the conspiracy-jurisdiction test. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018) ("That [plaintiff] plausibly alleges a conspiracy . . . does not mean that the forum contacts of the [in-state] Defendants are necessarily imputed to the co-conspirators."). On the contrary, although EPPs use colorful words to embellish Forest's in-forum activities, they ultimately can identify nothing more than the fact that Forest executed the

1

challenged agreements from its New York office. That is not enough to satisfy the conspiracy-jurisdiction doctrine. It also runs contrary to black letter law that signing a contract with a forum resident is not enough to establish jurisdiction over a nonresident.

Aside from conspiracy-jurisdiction arguments, EPPs offer a handful of half-hearted additional defenses, none of which has merit. For example, they argue that their allegations separately satisfy §§ 302(a)(1) and (a)(3) of the New York long-arm statute (Opp. 7–8), an argument that is legally incorrect but also irrelevant since they cannot satisfy constitutional due process. EPPs also argue that the Second Circuit's standing analysis should somehow dictate the personal jurisdiction inquiry (it doesn't) and continue to invoke the doctrine of pendant personal jurisdiction even though there is no federal relief remaining. All of those arguments fail. For the reasons explained below, this Court lacks personal jurisdiction over Nonresident Defendants for EPPs' Non-New York Claims. Those claims should be dismissed with prejudice.

## ARGUMENT

### A. EPPs cannot satisfy the requirements for conspiracy jurisdiction.

The lion's share of EPPs' brief is devoted to arguing that Forest's contacts with New York "can serve as a proxy for [the Nonresident Defendants'] forum contacts to satisfy the due process inquiry." Opp. 2. EPPs refer to this as the "doctrine of conspiracy jurisdiction" (Opp. 5), and they argue that it applies both for purposes of satisfying New York's long-arm statute, CPLR § 302(a)(2) (*see* Opp. 5–7), and for purposes of satisfying the due process minimum-contacts requirement. Opp. 10–14. The Second Circuit has explained that while "the long-arm statute and the Due Process Clause are not technically coextensive," the test for conspiracy jurisdiction under the long-arm statute is "consonant with the due process principle that a defendant must have 'purposefully availed itself of the privilege of doing business in the forum.'" *Schwab*, 883 F.3d at 85. Accordingly, and because satisfaction of a long-arm statute is only the first step in the analysis, *see Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001), and due process requirements must still be satisfied, we address conspiracy-jurisdiction principles as applied under the due process framework.

2

The Second Circuit has "made clear that the mere existence of a conspiracy is not enough" to support conspiracy jurisdiction. *Schwab*, 883 F.3d at 85 (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972)). Likewise, "the mere presence of one conspirator" in the forum is not enough to "confer personal jurisdiction over another alleged conspirator." *Leasco*, 468 F.2d at 1343; *see also H. L. Moore Drug Exch., Inc. v. Smith, Kline & French Labs.*, 384 F.2d 97, 98 (2d Cir. 1967) ("[T]he presence of one co-conspirator within the jurisdiction does not give jurisdiction over all who are alleged to be co-conspirators."); *Schwab*, 883 F.3d at 85–87. Instead, the plaintiff must allege that one of the conspirators took overt acts in the forum "in furtherance of the conspiracy," and that those acts are independently sufficient to establish the minimum contacts requirements.[1] *Schwab*, 883 F.3d at 86. "To allow jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of the conspiracy would be inconsistent with the 'purposeful availment' requirement." *Id.* at 87.

For starters, this case looks nothing like those where the conspiracy jurisdiction doctrine has been traditionally applied. The cases EPPs cite all address conspiracy jurisdiction in the context of an ongoing conspiracy with continuing operations, activities, and communications. Most of EPPs' cases involve the years'-long conspiracy involving dozens of defendants to manipulate the London Interbank Offered Rate ("LIBOR"), where jurisdiction over foreign defendants was found based on things like the fact that "a Barclays[] executive who was based in New York . . . instruct[ed] subordinates to submit artificially low USD LIBOR rates." *Berkshire Bank v. Lloyds Banking Grp. PLC*, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (quoting *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 123 (2d Cir. 2021)). That type of continuing direction and organization emanating from New York is not present here. In contrast,

---

[1] To satisfy the minimum-contacts analysis through conspiracy jurisdiction, "a plaintiff must allege 'that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state.'" *Contant*, 385 F. Supp. 3d at 292 (quoting *Schwab*, 883 F.3d at 87)). While Defendants dispute the first two elements (*see* Defendants' Rule 12(b)(6) motions), even assuming those elements are met, EPPs fail to allege that Forest engaged in overt acts in furtherance of the conspiracy that can be imputed to the Nonresident Defendants.

3

EPPs' entire so-called "conspiracy" is based on a set of separate contracts, and the alleged payments made under those contracts, to resolve patent infringement claims. EPPs cite no authority for their novel proposition that an out-of-state defendant may be subject to conspiracy jurisdiction simply by executing a settlement agreement (or some other contract) with a New York resident.

At multiple points throughout their brief EPPs try to argue that "Forest's overt acts in New York furthered the conspiracy." Opp. 2. But every time they describe those "overt acts," all they point to are allegations that Forest executed the challenged agreements while headquartered in the state. *See id*. ("Generic Defendants conspired with Forest, located in New York, to enter into collusive agreements"); *id.* at 3 ("EPPs allege: the pay-for-delay agreements' and side deals' terms were drafted, negotiated and executed with Forest, headquartered in New York"); *id.* at 9 ("EPPs allege in detail, that Forest committed overt acts in New York in furtherance of the conspiracy with each Generic Defendant, including by drafting, negotiating and entering into collusive settlements and side agreements with the Generic Defendants"); *id.* at 11 ("Forest was negotiating and entering collusive agreements with [Generic Defendants] . . . from New York"). However, given that neither the existence of a conspiracy or a conspirator's presence in a state is enough to establish conspiracy jurisdiction, those allegations do not suffice. EPPs' repeated allegations about Forest "drafting, negotiating, and executing" the challenged agreements from New York are simply verbose ways of claiming that Forest joined the conspiracy while it was a New York company—which, again, is insufficient.

Indeed, there is nothing about EPPs' argument that distinguishes New York from any other state where one of the defendants may have been headquartered. If one of the defendants had an office in Montana, and signed the agreement from Montana, then under the EPPs' rule, Miami FOP could also bring its Florida-based claims for Florida-based injuries in a Montana court. That is not, and cannot be, how conspiracy jurisdiction works. Indeed, if that rule were correct, then it would eviscerate the well-settled legal rule that "[m]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also JCorps Int'l, Inc. v. Charles*

4

*& Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 745 (2d Cir. 2020) ("[I]t is elementary that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum."); Dkt. 387 at 13–14 (collecting cases). EPPs argue that those are "inapposite breach of contract cases" (Opp. 9), but that is wrong. *Freudensprung*, for example, involved claims under the Jones Act and general maritime law. *JCorp* is a trade secrets case. In both, like here, the contract was (inappropriately) offered only as a basis for establishing jurisdiction.

Once you strip away purported "overt acts" that are nothing but Forest executing its end of the contracts from its New York office, the only other thing EPPs point to is that Forest continued selling Bystolic in New York. But those sales are not relevant to the Non-New York Claims brought by out-of-state plaintiffs. New York sales are relevant only to claims brought by New York plaintiffs alleging injuries arising from those New York sales (claims that are not subject to this motion). Crediting the New York sales to nonresident plaintiffs is inconsistent with conspiracy jurisdiction principles. *See Kaplan v. Hezbollah*, 2022 U.S. Dist. LEXIS 35820, at \*14, \*18–19 (E.D.N.Y. Feb. 28, 2022) (declining to exercise conspiracy jurisdiction because there was no "connection between the contacts and the event that actually harmed Plaintiffs"). But more importantly, it would violate the fundamental due process principles re-affirmed in *BMS*, where the Supreme Court held that a nonresident plaintiff cannot establish jurisdiction based on the existence of regular in-state sales or the fact that "*other* plaintiffs were prescribed, obtained, and ingested [the product] in [the forum]." 137 S. Ct. at 1781.

In the last round of jurisdictional briefing, EPPs argued extensively that *BMS* is inapplicable. They have abandoned most of those arguments this time, and instead make a passing argument that "*BMS* is a red herring" (Opp. 12) because it is "a state, not federal, case" raised in the context of a "mass tort case, not a Rule 23 class action." As explained in Defendants' opening brief, that position has been overwhelmingly rejected nationally, and uniformly rejected in this district. Dkt. 387 at 8 (citing, among other cases, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 235–36 (S.D.N.Y. 2020)). EPPs argue that *BMS* is different because there was

no connection to the forum in *BMS*, whereas here they purport to have alleged a nexus with the state. But as explained above, the only "nexus" they have identified is insufficient under black letter due process principles. The only connection between Miami FOP's Florida claim and New York, for example, is that Forest executed the settlement agreements from New York. That is not enough.

### B. EPPs' arguments about CPLR § 302(a)(1) and (a)(3) are wrong and irrelevant.

EPPs offer drive-by arguments that they separately satisfy §§ 302(a)(1) and (a)(3) of New York's long-arm statute. Opp. 7–8. Those arguments are irrelevant because, even if EPPs could meet the long-arm statute, their flawed conspiracy-jurisdiction arguments are insufficient to satisfy due process. *Whitaker*, 261 F.3d at 208 ("If the exercise of jurisdiction is appropriate under [the long-arm] statute, the court must decide whether such exercise comports with the requisites of due process."). But regardless, their arguments about the long-arm statute are also wrong.

The Nonresident Defendants' settlement agreements with Forest do not constitute "transact[ing] business within New York" under CPLR § 302(a)(1). *See Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) ("[T]he mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under section 302(a)(1) of the CPLR.") (citation omitted). The challenged agreements resolved patent cases pending in Delaware and Illinois. Those agreements satisfy none of traditional factors necessary to satisfy § 302(a)(1), such as regular visits to and activities in New York, performance obligations in New York, or continuing supervision by a corporation in the state. *Id.*; *see also Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005) (§ 302(a)(1) not met where there was no continuing obligations). Instead, EPPs allege that the settlements involved lump payments designed to compensate the Generic Defendants for delaying the launch of competing products. Under EPPs' theory, once those payments were made, the relationship ended.

EPPs also cannot satisfy 302(a)(3) for the Non-New York Claims because they do not allege conduct that injured the Nonresident Plaintiffs within New York. Again, this motion does not

concern the New York plaintiffs or their claims under New York law. Nonresident Defendants seek dismissal of Non-New York Claims brought by nonresident plaintiffs like Miami FOP, who were injured on transactions in their home states. *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 586 (E.D. Tenn. 2014) (holding that the relevant location in an overcharge case is "where the plaintiffs were [allegedly] overcharged"). EPPs cannot invoke CPLR § 302(a)(3) for those claims.

### C. *Langan*, a case about standing, is irrelevant to the due process minimum contacts analysis.

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d. Cir. 2018), concerned whether a named plaintiff had *standing* to assert claims on behalf of consumers in other states. That is not the issue here. *Langan* does not alter the fundamental due process principle that a nonresident plaintiff asserting claims under a foreign jurisdiction's laws must show that each defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Schwab*, 883 F.3d at 82. The minimum contacts analysis applies "to each claim asserted." *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 479 (E.D.N.Y. 2019). Here, there are no allegations that Nonresident Defendants purposefully availed themselves of New York such that they could reasonably foresee being haled into court in New York on a claim by a Florida plaintiff under Florida law for injuries that occurred in Florida.

### D. There is no basis for pendent personal jurisdiction.

EPPs incorporate arguments from another brief as to why they believe they have the right to seek injunctive relief (Opp. 15), but they respond to none of the Nonresident Defendants' arguments and cases about why it makes no sense to apply the discretionary pendent personal jurisdiction doctrine in this case. *See* Dkt. 387 at 10–12. Those arguments are waived.

## CONCLUSION

This Court lacks personal jurisdiction over Nonresident Defendants for claims brought by the Nonresident Plaintiffs under the laws of other states. Accordingly, the Court should dismiss the Non-New York Claims with prejudice.

Dated: June 24, 2022

Respectfully submitted,

/s/ Mark Gidley
J. Mark Gidley
Peter J. Carney (pro hac vice)
Eric Grannon (pro hac vice)
Adam Acosta (pro hac vice)
Celia McLaughlin (pro hac vice)
Holly Letourneau (pro hac vice)
Kelly Newman
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005-38007
Tel: (202)-626-3600
Fax: (212)-354-8113
mgidley@whitecase.com
pcarney@whitecase.com
egrannon@whitecase.com
adam.acosta@whitecase.com
cmclaughlin@whitecase.com
hletourneau@whitecase.com
kelly.newman@whitecase.com

*Counsel for AbbVie, Inc., Allergan Inc., Allergan USA, Inc., Watson Pharmaceuticals Inc. (later known as Actavis, Inc.)*

/s/ Devora Allon
Devora W. Allon. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-5697
Fax: (212)-446-6460
devora.allon@kirkland.com

Jay P. Lefkowitz. P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212)-446-4970
Fax: (212)-446-4900
lefkowitz@kirkland.com

*Counsel for Torrent Pharma, Inc.*

/s/ Christopher Holding
Christopher T. Holding (pro hac vice)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel: (617)-570-1753
Fax: (617)-523-1231
cholding@goodwinlaw.com

*Counsel for Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.), Watson Laboratories, Inc., (CT), Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc.*

/s/ Teresa Bonder
Teresa T. Bonder (pro hac vice)
**ALSTON & BIRD LLP**
560 Mission Street, Ste. 2100
San Francisco, CA 94105
Tel: (415)-243-1000
Fax: (415)-243-1001
teresa.bonder@alston.com

Matthew D. Kent (pro hac vice)
Andrew Hatchett (pro hac vice)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, GA 30309
Tel: (404)-881-7000
Fax: (404)-881-7777
matthew.kent@alston.com
andrew.hatchett@alston.com

Natalie Christine Clayton
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212)-210-9573
Fax: (212)-922-3845
natalie.clayton@alston.com

/s/ Ahmed M.T. Riaz
Ahmed M.T. Riaz
**ARENTFOX SCHIFF LLP**
1185 Avenue of the Americas
Suite 3000
New York, NY 10036
(212)-753-5000
ahmed.riaz@afslaw.com

Suzanne L. Wahl (pro hac vice)
**ARENTFOX SCHIFF LLP**
350 S. Main St., Suite 210
Ann Arbor, MI 48104
(734)-222-1500
suzanne.wahl@afslaw.com

*Counsel for Indchemie Health Specialties Private Ltd., Alkem Laboratories Ltd., Ascend Laboratories LLC*

/s/ Eileen M. Cole
Eileen M. Cole
John "Jay" Jurata, Jr. (*pro hac vice*)
James Tierney (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Tel: (202)-339 8400
Fax: (202)-339 8500
eileen.cole@orrick.com
jjurata@orrick.com
jtierney@orrick.com

*Counsel for Defendant ANI Pharmaceuticals, Inc.*

*Counsel for Glenmark Generics Inc., USA (n/k/a Glenmark Pharmaceuticals Inc., USA), Glenmark Generics Ltd. (n/k/a Glenmark Pharmaceuticals Ltd.), Glenmark Pharmaceuticals Ltd., and Glenmark Pharmaceuticals S.A. (n/k/a Ichnos Sciences S.A.)*

/s/ Jonathan D. Janow
Jonathan D. Janow
**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, N.W., Suite 300
Washington, DC 20006-3807
Tel: (202) 452-6057
Fax: (202) 452-7989
jonathan.janow@bipc.com

Abigail F. Coster
**BUCHANAN INGERSOLL & ROONEY PC**
640 5th Avenue, 9th Floor
New York, NY 10019-6102
Tel: (212) 440-4419
Fax: (212) 440-4401
abigail.coster@bipc.com

*Counsel for Defendants Hetero Labs Ltd., Hetero Drugs Ltd., and Hetero USA Inc.*

/s/ Tobias Snyder
Tobias Snyder
Marc Lewis
Newton Oldfather
**LEWIS & LLEWELLYN LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 800-0590
Fax: (415) 390-2127
tsnyder@lewisllewellyn.com
mlewis@lewisllewellyn.com
noldfather@lewisllewellyn.com

*Counsel for Defendants Amerigen Pharmaceuticals Ltd. and Amerigen*

9

*Pharmaceuticals Inc.*

10